**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **CCC INFORMATION SERVICES INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No.** |
| **v.** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **TRACTABLE INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

CCC Information Services Inc. ("CCC" or "Plaintiff"), by and through its attorneys, and as for its Complaint against Tractable Inc. ("Tractable" or "Defendant") alleges as follows:

## NATURE OF THE ACTION

1.      Using a series of aliases and fake names, Tractable fraudulently gained access to CCC's proprietary platform, including CCC ONE® Appraisal Platform and CCC ONE® Estimating (collectively, "CCC ONE"), and used that fraudulently-obtained access to analyze and probe CCC ONE, eventually representing to potential customers that it had the ability to integrate with CCC ONE.  CCC brings this action to obtain redress for Tractable's fraudulent and illegal misappropriation of CCC's proprietary and confidential information.

2.      CCC provides technology solutions for the automotive, insurance and collision repair industries.  CCC's proprietary CCC ONE platform connects a large network of insurance companies, independent appraisers, repair facilities and other service providers to provide them with a seamlessly integrated way to, among other things, generate and communicate vehicle damage estimates.  The CCC ONE platform contains a confidential database of information regarding repair part prices, repair labor times and refinish times with data going back to the

1970's.  It is one of the cornerstones of CCC's business and is valued at well in excess of hundreds of millions of dollars.

3.      CCC offers licenses to independent appraisers that work with insurance companies to assist them with vehicle damage estimates, often in understaffed geographies or to cover a large number of claims following catastrophic events.  Legitimate independent appraisers use CCC ONE to generate estimates of vehicle damage in relation to physical damage claims submitted to insurance companies.

4.      Independent appraiser licenses provide third party claims services to the licensee's clients -- such as insurance companies, repair facilities and leasing companies -- for the evaluation, processing and settling of vehicle damage claims in connection with insurance policies.

5.      On or about August 23, 2017, an individual holding himself out to be an independent appraiser working for "JA Appraisal" obtained an independent appraiser license to use CCC ONE.  "JA Appraisal," however, turned out to be a fictitious company that was used as a front for Tractable, a startup technology company that purports to use artificial intelligence ("AI") to produce real-time cost estimates of accident repair based on pictures of vehicle damage.  Tractable, however, relies upon unproven and untested technology that has no meaningful acceptance in the industry.

6.      Over the course of fourteen months and before CCC discovered Tractable's fraud, Tractable used the fraudulently-obtained access to prepare more than 2100 structured tests in the form of CCC-computed estimates and to otherwise probe CCC ONE in a concerted effort to discern CCC's algorithms and process to achieve its own business ends.

7.      By this action, CCC seeks damages and other relief, including attorneys' fees and costs, that it has incurred as a result of Tractable's fraud.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because the claims asserted in the Complaint present federal questions under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 and the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a).  This Court has supplemental jurisdiction over CCC's state and common law claims pursuant to 28 U.S.C. § 1367.

9.      This Court has personal jurisdiction over Tractable, because Tractable targeted its conduct at CCC and, on information and belief, Tractable knew that CCC was located in Illinois.

10.      Venue is proper in this district pursuant to 28 U.S.C § 1391 (b)(2), because the acts and damages that give rise to these claims occurred in this district and because Tractable either conducted or conducts business within this district.

## PARTIES

11.      CCC is a Delaware corporation with its principal place of business in Chicago, Illinois.

12.      Tractable is a Delaware corporation with registered office in San Francisco, California and its principal place of business in London, United Kingdom.

## GENERAL ALLEGATIONS

### The CCC ONE Platform

13.      CCC provides cloud, mobile, telematics, artificial intelligence technologies and apps for the automotive, insurance and collision repair industries.  CCC's solutions are delivered through CCC ONE, which connects a network of insurance companies, repair facilities, original

equipment manufacturers, thousands of parts suppliers and dozens of third-party data and service providers.

14.     As pertinent to this dispute, CCC ONE is used by three types of customers: vehicle repair facilities, insurers and independent appraisers.  Repair facilities obtain licenses to use CCC ONE to generate estimates of the cost to repair damaged vehicles, to communicate with insurers and/or to manage inventory, invoices and purchase orders.  Insurers and independent appraisers obtain licenses to use CCC ONE to generate estimates for insurance companies in relation to vehicle damage claims.

15.     The license at issue in this case is an independent appraiser license.  In a typical workflow, an independent appraiser using CCC ONE is first sent an assignment by an insurance company.  Next, the appraiser inspects the vehicle and interactively uses CCC ONE to generate an estimate.  The appraiser documents damage, takes photos and prepares ancillary notes and other supporting administrative information needed to complete the vehicle damage estimate. When the estimate is ready to be communicated to the insurance carrier's claim system it is finalized and locked.  Locking the estimate prevents further editing and triggers CCC ONE to send the completed estimate to the carrier.

16.     After CCC ONE computes and generates a vehicle damage estimate, the estimate and other data can be seamlessly and immediately communicated to insurers.  The integration of CCC ONE with repair shops and insurers reduces insurance cycle times, saving insurers time and money.

17.     The proprietary CCC ONE platform is the cornerstone of CCC's business, and as such, its data and algorithms are highly confidential.  CCC ONE contains a wealth of data, including (as relevant here) prices of replacement parts, hours of labor to replace/repair parts and

vehicle refinish time (e.g., painting). Much of this data is derived from relationships with third-party sources that CCC has cultivated over decades as well as highly proprietary algorithms and calculations. The CCC ONE platform was created and is maintained for the benefit of CCC. The value of the integrated CCC ONE platform is well in excess of hundreds of millions of dollars.

18.     Because of the highly proprietary nature and the time and effort it took CCC to develop the CCC ONE platform, CCC employs multiple layers of security at all logical and physical tiers of the application, including but not limited to encryption at rest, encryption over the wire, session based architecture, role and permission based authorization, data expiration mechanisms, authentication and extensive tracing and logging infrastructure.

19.     CCC's license agreements with independent appraisers are designed to restrict the use of applicable programs and services in the CCC ONE platform and to maintain the highly confidential and proprietary nature of those programs and services. For example:

    a.      The license CCC grants to an independent appraiser is limited, nonexclusive, nontransferable, nonassignable, and revocable;

    b.      Only one person at one location on one computer can access a particular program, unless that program is licensed for additional users;

    c.      In the case of certain services, CCC provides a confidential password and login credential to each user authorized by the independent appraiser, which password and credentials may not be transferred to any other individual or entity; and

    d.      The independent appraiser acknowledges and agrees, in part, that it may not:

        i.      Copy, translate, port modify, or make derivative works of the programs and/or services;

        ii.      Electronically transmit the programs and/or services from one computer to another over a network, including the Internet;

        iii.      Provide access to or use the programs and/or services in a manner not expressly authorized by the agreement;

        iv.      Derive or attempt to derive the source code, source files, or structure of all or any portion of the programs and/or services by reverse engineering, disassembly, decompilation or any other means; and

        v.      Use the programs and/or services and documentation for the benefit of any entity other than the independent appraiser except to provide claims services.

20.     CCC is the owner of the CCC® and CCC ONE® marks (the "CCC® and CCC ONE® Marks") and the following U.S. Federal Registrations (the "CCC Registrations"):

    a.      No. 2,013,714 for the CCC® Mark in Classes 36 and 38 (incontestable).

    b.      No. 4,588,425 for the CCC® Mark in Class 42.

    c.      No. 4,473,633 for the CCC ONE® Mark in Class 9.

    d.      No. 4,527,798 for the CCC ONE® Mark in Class 42.

    e.      No. 3,664,638 for the CCC ONE® Mark in Class 36 (incontestable).

    f.      No. 3,706,398 for the CCC ONE® Mark in Class 36 (incontestable).

21.     CCC has attained strong name recognition and goodwill in the CCC® and CCC ONE® marks in the vehicle repair and insurance industries.

22.     The estimates communicated through the CCC ONE platform to insurers identify

CCC and CCC ONE as the sources of the information and data contained in the estimates.

### "JA Appraisal" Obtains A CCC ONE Independent
### Appraisal License Under False Pretenses

23.     On or about August 23, 2017, "JA Appraisal" obtained an independent appraiser

license to use CCC ONE.  The license granted one user from "JA Appraisal" the right to use

CCC ONE to generate estimates for vehicle repairs.

24.     The license obtained by "JA Appraisal" is conditioned on the independent

appraiser working with insurers in the business of generating estimates for vehicle repair.  This

limitation is an essential element of a legitimate license agreement, which expressly prohibits the

appraiser from (among other things): copying or making derivative works of the programs;

electronically transmitting the programs and/or services from one computer to another over a

network, including the Internet; deriving or attempting to derive the source code, source files, or

structure of all or any portion of the programs and/or services by reverse engineering,

disassembly, decompilation or any other means; or using the programs and/or services and

documentation for the benefit of any entity other than the independent appraiser.

25.     Over the next several months, "JA Appraisal" added several users to its account

with CCC.  For example, it added an additional user on or about November 29, 2017, two

additional users on or about February 1, 2018, and two additional users on or about March 13,

2018, bringing its total users to six.  Each time users were added, CCC and "JA Appraisal"

purported to enter into a new independent appraiser license agreement that similarly prohibited

"JA Appraisal" from (among other things) copying or making derivative works of the programs,

using the programs in any manner not expressly authorized by the agreement, compiling estimate

data for the purpose of creating a database, or accessing the programs outside of the United States.

26.     Unbeknownst to CCC at the time, however, "JA Appraisal" was not a legitimate company and, in fact, never existed.  Instead, "JA Appraisal" was a front for a start-up technology company attempting to, on information and belief, gain access to CCC's data and information and attempting to discern CCC's algorithms and processes.

### CCC Customers Tell CCC About Tractable

27.     Tractable is an AI startup for accident and disaster recovery.  It has registered offices in California and in London.  According to its website, Tractable uses AI to produce real-time cost estimates of accident repair based on pictures of vehicle damage, as opposed to through physical inspections done by independent appraisers that properly license and use CCC ONE.

28.     In or around April of 2018, one of CCC's customers informed CCC at an industry conference that a company called Tractable had represented that it could write its own vehicle damage estimates offline and populate its estimates into CCC ONE, using the platform to communicate Tractable's purported estimate to insurers.  Tractable purportedly did this in a way that made the estimate appear as though it was generated through CCC ONE.  CCC did not believe Tractable's purported use of CCC ONE was technologically possible, particularly since Tractable never obtained a license from CCC to use CCC ONE.

29.     In or around September of 2018, a second CCC customer also informed CCC that Tractable was sending vehicle damage estimates that appeared to be written by CCC ONE.

30.     In or around late October of 2018, yet another CCC customer informed CCC that it saw a Tractable estimate that appeared to be written by CCC ONE.

31.     Taken together the three reports were concerning, and as such, CCC set out to investigate how Tractable could be communicating estimates via CCC ONE.

**CCC Uncovers That "JA Appraisal" Is A Front For Tractable**

32.     Following the two most recent reports from its customers, CCC conducted searches of its database on or about October 26, 2018 and confirmed that Tractable did not have a license to use CCC ONE.

33.     CCC then ran a number of database queries across its entire platform, searching for, among other things, "Tractable" and "Tract." This query resulted in CCC uncovering Tractable's fraud.

34.     Specifically, CCC discovered:

    a.      Six (6) users registered under the entity "JA Appraisal" that had abnormal usernames incorporating the term "Tract" (e.g., "Tract Spec1");

    b.      An email address from a Tractable domain ("@tractable.ai") that was used to register "JA Appraisal" on CCC ONE;

    c.      Numerous cases where names appeared in workfile meta data that were later discovered to be known Tractable employees;

    d.      A phone number and California address[1] listed on the "JA Appraisal" license for "Jason Chen" was associated with the former Head of U.S. Business and Product Development at Tractable, Xing Xin, on the license agreements signed by "JA Appraisal;" and

    e.      That at least some of the "JA Appraisal's" estimates in CCC ONE reference "Tractable."

---

[1] On information and belief, the California address "JA Appraisal" listed with CCC is associated with a guitar repair shop.

35.     CCC further investigated "JA Appraisal" and discovered that there was no such business registered in California.

36.     CCC concluded that Tractable had fraudulently obtained a license to use CCC ONE under the name "JA Appraisal."

**Tractable's Fraudulent And Unauthorized Use Of CCC ONE**

37.     After uncovering Tractable's scheme, CCC further investigated Tractable's use of CCC ONE and discovered that Tractable had not used CCC ONE to generate estimates, as the independent appraiser license agreement mandates, but instead appeared to be using CCC ONE to create test files using fictitious information and to generate unlocked estimates -- which had the CCC mark but could be edited -- for transmission to an insurance carrier outside of the CCC ONE platform.

38.     Tractable used CCC ONE to create more than 2,100 estimates, also known as "workfiles."  Approximately 1,000 of those workfiles appear to be based upon data supplied by an insurance company that also works with CCC.  On information and belief, Tractable was generating its own estimates for these workfiles using its AI technology and manually overriding CCC's system to input those estimates into the CCC ONE platform, making the estimates appear as if they were prepared through CCC ONE.  Upon information and belief, Tractable would then communicate the estimates to insurance companies in the CCC ONE proprietary format that is unique to CCC.

39.     Upon information and belief, the Tractable-generated "estimates" identify CCC and CCC ONE as the sources of the information and data contained in the workfiles that were communicated to the insurance companies.  The Tractable-generated "estimates" use the same formatting and layout as the authentic CCC ONE reports.

40.    The other approximately 1,100 workfiles appear to be based upon a mix of real data, such as vehicle identification numbers, and created data, such as fake customer names, rather than the actual data that would typically be used to generate vehicle damage estimates for legitimate claims.  For example, these workfiles:

a.    Do not list an insurance company;

b.    Do not appear to have been transmitted to an insurer or other end user, but remain in a draft state;

c.    Were written in a much shorter timeframe than normal estimates;

d.     Lack details that would be included in an insurance claim

e.    Include consumer name files that are populated with test-case numbers, such as "F.16;" and/or

f.    Prepared vehicle damage estimates for low dollar amounts that do not represent normal distribution of claim dollars in the industry, but are more typical of photo estimates written for low-velocity impacts.

41.    On information and belief, Tractable used these workfiles to perform structured tests of CCC ONE in an attempt to replicate its algorithms and mimic its software logic and/or database.

42.    Online chat messages and phone calls between CCC customer service agents and Tractable employees (holding themselves out as "JA Appraisal" employees) confirm CCC's suspicions.  Indeed, these chat messages demonstrate that Tractable employees used fake names to contact CCC and ask questions in an attempt to understand how to upload its own estimates into CCC ONE and discover the algorithms behind the platform.

43.     By way of example, on September 17, 2018, a Tractable employee named Evan, after falsely representing himself as the famous inventor "Dean Kamen" from "JA Appraisers," probes a CCC customer service agent about how to import estimates into CCC ONE. CCC explained that independent appraisers cannot import estimates into CCC ONE:

| Monday, September 17, 2018 | | | |
|---|---|---|---|
| | (1:00:06 PM) | **(System) said:** | Before we get started, can we please have your First & Last name? |
| | (1:00:26 PM) | **(System) said:** | Sorry, we did not get that. |
| | (1:00:27 PM) | **(System) said:** | Before we get started, can we please have your First & Last name? |
| | (1:00:28 PM) | (Client) said: | Dean Kamen |
| | (1:00:28 PM) | **(System) said:** | Please tell us your software serial number, if you have one. |
| | (1:00:48 PM) | **(System) said:** | Sorry, we did not get that. |
| | (1:00:49 PM) | **(System) said:** | We did not receive your information. Please hold for a representative. |
| | (1:00:52 PM) | **(System) said:** | We apologize for the delay. All representatives are currently assisting customers. There are currently 0 chats ahead of you. Please continue to wait and your chat will be handled in the order in which it was received. |
| | (1:01:22 PM) | **(System) said:** | We appreciate your patience. All representatives are still assisting customers. There are currently 0 chats ahead of you. Please continue to hold and your chat will be answered in the order in which it was received. |
| | (1:01:34 PM) | **(Agent) Bianca said:** | Good afternoon,my name is Bianca. May I have your Name, email address and your CCC One license number please? |
| | (1:02:41 PM) | (Client) Dean Kamen said: | Hi Bianca, this is Evan from JA Appraisers. My license number is 406980. |
| 36.20 | (1:03:17 PM) | **(Agent) Bianca said:** | Thank you, how can I help you today? |
| | (1:06:02 PM) | (Client) Dean Kamen said: | I had a question: I wanted to import EMS estimates to CCC. I followed the steps in the documentation (Selected import location in Machine Setttings and ticked the box allowing EMS import in Machine Settings). However I can not get CCC to import the EMS files I put in the destination to import automatically. |
| | (1:06:37 PM) | (Client) Dean Kamen said: | Are there any other steps that I should follow to enable automatic EMS Estimate import? |
| 110.00 | (1:07:52 PM) | **(Agent) Bianca said:** | You would need the Repair Workflow Package to use that feature. Let me verify that is the same with IA |
| | (1:10:13 PM) | (Client) Dean Kamen said: | OK |
| 6.18 | (1:10:19 PM) | **(Agent) Bianca said:** | That is correct, Estimating only users cant import EMS Estimates. You can import an EMS assignment. |
| | (1:13:11 PM) | (Client) Dean Kamen said: | So we have a full IA package, is that correct? |
| | (1:13:37 PM) | (Client) Dean Kamen said: | Also I am an admin user if it helps. |
| 110.04 | (1:15:01 PM) | **(Agent) Bianca said:** | Yes, I can check the package |
| | (1:18:29 PM) | **(Agent) Bianca said:** | Are you trying to import an assignment or estimate? |
| | (1:22:18 PM) | (Client) Dean Kamen said: | I want to do both |

| | | | |
|---|---|---|---|
| 193.56 | (1:25:31 PM) | (Agent) Bianca said: | You can import EMS ASSIGNMENTS, but the IA build doesn't support EMS ESTIMATES. |
| | (1:27:52 PM) | (Client) Dean Kamen said: | OK got it so EMS Estimate import will work only for Repairer and Insurer licenses? |
| 15.00 | (1:28:07 PM) | (Agent) Bianca said: | Just repair facility |
| | (1:30:01 PM) | (Client) Dean Kamen said: | Alright understood, so what type of files can an insurer import other than .awf and EMS Assignment import? Can they use BMS? |
| 43.65 | (1:30:44 PM) | (Agent) Bianca said: | EMS and AWF are the only types |
| | (1:32:23 PM) | (Client) Dean Kamen said: | OK, how do I create an EMS assignment with my 1'? |
| 43.33 | (1:33:06 PM) | (Agent) Bianca said: | Assignments are created by the insurance company in the portal. |
| | (1:38:07 PM) | (Client) Dean Kamen said: | OK makes sense, so basically I can not send an EMS to an insurer and they can import this file into CCC? |
| 52.33 | (1:38:59 PM) | (Agent) Bianca said: | Correct |
| | (1:41:06 PM) | (Client) Dean Kamen said: | oh unless EMS file is an EMS assignment file generated by the insurance company. |
| | (1:41:11 PM) | (Client) Dean Kamen said: | ? |
| 28.80 | (1:41:35 PM) | (Agent) Bianca said: | Yes, thats correct |
| | (1:44:38 PM) | (Client) Dean Kamen said: | Can a CCC using insurance company assign to an IA that uses Mitchell only? |
| | (1:44:57 PM) | (Client) Dean Kamen said: | *assign an estimate to an IA |
| 60.82 | (1:45:39 PM) | (Agent) Bianca said: | Yes, they will upload/download via the portal. |
| | (1:48:59 PM) | (Client) Dean Kamen said: | And then is it possible to assign the estimate back to the CCC-using insurer? (Also would it be locked or unlocked?) |
| 114.56 | (1:50:54 PM) | (Agent) Bianca said: | The IA wouldnt be able to assign it to the insurance company that uses CCC. But insurance companies cant import estimates written in a 3rd party estimating program |
| | (2:06:53 PM) | (System) said: | Chat session ended |
| | (2:06:53 PM) | (System) said: | Chat session ended |

44.     On September 20, 2018, another "JA Appraisal" employee also contacted a CCC customer service agent to inquire about the inner workings of CCC ONE and about importing and exporting data.  CCC again informed him that independent appraisers cannot import estimates:

| | | | |
|---|---|---|---|
| | (1:23:06 PM) | (Agent) Hannah said: | Hello, this is Hannah with CCC Technical Support. How can I assist you today? |
| | (1:25:08 PM) | (Client) Evan Contin said: | Hi Hannah, this is Evan. So I was asking about how to import EMS Assignment files in CCC ONE as an IA. What steps should I follow? |
| 76.15 | (1:26:24 PM) | (Agent) Hannah said: | So you would have to setup an import directory under Configure-Machines settings then File Import |
| | (1:28:41 PM) | (Client) Evan Contin said: | OK got it, so which option should I select: EMS/CIECA files |

| | | | or AF Assignment files? |
|---|---|---|---|
| 12.10 | (1:28:53 PM) | (Agent) Hannah said: | EMS/Cieca Files |
| | (1:29:34 PM) | (Agent) Hannah said: | Then you will need to know the export path of where the assignments are being export too from the program that is exporting them. that will be the Import path in CCC |
| | (1:31:38 PM) | (Client) Evan Contin said: | Alright makes sense. I have an assigned estimate to me. How do I export this as EMS Assignment from CCC? Then I will try re-importing it back. |
| 34.43 | (1:32:12 PM) | (Agent) Hannah said: | You cannot export files from CCC and reimport them. It only works EMS assignments from other programs into CCC. |
| | (1:33:06 PM) | (Agent) Hannah said: | So if you had an Assignment in another program you would export into CCC. You cannot export from CCC, then import into CCC. |
| | (1:34:10 PM) | (Agent) Hannah said: | To export an Estimate in CCC, you would setup an EMS export directory Under File Export in the Machine Settings, then in the workfile after the estimate is written on the Workfile Tab there is an EMS export button. |
| | (1:38:38 PM) | (Client) Evan Contin said: | OK. I am not sure when I receive an EMS Assignment I'll have all information needed. Do they contain all the information an EMS estimate will contain? |
| 43.55 | (1:39:21 PM) | (Agent) Hannah said: | It depends on what information they include on the assignment. |
| | (1:39:48 PM) | (Agent) Hannah said: | Any information can be manually added in CCC to the workfile once it is started. |
| | (1:50:34 PM) | (Client) Evan Contin said: | Do you know if the assignment can include preliminary estimate data - like operations and parts? |
| | (1:50:49 PM) | (Client) Evan Contin said: | *if the EMS assignment |
| 40.17 | (1:51:14 PM) | (Agent) Hannah said: | No the assignments are just the basic vehicle owner information, insurance information and the vehicle. |
| | (1:51:36 PM) | (Agent) Hannah said: | The IA build cannot import EMS estimates. |
| | (1:57:31 PM) | (Client) Evan Contin said: | I see, that's very helpful. Thanks a lot for your help! Bye! |
| 7.00 | (1:57:38 PM) | (Agent) Hannah said: | You're welcome |
| | (1:58:05 PM) | (System) said: | Chat session ended |
| | (1:58:05 PM) | (System) said: | Chat session ended |

45.    The foregoing chats from September 17, 2018 and September 20, 2018 reflect Tractable's efforts to conceal its true identity from CCC, obtain information on how write its own vehicle damage estimates offline, populate its estimates into CCC ONE and use the platform to then communicate Tractable's estimate to insurers.  On information and belief, Tractable engaged in this conduct in an attempt to generate estimates that appeared to be generated through CCC ONE.

46.     On information and belief, Tractable has attempted to replicate the CCC ONE platform to construct its own software that mimics or mirrors CCC computations.  Indeed, a job listing for a Tractable Auto Body Estimator, accessed via Tractable's website on October 28, 2018, indicates that Tractable requires the job applicant to have working experience of CCC ONE or another estimating platform.

47.     On information and belief, Tractable has also copied data from the database, such as labor times for repairs, to build its own database.

48.     Tractable's need for CCC's data and software seems to stem from the recent termination of Tractable's partnership with another technology company.  On information and belief, however, that partnership dissolved recently and seems to have precipitated Tractable's attempt to fraudulently use CCC ONE to obtain some of the same data and technology that it previously obtained through that relationship.

### CCC Terminates The License That Tractable Fraudulently Obtained

49.     CCC terminated "JA Appraisal's" license on October 26, 2018 in an attempt to prohibit Tractable from further misappropriating CCC's proprietary data and software.

50.     On October 29, 2018, Tractable nevertheless attempted to log in to the CCC ONE platform.  When the log in failed, an employee from Tractable who identified himself as "Jason Chen" of "JA Appraisals" twice called CCC to inquire about why he was unable to log in to the platform.  The phone number from which "Jason Chen" called, 760-705-8888, is associated with Google Voice which, on information and belief, uses an outbound trunk to de-identify the caller. CCC has not reactivated "JA Appraisal's" license.

51.     Despite the termination of the license, however, Tractable is currently configured to receive data that CCC ONE generates on five Tractable computers.

52.     Had CCC been aware of Tractable's true intentions, CCC would not have granted Tractable (or "JA Appraisal") a license to use CCC ONE.  Tractable knew this, and in order to surreptitiously take advantage of the integrated platform of CCC ONE, Tractable registered for the license under the fake name "JA Appraisal" under the customer type "independent appraiser."

53.     CCC did not know that "JA Appraisal" was actually Tractable when CCC granted "JA Appraisal" a license to use CCC ONE.

54.     As a result of Tractable's unauthorized use of CCC ONE, CCC has suffered damages in an amount to be demonstrated at trial.

## COUNT ONE

### Computer Fraud And Abuse Act, 18 U.S.C. § 1030, et seq.

55.     Paragraphs 1-54 are realleged as if fully set forth herein.

56.     In connection with its provision of estimate creation and delivery services, CCC's computers and servers are involved in interstate and foreign commerce and communication and are protected computers under 18 U.S.C. § 1030(e)(2).

57.     On information and belief, Tractable knowingly and intentionally accessed CCC's protected computers without authorization pursuant to 18 U.S.C. § 1030(a)(2)(C).

58.     Tractable fraudulently obtained a digital credential to access the CCC ONE platform.  Tractable used trickery and deceit to circumvent CCC's measures to restrict access to the CCC ONE platform.

59.     Tractable used the illegally-obtained digital credential to obtain information on CCC's protected computers.

60.     CCC has suffered damage and loss by reason of these violations, including, without limitation, harm to CCC's content, programs and computer systems, expenses associated

with being forced to investigate and block the unauthorized access and abuse of its computers and servers, and other losses and damage in an amount to be proven at trial, and well in excess of $5,000 aggregated over a one-year period.

61.     For exceeding authorized access in violation of the Computer Fraud and Abuse Act committed by Tractable, CCC seeks compensatory damages and injunctive relief or other equitable relief, as allowed in 18 U.S.C. § 1030(g).

### COUNT TWO

**Violation Of The Defend Trade Secrets Act Of 2016, 18 U.S.C. § 1836, et seq.**

62.     Paragraphs 1-**54** are realleged as if fully set forth herein.

63.     In connection with its provision of estimate creation of delivery services, the CCC ONE platform is involved in interstate commerce.

64.     The software application and components, pricing database, and processes of CCC ONE are proprietary and confidential.  CCC has taken and continues to take reasonable efforts to keep its proprietary and confidential information secret.  CCC protects this confidential information by, among other things, restricting access to CCC ONE and requiring execution of a confidentiality and licensing agreement prior to permitting access.

65.     CCC's proprietary and confidential information are trade secrets as defined by 18 U.S.C. § 1839(3).

66.     CCC derives economic value and competitive advantage from such information not being known or used by its competitors or others.

67.     Tractable misappropriated CCC's trade secrets by knowingly obtaining them by improper means; namely, Tractable acquired access to CCC ONE by misrepresenting itself as a fake company.

68.     On information and belief, Tractable copied confidential data contained in the CCC ONE database.

69.     On information and belief, Tractable attempted to use its access to the confidential CCC ONE software application and components, pricing database, and processes in order to reverse-engineer the software and recreate it.

70.     On information and belief, Tractable has used or is planning to use the trade secrets that it has obtained from CCC to deliver and sell insurance estimating software.

71.     CCC has sustained and will continue to sustain damages, and Tractable has been and will continue to be unjustly enriched, as a direct result of Tractable's misappropriation of CCC's trade secrets.

72.     Because Tractable's misappropriation was willful and malicious, CCC is entitled to exemplary damages under 18 USC § 1863(3)(C).

## COUNT THREE

### Violation Of The Illinois Trade Secrets Act Of 2016, 765 ILCS 1065/2

73.     Paragraphs 1-54 are realleged as if fully set forth herein.

74.     The software application and components, pricing database, and processes of CCC ONE are proprietary and confidential.  CCC has taken and continues to take reasonable efforts to keep its proprietary and confidential information secret.  CCC protects this confidential information by, among other things, restricting access to CCC ONE and requiring execution of a confidentiality and licensing agreement prior to permitting access.

75.     CCC's proprietary and confidential information are trade secrets as defined by 765 ILCS 1065/2(d).

76.     CCC derives economic value and competitive advantage from such information not being known or used by its competitors or others.

77.     Tractable misappropriated CCC's trade secrets by knowingly obtaining them by improper means; namely, Tractable acquired access to CCC ONE by misrepresenting itself as a fake company.

78.     On information and belief, Tractable copied confidential data contained in the CCC ONE database.

79.     On information and belief, Tractable attempted to use its access to the confidential CCC ONE software application and components, pricing database, and processes in order to reverse-engineer the software and recreate it.

80.     On information and belief, Tractable has used or is planning to use the trade secrets that it has obtained to deliver and sell insurance estimating software.

81.     CCC has sustained and will continue to sustain damages, and Tractable has been and will continue to be unjustly enriched, as a direct result of Tractable's misappropriation of CCC's trade secrets.

82.     Because Tractable's misappropriation was willful and malicious, CCC is entitled to exemplary damages under 765 ILCS 1065/4(b).

## **COUNT FOUR**

### **Trademark Infringement In Violation Of The Lanham Act**
### **15 U.S.C. § 1114**

83.     Paragraphs 1-54 are realleged as if fully set forth herein.

84.     CCC owns the CCC® mark, the CCC ONE® mark, the CCC Registrations, and longstanding common law rights in the CCC® and CCC ONE® Marks. CCC® and CCC ONE® are valid and protectable trademarks. The CCC® and CCC ONE® Marks are strong and distinctive, and designate CCC as the source of all goods and services advertised, marketed, sold, or used in connection with the CCC® and CCC ONE® Marks.

85. Tractable does not have authorization, license, or permission from CCC to market and sell any goods or services under the CCC® or CCC ONE® Marks.

86. Tractable's use of the CCC® and CCC ONE® Marks in interstate commerce constitutes a reproduction, counterfeit, copy, or colorable imitation of a registered trademark of CCC in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion and to deceive insurers, vehicle repair shops, and others into the belief that the vehicle damage estimates prepared and transmitted by Tractable through the CCC ONE platform are connected to, approved by, or affiliated with CCC.

87. As a direct and proximate result of Tractable's wrongful conduct, CCC has been and will continue to be, irreparably harmed and injured, and such harm will continue unless enjoined by this Court.

88. Tractable's actions thus constitute trademark infringement.

89. Tractable's misconduct has been and is knowing, deliberate, malicious and willful. Pursuant to 15 U.S.C. § 1117(a), Tractable's willful use of the CCC® and CCC ONE® marks without excuse or justification makes this an exceptional case, entitling CCC to an award of treble damages and reasonable attorneys' fees and costs.

## COUNT FIVE

### False Designation Of Origin In Violation Of The Lanham Act
### 15 U.S.C. § 1125

90. Paragraphs 1-54 are realleged as if fully set forth herein.

91. CCC owns the CCC® and CCC ONE® Marks, the CCC Registrations, and longstanding common law rights in the CCC® and CCC ONE® Marks. The CCC® and CCC ONE® Marks are strong and distinctive and designate CCC as the source of all goods and

services advertised, marketed, sold, and used in connection with the CCC® and CCC ONE®
Marks.

92.     On information and belief, through Tractable's use of the CCC® and CCC ONE®
Marks, Tractable intended to, and did in fact, confuse, mislead, and deceive insurers, vehicle
repair shops, and others into believing, and misrepresented and created the false impressions, that
the vehicle damage estimates prepared and transmitted by Tractable through the CCC ONE
system are connected to, approved by, or affiliated with CCC. Tractable's use of the CCC ONE®
mark amounts to a false representation that CCC is the point of origin of Tractable's estimate, in
violation of the Lanham Act, 15 U.S.C. § 1125(a).

93.     As a direct and proximate result of Tractable's wrongful conduct, CCC has been
and will continue to suffer serious and irreparable damage in the form of lost goodwill and
business reputation.

94.     Tractable's actions thus constitute false designation of origin.

95.     Tractable's misconduct has been and is knowing, deliberate, malicious and
willful. Pursuant to 15 U.S.C. § 1117(a), Tractable's willful use of the CCC® and CCC ONE®
Marks without excuse or justification makes this an exceptional case, entitling CCC to an award
of treble damages and reasonable attorneys' fees and costs.

## COUNT SIX

**Illinois Uniform Deceptive Trade Practices Act**
**815 ILCS 510**

96.     Paragraphs 1-54 are realleged as if fully set forth herein.

97.     The acts and conduct of Tractable as alleged above in this Complaint constitute
unfair competition and deceptive trade practices under the Illinois Uniform Deceptive Trade
Practices Act, 815 ILCS 510.

98.     For the deceptive trade practices and unfair competition that Tractable has engaged in, CCC seeks the recovery of Tractable's profits, compensatory damages, the costs of this immediate action, reasonable attorneys' fees, and injunctive relief, as allowed in 815 ILCS 510/3.

## COUNT SEVEN

### Trespass To Chattels Under The Common Law Of Illinois

99.     Paragraphs 1-54 are realleged as if fully set forth herein.

100.    The computers and servers that constitute the CCC ONE platform are the personal property of CCC.

101.    Without valid authorization, Tractable has intentionally and repeatedly obtained access to, and made use of, CCC's computers and data for its own economic benefit.

102.    Through its practice and pattern of repeatedly transmitting estimates through CCC's computers and collecting data from CCC's computers in high volumes, Tractable has wrongfully exercised dominion over CCC's computers in denial of CCC's rights to that property. Tractable's wrongful exercise of dominion over CCC's computers has deprived CCC of the legitimate use of this commercially valuable system.

103.    Under the common law of Illinois, Tractable's conduct constitutes trespass to CCC's chattels.

104.    As a result of Tractable's trespass to CCC's chattels, CCC has suffered and will continue to suffer irreparable injury, loss of reputation and pecuniary damages.

## COUNT EIGHT

### Common Law Fraud

105.    Paragraphs 1-54 are realleged as if fully set forth herein.

106.    Tractable knowingly made false statements of material fact to CCC when it used a fake company, "JA Appraisal," to seek and enter into a license agreement with CCC.

107.    Tractable misrepresented its identity in order to deceive CCC that Tractable was an appraiser and to induce CCC to provide Tractable was the license agreement and access to CCC ONE.  On information and belief, Tractable intended that CCC rely on Tractable's misrepresentation of its identity as "JA Appraisal."

108.    As a result of Tractable's intentional misrepresentations, CCC has suffered harm to its proprietary information, harm to its reputation and goodwill, and damages.

<u>COUNT NINE</u>

**Unjust Enrichment And The Imposition Of A Constructive Trust In Favor Of CCC**

109.    Paragraphs 1-54 are realleged as if fully set forth herein.

110.    By fraudulent access to and unauthorized use of CCC ONE, Tractable has knowingly obtained advertising and competition-related benefits acquired at CCC's expense. Tractable's knowing acquisition of these benefits occurs under circumstances that render it inequitable for Tractable to retain the benefits without paying for their value.

111.    As a result of Tractable's unjust enrichment, Tractable should be ordered to compensate CCC for the value of the services CCC unwillingly provided, and ordered to disgorge all profits derived from all fraudulent and unauthorized activities.  A constructive trust should also be imposed in favor of CCC on all moneys received by or due Tractable and upon all profits generated by Tractable's illegal activities as a result of its fraudulent and unauthorized activities.  Constructive trusts should be imposed on any bank account into which Tractable's profits were deposited, as well as on all real property, motor vehicles, and other personal property purchased with profits received by Tractable as a result of its fraudulent and unauthorized activities.

## COUNT TEN

### Declaratory Relief

112.　　Paragraphs 1-54 are realleged as if set forth fully herein.

113.　　There has arisen and now exists an actual controversy between CCC and Tractable.  CCC contends that Tractable is liable for the legal theories, harm, loss, and damages set forth above.

114.　　A judicial determination of Tractable's liability is necessary and appropriate at this time in order that CCC may ascertain its rights against Tractable.

115.　　CCC requests that this Court enter the declaratory judgment prayed for herein and retain jurisdiction over this action to grant CCC such further relief against Tractable as is necessary and proper to effectuate this Court's declaration.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff CCC requests entry of judgment in its favor and against Tractable.  CCC seeks the following measures of relief:

A.　　An injunction ordering Tractable, its employees, officers, agents, co-conspirators, servants, affiliates, partners, and representatives, and all those in privity or acting in concert with Tractable, who receive actual notice of the injunction order by personal or other service to:

　　　　1.　　Cease all use of the CCC ONE platform for any purpose;

　　　　2.　　Cease all use of the CCC® and CCC ONE® Marks in connection with the promotion, advertising, offering for sale, or sale, of any products or services;

　　　　3.　　Return and/or destroy the database, including all CCC data and any material from the CCC ONE platform;

4.  Never use any false designation of origin, false representation, or false or misleading description of fact, that can, or is likely to, lead the consuming public or individual members thereof, to believe that any products or services produced, offered, promoted, marketed, advertised, provided or sold by Tractable are in any manner associated or connected with CCC, or are licensed, approved or authorized in any way by CCC;

5.  Never represent, suggest in any fashion to any third party, or perform any act that may give rise to the belief that Tractable, or any of their goods or services, are related to, authorized, or sponsored by CCC; and

6.  Never unfairly compete with CCC in any manner whatsoever, or engage in any unfair, fraudulent, or deceptive business practices that relate in any way to the advertising, marketing, offering, or providing of goods or services bearing the CCC® or CCC ONE® Marks.

B.  An order, pursuant to 15 U.S.C. § 1116(a), that within thirty (30) days after the entry and service on Tractable of an injunction, Tractable will file with this Court and serve upon CCC's counsel a report in writing and under oath setting forth in detail the manner and form in which Tractable has complied with the injunction;

C.  An order pursuant to 15 U.S.C. § 1118 directing Tractable to deliver up and destroy all infringing products, including but not limited to, labels, signs, prints, packages, wrappers, and advertisements;

D.  An order finding that, by the acts complained of above, Tractable has infringed the CCC Registrations in violation of 15 U.S.C. § 1114;

E.      An order finding that, by the acts complained of above, Tractable has created a false designation of origin and false representation of association, in violation of 15 U.S.C. § 1125(a);

F.      Statutory, compensatory, and punitive damages, and restitution, in an amount to be proven at trial, caused by Tractable's violations of the Computer Fraud and Abuse Act, the Lanham Act, the Defend Trade Secrets Act, the Illinois Trade Secrets Act, the Illinois Uniform Deceptive Trade Practices Act, and Illinois common law;

G.      Attorneys' fees and costs associated with prosecuting this action;

H.      A declaration that Tractable is liable for all past and future costs and damages caused by the actions alleged herein; and

I.      Such other or additional relief as this Court deems just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, CCC hereby demands a jury trial.

Dated:  October 30, 2018                                   Respectfully submitted,


                                                           /s/Kathleen P. Lally
                                                           One of the Attorneys for Plaintiff CCC
                                                           Information Services Inc.

Mark S. Mester
  mark.mester@lw.com
Terra Reynolds
  terra.reynolds@lw.com
Kathleen P. Lally
  kathleen.lally@lw.com
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767