**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **CCC INFORMATION SERVICES INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 1:18-cv-07246** |
| **v.** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **TRACTABLE INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**FIRST AMENDED COMPLAINT**

CCC Information Services Inc. ("CCC" or "Plaintiff"), by and through its attorneys, and as for its First Amended Complaint against Tractable Inc. ("Tractable" or "Defendant") alleges as follows:

**NATURE OF THE ACTION**

1.     Using a series of aliases and fake names, Tractable fraudulently gained access to CCC's proprietary platform, including CCC ONE® Appraisal Platform and CCC ONE® Estimating (collectively, "CCC ONE"), and used that fraudulently-obtained access to analyze and probe CCC ONE, eventually representing to potential customers that it had the ability to integrate with CCC ONE.  CCC brings this action to obtain redress for Tractable's fraudulent and illegal misappropriation of CCC's proprietary and confidential information.

2.     CCC provides technology solutions for the automotive insurance and collision repair industries.  CCC's proprietary CCC ONE platform connects a large network of insurance companies, independent appraisers, and repair facilities to provide them with a seamlessly integrated way to, among other things, generate and communicate vehicle damage estimates.  The CCC ONE platform contains a confidential database of information regarding repair part prices, repair labor times and refinish times with data going back to the 1970's.  It is one of the

cornerstones of CCC's business and is valued at well in excess of hundreds of millions of dollars.

3.    CCC offers licenses to independent appraisers that work with insurance companies to assist them with vehicle damage estimates.  Independent appraisers are similar to independent contractors.  An insurance company will typically utilize them when it does not have in-house appraisers available to assess the damage to a vehicle.

4.    Independent appraiser licenses provide for services to the licensee's clients—such as insurance companies, repair facilities and leasing companies—for the evaluation, processing and settling of vehicle damage claims. claims.

5.    On or about August 23, 2017, an individual holding himself out to be an independent appraiser working for "JA Appraisal" gained access as an independent appraiser to use CCC ONE.  "JA Appraisal," however, turned out to be a fictitious company that was used as a front for Tractable, a startup technology company that purports to use artificial intelligence ("AI") to produce real-time cost estimates of accident repair based on pictures of vehicle damage.

6.    In addition to identifying itself as "JA Appraisal"—an entity that does not and has never existed—Tractable employed a litany of deceptive and clandestine tactics to gain and keep access to CCC ONE, including fake physical addresses, deceptive email addresses, phone numbers, and individual names.

7.    Tractable likewise misrepresented to CCC the intended use for which Tractable sought access to CCC ONE.

8.    Over the course of fourteen months and before CCC discovered Tractable's fraud, Tractable used the fraudulently-obtained access to prepare more than 2100 workfiles in the form

of CCC-computed estimates and to otherwise probe CCC ONE in a concerted effort to discern CCC's proprietary data, algorithms, and other information to achieve Tractable's own business ends.

9.      By this action, CCC seeks damages and other relief, including attorneys' fees and costs that it has incurred as a result of Tractable's fraud and related misconduct.

## JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims asserted in the Complaint present federal questions under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 and the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a). This Court has supplemental jurisdiction over CCC's state and common law claims pursuant to 28 U.S.C. § 1367.

11.      This Court has personal jurisdiction over Tractable because Tractable targeted its conduct at CCC and, on information and belief, Tractable knew CCC was located in Illinois.

12.      Venue is proper in this district pursuant to 28 U.S.C § 1391(b)(2) because the acts and damages that give rise to these claims occurred in this District and because Tractable either conducted or conducts business within this District.

## PARTIES

13.      CCC is a Delaware corporation with its principal place of business in Chicago, Illinois.

14.      Tractable is a Delaware corporation with a registered office in San Francisco, California and its principal place of business in London, United Kingdom.

## GENERAL ALLEGATIONS

### The CCC ONE Platform

15.     CCC provides cloud, mobile, telematics, artificial intelligence technologies and apps for the automotive, insurance and collision repair industries.  CCC's solutions are delivered through the CCC ONE Platform, which connects a network of insurance companies, repair facilities, original equipment manufacturers, parts suppliers and third-party data and service providers.

16.     As pertinent to this dispute, CCC provides CCC ONE to three types of customers: vehicle repair facilities, insurers, and independent appraisers.  Repair facilities use CCC ONE to generate estimates of the cost to repair damaged vehicles, often to communicate with insurers, and/or to perform other shop management activity such as ordering parts or assigning labor. Insurers and independent appraisers use CCC ONE exclusively to generate estimates for insurance companies in relation to vehicle damage claims.

17.     After CCC ONE computes and generates a vehicle damage estimate, the estimate and other data can be seamlessly and immediately communicated to insurers.  The integration of CCC ONE with repair shops and insurers reduces insurance cycle times, saving insurers time and money.

18.     The proprietary CCC ONE platform is the cornerstone of CCC's business and, as such, its data and algorithms are highly confidential.  CCC ONE contains a wealth of data, including (as relevant here) prices of replacement parts, hours of labor to replace/repair parts, and vehicle refinish time (*e.g.*, painting).  Much of this data is derived from relationships with third-party sources that CCC has cultivated over decades as well as highly proprietary algorithms and calculations.  CCC has over several decades refined and honed proprietary alogorithms unique to CCC's brand for determining domain specific computations for costing paint, refinish, materials, and labor.  The CCC ONE platform was created and is maintained for the benefit of

CCC.  The value of the integrated CCC ONE platform is well in excess of hundreds of millions of dollars.

19.     Because of the highly proprietary nature and the resources it took CCC to develop the CCC ONE platform, CCC employs multiple layers of security and/or other protection at all logical and physical tiers of the application, including, but not limited to, encryption at rest, encryption over the wire, session-based architecture, role- and permission-based authorization, data expiration mechanisms, authentication, and extensive tracing and logging infrastructure.

20.     CCC's license agreements with independent appraisers are designed to restrict the use of applicable programs and services in the CCC ONE platform and to maintain the highly confidential and proprietary nature of those programs and services.  For example:

     a.     The license CCC grants to an independent appraiser is limited, nonexclusive, nontransferable, nonassignable and revocable;

     b.     Only one person at one location on one computer can access a particular program, unless that program is licensed for additional users;

     c.     In the case of certain services, CCC provides a confidential password and login credential to each user authorized by the independent appraiser, which may not be transferred to any other individual or entity; and

     d.     The independent appraiser acknowledges and agrees, in part, that it may not:

          i.     Copy, translate, port, modify, or make derivative works of the programs and/or services;

          ii.     Electronically transmit the programs and/or services from one computer to another over a network, including the Internet;

   iii. Provide access to or use the programs and/or services in a manner not expressly authorized by the agreement;

   iv. Derive or attempt to derive the source code, source files or structure of all or any portion of the programs and/or services by reverse engineering, disassembly, decompilation or any other means; and

   v. Use the programs and/or services and documentation for the benefit of any entity other than the independent appraiser except to provide claims services.

21. CCC is the owner of the CCC® and CCC ONE® marks and the following U.S. Federal Registrations (the "CCC Registrations"):

  a. No. 2,013,714 for the CCC® Mark in Classes 36 and 38 (incontestable).

  b. No. 4,588,425 for the CCC® Mark in Class 42.

  c. No. 4,478,633 for the CCC ONE® Mark in Class 9.

  d. No. 4,527,798 for the CCC ONE® Mark in Class 42.

  e. No. 3,664,638 for the CCC ONE® Mark in Class 36 (incontestable).

  f. No. 3,706,398 for the CCC ONE® Mark in Class 36 (incontestable).

22. CCC has attained strong name recognition and goodwill in the CCC® and CCC ONE® marks in the vehicle repair and insurance industries.

23. Estimates communicated through the CCC ONE platform to insurers identify CCC and CCC ONE as the sources of the information and data contained in the estimates.

24. When deciding whether to provide CCC ONE to a potential customer and the terms of any agreement, CCC relies on information that the potential customer provides, including, but not limited to, the customer's identity and intended use of CCC ONE. For

example, CCC would not offer an independent appraiser license to an individual or entity that planned to use the license for a purpose other than the license's intended purpose. CCC certainly would not provide CCC ONE to companies or individuals who intended to use CCC ONE to capture CCC's proprietary data, algorithms and other information.

25. CCC provides the services of a network by connecting parties for the purpose of sharing data. An entity that masquerades and misrepresents its identity while using CCC's services harms the integrity of the network and other users of the network.

26. CCC relies, at least in part, on a potential customer's representation that it is in fact a bona fide independent appraiser before and as part of granting that customer a license to CCC ONE.

27. When deciding whether to provide CCC ONE to a potential customer and the terms of any agreement, CCC relies on that potential customer's intended use of CCC ONE. For example, CCC typically inquires as to whether a potential customer is a repair facility, insurer or independent appraiser. Only after the customer identifies as one of these three types and conveys the manner in which it intends to use CCC ONE is CCC able to identify the appropriate license to offer to that customer.

28. CCC relies, at least in part, on a potential customer identifying itself as an independent appraiser to determine that customer's intended use of CCC ONE.

29. CCC does not provide access or authorization to its software or databases to those whose identity and intended use are not known to CCC.

**"JA Appraisal" Gains Access To CCC ONE
Under False Pretenses**

30.     On or about August 23, 2017, an individual holding himself out as "Jason Chen" contacted CCC.  He purported to be a representative of "JA Appraisal" and stated that "JA Appraisal" was an independent appraiser.

31.     The individual purporting to be "Jason Chen" concealed and did not otherwise disclose that he was in any way affiliated with Tractable.

32.     On or about August 23, 2017, "JA Appraisal" obtained an independent appraiser license to use CCC ONE.  The license granted one user from "JA Appraisal" the right to use CCC ONE to generate estimates for vehicle repairs.

33.     In granting "JA Appraisal" access to CCC ONE, CCC relied on statements made by the individual purporting to be "Jason Chen,"including that he was affiliated with "JA Appraisal" and that "JA Appraisal" was an independent appraiser.

34.     Tractable was not a party to the independent appraiser license between CCC and "JA Appraisal."  Tractable has never been a party to any agreement with CCC.  CCC has never authorized Tractable to use the CCC ONE platform or use the CCC ONE marks.

35.     The license obtained by "JA Appraisal" is conditioned on the independent appraiser working on an assignment related to an insurance claim for the purpose of generating an estimate of vehicle damage.  This limitation is an essential element of a legitimate license agreement for CCC ONE, which expressly prohibits the appraiser from (among other things): copying or making derivative works of the programs; electronically transmitting the programs and/or services from one computer to another over a network, including the Internet; deriving or attempting to derive the source code, source files or structure of all or any portion of the programs and/or services by reverse engineering, disassembly, decompilation or any other

means; or using the programs and/or services and documentation for the benefit of any entity other than the independent appraiser.

36.     Over the next several months, "JA Appraisal" added several users to its unlawful account with CCC.  For example, it added an additional user on or about November 29, 2017, two additional users on or about February 1, 2018, and two additional users on or about March 13, 2018, bringing its total users to six.  Each time users were added, CCC and "JA Appraisal" purported to enter into a new independent appraiser license agreement that similarly prohibited "JA Appraisal" from (among other things): copying or making derivative works of the programs; electronically transmitting the programs and/or services from one computer to another over a network, including the Internet; deriving or attempting to derive the source code, source files, or structure of all or any portion of the programs and/or services by reverse engineering, disassembly, decompilation or any other means; or using the programs and/or services and documentation for the benefit of any entity other than the independent appraiser.

37.     Unbeknownst to CCC at the time, however, "JA Appraisal" was not a legitimate company and, in fact, never existed.

38.     There are no public records of a corporate entity named "JA Appraisal" ever being formed or registered to do business in the states of California or Delaware.  There is also no mention of "JA Appraisal" on Tractable's website.

39.     At no time did "JA Appraisal" or the individual purporting to be "Jason Chen" inform CCC that Tractable was doing business as "JA Appraisal," as Tractable now claims.  Had CCC been so informed, CCC would have included that information on the independent appraiser license that it provided to "JA Appraisal."  CCC has many legitimate customers that do business

under different names, and it is CCC's standard practice to include that information on CCC's agreements with such customers.

40.     The individual purporting to be "Jason Chen" never mentioned Tractable because Tractable did not want CCC to know that "JA Appraisal" did not actually exist, but was merely a clandestine front for Tractable, which was attempting to gain access to and discern CCC's proprietary data, algorithms and other information.

41.     The individual purporting to be "Jason Chen" publicly identifies himself as "Xing Xin" in social media and internet marketing media.  On information and belief, "Xing Xin" has used the alias "Jason Chen" only when interacting with CCC.

### CCC Customers Tell CCC About Tractable

42.     Tractable is a startup technology company that uses artificial intelligence ("AI") for accident and disaster recovery.  It has registered offices in California and in London. According to its website, Tractable uses AI to produce real-time cost estimates of accident repair based on pictures of vehicle damage, as opposed to through physical inspections done by independent appraisers that properly license and use CCC ONE.

43.     In or around April of 2018, one of CCC's customers informed CCC at an industry conference that a company called Tractable had represented that it could generate its own vehicle damage estimate line and import those estimate lines into CCC ONE estimating.

44.     CCC did not believe Tractable's purported use of CCC ONE was technologically possible, particularly since Tractable never obtained a license from CCC to use CCC ONE.

45.     In or around September of 2018, a second CCC customer also informed CCC that Tractable created vehicle damage estimates that appeared to be written by CCC ONE and provided these phony estimates to the insurance carrier.

46.     In or around late October of 2018, yet another CCC customer informed CCC that it saw a Tractable estimate that appeared to be written by CCC ONE.

47.     Tractable provided estimates in a way that made the estimate appear as though it was generated via CCC ONE through, for example, the use of marks that were identical to CCC's protected trademarks.

48.     CCC did not authorize Tractable to use its protected marks.

49.     CCC's customers were confused as to whether these estimates originated from CCC or Tractable. CCC's customers were also confused as to whether Tractable's use of CCC's marks were authorized by CCC.

50.     Taken together, the reports from three CCC customers were concerning and, as such, CCC set out to investigate how Tractable could be communicating estimates via CCC ONE.

**CCC Uncovers That "JA Appraisal" Does Not Exist**

51.     Following the two most recent reports from its customers, CCC conducted searches of its database on or about October 26, 2018 and confirmed that Tractable did not have a license to use CCC ONE.

52.     CCC then ran a number of database queries across its entire platform, searching for, among other things, "Tractable" and "Tract"  This query resulted in CCC uncovering Tractable's fraud.

53.     Specifically, CCC discovered:

a.      Six (6) users registered under the entity "JA Appraisal" that had abnormal usernames incorporating the term "Tract" (*e.g.*, "Tract Spec1");

b.      An email address from a Tractable domain ("@tractable.ai") that was used to register "JA Appraisal" on CCC ONE;

     c.     Numerous cases where names appeared in workfile metadata that were later discovered to be Tractable employees;

     d.     A phone number and California address listed on the license agreements signed by "JA Appraisal" for "Jason Chen" was associated with the former Head of U.S. Business and Product Development at Tractable, Xing Xin;

     e.     The California address "JA Appraisal" listed with CCC is associated with a guitar repair shop, not an independent appraiser in the automotive, insurance and collision repair industries.

     f.     At least some of "JA Appraisal's" draft estimates in CCC ONE reference "Tractable."

54.     CCC further investigated "JA Appraisal" and discovered that there is no such business registered in California or Delaware.

55.     CCC concluded that Tractable had fraudulently obtained access to use CCC ONE under the name "JA Appraisal."

56.     Had CCC been aware that "Jason Chen" was an employee of Tractable who was using "JA Appraisal" as a phony company name to gain access to CCC ONE for purposes other than legitimate independent appraisal services, CCC would not have provided "Jason Chen" or "JA Appraisal" with access to CCC ONE.

**Tractable's Fraudulent And Unauthorized Use Of CCC ONE**

57.     In a typical workflow, when an insurance company uses an independent appraiser to assess the damage to a vehicle, the insurance company begins the process by issuing an assignment to the independent appraiser. The insurer sends the assignment to CCC ONE and CCC ONE forwards it to the independent appraiser. The appraiser receives the assignment from CCC ONE and then contacts the owner of the vehicle to arrange an inspection. The independent

appraiser then inspects the vehicle, documents the damage, takes photos and prepares ancillary notes and other supporting administrative information needed to prepare the vehicle damage estimate.  Using this information, the independent appraiser then uses CCC ONE to generate the estimate.  When the estimate is ready to be communicated to the insurance carrier's claim system, it is finalized and locked.  Locking the estimate prevents further editing and triggers CCC ONE to send the completed estimate to the carrier.  An estimate is not communicated by CCC ONE to the insurer until it is finalized and locked.  An estimate that is not finalized and locked cannot be transmitted through CCC ONE to an insurer.

58.     After uncovering Tractable's scheme, CCC further investigated Tractable's use of CCC ONE and discovered that Tractable had not used CCC ONE to generate estimates, as the independent appraiser license agreement mandates, but instead appeared to be using CCC ONE to create test files, many of which contained fictitious information, and to generate un-finalized and unlocked estimates, which had one or more CCC marks, but could be edited.

59.     Tractable used CCC ONE without authorization to create at least 2303 estimates, also known as "workfiles."

60.     Approximately 1,100 of those workfiles do not contain information or data that is typically used to generate vehicle damage estimates for legitimate claims.  For example, these workfiles:

      a.     Do not list an insurance company;

      b.     Do not identify an assigned appraiser;

      c.     Do not include a claim number;

      d.     Were written in a much shorter timeframe than typical estimates;

e.    Lack details that would be included in an insurance claim such as deductible, policy number, vehicle owner and claimant information;

f.    Include consumer name files that are populated with test-case numbers, such as "F.16," rather than real names; and/or

g.    Were never finalized and locked, and thus remained in draft state and were not transmitted to an insurer through CCC ONE.

61.    The other approximately 1,000 workfiles reference an insurance company, a claim number and vehicle owner information, making them appear to be legitimate estimates associated with actual claims.  They also identify CCC and CCC ONE as the sources of information contained in the workfiles and use the same formatting and layout as authentic CCC ONE reports.  However, none of these workfiles were ever finalized and locked, so they were never transmitted through CCC ONE to any insurance company.

62.    Hundreds of the 2303 workfiles contain photos.  A total of approximately 8333 photos are attached to these workfiles.  The workfiles were created in 2017 and 2018, but many of the photos appear to have been taken in 2015.  Based on CCC's experience, a legitimate appraisal conducted in 2018 would not – and, indeed, could not – use a photo taken in 2015 to generate a legitimate estimate for use by an insurance company.

63.    Every vehicle has a vehicle identification number (VIN) that is unique to that particular vehicle.  Typically when a vehicle is damaged, a single claim is generated for that vehicle, which includes the vehicle's VIN.  In the course of normal business, a single vehicle is not involved in many, many insurance claims therefore duplication of VINs across workfiles is rare.  However, in the case of Tractable, the duplication of VINs is commonplace:.

64.    Among the at least 2303 workfiles created by Tractable between 2017 and 2018:

    a.   one VIN was used to generate 16 separate workfiles;

    b.   one VIN was used to generate eleven separate workfiles;

    c.   one VIN was used to generate ten separate workfiles;

    d.   one VIN was used to generate nine separate workfiles;

    e.   five VINs were used to generate eight separate workfiles for each VIN;

    f.   two VINs were used to generate seven separate workfiles for each VIN;

    g.   three VINs were used to generate six separate workfiles for each VIN;

    h.   five VINs were used to generate five separate workfiles for each VIN;

    i.   eighty-nine VINs were used to generate four separate workfiles for each VIN;

    j.   seventy-eight VINs were used to generate three separate workfiles for each VIN; and

    k.   239 VINs were used to generate two separate workfiles for each VIN.

65.    None of these workfiles were ever finalized and locked, and thus none of them was ever transmitted to any insurance company through CCC ONE.

66.    On information and belief, Tractable used these workfiles to perform structured tests of CCC ONE in an attempt to replicate its algorithms and mimic its software logic and/or database.

67.    Online chat messages and phone calls between CCC customer service agents and "JA Appraisal" employees (who CCC now understands were, in fact, Tractable employees at the time) confirm CCC's suspicions. Indeed, these chat messages demonstrate that Tractable employees used fake names to contact CCC and ask questions in an attempt to understand how to upload estimates into CCC ONE and discover the algorithms behind the platform.

68.    By way of example, on September 17, 2018, a Tractable employee named Evan, after falsely representing himself as the famous inventor "Dean Kamen" from "JA Appraisers," probes a CCC customer service agent about how to import estimates into CCC ONE.  CCC explained that independent appraisers cannot import estimates into CCC ONE:

| Monday, September 17, 2018 | | | |
|---|---|---|---|
| | (1:00:06 PM) | **(System) said** | Before we get started, can we please have your First & Last name? |
| | (1:00:26 PM) | **(System) said** | Sorry, we did not get that. |
| | (1:00:27 PM) | **(System) said** | Before we get started, can we please have your First & Last name? |
| | (1:00:28 PM) | **(Client) said** | Dean Kamen |
| | (1:00:28 PM) | **(System) said** | Please tell us your software serial number, if you have one. |
| | (1:00:48 PM) | **(System) said** | Sorry, we did not get that. |
| | (1:00:49 PM) | **(System) said** | We did not receive your information.  Please hold for a representative. |
| | (1:00:52 PM) | **(System) said** | We apologize for the delay.  All representatives are currently assisting customers.  There are currently 0 chats ahead of you.  Please continue to wait and your chat will be handled in the order in which it was received. |
| | (1:01:22 PM) | **(System) said** | We appreciate your patience.  All representatives are still assisting customers.  There are currently 0 chats ahead of you.  Please continue to hold and your chat will be answered in the order in which it was received. |
| | (1:01:34 PM) | **(Agent) Bianca said** | Good afternoon, my name is Bianca.  May I have your Name, email address and your CCC One license number please? |
| 36.20 | (1:02:41 PM) | **(Client) Dean Kamen said** | Hi Bianca, this is Evan from JA Appraisers.  My license number is 406980. |
| | (1:03:17 PM) | **(Agent) Bianca said** | Thank you, how can I help you today? |
| | (1:06:02 PM) | **(Client) Dean Kamen said** | I had a question: I wanted to import EMS estimates to CCC.  I followed the steps in the documentation (Selected import location in Machine Setttings and ticked the box allowing EMS import in Machine Settings).  However I can not get CCC to import the EMS files I put in the destination to import automatically. |
| | (1:06:37 PM) | **(Client) Dean Kamen said** | Are there any other steps that I should follow to enable automatic EMS Estimate import? |
| 110.00 | (1:07:52 PM) | **(Agent) Bianca said** | You would need the Repair Workflow Package to use that feature.  Let me verify that is the same with IA |
| | (1:10:13 PM) | **(Client) Dean Kamen said** | OK |
| 6.18 | (1:10:19 PM) | **(Agent) Bianca said** | That is correct, Estimating only users cant import EMS Estimates.  You can import an EMS assignment. |
| | (1:13:11 PM) | **(Client) Dean Kamen said** | So we have a full IA package, is that correct? |
| | (1:13:37 PM) | **(Client) Dean Kamen said** | Also I am an admin user if it helps. |
| 110.04 | (1:15:01 PM) | **(Agent) Bianca said** | Yes, I can check the package |
| | (1:18:29 PM) | **(Agent) Bianca said** | Are you trying to import an assignment or estimate? |
| | (1:22:18 PM) | **(Client) Dean Kamen said** | I want to do both |
| 193.56 | (1:25:31 PM | **(Agent) Bianca said** | You can import EMS ASSIGNMENTS, but the IA build doesn't support EMS ESTIMATES. |
| | (1:27:52 PM | **(Client) Dean Kamen said** | OK got it so EMS Estimate import will work only for Repairer and Insurer licenses? |

| | | | |
|---|---|---|---|
| 15.00 | (1:28:07 PM | (Agent) Bianca said | Just repair facility |
| | (1:30:01 PM | (Client) Dean Kamen said | Alright understood, so what type of files can an insurer import other than.awf and EMS Assignment import?  Can they use BMS? |
| 43.65 | (1:30:44 PM | (Agent) Bianca said | EMS and AWF are the only types |
| | (1:32:23 PM | (Client) Dean Kamen said | OK, how do I create an EMS assignment with my 1`? |
| 43.33 | (1:33:06 PM | (Agent) Bianca said | Assignments are created by the insurance company in the portal. |
| | (1:38:07 PM | (Client) Dean Kamen said | OK makes sense, so basically I can not send an EMS file to an insurer and they can import this file into CCC? |
| 52.33 | (1:38:59 PM | (Agent) Bianca said | Correct |
| | (1:41:06 PM | (Client) Dean Kamen said | oh unless EMS file is an EMS assignment file generated by the insurance company. |
| | (1:41:11 PM | (Client) Dean Kamen said | ? |
| 28.80 | (1:41:35 PM | (Agent) Bianca said | Yes, thats correct |
| | (1:44:38 PM | (Client) Dean Kamen said | Can a CCC using insurance company assign to an IA that uses Mitchell only? |
| | (1:44:57 PM | (Client) Dean Kamen said | *assign an estimate to an IA |
| 60.82 | (1:45:39 PM | (Agent) Bianca said | Yes, they will upload/download via the portal. |
| | (1:48:59 PM | (Client) Dean Kamen said | And then is it possible to assign the estimate back to the CCC-using insurer? (Also would it be locked or unlocked?) |
| 114.56 | (1:50:54 PM | (Agent) Bianca said | The IA wouldnt be able to assign it to the insurance company that uses CCC.  But insurance companies cant import estimates written in a 3rd party estimating program |
| | (2:06:53 PM | (System) said` | Chat session ended |
| | (2:06:53 PM | (System) said | Chat session ended |

69.    On September 20, 2018, another "JA Appraisal" employee also contacted a CCC customer service agent to inquire about the inner workings of CCC ONE and about importing and exporting data.  CCC again informed him that independent appraisers cannot import estimates:

| | | | |
|---|---|---|---|
| | (1:23:06 PM) | (Agent) Hannah said: | Hello, this is Hannah with CCC Technical Support.  How can I assist you today? |
| | (1:25:08 PM) | (Client) Evan Contin said: | Hi Hannah, this is Evan.  So I was asking about how to import EMS Assignment files in CCC ONE as an IA.  What steps should I follow? |
| 76.15 | (1:26:24 PM) | (Agent) Hannah said: | So you would have to setup an import directory under Configure-Machines settings then File Import |
| | (1:28:41 PM) | (Client) Evan Contin said: | OK got it, so which option should I select: EMS/CIECA files or AF Assignment files? |
| 12.10 | (1:28:53 PM) | (Agent) Hannah said: | EMS/Cieca Files |
| | (1:29:34 PM) | (Agent) Hannah said: | Then you will need to know the export path of where the assignments are being export too from the program that is exporting them. that will be the Import path in CCC |

| | (1:31:38 PM) | (Client) Evan Contin said: | Alright makes sense. I have an assigned estimate to me. How do I export this as EMS Assignment from CCC? Then I will try re-importing it back. |
|---|---|---|---|
| 34.43 | (1:32:12 PM) | (Agent) Hannah said: | You cannot export files from CCC and reimport them. It only works EMS assignments from other programs into CCC. |
| | (1:33:06 PM) | (Agent) Hannah said: | So if you had an Assignment in another program you would export into CCC. You cannot export from CCC, then import into CCC. |
| | (1:34:10 PM) | (Agent) Hannah said: | To export an Estimate in CCC, you would setup an EMS export directory Under File Export in the Machine Settings, then in the workfile after the estimate is written on the Workfile Tab there is an EMS export button. |
| | (1:38:38 PM) | (Client) Evan Contin said: | OK. I am not sure when I receive an EMS Assignment I'll have all information needed. Do they contain all the information an EMS estimate will contain? |
| 43.55 | (1:39:21 PM) | (Agent) Hannah said: | It depends on what information they include on the assignment. |
| | (1:39:48 PM) | (Agent) Hannah said: | Any information can be manually added in CCC to the workfile once it is started. |
| | (1:50:34 PM) | (Client) Evan Contin said: | Do you know if the assignment can include preliminary estimate data - like operations and parts? |
| | (1:50:49 PM) | (Client) Evan Contin said: | *if the EMS assignment |
| 40.17 | (1:51:14 PM) | (Agent) Hannah said: | No the assignments are just the basic vehicle owner information, insurance information and the vehicle. |
| | (1:51:36 PM) | (Agent) Hannah said: | The IA build cannot import EMS estimates. |
| | (1:57:31 PM) | (Client) Evan Contin said: | I see, that's very helpful. Thanks a lot for your help! Bye! |
| 7.00 | (1:57:38 PM) | (Agent) Hannah said: | You're welcome |
| | (1:58:05 PM) | (System) said: | Chat session ended |
| | (1:58:05 PM) | (System) said: | Chat session ended |

70.    Tractable further concealed its true identify from CCC by creating and using email accounts that were not associated with the "@tractable" domain including "jaappraisalco@gmail.com" and "maxgenie@live.co.uk."

71.    On information and belief, Tractable further concealed its true identity from CCC by using cloud-based servers and virtual machines with internet-protocol ("IP") addresses that could not be traced back to Tractable.

72.     The foregoing chats from September 17, 2018 and September 20, 2018 reflect Tractable's efforts to conceal its true identity from CCC, obtain information on how to write its own vehicle damage estimates, populate estimate lines into CCC ONE and ultimately use the CCC ONE Platform to communicate Tractable's estimate to insurers. On information and belief, Tractable engaged in this conduct in an attempt to generate estimates that appeared to be generated through CCC ONE. On information and belief, Tractable has attempted to decompose the CCC ONE platform to construct its own software that mimics or mirrors CCC computations. Indeed, a job listing for a Tractable Auto Body Estimator, accessed via Tractable's website on October 28, 2018, indicates that Tractable requires the job applicant to have working experience of CCC ONE or another estimating platform.

73.     On information and belief, Tractable has also copied data from CCC's database, such as labor times for repairs.

74.     Tractable's need to access CCC's proprietary data, algorithms and other information seems to stem from the recent termination of Tractable's partnership with another technology company.

75.     Had CCC been aware of the manner in which CCC ONE and the data and information associated with CCC ONE were going to be used, CCC would not have provided "JA Appraisal" or "Jason Chen" with access to CCC ONE.

### CCC Terminates The License That Tractable Fraudulently Obtained

76.     CCC terminated "JA Appraisal's" license on October 26, 2018 in an attempt to prohibit Tractable from further misappropriating CCC's proprietary data, algorithms and other information.

77.     On October 29, 2018, Tractable nevertheless attempted to log in to the CCC ONE platform. When the log in failed, an employee from Tractable who identified himself as "Jason

Chen" of "JA Appraisal" twice called CCC to inquire about why he was unable to log in to the platform. During one of these phone calls on October 29, 2018, a CCC representative repeatedly asked "Jason Chen" to provide a callback phone number where he could be later reached by a CCC representative. *See* Exhibit 1. "Jason Chen" refused to provide a callback phone number. *Id.*

78.     Legitimate CCC customers are able to provide phone numbers where they may be reached by CCC representatives.

79.     Upon further investigation, CCC learned that the phone number from which "Jason Chen" called, 760-785-8888, is associated with a Google virtual phone service using an outbound trunk to de-identify the caller.

80.     CCC has not reactivated "JA Appraisal's" license.

81.     Despite termination of the license, on information and belief, CCC ONE proprietary software and data remains installed on Tractable computers.

82.     CCC did not know that "JA Appraisal" did not exist when "JA Appraisal" obtained access to CCC ONE.

83.      Had CCC been aware of JA Appraisal's true identity or true intentions, "JA Appraisal" would not have obtained access to use CCC ONE. Tractable knew this, and in order to surreptitiously take advantage of the integrated platform of CCC ONE, Tractable gained access to CCC ONE under the fake name "JA Appraisal" under the customer type "independent appraiser."

84.     As a result of Tractable's unauthorized use of CCC ONE, CCC has suffered damages in an amount to be demonstrated at trial.

## <u>COUNT ONE</u>

### Computer Fraud And Abuse Act, 18 U.S.C. § 1030, <u>et seq</u>.

85.     Paragraphs 1-84 are realleged as if fully set forth herein.

86.     In connection with its provision of estimate creation and delivery services, CCC's computers and servers are involved in interstate and foreign commerce and communication and are protected computers under 18 U.S.C. § 1030(e)(2).

87.     Tractable knowingly and intentionally accessed CCC's protected computers without authorization pursuant to 18 U.S.C. § 1030(a)(2)(C).

88.     Tractable fraudulently obtained a digital credential to access the CCC ONE platform by posing as "JA Appraisal." "JA Appraisal" does not and has never existed.

89.     By posing as "JA Apprasial," Tractable used trickery and deceit to circumvent CCC's measures to restrict access to the CCC ONE platform.

90.     Tractable used the illegally-obtained digital credential to obtain information on CCC's protected computers through the CCC ONE platform.

91.     CCC has never authorized Tractable or its employees to use the CCC ONE platform.

92.     CCC spent considerable time and expense investigating Tractable's conduct, including Tractable's access to CCC's database, data, and proprietary information.

93.     CCC has suffered losses in excess of $5,000 over less than a 1-year period associated with identifying and ascertaining the extent of Tractable's unauthorized access and acquisition of CCC's proprietary data.

94.      For its unauthorized access in violation of the Computer Fraud and Abuse Act committed by Tractable, CCC seeks compensatory damages and injunctive relief or other equitable relief, as allowed in 18 U.S.C. § 1030(g).

<u>**COUNT TWO**</u>

**Violation Of The Defend Trade Secrets Act Of 2016, 18 U.S.C. § 1836, <u>et seq</u>.**

95.      Paragraphs 1-84 are realleged as if fully set forth herein.

96.      In connection with its provision of estimate creation of delivery services, the CCC ONE platform is involved in interstate commerce.

97.      The software application and components, pricing database, and processes of CCC ONE are proprietary and confidential.  CCC has taken and continues to take reasonable efforts to keep its proprietary and confidential information secret.  CCC protects this confidential information by, among other things, restricting access to CCC ONE and requiring execution of a confidentiality and licensing agreement prior to permitting access.

98.      CCC's proprietary and confidential information are trade secrets as defined by 18 U.S.C. § 1839(3).

99.       CCC derives economic value and competitive advantage from such information not being known or used by its competitors or others.

100.      CCC has never authorized Tractable or its employees to use the CCC ONE platform.  CCC has never licensed Tractable or its employees to use the CCC ONE platform or access related information.

101.      Tractable misappropriated CCC's trade secrets by knowingly obtaining them by improper means; namely, Tractable acquired access to CCC ONE by misrepresenting itself as a fake company that it called "JA Appraisal."

102.      On information and belief, Tractable copied confidential data contained in the CCC ONE database.

103.      On information and belief, Tractable used and continues to use its unlawful access to the confidential CCC ONE software application and components, pricing database, and

processes in order to manipulate the software to obtain proprietary information that Tractable was not authorized to receive.

104.    On information and belief, Tractable has used or is planning to use the trade secrets that it has obtained from CCC to deliver and sell insurance estimating software.

105.    CCC has sustained and will continue to sustain damages, and Tractable has been and will continue to be unjustly enriched, as a direct result of Tractable's misappropriation of CCC's trade secrets.

106.    Because Tractable's misappropriation was willful and malicious, CCC is entitled to exemplary damages under 18 USC § 1863(3)(C).

## **COUNT THREE**

### **Violation Of The Illinois Trade Secrets Act Of 2016, 765 ILCS 1065/2**

107.    Paragraphs 1-84 are realleged as if fully set forth herein.

108.    The software application and components, pricing database and processes of CCC ONE are proprietary and confidential.  CCC has taken and continues to take reasonable efforts to keep its proprietary and confidential information secret.  CCC protects this confidential information by, among other things, restricting access to CCC ONE and requiring execution of a confidentiality and licensing agreement prior to permitting access.

109.    CCC's proprietary and confidential information are trade secrets as defined by 765 ILCS 1065/2(d).

110.    CCC derives economic value and competitive advantage from such information not being known or used by its competitors or others.

111.    CCC has never authorized Tractable or its employees to use the CCC ONE platform.  CCC has never licensed Tractable or its employees to use the CCC ONE platform or access related information.

112.     Tractable misappropriated CCC's trade secrets by knowingly obtaining them by improper means; namely, Tractable acquired access to CCC ONE by misrepresenting itself as a fake company that it called "JA Appraisal."

113.     On information and belief, Tractable copied confidential data contained in the CCC ONE database.

114.     On information and belief, Tractable used and continues to use its unlawful access to the confidential CCC ONE software application and components, pricing database and processes in order to manipulate the software to obtain proprietary information that Tractable was not authorized to receive.

115.     On information and belief, Tractable has used or is planning to use the trade secrets that it has obtained to deliver and sell insurance estimating software.

116.     CCC has sustained and will continue to sustain damages, and Tractable has been and will continue to be unjustly enriched, as a direct result of Tractable's misappropriation of CCC's trade secrets.

117.     Because Tractable's misappropriation was willful and malicious, CCC is entitled to exemplary damages under 765 ILCS 1065/4(b).

## COUNT FOUR

### Trademark Infringement In Violation Of The Lanham Act
### 15 U.S.C. § 1114

118.     Paragraphs 1-84 are realleged as if fully set forth herein.

119.     CCC owns the CCC® mark, the CCC ONE® mark, the CCC Registrations, and longstanding common law rights in the CCC® and CCC ONE® Marks.  CCC® and CCC ONE® are valid and protectable trademarks.  The CCC® and CCC ONE® Marks are strong and

distinctive and designate CCC as the source of all goods and services advertised, marketed, sold or used in connection with the CCC® and CCC ONE® Marks.

120.   Tractable does not have authorization, license or permission from CCC to market and sell any goods or services under the CCC® or CCC ONE® Marks.

121.   Tractable's use of the CCC® and CCC ONE® Marks in interstate commerce constitutes a reproduction, counterfeit, copy or colorable imitation of a registered trademark of CCC in connection with the sale, offering for sale, distribution or advertising of goods or services on or in connection with which such use is likely to cause confusion and to deceive insurers, vehicle repair shops and others into the belief that the vehicle damage estimates prepared and transmitted by Tractable through the CCC ONE platform are connected to, approved by or affiliated with CCC.

122.   Tractable used exact and identical reproductions of the CCC® and CCC ONE® Marks.

123.   Tractable used the CCC® and CCC ONE® Marks on vehicle repair estimate forms, which are the exact same type of form that CCC licenses to valid independent appraisers, who in turn submit the forms to insurance carriers.

124.   Tractable used the CCC® and CCC ONE® Marks in the automotive, insurance and collision repair industries, which are the same industries in which valid CCC ONE licensors do business.

125.   The CCC® and CCC ONE® Marks are distinctive from any other marks used in the automotive, insurance and collision repair industries.  CCC customers associate the CCC® and CCC ONE® Marks with CCC at least because both marks contain the letters "CCC."

126.    CCC's customers were confused as to whether estimates provided to them by Tractable originated from CCC or Tractable. CCC's customers were also confused as to whether Tractable's use of CCC's marks were authorized by CCC.

127.    Tractable intended for insurers, vehicle repair shops and others to believe that the estimates Tractable provided them originated from and were authorized by CCC, even though Tractable knew they were not.

128.    As a direct and proximate result of Tractable's wrongful conduct, CCC has been and will continue to be, irreparably harmed and injured, and such harm will continue unless enjoined by this Court.

129.    Tractable's actions thus constitute trademark infringement.

130.    Tractable's misconduct has been and is knowing, deliberate, malicious and willful.  Pursuant to 15 U.S.C. § 1117(a), Tractable's willful use of the CCC® and CCC ONE® marks without excuse or justification makes this an exceptional case, entitling CCC to an award of treble damages and reasonable attorneys' fees and costs.

## COUNT FIVE

### False Designation Of Origin In Violation Of The Lanham Act
### 15 U.S.C. § 1125

131.    Paragraphs 1-84 are realleged as if fully set forth herein.

132.    CCC owns the CCC® and CCC ONE® Marks, the CCC Registrations, and longstanding common law rights in the CCC® and CCC ONE® Marks.  The CCC® and CCC ONE® Marks are strong and distinctive and designate CCC as the source of all goods and services advertised, marketed, sold and used in connection with the CCC® and CCC ONE® Marks.

133.    Through Tractable's use of the CCC® and CCC ONE® Marks, Tractable intended to, and did in fact, confuse, mislead and deceive insurers, vehicle repair shops, and others into believing, and misrepresented and created the false impressions, that the vehicle damage estimates prepared and transmitted by Tractable through the CCC ONE system are connected to, approved by or affiliated with CCC.  Tractable's use of the CCC ONE® mark amounts to a false representation that CCC is the point of origin of Tractable's estimate, in violation of the Lanham Act, 15 U.S.C. § 1125(a).

134.    As a direct and proximate result of Tractable's wrongful conduct, CCC has been and will continue to suffer serious and irreparable damage in the form of lost goodwill and business reputation.

135.    Tractable used exact and identical reproductions of the CCC® and CCC ONE® Marks.

136.    Tractable used the CCC® and CCC ONE® Marks on vehicle repair estimate forms, which are the exact same type of form that CCC licenses to valid independent appraisers, who in turn submit the forms to insurance carriers.

137.    Tractable used the CCC® and CCC ONE® Marks in the automotive, insurance and collision repair industries, which are the same industries in which valid CCC ONE licensors do business.

138.    The CCC® and CCC ONE® Marks are distinctive from any other marks used in the automotive, insurance and collision repair industries.  CCC customers associate the CCC® and CCC ONE® Marks with CCC at least because both marks contain the letters "CCC."

139.     CCC's customers were confused as to whether estimates provided to them by Tractable originated from CCC or Tractable. CCC's customers were also confused as to whether Tractable's use of CCC's marks were authorized by CCC.

140.     Tractable intended for insurers, vehicle repair shops and others to believe that the estimates Tractable provided them originated from and were authorized by CCC, even though Tractable knew they were not.

141.     Tractable's actions thus constitute false designation of origin.

142.     Tractable's misconduct has been and is knowing, deliberate, malicious and willful.  Pursuant to 15 U.S.C. § 1117(a), Tractable's willful use of the CCC® and CCC ONE® Marks without excuse or justification makes this an exceptional case, entitling CCC to an award of treble damages and reasonable attorneys' fees and costs.

## COUNT SIX

### Illinois Uniform Deceptive Trade Practices Act
### 815 ILCS 510

143.     Paragraphs 1-84 are realleged as if fully set forth herein. The acts and conduct of Tractable as alleged above in this Complaint constitute unfair competition and deceptive trade practices under the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510.

144.     For the deceptive trade practices and unfair competition that Tractable has engaged in, CCC seeks the recovery of Tractable's profits, compensatory damages, the costs of this immediate action, reasonable attorneys' fees, and injunctive relief, as allowed in 815 ILCS 510/3.

## COUNT SEVEN

### Common Law Fraud

145.     Paragraphs 1-84 are realleged as if fully set forth herein.

146.    Tractable knowingly made false statements of material fact to CCC when it used a fake company, "JA Appraisal," to seek and enter into a license agreement with CCC.

147.    Tractable misrepresented its identity to CCC as "JA Appraisal."  Tractable also misrepresented its intended use of CCC ONE as that of an independent appraiser, when that was not true.

148.    Tractable misrepresented its identity and its intended use to induce CCC to provide Tractable access to CCC ONE.

149.    Tractable intended that CCC rely on Tractable's misrepresentation of its identity as "JA Appraisal" and its intended use as an independent appraiser.  CCC did rely on Tractable's misrepresentations in its decision to provide "JA Appraisal" with access to CCC ONE.

150.    As a result of Tractable's intentional misrepresentations, CCC has suffered harm to its proprietary information, harm to its reputation and goodwill and damages.  CCC's damages include loss of revenue from lost sales as well as the time and expenses incurred investigating and mitigating Tractable's fraudulent conduct.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff CCC requests entry of judgment in its favor and against Tractable.  CCC seeks the following measures of relief:

A.      An injunction ordering Tractable, its employees, officers, agents, co- conspirators, servants, affiliates, partners, and representatives, and all those in privity or acting in concert with Tractable, who receive actual notice of the injunction order by personal or other service to:

1.      Cease all use of the CCC ONE platform for any purpose;

2.      Cease all use of the CCC® and CCC ONE® Marks in connection with the promotion, advertising, offering for sale or sale of any products or services;

3.      Return and/or destroy the database, including all CCC data and any material from the CCC ONE platform;

4.      Never use any false designation of origin, false representation, or false or misleading description of fact, that can, or is likely to, lead the consuming public or individual members thereof, to believe that any products or services produced, offered, promoted, marketed, advertised, provided or sold by Tractable are in any manner associated or connected with CCC, or are licensed, approved or authorized in any way by CCC;

5.      Never represent, suggest in any fashion to any third party, or perform any act that may give rise to the belief that Tractable, or any of their goods or services, are related to, authorized or sponsored by CCC; and

6.      Never unfairly compete with CCC in any manner whatsoever, or engage in any unfair, fraudulent or deceptive business practices that relate in any way to the advertising, marketing, offering or providing of goods or services bearing the CCC® or CCC ONE® Marks.

B.      An order, pursuant to 15 U.S.C. § 1116(a), that within thirty (30) days after the entry and service on Tractable of an injunction, Tractable will file with this Court and serve upon CCC's counsel a report in writing and under oath setting forth in detail the manner and form in which Tractable has complied with the injunction;

C.      An order pursuant to 15 U.S.C. § 1118 directing Tractable to deliver up and destroy all infringing products, including, but not limited to, labels, signs, prints, packages, wrappers, and advertisements;

D.      An order finding that, by the acts complained of above, Tractable has infringed the CCC Registrations in violation of 15 U.S.C. § 1114;

E.      An order finding that, by the acts complained of above, Tractable has created a false designation of origin and false representation of association, in violation of 15 U.S.C. § 1125(a);

F.      Statutory, compensatory and punitive damages, and restitution, in an amount to be proven at trial, caused by Tractable's violations of the Computer Fraud and Abuse Act, the Lanham Act, the Defend Trade Secrets Act, the Illinois Trade Secrets Act, the Illinois Uniform Deceptive Trade Practices Act, and Illinois common law;

G.      Attorneys' fees and costs associated with prosecuting this action;

H.      A declaration that Tractable is liable for all past and future costs and damages caused by the actions alleged herein; and

I.      Such other or additional relief as this Court deems just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, CCC hereby demands a jury trial.

Dated: January 10, 2019                    Respectfully submitted,


                                           /s/ *Kathleen P. Lally*
                                           One of the Attorneys for Plaintiff CCC
                                           Information Services Inc.

                                           Mark S. Mester
                                           mark.mester@lw.com
                                           Terra Reynolds
                                           terra.reynolds@lw.com
                                           Kathleen P. Lally
                                           kathleen.lally@lw.com
                                           LATHAM & WATKINS LLP

330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767

Adam M. Greenfield
adam.greenfield@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
Telephone: (202) 637-2200
Facsimile (202) 637.2201

Stephen D. O'Donohue
(*pro hac vice* pending)
stephen.odonohue@lw.com
LATHAM & WATKINS LLP
885 Third Avenue
New York, NY 10022
Telephone: (212) 906-1200
Facsimile: (212) 751-4864