IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CCC INFORMATION SERVICES INC., | ) | |
| Plaintiff, | ) ) ) | Case No. 18 C 7246 |
| v. | ) ) | Judge Robert W. Gettleman |
| TRACTABLE INC., | ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff CCC Information Services Inc. filed a seven-count first amended complaint against defendant Tractable Inc. ("Tractable"), alleging that Tractable fraudulently obtained access to plaintiff's software, and that Tractable used that access to obtain plaintiff's proprietary data to advance Tractable's own business. Tractable moves to compel arbitration and to stay the proceedings pending arbitration. Tractable's motion to compel arbitration is denied.

## BACKGROUND

Plaintiff's "CCC ONE" platform is a program that uses proprietary algorithms and data to generate vehicle damage estimates. Independent appraisers use CCC ONE to assess vehicles. An appraiser physically inspects the vehicle, documents the damage, takes photos, takes notes, and uses CCC ONE to generate the damage estimate. The appraiser then transmits the information and the damage estimate through CCC ONE to an insurance company.

Jason Chen (legally named Xing Xin), holding himself out as a representative of "JA Appraisal," contacted plaintiff to obtain a license to use CCC ONE. Relying on Chen's representations, plaintiff granted JA Appraisal an independent appraiser license. Under the license, JA Appraisal was prohibited from: "copying or making derivative works of the

programs; electronically transmitting the programs and/or services from one computer to another over a network, including the Internet; deriving or attempting to derive the source code, source files or structure of all or any portion of the programs and/or services by reverse engineering, disassembly, decompilation or any other means; or using the programs and/or services and documentation for the benefit of any entity other than the independent appraiser."

Plaintiff later learned that JA Appraisal never existed. Rather, JA Appraisal's purported representative, Chen, was an employee of Tractable—a rival company that uses artificial intelligence to produce real-time cost estimates of accident repairs based on pictures of vehicle damage. Unlike plaintiff, whose CCC ONE program is used by independent appraisers who physically visit and inspect accident vehicles, Tractable sought to produce damages estimates using only pictures.

Months after Chen obtained the license for CCC ONE, plaintiff's customers told plaintiff that Tractable was providing a product that generated estimates that appeared to be written by CCC ONE. After investigating, plaintiff realized that Tractable did not have a CCC ONE license. Tractable employees, however, had allegedly been accessing the program through licenses held by JA Appraisal to replicate CCC ONE's algorithm. Tractable employees also allegedly contacted plaintiff's customer service agents and falsely represented themselves as JA Appraisal employees. Those Tractable employees asked plaintiff's agents how to import and export data, all the while pretending to be JA appraisal employees. The Tractable employees concealed their identities by using false telephone numbers and false Internet Protocol (IP) addresses, and by using email addresses with domain names that did not end in "@tractable.ai."

Plaintiff sued in this court. Tractable now moves to compel arbitration under the license agreement between plaintiff and JA Appraisal (represented by Chen). The license agreement contains an arbitration clause and a non-assignment clause:

> Any dispute, claim, case or controversy, whether in tort, contract, statute or otherwise, arising out of or relating to this contract, including any question regarding its existence, validity, or termination or arising out of or relating to the relationship between CUSTOMER and CCC or any of the respective agents, partners, contractors or employees thereof shall be resolved by binding arbitration. . . . Any disputes regarding arbitrability, the scope of arbitration or the arbitrator's jurisdiction will be decided by the arbitrator. . . . This agreement is governed by the Federal Arbitration Act, and any award shall be subject to judicial confirmation in any court having jurisdiction.
>
> * * *
>
> CUSTOMER represents that it is acting on its own behalf and is not acting as an agent for or on behalf of any third party, and further agrees that it may not assign its rights or obligations under this Agreement without the prior written consent of CCC.

## DISCUSSION

Under the Federal Arbitration Act, 9 U.S.C. § 1, et seq., "arbitration may be compelled if the following three elements are shown: a written agreement to arbitrate, a dispute within the scope of the arbitration agreement, and a refusal to arbitrate." Zurich American Insurance Co. v. Watts Industries, Inc., 417 F.3d 682, 687 (7th Cir. 2005) (citing 9 U.S.C. § 4). Courts review a motion to compel arbitration under a summary judgment standard. Tinder v. Pinkerton Security, 305 F.3d 728, 735–36 (7th Cir. 2002). The party seeking to avoid arbitration "must identify a triable issue of fact concerning the existence of the agreement . . . ." Id. at 735.

**1      Who decides whether a contract between plaintiff and Tractable exists?**

Because arbitration is a matter of contract, "the court must decide whether a contract exists before it decides whether to stay an action and order arbitration." Janiga v. Questar Capital Corp., 615 F.3d 735, 741–42 (7th Cir. 2010). There is no dispute that plaintiff and JA Appraisal are bound by the license agreement's arbitration clause. The dispute is whether plaintiff and

Tractable are bound. And that dispute—whether plaintiff agreed to arbitrate with Tractable—is a dispute that "can't logically be resolved by the arbitrators." Sphere Drake Insurance Ltd. v. All American Insurance Co., 256 F.3d 587, 591 (7th Cir. 2001), quoted in Janiga., 615 F.3d at 742.

Although the arbitration clause delegates the issues of existence and validity to the arbitrator, the delegation clause cannot be enforced against plaintiff unless plaintiff agreed to arbitrate disputes with Tractable. See Granite Rock Co. v. Teamsters, 561 U. S. 287, 299 (2010) ("Arbitration is strictly a matter of consent.") (citation and quotation marks omitted). Here, unlike in Henry Schein, the issue is not the effect of a contractual provision to which the parties agreed. Henry Schein, Inc. v. Archer & White Sales, Inc., 139 S. Ct. 524, 529 (2019) (noting that when a contract includes a delegation clause that delegates the question of arbitrability to the arbitrator, "a court possesses no power to decide the arbitrability issue"). The issue is whether an agreement between plaintiff and Tractable exists at all. That issue is for the court to decide.

**2    Did plaintiff and Tractable enter into a contract to arbitrate their dispute?**

Arbitration agreements are governed by contract law. Scheurer v. Fromm Family Foods LLC, 863 F.3d 748, 752 (7th Cir. 2017) (citing Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 631 (2009)). "Generally, under Illinois law, only signatories to an arbitration agreement can move to compel arbitration." Applications Software Tech. LLC. V. Kapadia, at 2018 WL 3122173, at *5 (N.D. Ill. June 26, 2018). There are, however, principles that allow a nonsignatory to compel arbitration, including principles of agency and equitable estoppel. Id.

Tractable argues that plaintiff agreed to arbitrate its disputes with Tractable because: (1) Tractable is a party to the license agreement; (2) JA Appraisal is Tractable's agent; and (3) plaintiff is equitably estopped from refusing to arbitrate. These arguments are without merit.

4

**Whether Tractable is a party.** A reasonable jury could find that plaintiff never intended to grant Tractable a license agreement and never would have done so but for Tractable's deception. Whether the agreement's "CUSTOMER" is Chen, or JA Appraisal, is immaterial: Tractable's name is nowhere in the agreement. Given the license agreement's non-assignment clause, in which "CUSTOMER represents that it is acting on its own behalf and is not acting as an agent for or on behalf of any third party," a reasonable jury could conclude that plaintiff reasonably believed that it was granting a license to either Chen or JA Appraisal—but not to Tractable, a rival company whose artificial intelligence-powered business model might make plaintiff's CCC ONE program obsolete.

**Agency.** The non-assignment clause similarly disposes of Tractable's agency argument. A jury could easily find that neither Chen nor JA Appraisal were Tractable's agent because both Chen and JA Appraisal expressly represented that they were not acting as an agent for any third party. Tractable at times suggests the reverse—that Chen or JA Appraisal was the principal, Tractable the agent—but subverts that suggestion by repeatedly arguing that Chen was Tractable's employee.

Tractable argues that breaching the non-assignment clause does not doom the arbitration clause. Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 70–71 (2010). That statement of law is correct, but irrelevant—the issue is whether plaintiff reasonably believed that it was signing a licensing agreement with Tractable. For that issue, Chen or JA Appraisal's adoption of the non-assignment clause—in which they represented that they were acting on their own behalf—creates a triable issue of fact because a jury could infer from Chen and JA Appraisal's representation that plaintiff never had reason to believe that it had entered into a licensing agreement with Tractable. And that inference has nothing to do with severability or unconscionability. See id. (holding that

5

"a party's challenge to another [non-arbitration] provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate.").

**Equitable estoppel.** Equitable estoppel does Tractable no better. "In Illinois, a claim of equitable estoppel exists where a person, by his or her statements or conduct, induces a second person to rely, to his or her detriment, on the statements or conduct of the first person." Warciak v. Subway Restaurants, Inc., 880 F.3d 870, 872 (7th Cir. 2018), quoting Ervin v. Nokia, Inc., 349 Ill. App. 3d 508, 514 (Ill. App. 2004). Tractable does not identify the statements on which it supposedly relied to its detriment. And as the court's discussion suggests, a reasonable jury could easily find that the equities favor plaintiff, not Tractable. See Ervin, 349 Ill. App. 3d at 517 ("To expand the doctrine of equitable estoppel . . . would unfairly deny Ervin access to the courts and force him to arbitrate his claim against Nokia, in spite of the fact that Nokia was not a party to the [agreement] that Ervin entered into with AT&T."). As alleged in the first amended complaint, and as Tractable does not dispute, Tractable: (1) used a false company to obtain a CCC ONE license; (2) had its employees conceal their identities through false telephone numbers and false IP addresses, and through email addresses with domain names that did not end in "@tractable.ai"; and (3) did all this to reverse-engineer plaintiff's proprietary algorithms for use in Tractable's artificial intelligence technology. To reward Tractable's deceit by compelling arbitration would make equity a farce. Cf. Bradley v. Fox, 7 Ill. 2d 106, 113 (Ill. 1955), citing with approval Riggs v. Palmer, 115 N.Y. 506, 507 (N.Y. 1889) ("No court will lend its aid to a man who founds his cause of action upon a fraudulent or illegal act.").

Tractable's reliance on Hoffman, in which this court granted a nonsignatory's motion to compel arbitration, is misplaced. Hoffman v. Deloitte & Touche, LLP, 143 F. Supp. 2d 995, 1004–05 (N.D. Ill. 2001) (Gettleman, J.). Hoffman applied principles of equitable estoppel based

6

on federal common law. Id., citing MS Dealer Service Corp. v. Franklin, 177 F.3d 942, 947 (11th Cir. 1999). Since Hoffman, however, the Supreme Court has made clear that a nonsignatory's right to compel arbitration is governed by state law. Carlisle, 556 U.S. at 631–32, discussed in Scheurer, 863 F.3d at 752–52. Thus, Illinois law governs, and a reasonable jury instructed on Illinois principles of equitable estoppel could find that plaintiff did not even know about Tractable, much less that plaintiff tricked Tractable to Tractable's detriment.

## **CONCLUSION**

Defendant Tractable's motion to compel arbitration (Doc. 21) is denied. The parties are directed to submit a joint status report using this court's form on or before May 15, 2019. This matter is set for a report on status on May 30, 2019, at 9:00 a.m.

**ENTER:** May 7, 2019

_____
**Robert W. Gettleman
United States District Judge**