In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 19-1997

CCC INTELLIGENT SOLUTIONS INC.,

*Plaintiff-Appellee*,

*v.*

TRACTABLE INC.,

*Defendant-Appellant*.

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 18 C 7246 — **Robert W. Gettleman**, *Judge*.

———————————

ARGUED MAY 16, 2022 — DECIDED JUNE 6, 2022

———————————

Before EASTERBROOK, BRENNAN, and ST. EVE, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. CCC Intelligent Solutions and
Tractable provide customers, including insurance companies,
with estimates of the cost to repair damaged cars and trucks.
Both do this by applying algorithms, coded in computer soft-
ware, to data generated by body shops and other repair cen-
ters. Each wants to keep its algorithm secret.

CCC is a leader in this business. Tractable tried to catch up by fraud. It dispatched one of its employees to obtain a license to use CCC's software. Using a false name, false physical address, and false email address, the employee purported to represent "JA Appraisal," which he falsely described as a small, independent appraiser. (Here, and elsewhere, we report the complaint's allegations without vouching for their accuracy.) CCC issued the requested license. The contract forbids assignment of the license without CCC's consent and represents that JA Appraisal is not a front for anyone else. ("CUSTOMER [JA Appraisal] represents that it is acting on its own behalf and is not acting as an agent for or on behalf of any third party, and further agrees that it may not assign its rights or obligations under this Agreement without the prior written consent of CCC.") The contract also forbids disassembly of the software or its incorporation into any other product.

Tractable's agent gave it the software package, violating his promise to CCC. Tractable disassembled the software and incorporated some of its algorithms and features into its own product, violating the license as well as CCC's rights under copyright and trade-secret law. After some of CCC's customers reported that Tractable appeared to be using a clone of CCC's software, CCC filed this suit under the diversity jurisdiction. Tractable replied with a motion to refer the dispute to arbitration, pointing to a clause in the agreement between CCC and JA Appraisal.

The word "Tractable" does not appear in the agreement, and CCC has not approved an assignment by JA Appraisal, so CCC insisted that Tractable cannot invoke the arbitration clause. Tractable replied that "JA Appraisal" is just a name that Tractable uses for itself—and it insists that, if using a

pseudonym and describing the business as "independent" is fraud, the arbitrator can consider CCC's defense under *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006) ("[A] challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator."); *K.F.C. v. Snap, Inc*., 29 F.4th 835 (7th Cir. 2022).

But the district court denied the motion to compel arbitration. 2019 U.S. Dist. Lexis 76767 (N.D. Ill. May 7, 2019). Applying the rule that a judge must decide whether the parties have agreed to arbitrate, see *AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643 (1986), the court concluded that Tractable is not a party to an agreement with CCC. Arbitration is contractual, *Morgan v. Sundance, Inc*., No. 21–328 (U.S. May 23, 2022), and the court found that this contract provides rights to the named parties exclusively.

Tractable does not claim to be a third-party beneficiary of the contract between CCC and JA Appraisal; the contract's language would defeat such an assertion. Instead Tractable asserts that it *is* JA Appraisal. Many a corporation does business under multiple names. So if CCC were to contract with "Oreo Cookies," Nabisco might legitimately claim to be a party. That Oreo is one of Nabisco's brand names is widely known. As far as we can see, however, "JA Appraisal" is not known to the public, or the trade, as a name under which Tractable does business.

Asked at oral argument whether CCC could have discovered that Tractable uses the name "JA Appraisal," counsel for Tractable acknowledged that this was not possible. As Tractable's own little secret, it does not affect anyone else. Contractual meaning reflects words and signs exchanged between the negotiators, not unilateral and confidential beliefs. See, e.g.,

*Skycom Corp. v. Telstar Corp.*, 813 F.2d 810, 814–15 (7th Cir. 1987) (Wisconsin law); *Ortony v. Northwestern University*, 736 F.3d 1102, 1104 (7th Cir. 2013) (Illinois law). In other words, meaning is produced by an objective process. Signing a contract with your fingers crossed behind your back does not add to your rights or subtract from anyone else's.

Many a legal dispute, simple on the surface, has become complex by the common law's long accumulation of exceptions and provisos. Tractable has tried to complicate this dispute—enough to move it from the question "is Tractable a party?" to the question "did Tractable use fraud to induce CCC to sign?"—by relying on *Restatement (Second) of Contracts* §163 (1981), which states both a rule and exceptions related to fraud in the inducement. Here is the blackletter rule:

> If a misrepresentation as to the character or essential terms of a proposed contract induces conduct that appears to be a manifestation of assent by one who neither knows nor has reasonable opportunity to know of the character or essential terms of the proposed contract, his conduct is not effective as a manifestation of assent.

This favors CCC. Tractable points to Comment a, which says (among other things): "The mere fact that a party is deceived as to the identity of the other party, as when a buyer of goods obtains credit by impersonating a person of means, does not bring the case within the present Section, unless it affects the very nature of the contract." According to Tractable, this means that one side can deceive another about its identity and still have an enforceable contract; CCC, for its part, relies on the "unless" clause in Comment a, given JA Appraisal's assurance that it is not acting for anyone else. The contract demonstrates that the identity of CCC's trading partner was a vital element of the deal.

No. 19-1997                                                          5

We are inclined to treat Comment a as addressing the
question whether an identified person can form a contract de-
spite lying about his wealth or other attributes. Think: Joe
Blow obtains credit by presenting Elon Musk's financial state-
ment. The ruse does not relieve Mr. Blow of his commitments.
Nor does Musk get to claim any benefits of the contract. Sub-
stitute "Tractable" for "Musk," and you have the district
court's ruling.

Everything we wrote in *Sphere Drake Insurance Ltd. v. All
American Insurance Co.*, 256 F.3d 587 (7th Cir. 2001), is con-
sistent with this understanding. Tractable points to this pas-
sage:

> A claim of fraud in the inducement—which boils down to "we
> wouldn't have signed this contract had we known the full truth
> about our trading partner"—supposes that the unhappy party did
> agree, but now wishes it hadn't. If a claim of "we wish we hadn't
> agreed" could be litigated, even when the arbitration clause is so
> broad, this would move a good portion of contract disputes back
> to court and defeat this part of the agreement at the outset, for it
> is easy to cry fraud.

256 F.3d at 590. This language in *Sphere Drake* anticipates *Buck-
eye Check Cashing* but does not help Tractable. The problem for
Tractable is not that CCC failed to know "the full truth about
its trading partner"—the issue that *Restatement* §163 Com-
ment a covers—but that CCC did not know that Tractable
would claim to *be* its trading partner. Tractable told its em-
ployee to pretend to represent a small, independent ap-
praiser; CCC was entitled to agree on that basis.

As we said, some legal disputes are simple. This is one. It
is *so* simple that the courts of Illinois (whose law applies) have
not found it necessary to address during the last 80 years the
question whether C can claim rights under a contract that has

only A and B as parties. The court's answer was "no." *Gallopin v. Continental Casualty Co.*, 290 Ill. App. 8 (1937). The potential exception for third-party beneficiaries does not apply, which leaves the dominant rule. Tractable is not a party to this contract, so it cannot demand arbitration.

AFFIRMED

CERTIFIED COPY

A True Copy
Teste:

_____
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit