IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CCC INTELLIGENT SOLUTIONS INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:18-cv-07246 |
| v. | ) | |
| | ) | Hon. Robert W. Gettleman |
| TRACTABLE INC., | ) | Hon. Susan E. Cox |
| | ) | |
| Defendant. | ) | |

**ORDER REGARDING DISCLOSURE OF ELECTRONICALLY STORED INFORMATION (ESI)**

The parties have agreed to the terms of this Order Regarding Disclosure of Electronically Stored Information ("Order"); accordingly, it is ORDERED:

1. This Order is meant to streamline Electronically Stored Information ("ESI") production to promote an efficient, less burdensome process and in accordance with the standard set forth in Federal Rule of Civil Procedure 26. Except as expressly stated, nothing in this Order affects the parties' discovery obligations in this proceeding.

**I. GENERAL PROVISIONS**

2. <u>Modification</u>. This Order may be modified by agreement of the parties. If the parties cannot agree regarding any such modifications, the parties shall submit their competing proposals and a summary of their dispute to the Court.

3. <u>Reasonable Efforts</u>. The parties will make reasonable efforts to prepare responsive and non-privileged data for production in accordance with the agreed-upon specifications set forth below. These specifications apply to scanned, hard copy documents and/or ESI that are to be produced in this litigation.

4. <u>Non-Waiver of Privilege</u>. Pursuant to Federal Rule of Evidence 502(d), the production of a document otherwise subject to protection under the attorney-client privilege, work

product doctrine, or any other privilege recognized by applicable law shall not in itself be deemed to be a waiver of that privilege in this matter or in any other proceeding. Any party or non-party who discovers that a protected document was produced shall notify the other parties within 14 business days of discovery of its production. The parties to whom the document was produced shall return all copies, whether in hard copy or electronic form, of that document to the producing party or non-party. If requested by the receiving party, the producing party shall provide a replacement copy of the production media with the privileged document and all related data removed.

      5.      <u>Data Not Reasonably Accessible</u>.  Absent a showing of good cause, no party need restore any form of media upon which backup data is maintained in a party's normal or allowed processes, including but not limited to backup tapes, disks, SAN, and other forms of media, to comply with its discovery obligations in the present case.  Each party will identify sources deemed not reasonably accessible that are likely to contain relevant information including the makes, models, serial numbers, and software versions ("Inaccessible Sources").  The parties agree to meet and confer to discuss Inaccessible Sources.

      6.      <u>Confidentiality Designation</u>. Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Confidentiality Order in this case (Dkt. No. 107).  Each responsive document produced in native format will have its confidentiality designation identified in the CONFIDENTIAL DESIGNATION field (see Appendix 1) and by other reasonable method of identification, such as production slipsheet(s) or chart(s) as reasonably appropriate.

      7.      <u>Information Subject to a Claim of Privilege</u>.  Any document/ESI falling within the scope of any request for production or subpoena that is withheld on the basis of a claim of attorney-

client privilege, work-product or any other claim of privilege or immunity from discovery shall be identified by the producing party in a privilege log, which the producing party shall produce in an electronic format that allows text searching and organization of data. An email thread contained within a single document may be logged as a single entry, even if a privilege is asserted over multiple portions of the thread. Communications exchanged between the producing party and their litigation counsel or among counsel for any of the parties after the date of filing of this action need not be logged on a privilege log. Notwithstanding the claim of privilege for a portion of any document, the non-privileged matter must be produced with the privileged portion redacted and need not be logged on a privilege log provided the reason for the redaction appears on the redaction label.

  8. <u>English Language</u>. To the extent any data exists in more than one language, the data shall be produced in English, if available. If no English version of a document is available, the producing party does not have an obligation to produce an English translation of a document.

  9. <u>Format of Production</u>. Hard copy documents will be produced under the specifications outlined in Section III. Standard electronic files such as email, documents, spreadsheets, presentations, web pages, and PDFs will be produced under the specifications outlined in Section IV. The format of production of any large oversized hard copy documents and non-standard electronic files will be discussed before production to determine acceptable production format.

  10. <u>Production Media and Encryption of Productions</u>. Unless otherwise agreed, the parties shall provide document productions in the following manner: The producing party shall provide the production data on CDs, DVDs, external hard drives, or via FTP or email as appropriate ("Production Media"). If the producing party so desires, it can encrypt the Production

Media using an industry acceptable encryption method. In such a case, the producing party shall forward the password to decrypt the production data separately from the CD, DVD, or external drive on which the production data is saved. Each piece of Production Media shall identify a production number corresponding to the production volume (e.g., "VOL001," "VOL002"). Each piece of Production Media shall also identify: (1) the producing party's name; (2) the production date; (3) the Bates Number range of the materials contained on the Production Media; and (4) whether the Production Media contains Confidential Discovery Material pursuant to the Confidentiality Order in this case.

## II. DATA PROCESSING

11. <u>Culling and Filtering</u>. Each party will use reasonable efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list. Additional culling of system file types based on file extension may include, but are not limited to: WINNT, DRVS, MP3, MP4, WAV, C++ Program File (c), C++ Builder 6 (cpp), Channel Definition Format (cdf), Creatures Object Sources (cos), Dictionary file (dic), Executable (exe), Hypertext Cascading Style Sheet (css), JavaScript Source Code (js), Label Pro Data File (IPD), Office Data File (NICK), Office Profile Settings (ops), Outlook Rules Wizard File (rwz), Scrap Object (SCRP), System File (dll), Temporary File (tmp), Windows Error Dump (dmp), Windows Media Player Skin Package (wmz), Windows NT/2000 Event View Log file (evt), Python Script files (.py, .pyc, .pud, .pyw), Program Installers. None of these culling/filtering options shall relieve a party of its duty to produce relevant source code or other files sufficient to show the operation of any aspects or elements of any relevant software, product, device, process, method, act, or other instrumentality.

4

12. <u>De-Duplication</u>. The producing party shall de-duplicate across the population of records (i.e. global de-duplication). Duplicates for non-email data sources shall be identified by industry standard MD5 or SHA-1 hash value only. For email files, duplicate email files shall be identified based upon a commercially accepted method for the email family, which includes the parent email and attachments. All custodians in possession, custody or control of de-duplicated documents will be identified and produced under the "ALL CUSTODIAN" metadata field. Duplicate messaging materials will be identified at a family level, including message and attachment(s). Any other methodology for identification of duplicates must be discussed with the receiving party and approved in writing before implementation. However, duplicates (or equivalent identifying information) must be produced where necessary to preserve parent/child relationships.

A party producing a document in electronic form need not produce the same document in hard copy or paper format.

13. <u>Parent-Child Relationships</u>. Parent-child relationships (the association between an attachment and its parent document) that have been maintained in the ordinary course of business must be preserved. For example, if a party is producing an email that has attachments, the attachments shall be processed in order behind the email. Parent/child relationships will be maintained using the BEGATTACH and ENDATTACH metadata fields.

14. <u>Email Thread Analysis.</u> Email thread analysis[1] may be used to reduce the volume of emails reviewed and produced, provided that the produced emails include all

---

[1] Where multiple email messages are part of a single email chain or "thread", a party is only required to produce the most inclusive messages ("Last In Time Email") and need not produce earlier, or less inclusive email messages or "thread messages" that are fully contained, including attachments and including identical senders and recipients, including the Last In Time Email. Only email messages for which the parent

responsive information from a thread, including attachments (regardless of their placement in the email thread).

### III. PRODUCTION OF HARD COPY DOCUMENTS

15. Unless requests call for the production of hard copy documents that are difficult to convert or for legibility or clarity purposes are better rendered in hard copy format, subject to the parties' duty to meet and confer about any disputes, the parties shall convert hard copy documents to an electronic format for production.

16. <u>TIFFs</u>. Documents that exist only in hard copy format shall be scanned and produced in black and white as single page TIFFs at a resolution of at least 300 dots per inch (dpi). Each TIFF image shall be named according to a unique corresponding Bates number associated with the document. Each image shall be branded according to the Bates number and the agreed upon confidentiality designation. TIFFs shall show all text and images that would be visible to a user of the hard copy documents. The parties will accommodate reasonable requests for production of specific images in color or higher resolution. Nothing in this Order shall preclude a producing party from objecting to such requests as unreasonable in number, timing or scope, provided that a producing party shall not object if the document as originally produced is unreadable. If a document is originally produced in an unreadable form, the producing party shall have the option of responding by producing a native-file version of the document or producing a replacement image of legible quality. If a dispute arises with regard to requests for higher resolution or color images, the parties will meet and confer in good faith to try and resolve it.

17. <u>Unitizing of Documents</u>. In scanning hard copy documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple

---

document and all attachments are contained in the Last In Time Email will be considered less inclusive email messages that need not be produced.

records (i.e., hard copy documents should be logically unitized). The parties will use reasonable efforts to unitize documents correctly.

18. <u>OCR Text Files</u>. A commercially acceptable technology for optical character recognition "OCR" shall be used for all scanned, hard copy documents (other than redacted documents). OCR text shall be provided as a document level text file for each document, and the filename should match its respective TIFF filename. The text files will not contain the redacted portions of the documents.

19. <u>Metadata Fields</u>. The following information shall be produced in the delimited data file accompanying hard copy documents: (a) BEGBATES, (b) ENDBATES, (c) BEGATTACH, (d) ENDATTACH, (e) CONFIDENTIALITY, and (f) CUSTODIAN.

20. <u>Database Load Files/Cross-Reference Files</u>. Productions shall include, in addition to single page TIFFs and Text Files, (a) an ASCII delimited data file (.txt, .dat, or .csv), and (b) an image load file (.opt or .lfp) that can be loaded into commercially acceptable production software (e.g., Concordance, Relativity). Each TIFF in a production must be referenced in the corresponding image load file. The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the image load file(s) in the production.

21. <u>Bates Numbering</u>. All documents produced either in hard copy or TIFF images must be assigned a unique Bates number that is sequential within a given document and across the production sets.

IV.     **PRODUCTION OF ELECTRONICALLY STORED INFORMATION**

22.     Metadata Fields and Processing. The parties agree that load files should include, where applicable, the information listed in the table of metadata fields, set forth in Appendices 1 and 2 below to the extent that the fields are reasonably available and accessible except that the identification of sources or devices, etc. in Appendix 2 does not suggest that the parties will collect (or that collection is appropriate from) these sources, devices, etc. for all or some custodians. The names of the fields in Appendix 2 may also differ by provider. The parties are also not obligated to include metadata in Appendices 1 or 2 for any document that does not contain such metadata in the original. The parties reserve their rights to object to any request for the creation of metadata for documents that do not contain metadata in the original.

23.     TIFFs. Except as otherwise provided for in this Order, all documents existing in electronic format shall be produced in either native form or as single-page black and white TIFF format at a resolution of at least 300 dots per inch (dpi). Producing parties will honor reasonable requests to re-produce specific documents in color. TIFF files shall be produced along with Concordance/Opticon image load files that indicate the beginning and ending of each document. Each TIFF image shall be named according to a unique corresponding Bates number associated with the document. Each image shall be branded according to the Bates number and the agreed upon confidentiality designation (if applicable). Reasonable efforts shall be made to preserve original document orientation (i.e., portrait to portrait and landscape to landscape) and all text and images that would be visible in the original electronic format including redlines and speaker notes, but reasonable effort shall not include or require any individual hand-processing of files.

24.     Text Files. A single multi-page text file shall be provided for each document, and the filename should match its respective TIFF filename. When possible, the text of native files

should be extracted directly from the native file. Text files will not contain the redacted portions of the documents, and OCR text files will be substituted instead of extracted text files for redacted documents.

25. <u>Database Load Files/Cross-Reference Files</u>. Productions shall include, in addition to single page TIFFs and Text Files, (a) an ASCII delimited data file (.txt, .dat, or .csv), and (b) an image load file that can be loaded into commercially acceptable production software (e.g., Concordance, Relativity). Each TIFF in a production must be referenced in the corresponding image load file (.opt or .lfp). The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the image load file(s) in the production. Load file information may be provided in a supplemental overlay file as designated on Appendix 1, Column "Supplemental Overlay (Y/N)."

26. <u>Bates Numbering</u>. All images must be assigned a unique Bates number that is sequential within a given document and across the production sets.

27. <u>Request(s) for Additional Native Files</u>. The parties agree to respond to reasonable and specific requests for the production of certain files in native format. If a dispute arises with regard to requests for the production of files in native format, the parties will meet and confer in good faith to try and resolve it. If the parties are unable to reach agreement with regard to requests for additional documents in native-file format, the parties reserve the right to seek relief from the Court. Excel files, Powerpoint files, and files failing to generate TIFF images (executables, multi-media, etc.) shall be produced in native file format. Any native files that are produced shall be produced with a link in the Native Link field, along with extracted text and applicable metadata fields set forth in Appendix 1. A TIFF placeholder indicating that the document was provided in

native format should accompany the database record. The TIFF placeholder should also indicate the Bates number and confidentiality designation (if applicable) assigned to the native document. If a file has been redacted, TIFF images and OCR text of the redacted document will suffice in lieu of a native file and extracted text.

28. <u>Redaction of Information</u>. If documents are produced containing redacted information, an electronic copy of the original, unredacted data shall be securely preserved in such a manner so as to preserve without modification, alteration, or addition the content of such data including any metadata therein.

### V. PROCESSING OF THIRD PARTY DOCUMENTS

29. <u>Subpoena</u>. A party that issues a non-party subpoena ("Issuing Party") shall include a copy of this Order and the Confidentiality Order with the subpoena and state that the parties to the litigation urge that third parties produce documents in accordance with the specifications set forth herein. However, nothing in this Order is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the parties or third parties to object to a subpoena. If the subpoenaed party produces documents in a format not in accordance with the specifications of this Order, the Issuing Party must provide copies to the other parties in a format from which they can reasonably access the documents, but the Issuing Party is not required to reprocess a production by a third party to conform to the specifications set forth herein.

30. <u>Production Not Bates-Stamped</u>. If the non-party production is not Bates-stamped, the Issuing Party may endorse the non-party production with unique prefixes and Bates numbers prior to producing them to the opposing party.

## VI.    SOURCES

31.    The parties will meet and confer regarding the sources of relevant information, including custodial and non-custodial sources.

## VII.    REQUIRED SEARCHES

32.    <u>Search Methodology</u>. The parties agree to work together in good faith to identify and negotiate a reasonable set of search parameters, including custodians, search terms, and date parameters, for identifying responsive documents and ESI.

    a.    The Parties expect to employ one or more search methodologies, and may use advanced search and retrieval technologies, to identify potentially relevant ESI. The Parties will meet and confer and attempt in good faith to reach agreement regarding:

        i.    the method of searching and, if applicable, the results of using specific words, terms, and phrases to be searched, including the size and apparent relevance of the files created by such terms;

        ii.    and the searching of non-email custodial and non-custodial sources from which ESI will be collected and searched.

        iii.    The use of search terms does not preclude a Producing Party from reviewing the search term hits for responsiveness, confidentiality, privilege, and other protections applicable to the ESI and/or Documents, prior to production, and limiting production to responsive, non-privileged ESI and/or Documents.

    b.    The Parties will meet and confer regarding reasonable and proportional validation of search methodologies.

c. Non-searchable files, such as non-searchable PDFs, corrupt, or encrypted files must be identified and assessed independently from any search term or text-based search Order.

***So Ordered.***

Dated: 11/17/2022

_____
Hon. Susan E. Cox
U.S. Magistrate Judge

| | |
|---|---|
| **WE SO MOVE**<br>**and agree to abide by the**<br>**terms of this Order** | **WE SO MOVE**<br>**and agree to abide by the**<br>**terms of this Order** |
| */s/ Stephen D. O'Donohue*<br>Signature | */s/ Lazar P. Raynal*<br>Signature |
| Stephen D. O'Donohue<br>Printed Name | Lazar P. Raynal<br>Printed Name |
| Counsel for: Plaintiff CCC Intelligent Solutions Inc. | Counsel for: Defendant Tractable Inc. |
| Dated: November 17, 2022 | Dated: November 17, 2022 |

**APPENDIX 1: METADATA FIELDS FOR E-MAILS, SPREADSHEETS, PRESENTATION FILES, WORD DOCUMENTS, AND ADOBE PDF FILES**

Load file names, field names, folder names may be different than what has been specified below so long as substantially the same information is provided, and a cross reference sheet of the names are provided on request.

| Field Name | Example / Format | Description |
|---|---|---|
| **BEGNO** | ABC0000001 (Unique ID) | The Document ID number associated with the first page of a document. |
| **ENDNO** | ABC0000003 (Unique ID) | The Document ID number associated with the last page of a document. |
| **BEGATTACH** | ABC0000001 (Unique ID Parent-Child Relationships) | The Document ID number associated with the first page of the parent document. This should be populated for the parent and all child documents |
| **ENDATTACH** | ABC0000008 (Unique ID Parent-Child Relationships) | The Document associated with the last page of the last attachment. This should be populated for the parent and all child documents |
| **VOLUME** | VOL001 | The name of CD, DVD or Hard Drive. |
| **RECORDTYPE** | Options: E-mail, Attachment, Hard Copy, Loose File, Text Message | The record type of a document. |
| **CONFIDENTIAL DESIGNATION** | Confidential; Attorneys' Eyes Only | Confidentiality designation pursuant to the parties' agreed Confidentiality Order. |
| **TIMEZONE PROCESSED** | PST, CST, EST, etc | The time zone the document was processed in. **NOTE:** This should be the time zone where the documents were located at time of collection. |
| **SENTDATE** | MM/DD/YYYY HH:MM:SS | The date and time the email or text message was sent. |
| **SENTTIME** | HH:MM | The time the email or text message was sent. |
| **RECEIVEDDATE** | MM/DD/YYYY HH:MM:SS | The date and time the document or text message was received. |

1

| Field Name | Example / Format | Description |
|---|---|---|
| **RECEIVEDTIME** | HH:MM | The time the document or text message was received. |
| **CREATEDATE** | MM/DD/YYYY HH:MM:SS | The date and time the document was created. |
| **CREATETIME** | HH:MM | The time the document was created. |
| **LASTMODDATE** | MM/DD/YYYY HH:MM:SS | The date and time the document was last modified. |
| **LASTMODTIME** | HH:MM | The time the document was last modified. |
| **FILE NAME or TITLE** | TPS Report.doc | The file name given to an electronic document. |
| **AUTHOR** | Jsmith | The author of a document from extracted metadata. |
| **LASTEDITEDBY** | Jsmith | The name of the last person to edit the document from extracted metadata. |
| **FROM** | Joe Smith <jsmith@email.com> | The display name and e-mail of the author of an e-mail. If only e-mail is given, then just list the e-mail address. An e-mail address should always be provided for every document. |
| **TO** | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail of the recipient(s) of an e-mail. If only e-mail is given, then just list the e-mail address. An e-mail address should always be provided for every document. |
| **CC** | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail of the copyee(s) of an e-mail. If only e-mail is given, then just list the e-mail address. An e-mail address should always be provided for every document. |
| **BCC** | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail of the blind copyee(s) of an e-mail. If only e- mail is given, then just list the e-mail address. An e-mail address should always be provided for every document. |
| **SUBJECT** | | The subject line of the e-mail. |
| **TITLE or FILENAME** | | The extracted document title of a document. |

| Field Name | Example / Format | Description |
|---|---|---|
| **Text From** | Joe Smith 123-456-7890 | The display name as listed in the custodian's phone contacts and the phone number of the text message author. If only the phone number is listed, then just list the phone number. A phone number should always be provided for every text message. |
| **Text To** | Joe Smith 123-456-7890 | The display name(s) as listed in the custodian's phone contacts and the phone number(s) of the text message recipient(s). If only the phone number is listed, then just list the phone number. A phone number should always be provided for every text message. |
| **IMPORTANCE** | Normal, Low, High | Importance Flag |
| **CUSTODIAN** | Smith, Joe; Doe, Jane | All of the custodians / sources of a document from which the document originated, separated by semicolons. |
| **ALL CUSTODIAN** | Smith, Joe; Doe, Jane | All of the custodians that possessed the document, including any custodian(s) whose duplicate file(s) was removed during processing. |
| **FILEEXT** | XLS | The file extension of a document. |
| **MD5HASH** | | The MD5 Hash value or "de-duplication key" assigned to a document. |
| **NATIVELINK** | D:\NATIVES\ABC00000 1.xls | The full path to a native copy of a document. |
| **FULLTEXT** | D:\TEXT\ABC000001.txt | The path to the full extracted text of the document. There should be a folder on the deliverable, containing a separate text file per document. These text files should be named with their corresponding bates numbers.<br>**Note**: E-mails to include header information: author, recipient, cc, bcc, date, subject, etc. If the attachment or e- file does not extract any text, then OCR for the document should be provided. |

3

**APPENDIX 2: METADATA FIELDS FOR MOBILE DEVICES, MESSAGING PLATFORMS, WORKPLACE COLLABORATION TOOLS AND OTHER TECHNOLOGIES**

Technologies governed by the metadata fields in this Appendix 2 include, but are not limited to smart phones, cell phones, tablets, PDAs, Blackberry, smart phone data, tablet data, voicemail messaging data, instant messaging, chat messaging, text messaging, Slack, conference call data, video/audio conferencing, workspace collaboration tools (e.g., GoTo Meeting, WebEx, MS Teams, Zoom), and related/similar technologies.

| Field Name | Field Description | Mobile | Chats | MMS | SMS | Instant Message | Voicemail | Calendar |
|---|---|---|---|---|---|---|---|---|
| TXT- ROWNUMBER | Row number. | ✓ | # | # | # | # | # | # |
| TXT- CHATNUMBER | Chat number, identifies chat groups. | ✓ | Chat # | | | | | |
| TXT- STARTTIME | Start date-time for conversation, calendar item. | ✓ | Start Time: Date | | | | | Start Date: Date |
| TXT-ENDTIME | End date-time for calendar item. | ✓ | | | | | | End Date: Date |
| TXT- LASTACTIVITYTIME | End date-time for conversation. | ✓ | Last Activity: Date | | | | | |
| TXT- PARTICIPANTS | Who was involved in the conversation, meeting. | ✓ | Participants | | Party | | | Attendees |
| TXT - MESSAGENUMBER | Individual identifier for message. | ✓ | Instant Message# | | | | | |
| TXT-BODY | Body of the chat, message, item. | ✓ | Body | Body | Message | | | |
| TXT-STATUS | Whether the text was Sent or Read on the device. | ✓ | Status | Status | Status | | | Status |
| TXT-LOCATION | GPS Information. | ✓ | Location | | | Location | | Location |
| TXT- TIMESTAMP | Timestamp of item. Equivalent to DateReceived for incoming | ✓ | Timestamp: Date | Date | Date | | Timestamp -Date | |

1