IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CCC INTELLIGENT SOLUTIONS INC., )
                                         )
            **Plaintiff,** )    **Case No. 1:18-cv-07246**
     **v.** )
                                           )    **Hon. Robert W. Gettleman**
**TRACTABLE INC.,** )    **Hon. Susan E. Cox**
                                           )
           **Defendant.** )

## JOINT STATUS REPORT

Pursuant to this Court's Order (Dkt. 125), Plaintiff CCC Intelligent Solutions Inc. ("CCC") and Defendant Tractable Inc. ("Tractable") (collectively, the "Parties") respectfully submit this joint status report regarding the progress of fact discovery.[1]

### I.    CCC'S STATEMENT

As explained and requested below, CCC respectfully requests that the Court extend the fact discovery deadline from June 14, 2023 until and including September 14, 2023. The only other existing Court-ordered deadline is an "end of discovery telephonic hearing" on September 21, 2023. (Dkt. 94). An extension of the fact discovery deadline, as requested, would warrant rescheduling this telephonic hearing for a date in or after January 2024 at the Court's convenience.

### A.    Discovery on Tractable

Since the filing of the February 14, 2023 Joint Status Report (Dkt. 124), CCC has served its Third Set of Requests for Production and Third Set of Interrogatories ("CCC's Third Requests")

---

[1] The Parties' August 30, 2022 Joint Status Report (Dkt. 93) provides additional detail regarding the claims and defenses in the Case.

on Tractable, and Tractable responded to CCC's Third Requests on April 10, 2023.[2] CCC is reviewing Tractable's responses and objections and will follow up with Tractable's counsel in due course regarding outstanding disputes.

As of April 11, 2023, Tractable has served five productions consisting of 98,577 total documents, 81,158 of which contain .csv files with approximately ten lines of code per document and another approximately 9,000 of which contain images of cars. The remainder of Tractable's productions consist of approximately 8,419 documents and communications (totaling approximately 29,265 pages) that are responsive to CCC's Requests. CCC has been reviewing Tractable's documents as they have been produced, and during that process CCC learned that certain former Tractable employees (Messrs. Efe Surekli and Phil Mullan) located outside the United States were substantially involved in Tractable's efforts to gain illicit access to CCC's platform and proprietary information. Because those former employees currently reside in the United Kingdom, on April 7, 2023, CCC filed a motion for the issuance of Letters of Request for the deposition testimony of Mr. Surekli and Mr. Mullan. Tractable did not oppose the motion, which this Court granted on April 10, 2023.

The Parties have resolved several outstanding issues addressed in the Parties' February 14, 2022 Joint Status Report (Dkt. 124), including the dispute about the relevance of Tractable's Auto

---

[2] Tractable takes issue with CCC's "scorched earth approach" to fact discovery, complaining about the volume of CCC's discovery requests, the alleged irrelevance of certain categories of information that CCC requested be reviewed and produced, and the supposed burdens associated with fulfilling its obligation to meet and confer with CCC regarding the parties' discovery disputes. Tractable's complaints are meritless. CCC's discovery requests are squarely aimed at information bearing on Tractable's fraud, Tractable's efforts to gain illicit access to CCC ONE and misuse CCC's proprietary information, and the damages that CCC sustained as a result—all of which are relevant to the issues at stake in this litigation and proportional to the needs of the case. Tractable's claims to the contrary are belied by its agreement to produce certain categories of information that it claims to be "not relevant here" (such as information and source code related to Tractable's Review products).

Review Products. However, new issues have arisen that may warrant judicial intervention in the event that the Parties reach an impasse with their ongoing negotiations.

*First*, on February 23, 2023, CCC served a letter on Tractable's counsel asking Tractable to confirm that it would produce certain documents and communications relating to a Confluence workspace that Tractable maintained in connection with its use of CCC ONE and the development of its estimating products. CCC also asked Tractable to add custodians and search terms to its ESI search protocol based on CCC's review of Tractable's documents. Tractable responded on March 20, 2023 and agreed to add one of the requested custodians and all but one of the requested search terms. However, Tractable refused to produce all requested pages of its Confluence workspace (which CCC contends are relevant and responsive) and instead committed to producing only documents that *it* deemed responsive. CCC is continuing to review Tractable's position and will follow up regarding any outstanding disputes.

*Second*, on March 22, 2023, CCC notified Tractable that nineteen Tractable documents had improper confidentiality designations. Tractable agreed to de-designate four of those documents and downgrade the confidentiality designations for eight of those documents, while maintaining the designations for the remaining seven documents. CCC is evaluating Tractable's response and will follow up regarding any outstanding disputes.

*Third*, CCC has encountered unexpected difficulties reviewing Tractable's source code at King & Spalding's Chicago office. Tractable's source code computer contains approximately 320 git repositories (including approximately 3,500 Python files and nearly 200,000 files in total), which is a large volume of code that is taking (and will continue to take) considerable time to inspect and evaluate. On April 3, 2023, CCC requested that Tractable provide a second source code computer to accelerate CCC's review, in addition to asking Tractable to make a series of

other changes to remedy current problems with the source code review process: (a) to use a source code computer with at least 16GB of RAM, 1TB of solid-state drive storage, and a twelfth generation or later intel i7 central processing unit ("CPU") (specifications that would remedy the fact that the existing source code computer appears to be significantly underpowered and outdated, given that there is less than 20% free space on the hard drive and that the CPU was introduced in 2015 and is currently in "End of Service" status); (b) to load onto the source code computer the data used to train Tractable's machine learning models and the database(s) and data files used to store data in any way derived from CCC (all of which is information responsive to CCC's Requests that should have been loaded onto the source code computer initially); and (c) to produce in native format certain index files containing metadata such as file names, author names, and dates (none of which would constitute "source code" as defined under Paragraph 2(c) of the Protective Order (Dkt. 110)). The large volume of code (combined with the fact that CCC's reviewers have thus far needed to rely on a single underpowered and outdated source code computer) have undermined CCC's ability to make substantial progress with completing its review of Tractable's source code.

On April 10, 2023, Tractable agreed to provide a second source code computer with the requested specifications but objected to making available for inspection the data that Tractable used to train Tractable's machine learning models or the database(s) and data files used to store data in any way derived from CCC. Tractable also stated that a it would respond later this week to CCC's request for the production in native format of the index files referenced above. CCC is reviewing Tractable's response and will follow up to meet and confer regarding any outstanding disputes.

**B.      Third Party Discovery**

Non-party Xing Xin—a former Tractable employee who is represented in this case by Tractable's counsel—has not produced additional documents since the Parties' last joint status

4

report. On March 30, 2023, CCC contacted Tractable's counsel regarding Tractable's production of only fifty-six documents for which Mr. Xin is the identified custodian, despite Tractable including Mr. Xin as a custodian in its December 9, 2022 ESI search protocol and Mr. Xin playing a central role in the conduct at issue in this litigation. CCC asked Tractable to confirm that it would finish producing Mr. Xin's documents by April 12, 2023 (or to confirm an alternative date by which such production would be complete) so that CCC could proceed with scheduling Mr. Xin's deposition pursuant to the September 29, 2022 subpoena. Tractable has not yet committed to such a date, which may require CCC to seek appropriate relief from the Court.

C.     **Responses to Tractable's Discovery on CCC**

CCC has produced eleven volumes of documents and communications in response to Tractable's requests for production consisting of 8,839 documents and communications (totaling 36,097 pages). Among other things, CCC continues to follow an ESI search protocol that requires collecting and reviewing documents and communications dated from January 1, 2017 to the present from eight custodians that hit on agreed upon search terms. Since the Parties' last status report, Tractable requested that CCC add a proposed search term to its ESI search protocol and expand the list of search terms for one previously identified custodian, which CCC has agreed to do. CCC will continue to update its ESI search protocol as discovery progresses and to meet and confer with Tractable regarding any issues that arise.

On March 17, 2023, Tractable served CCC with a letter regarding CCC's productions, and CCC responded on April 4, 2023. Among other things, CCC's response letter corrected inaccuracies about categories of documents that were supposedly missing from its productions and agreed to implement Tractable's requested changes to its ESI search protocol. Tractable has not yet responded to CCC's April 4th letter, but CCC remains willing to meet and confer regarding any outstanding disputes.

Tractable also served CCC with a letter requesting the de-designation of sixty-two documents on March 30, 2023. In response, CCC agreed to de-designate eight documents, downgrade four documents from "Highly Confidential – Attorneys' Eyes Only" to "Confidential – Subject to Protective Order," and maintained its position with respect to the confidentiality designations for the remaining documents.

### D.      Continuation of Fact Discovery

As explained above, Tractable's documents have disclosed information that required a considerable amount of follow up, including but not limited to the involvement of multiple former employees who currently reside in the United Kingdom, who are uniquely capable of testifying about activities that are central to the issues in this litigation, and whose testimony CCC accordingly seeks to obtain via the protocols for taking foreign depositions under the Hague Convention. These discovery developments and others have required ongoing negotiations with Tractable's counsel, including with respect to disputes related to the relevance of Tractable's Confluence workspace, the improper nature Tractable's confidentiality designations for certain documents, the relevance of other categories of information that CCC has asked Tractable to produce, and the relatively low number of Tractable documents with Mr. Xin as the identified custodian.

In light of these developments and the Parties' ongoing meet-and-confer efforts, CCC respectfully requests an order from this Court extending the fact discovery deadline from June 14, 2023 until and including September 14, 2023 to ensure that CCC has sufficient time to meet and confer with Tractable regarding the Parties' outstanding discovery disputes, to finish its review and analysis of Tractable's source code, to complete the process for taking depositions abroad of Mr. Surekli and Mr. Mullan, and to prepare for the Parties' fact witness depositions in light of the information that has been disclosed in discovery.  CCC also respectfully requests that the Court

set June 14, 2023 as the substantial-completion deadline for document production. Tractable does not oppose either of these requests.

However, Tractable also seeks for this Court to set June 14, 2023 as the completion deadline for written discovery—a request that CCC opposes. Among other things, setting the written discovery completion deadline for the same date as the substantial-completion deadline for document productions would preclude CCC from thoroughly following up on information disclosed in Tractable's final document productions, which could warrant additional document requests, interrogatories, deposition notices, or third-party subpoenas. Setting a June 14, 2023 cutoff for written discovery would also be inconsistent with the parties' ongoing obligation to supplement their written discovery responses where appropriate throughout the entire fact discovery period.

## II.    TRACTABLE'S STATEMENT

Tractable does not oppose CCC's request to extend the fact discovery deadline from June 14, 2023 to September 14, 2023.[3] Tractable does, however, dispute CCC's characterization of the discovery conducted to date and CCC's suggestion that the need for additional time to complete discovery is due to Tractable's conduct. Unable to uncover any evidence supporting its allegations in the Complaint, CCC has taken a scorched earth approach to attempt to uncover any shred of evidence of any wrongdoing by Tractable. CCC has (1) served over 80 requests for production seeking significant volumes of information that often have no relevance to the claims or defenses in this case, (2) pressed for over 15 custodians and broad search terms that have caused an unreasonably high volume of documents for Tractable to review, (3) demanded source code for

---

[3] Tractable also does not object to rescheduling the September 21, 2023 telephonic hearing to a date in or after January 2024 at the Court's convenience.

both Tractable's Estimating and Review products (after it was explained on multiple occasions that Tractable's Review product is not relevant here), and (4) consistently raised multiple "disputes" over every aspect of the case. Tractable has accommodated and compromised at every turn and has been able thus far to resolve the many disputes CCC has raised. As described below, this has resulted in a significant volume of documents for review and the production of a very large volume of source code.

Setting aside CCC's mischaracterization of the facts, the volume of discovery requested and exchanged in this action warrants an extension of the fact discovery deadline. Tractable requests, however, that the Court keep June 14, 2023 as the applicable deadline to complete written discovery and to substantially complete all document productions. This interim June 14, 2023 deadline is appropriate to ensure that the parties diligently complete written and document discovery and have adequate time to complete depositions prior to the proposed fact discovery cutoff of September 14, 2023.

CCC opposes Tractable's request to keep the current written discovery deadline of June 14, 2023 based on CCC's stated concern that new information could be discovered during a party's final document production, which may warrant additional discovery. In such circumstances, Tractable does not oppose a party's ability to seek the Court's leave (or a stipulation from the opposing party) to serve additional, *limited* discovery to address the newly discovered information. However, to allow the parties to continue to serve written discovery after June 14, 2023, including on subject matters that could have been requested earlier, not only renders the agreed-upon substantial completion deadline meaningless, it prevents the parties from properly preparing for and completing depositions after the relevant documents in this matter have been produced. Moreover, maintaining the current written discovery deadline is necessary to help curb the

8

voluminous, disproportionate discovery CCC continues to serve on Tractable as CCC desperately searches for a theory for its case. Allowing an additional four months of open-ended written discovery is therefore inappropriate given the extensive discovery already conducted by the parties to date.

A.      CCC's Discovery Requests

To date, CCC has served three sets of Requests for Production on Tractable (consisting of a total of 81 Requests) as well as three sets of Interrogatories. In response to CCC's Requests for Production, Tractable has reviewed nearly 400,000 documents and produced 107,375 documents over six (6) productions. Underscoring the volume and breadth of the documents demanded by CCC, Tractable continues to review additional documents responsive to CCC's Requests for Production—including documents associated with the additional terms and custodians CCC requested—and Tractable is making rolling productions approximately every two weeks. Given the nature of the documents CCC has insisted on receiving, some documents included in Tractable's productions included vehicle photos and .csv files. Tractable expects to substantially complete its productions by June 14, 2023.

Notwithstanding Tractable's agreement to review and produce hundreds of thousands of documents requested by CCC, many of which have specious relevance to this action at best, CCC continues to raise new discovery "disputes" with Tractable on nearly a weekly basis. Tractable has bent over backwards to address the myriad of "disputes" Tractable continues to raise to avoid the need for Court intervention. Still, CCC purports to raise several "outstanding issues" with the Court in this Joint Status Report, each of which are addressed below.

*First,* CCC critiques Tractable for not agreeing to CCC's demand to produce an entire workspace, which consists of thousands of separate documents, regardless of the relevance of such documents. Instead, Tractable agreed to review the workspace pursuant to the parties' agreed-upon

search terms, custodians, and ESI Protocol (Dkt. 116), and to produce all non-privileged documents that are responsive to the requests to which Tractable agreed to produce documents. CCC has no basis to unilaterally declare entire workspaces consisting of thousands of documents "responsive" and demanding the production of all such documents without any responsiveness review from the producing party. CCC has served over 80 requests for production covering every conceivable topic—relevant and otherwise. Tractable's agreement to produce documents from the workspace responsive to those requests is entirely reasonable and appropriate.

Similarly, CCC critiques Tractable for not agreeing to add all its requested custodians. CCC omits, however, that Tractable has agreed to include 13 custodians in its searches, which has already yielded a very high volume of documents for review. CCC also omits that one of the custodians Tractable declined to add was the executive assistant of an existing custodian, rendering her inclusion wholly duplicative of Tractable's current review. While Tractable continues to make every effort to accommodate CCC's requests, Tractable is entitled to push-back on CCC's attempts to needlessly expand Tractable's review that has already exceeded hundreds of thousands of documents.

*Second,* CCC challenged the confidentiality designations of nineteen Tractable documents on March 22, 2023. Pursuant to the Protective Order entered in this case, Tractable promptly responded to CCC's letter and agreed in good faith to downgrade the designations of twelve of the nineteen challenges. Tractable does not believe CCC has any basis to challenge its designation decisions with respect to the remaining seven documents, but Tractable will address such issues with the Court if CCC concludes it is a productive use of party and Court resources to further pursue this issue.

*Third,* CCC attempts to blame Tractable and its counsel for CCC's "difficulties" in reviewing Tractable's source code. But CCC ignores that Tractable fully complied with the source code review protocol negotiated by the parties and entered by this Court. (Dkt. 110). Tractable made available to CCC the standard source code computer that King & Spalding has located at its Chicago office that has been used (without issue) for multiple similar source code reviews. The real issue is that CCC insisted on source code for multiple products, and so now appears to be complaining regarding the volume of source code that they demanded be made available. Nevertheless, despite having no obligation to do so under the agreed-upon ESI Protocol, Tractable promptly agreed to accommodate CCC's request and provide two source code computers with updated computers that King & Spalding is sourcing from its Atlanta office.[4]

Finally, notwithstanding CCC's complaints about the volume of source code it is tasked with reviewing, CCC has now demanded that Tractable make available for review over 40 terabytes of data comprising of over 600 million files used to train Tractable's artificial intelligence—none of which were generated from Tractable's use of CCC ONE. To be clear, Tractable has agreed to produce *all* data obtained in connection with Tractable's license to CCC ONE. Tractable does not agree, however, to produce millions of files obtained from non-CCC ONE sources that have no relevance to this dispute.

**B.      CCC's Third Party Discovery**

Counsel for non-party Xing Xin—a former Tractable employee—has ***repeatedly*** informed CCC that Mr. Xin no longer has access to his Tractable emails and slack messages. Accordingly, Mr. Xin completed his production of all documents within his possession, custody, or control

---

[4] Tractable is still evaluating CCC's request to produce documents maintained within the source code computer given the commercial sensitivity and technical nature of such data.

responsive to CCC's subpoena on January 25, 2023. Mr. Xin has therefore fully complied with CCC's subpoena, and CCC can proceed with scheduling Mr. Xin's deposition as it deems appropriate. It is unclear what "dispute" CCC is raising with respect to Mr. Xin's subpoena.

As CCC further points out, Tractable also agreed to include Mr. Xin as a custodian under its ESI Protocol. Mr. Xin's documents are being reviewed and produced alongside all other custodians, and, to date, Tractable has produced 342 documents from Mr. Xin's custodial collection.[5] As stated above, Tractable's review and productions remain ongoing, and Tractable expects to substantially complete its production, including it production of Mr. Xin's custodial documents, by June 14, 2023. If CCC chooses to forego Mr. Xin's deposition until after Tractable's production is complete, it will have approximately four months to schedule Mr. Xin's deposition if the Court extends the fact discovery deadline to September 14, 2023.

## C.      Discovery Served on CCC

On October 18, 2022, Tractable served its First Set of Requests for Production ("RFPs") on CCC. CCC responded to the RFPs on November 17, 2022. Over the next four months, between November 17, 2022 and March 16, 2023, CCC made six productions totaling only 2,059 documents. Over 800 of those documents were recurring calendar invites or graphic family members (*i.e.*, images like the CCC logo that are included in the parent communication and re-produced as a separate family member). Excluding those non-substantive family members and exact duplicates, CCC produced less than 1,000 documents in the five months after it received Tractable's RFPs.

---

[5] CCC never requested that Tractable prioritize the production of Mr. Xin's custodial documents; nor would such a request be appropriate under the circumstances.

On March 17, 2023, Tractable sent CCC a letter identifying the numerous requests to which CCC had not produced responsive documents. That same day, CCC made its seventh production totaling 754 documents (over 500 of which were recurring calendar invites with no substantive content). Between March 24th and April 7th, CCC made four more productions totaling 6,780 documents. In other words, CCC did not begin any substantial production of documents until almost 6 months into discovery and *after* Tractable sent its deficiency letter to CCC. CCC has provided no justification for its delay in providing these materials, and Tractable is still reviewing these recently produced documents to identify any remaining deficiencies. In the meantime, Tractable is preparing a letter making one final attempt to resolve several outstanding disputes with CCC's production—the most pressing of which is CCC's refusal to produce its license agreements with insurance companies for use of CCC's products, including CCC ONE. This position is unacceptable to Tractable considering CCC's apparent contention that *any* receipt of a CCC-generated estimates by Tractable from insurance companies is discoverable and relevant, regardless of its connection to the license at issue in this case.

Tractable also served CCC with a letter on March 30, 2023, requesting the de-designation of sixty-two documents. In contrast to Tractable's good-faith response to CCC's designation challenges, CCC agreed to de-designate only eight documents, all of which are either chats or call recordings between CCC and JA Appraisal. CCC also agreed to downgrade four emails with no message content from "Highly Confidential – Attorneys' Eyes Only" to "Confidential – Subject to Protective Order," but refused to change the designation for the attachments to these emails. CCC refused to change the "Highly Confidential – Attorneys' Eyes Only" designation on the remaining 50 documents.

Tractable is evaluating CCC's responses regarding CCC's production deficiencies and improper confidentiality designations and will follow up regarding the remaining disputes. Tractable is also preparing additional written discovery requests, which it expects to serve on CCC next week.

### D.        Tractable's Third Party Discovery

On March 31, 2023, Tractable served a subpoena for documents on third-party Hearst Business Publishing, Inc. ("Hearst") an entity that licenses repair-related data to CCC for use in CCC ONE. The subpoena requests the production of certain documents by April 28, 2023. Hearst's objections (if any) to the document subpoena are due April 14th. Tractable also served Hearst with a subpoena for deposition testimony. Tractable intends negotiate a date for this deposition following receipt of Hearst's documents. Tractable may also seek to subpoena additional third parties over the coming weeks.

Dated: April 14, 2023                              Respectfully submitted,

/s/ Matthew W. Walch                              /s/ Lazar P. Raynal (with permission)
Mark S. Mester (Bar No. 6196140)                 Lazar P. Raynal (Bar No. 6199215)
Matthew W. Walch (Bar No. 6226308)               Michael A. Lombardo (Bar No. 6334886)
Kathryn A. Running (Bar No. 6330369)             KING & SPALDING LLP
LATHAM & WATKINS LLP                             110 N. Wacker Drive, Suite 3800
330 North Wabash Avenue, Suite 2800              Chicago, IL 60606
Chicago, IL 60611                                Telephone: (312) 995-6333
T: +1.312.876.7700; F: +1.312.993.9767           Facsimile: (312) 995-6330
mark.mester@lw.com                               lraynal@kslaw.com
matthew.walch@lw.com                             mlombardo@kslaw.com
kathryn.running@lw.com

                                                 Julia C. Barrett (pro hac vice)
Adam M. Greenfield (Bar No. 6292915)             KING & SPALDING LLP
Jason Burt (pro hac vice)                        500 West 2nd Street, Suite 1800
LATHAM & WATKINS LLP                             Austin, Texas 78701

14

555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
T: +1.202.637-2200; F: +1.202.637.2201
adam.greenfield@lw.com
jason.burt@lw.com

Stephen D. O'Donohue (*pro hac vice*)
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10220
T: +1.212.906.1200; F: +1.212.751.4864
stephen.odonohue@lw.com

*Counsel for Plaintiff CCC Intelligent*
*Solutions Inc.*

Telephone: (512) 457-2000

*Counsel for Defendant Tractable, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, Matthew W. Walch, hereby certify that on April 14, 2023, I caused the foregoing to be filed using the Court's electronic filing system which provides service to all counsel of record.

/s/ *Matthew W. Walch*
Matthew W. Walch