IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CCC INTELLIGENT SOLUTIONS INC., | ) |
| | ) |
| Plaintiff, | ) Case No. 1:18-cv-07246 |
| v. | ) |
| | ) Hon. Susan E. Cox |
| TRACTABLE INC., | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT TRACTABLE INC.'S MOTION TO COMPEL**

Defendant Tractable, Inc. ("Tractable") presents this motion to compel the addition of two document custodians Plaintiff CCC Intelligent Solutions Inc. ("CCC") unreasonably refuses to include. The parties have engaged in a good faith consultation via videoconference regarding these additional custodians pursuant to Local Rule 37.2 but have been unable to reach a resolution. Tractable therefore moves for an order directing CCC to add Githesh Ramamurthy ("Ramamurthy") and Barrett Callaghan ("Callaghan") as document custodians.

**INTRODUCTION AND RELEVANT BACKGROUND**

CCC is the dominant player in the auto insurance estimating industry, controlling over 70-80% of the U.S. market with over 18 of the top 20 U.S. auto insurance companies as its long-term, exclusive customers.[1] Here, CCC is advancing claims for fraud, misappropriation of trade secrets, and trademark infringement based on allegations that Tractable—a (small at the time) technology startup that uses AI to assess vehicle damage—obtained a license to CCC ONE under a different name so that it could "probe CCC ONE in a concerted effort to discern CCC's proprietary data,

---

[1] CCC February 2021 Form 8-K, Ex. 99-2 at 24, at
https://www.sec.gov/Archives/edgar/data/1818201/000119312521026659/d101043dex992.htm

algorithms, and other information." Dkt. 31, First Am. Compl. ("FAC") ¶¶ 5, 8. CCC contends that Tractable "was unjustly enriched because it was able to save commercially valuable time, resources, and other research and development costs in the development of its technology products" by virtue of Tractable's access to CCC ONE, a program CCC licenses to literally tens of thousands of third-party users. Declaration of Lazar P. Raynal ("Raynal Decl.") Ex. 1, at 24-25. CCC seeks damages "including but not limited to lost profits, market share, goodwill, competitive advantage and business opportunities." *Id.*

In response to these allegations, Tractable pled an affirmative defense of unclean hands, alleging that CCC's claims are barred because CCC employed anticompetitive and exclusionary tactics to maintain a dominant position in the market and prevent Tractable from introducing its unique AI-based technology, including by forcing customers to boycott CCC's competitors and closing its software platform to prevent new market entrants, like Tractable, from developing products or services that could be used by CCC's customers. Dkt. 123, at 22. Tractable has also asserted the affirmative defense of independent development because Tractable's technology was developed independent of Tractable's access to CCC ONE or any information Tractable did (or even could have) accessed through its license to CCC ONE. *Id.* at 23.

To defend against these claims and support its affirmative defenses, Tractable has sought discovery regarding CCC's knowledge of Tractable's activity in the market, CCC's attempts to compete with Tractable, CCC's development of an AI product, and CCC's efforts to exclude potential competitors—like Tractable—from the market. This discovery is relevant to why and how Tractable made the decision to obtain the CCC ONE license under the d/b/a JA Appraisal, Tractable's use of the CCC ONE license, CCC's unclean hands in bringing this action, and CCC's lack of damages from Tractable's alleged conduct. Despite omitting Ramamurthy (CCC's CEO)

2

and Barrett Callaghan (CCC's Senior Vice President of Markets and Customer Success) from its list of custodians, documents CCC has produced to date show that both Ramamurthy and Callaghan were personally involved in ███████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████

Specifically, in April 2017, months before Tractable obtained the JA Appraisal license to CCC ONE, Callaghan e-mailed a group of executives, including Ramamurthy, █████████

███████████████████████████████████████████████████████████████████████

████████████████████████████████████████████ Raynal Decl. Ex. 2, CCCIS_0014779. The next day, Ramamurthy hosted a meeting in his office to discuss the topic. Raynal Decl. Ex. 3, CCCIS_0014761. Then, in May 2017, Ramamurthy and Callaghan were informed that ██████████████ ██████████████████████████. Raynal Decl. Ex. 4, CCCIS_0014796 (one executive commenting, █████████████████████████████████████). ███████████████████████████████████████████████████████████████████ *Id.* Following these discoveries, Ramamurthy █████████ " ████████████████████ █████████████████████" Raynal Decl., Ex. 5, CCCIS_0014877. Ramamurthy " █████████

███████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████ Raynal Decl., Ex. 6, CCCIS_0030544; *see also id.*, Ex. 7, CCCIS_0015455 (" ██████████████████████

███████████████████████████████████████████████████████████████████████

██████████████████████████████████████████").

In the months that followed Ramamurthy's " ███████████████████████ Callaghan was in regular discussion with ████████████████████████████████

3

███████████████ Raynal Decl., Ex. 8, CCCIS_0018630; Ex. 9, CCCIS_0014770; Ex. 10, CCCIS_0015450; Ex. 11 CCCIS_0010615. In the meantime, ██████████████ ████████████████████████████████ Ramamurthy was updated on this process and received presentations that reveal ████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

Raynal Decl. Ex. 12, CCCIS_0012962; Ex. 13, CCCIS_0012963 at 972–973. But CCC's products used "████████████████████████████████████████████████████████

██████████████" Raynal Decl. Ex. 14, CCCIS_0018736 (e-mail sent to Ramamurthy).

These documents show ████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████ In July 2022, Ramamurthy received (and then shared) a presentation deck regarding ████████████████████████████████

████████████████████████████████████████████████████" Raynal Decl. Ex. 15, CCCIS_0008817; Ex. 16, CCCIS_0008819; Ex. 17, CCCIS_0008837; *see also* Ex. 18, CCCIS_0008796 (████████████████████████████████████████████

████████████████████████████████████████████████").

Finally, Callaghan and Ramamurthy were also actively involved and informed regarding ████████████████████████████████████████ Raynal Decl. Ex. 19, CCCIS_0046790. On September 13, 2018, a CCC employee updated Callaghan ████████████████

████████████████████████████████ *Id.* at 1. Three minutes later, Callaghan

4

forwarded the message to Ramamurthy and others, indicating ███████████████ ██████████████████████████████████ *Id.*

Given Ramamurthy and Callaghan's direct involvement in several subject matters highly relevant to the claims and defenses at issue in this action, Tractable requested that CCC add Ramamurthy and Callaghan as custodians on April 17, 2022. CCC refused, claiming that Tractable had failed to establish relevancy and was "engaging in a fishing expedition with CCC's highest ranking executives." Raynal Decl., Ex. 20. CCC also argued that "the documents Tractable seeks from CCC's CEO and former Executive Vice President are duplicative of documents CCC has already produced from Marc Fredman, CCC's Chief Strategy Officer." *Id.* CCC eventually offered to produce documents from these custodians responsive to the search term "Tractable" AND "████" but declined to add Ramamurthy and Callaghan as "full custodians" due to purported relevancy concerns and another accusation of a "fishing expedition[.]" *Id.*, Ex. 21. This position is unacceptable.

First, CCC's relevancy objection is belied by the documents described above. Second, Ramamurthy's position as CEO does not shield CCC from producing these documents in light of his personal involvement ████████████████████████████████████ ██████████████████████████████████ Third, CCC's purported concerns regarding duplicativeness are unsubstantiated and without merit. The fact that CCC has included one relevant custodian does not excuse its obligation to search for and produce other relevant documents. Finally, and most importantly, CCC has failed to demonstrate any burden in adding Ramamurthy and Callaghan as custodians. Despite taking nearly 7 weeks to investigate Tractable's request, CCC has not provided any substantive information regarding any purported burden, such

as the potential volume of documents or cost to process and review.[2] Nor could CCC claim any such burden. To date, CCC's search has included only 9 custodians and resulted in production of 13,723 documents. In contrast, Tractable has produced 378,045 documents from fifteen custodians. CCC lacks any basis for its refusal to add Ramamurthy and Callaghan as custodians.

## ARGUMENT

"A party may file a motion to compel under Federal Rule of Civil Procedure 37 whenever another party fails to respond to a discovery request or when its response is insufficient." *Belcastro v. United Airlines, Inc.*, 2019 U.S. Dist. LEXIS 65847, at *6 (N.D. Ill. Apr. 17, 2019). The standard set forth in Rule 26(b) governs a motion to compel discovery. *LKQ Corp. v. Kia Motors Am., Inc.*, 2023 U.S. Dist. LEXIS 84551, at *3 (N.D. Ill. May 15, 2023). Rule 26(b)(1) allows discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Even setting aside the clear relevancy of the documents in Ramamurthy and Callaghan's possession, Rule 26(b)(1) sets forth a "broad standard" that is "not restricted to the narrow scope of a legal claim." *Belcastro*, 2019 U.S. Dist. LEXIS 65847, at *7. Rather, courts construe Rule 26(b)(1) to include requests for information that could reasonably "lead to" the discovery of admissible evidence. *Id.* at *27.

To combat against this broad standard, CCC relies on the narrow apex doctrine, which is meant to "prevent a high-ranking corporate executive from being run through the wringer of civil discovery, when they do not have personal knowledge of the relevant facts." *Dyson, Inc. v. SharkNinja Operating LLC*, 2016 U.S. Dist. LEXIS 54267, at *4–6 (N.D. Ill. Apr. 22, 2016). The apex doctrine is traditionally "concerned with preventing depositions of high ranking corporate

---

[2] It is hard to imagine that CCC has not already run its search terms to determine the volume of responsive documents in Ramamurthy and Callaghan's possession. However, CCC does not claim it would suffer undue burden if required to produce these materials. It appears that CCC is attempting to shield relevant documents from discovery with its misguided objections.

6

officials" and "there is some doubt whether the apex doctrine even applies to document production." *Id.* Even if the apex doctrine applies, it "is not an ironclad rule" and only requires the court, "[a]s with any other protective order," to "balance… the likelihood of oppression or harassment compared to the value of the inquiry in generating important information." 8A Charles Alan Wright, Arther R. Miller, and Richard L. Marcus, Federal Practice and Procedure, § 2036 n.7 (3d ed. 2010). Tractable's request to add custodians is justified under Rule 26(b) and not barred by the apex doctrine because Ramamurthy and Callaghan possess relevant documents and CCC has not shown that good cause justifies its refusal to produce those documents. The Court should therefore grant Tractable's motion to compel and award its attorneys' fees associated with filing this motion. Rule 37(a)(5)(A).

I. **The Apex Doctrine Does Not Allow CCC to Conceal Relevant Information.**

CCC's reliance on the "apex" doctrine to withhold the requested documents is misplaced. The apex doctrine is typically invoked when a party seeks to compel the deposition of a high-ranking executive who does not have "personal knowledge of the relevant facts." *Dyson,* 2016 U.S. Dist. LEXIS 54267, at *4 (N.D. Ill. Apr. 22, 2016). It is not a basis to avoid document discovery. And setting aside "whether the apex doctrine even applies to document production," *id.* at *6, it has no application here because Tractable has demonstrated that Ramamurthy and Callaghan[3] have significant personal knowledge of the relevant facts. Where "discovery already produced" shows that an executive took a "hands-on role" in the events at issue in the litigation, it is not oppressive or unduly burdensome to require them to produce their e-mails. *Id.* at *7 (ordering

---

[3] Setting aside the apex doctrine's dubious application to document production, it would not shield Callaghan from discovery because he was not an executive during the relevant time period. *See* https://www.linkedin.com/in/barrett-callaghan-360709/details/experience/ (listing experience as Senior Vice President – General Manager from 2012-2021); *Kelly v. Provident Life & Accident Ins. Co.,* 695 F. Supp. 2d 149, 157 (D. Vt. 2010).

the plaintiff to produce the e-mails and of the plaintiff's "global leader," famous inventor James Dyson). And as explained below, CCC has not established that it would suffer any undue burden if ordered to produce the requested discovery, which is crucial to Tractable's ability to properly defend this case. The apex doctrine does not shield CCC from its discovery obligations in these circumstances.

> II. **Tractable Has Demonstrated That Ramamurthy and Callaghan Are in Possession of Highly Relevant Information.**

"Relevance, particularly in the discovery phase, is a low bar to meet." *Architectural Iron Workers' Local No. 63 Welfare Fund v. Legna Installers Inc.*, No. 22 C 5757, 2023 U.S. Dist. LEXIS 66607, at *9 (N.D. Ill. Apr. 17, 2023). The documents described above showing Ramamurthy and Callaghan's significant involvement ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ more than satisfies Tractable's burden of showing relevance under Rule 26. CCC alleges that Tractable committed fraud to obtain a license to CCC ONE so that it could steal CCC's trade secret information for use in Tractable's products. These are serious allegations that have placed at issue Tractable's motivations for obtaining the CCC ONE license using the d/b/a JA Appraisal, the relationship between Tractable and CCC in the market, both Tractable's and CCC's product-development efforts (including whether anything from CCC ONE would even be useful in Tractable's superior AI-driven technology), other motivations CCC may have had to file this lawsuit, and whether CCC has been damaged by Tractable's alleged conduct. Ramamurthy and Callaghan have information touching on each of these topics.

Specifically, CCC alleges that Tractable improperly gained access to CCC ONE to misappropriate CCC's proprietary software and algorithms "to achieve Tractable's own business

8

ends." FAC ¶¶ 8, 103–105. Tractable disputes such allegations and is entitled to discover information within CCC's possession supporting its defenses and demonstrating that CCC's motivation is keeping Tractable from having a product that interoperates with CCC ONE. The documents showing that Ramamurthy and Callaghan were deeply involved in ████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████ are directly relevant to Tractable's ability to defend against CCC's allegations. Raynal Decl. Exs. 2–11, 19. Moreover, these documents showing that ████████████████████████████████████████████████████████████ ████████████████████████████████████ directly controvert CCC's allegation that Tractable needed to take anything from CCC in order to develop its products.

In addition, contemporaneous emails from Ramamurthy and Callaghan show that CCC ██ ████████████████████████████████████████████████████████ at the time that Tractable obtained the license to CCC ONE, and that it was CCC who ██████████████████████ ████████████████████████████████████████████. *See, e.g.*, Raynal Decl. Exs. 13, 14. This is clearly relevant to Tractable's defense that it did not misappropriate CCC's trade secrets. Ramamurthy was also involved in ████████████████████████████████████████ ████████████████ *See* Raynal Decl. Exs. 12, 15–18. To the extent CCC is alleging it sustained damages from Tractable's access to CCC ONE in the form of lost customers, customer confusion, harm to its reputation, and/or loss of goodwill, such communications are relevant.

Moreover, the documents produced to date show, without question, that both Ramamurthy and Callaghan had personal knowledge of ████████████████████████████████ ████████████████ *See* Raynal Decl. Exs. 2–4, 8–11, 19. On September 13, 2018, Callaghan and Ramamurthy were updated about discussions ██████████████████████████████

9

███████████████████████████████████ *Id.* Ex. 19. These communications appear to be ███████████████████████████████████

In short, Ramamurthy and Callaghan are not hands-off executives with little to no first-hand knowledge of the facts of this case. To the contrary, both are witnesses to the events underlying the litigation and at the center of CCC's conduct with respect to Tractable as a competitor in the market. They accordingly possess relevant information that Tractable is entitled to in discovery. For this reason, CCC must add Ramamurthy and Callaghan as custodians "to respond fully to document requests and to produce responsive, nonduplicative documents during the relevant period." *Kleen Prods. LLC v. Packaging Corp. of Am.*, No. 10 C 5711, 2012 U.S. Dist. LEXIS 139632, at *46 (N.D. Ill. Sep. 28, 2012) (granting a motion to compel addition of custodians).

### III. CCC Has Not Demonstrated That An Undue Burden Justifies its Refusal to Add Ramamurthy and Callaghan as Document Custodians.

Because Tractable has established the relevancy of the documents in Ramamurthy and Callaghan's possession, CCC must demonstrate an undue burden related to adding Ramamurthy and Callaghan as custodians; they have not and cannot satisfy that burden. *PsyBio Therapeutics*, 2021 U.S. Dist. LEXIS 186820 at *3; *Dyson,* 2016 U.S. Dist. LEXIS 54267, at *4. Despite over a month of investigation, multiple exchanges of written correspondence, and a videoconference meet-and-confer between counsel, CCC has not provided any information regarding the purported burden of adding Ramamurthy and Callaghan as custodians that would provide good cause to refuse Tractable's request. CCC has not, for example, estimated "the number of documents that it would be required to provide," the "number of hours of work by lawyers and paralegals required," or "the expense." *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 598 (7th Cir. 2011).

CCC cannot credibly argue undue burden given the disproportionate discovery that has occurred because of CCC's scorched-earth discovery demands. CCC has served three sets of document requests on Tractable, totaling 81 requests for production; demanded that Tractable add 3 custodians to its list (which already included 12 custodians); argued for production of documents related to a product that has no relevance here (Tractable's Review product that does not perform any of the same functions as an estimating system like CCC ONE); and is continuing in its attempt to broadly open discovery into areas that have absolutely no relationship to Tractable's access to CCC ONE through the JA Appraisal license. At the same time, CCC stonewalls Tractable's reasonable and proportionate requests for discovery directly relevant to the claims and defenses in this case. As a result of these tactics, Tractable has produced more than 10 times the documents CCC has produced and included 2.5 times the number of custodians used by CCC, despite the fact that CCC is the much larger entity. CCC's refusal to comply with Tractable's relevant request to add two additional custodians is unreasonable; CCC should accordingly be ordered to add Ramamurthy and Callaghan as document custodians and to pay Tractable's fees associated with bringing this motion.

## CONCLUSION

For the reasons stated herein, Tractable respectfully requests the court grant its motion to compel and order CCC to add Githesh Ramamurthy and Barrett Callaghan as document custodians.

DATED: June 13, 2023

Respectfully submitted,

/s/ Lazar P. Raynal
Lazar P. Raynal (Bar No. 6199215)
Michael A. Lombardo (Bar No. 6334886)
KING & SPALDING LLP
110 N. Wacker Drive, Suite 3800

Chicago, IL 60606
Telephone: (312) 995-6333
Facsimile: (312) 995-6330
lraynal@kslaw.com
mlombardo@kslaw.com

Julia C. Barrett (*pro hac vice*)
KING & SPALDING LLP
500 West 2nd Street, Suite 1800
Austin, Texas 78701
Telephone: (512) 457-2000
jbarrett@kslaw.com

*Counsel for Defendant Tractable Inc.*

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 37.2**

Pursuant to Local Rule 37.2 and Judge Cox's standing order regarding discovery motions, the parties met and conferred by video conference on May 22, 2023 at 1:00 P.M. CST regarding Tractable's request that CCC add Githesh Ramamurthy and Barrett Callaghan as document custodians. Julia Barrett and Michael Lombardo participated on behalf of Tractable. Stephen O'Donohue and Wilson Boardman participated on behalf of CCC. The parties continued to exchange written correspondence on this issue following the parties' May 22, 2023 video conference. On June 5, 2023, CCC's counsel confirmed in writing that CCC was standing on its position taken during the May 22, 2023 videoconference, CCC would not add Ramamurthy and Callaghan as custodians, and that the parties reached impasse on this issue. Accordingly, despite the parties' good faith efforts, the parties were unable to reach a resolution.

/s/ Michael A. Lombardo
_____
Michael A. Lombardo

**CERTIFICATE OF SERVICE**

I hereby certify that on June 13, 2023, I caused the foregoing to be filed using the Court's electronic filing system which provides service to all counsel of record.

>                     */s/ Lazar P. Raynal*
>                     Lazar P. Raynal