**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **CCC INTELLIGENT SOLUTIONS INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 1:18-cv-07246** |
| **v.** | ) | |
| | ) | **Hon. LaShonda A. Hunt** |
| **TRACTABLE INC.,** | ) | |
| | ) | **Hon. Susan E. Cox** |
| **Defendant.** | ) | |

**CCC INTELLIGENT SOLUTIONS INC.'S OPPOSITION TO
<u>TRACTABLE INC.'S MOTION TO COMPEL</u>**

## TABLE OF CONTENTS

| | | | |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | BACKGROUND | | 3 |
| | A. | This Litigation Arose from Tractable's Illicit Access to and Use of CCC ONE | 3 |
| | B. | The "JA Appraisal" License Was Fraudulent | 3 |
| | C. | ███████████████████████████████████████ | 5 |
| | D. | ███████████████████████████████████████ | 5 |
| | E. | CCC's Protocol for Searching Electronically Stored Information Already Includes As Custodians the Key Players from CCC's Investigation | 6 |
| | F. | Tractable Rejected CCC's Proposed Compromise in Favor of Seeking Disproportionate Discovery into CCC's Executives | 7 |
| III. | LEGAL STANDARD | | 8 |
| IV. | ARGUMENT | | 8 |
| | A. | The Requested Documents Are Irrelevant to This Case or Otherwise Duplicative of Other Custodial Documents. | 9 |
| | B. | Tractable's Request Is Unduly Burdensome and Disproportionate to the Needs of the Case | 14 |
| V. | CONCLUSION | | 15 |

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Baxter Int'l, Inc. v. AXA Versicherung*,
  320 F.R.D. 158 (N.D. Ill. 2017) ..................................................................................................14

*CCC Info. Servs. Inc. v. Tractable Inc.*,
  No. 18 C 7246, 2019 WL 2011092 (N.D. Ill. May 7, 2019) ................................................. 1, 3

*CCC Intelligent Sols. Inc. v. Tractable Inc.*,
  36 F.4th 721 (7th Cir. 2022) ................................................................................................. 1, 3

*Century Link Commcn's LLC v. Peerless Network, Inc.*,
  2020 WL 11647732 (N.D. Ill. Sept. 18, 2020) ............................................................................8

*Charvat v. Travel Servs.*,
  110 F. Supp. 3d 894 (N.D. Ill. 2015) .........................................................................................11

*City of Chicago v. DoorDash, Inc.*,
  No. 1:21-cv-05162, 2023 WL 3654259 (N.D. Ill. May 25, 2023).............................................11

*Dyson, Inc. v. Sharkninja Operating LLC*,
  2016 WL 1613489 (N.D. Ill. Apr. 22, 2016) ..................................................................... 13, 14

*Liberty Mut. Ins. Co. v. Gemma*,
  2022 WL 1689508 (W.D. Pa. May 26, 2022)......................................................................9, 11

*PsyBio Therapeutics, Inc. v. Corbin*,
  2021 WL 4459527 (N.D. Ill. Sept. 29, 2021) ..........................................................................8, 9

*Ristvedt-Johnson, Inc. v. Brandt, Inc.*,
  805 F. Supp. 549 (N.D. Ill. 1992) ...................................................................................8, 9, 10

*United States v. Farley*,
  11 F.3d 1385 (7th Cir. 1993) .......................................................................................................8

*Viamedia, Inc. v. Comcast Corp.*,
  951 F.3d 429 (7th Cir. 2020) .....................................................................................................10

*Young v. Verizon's Bell Atl. Cash Balance Plan*,
  615 F.3d 808 (7th Cir. 2010) .......................................................................................................8

**RULES**

Fed. R. Civ. P. 26(b)(1)......................................................................................................................8

I.  INTRODUCTION

Tractable's attempt to remake this case into an antitrust suit against CCC is as baseless as its continued attempts to legitimize the "JA Appraisal" alias under which it gained access to CCC's software. Evidence produced to date confirms that (1) Tractable's ███████████ ████████ (2) Tractable ████████████████████ ████████ (3) Tractable used ████████████████ ██████ ; and (4) Tractable CEO Alex Dalyac and CTO Razvan Ranca █████████████ . In sum, *Tractable* used unlawful tactics to "catch up [to CCC] by fraud"—not the other way around. Indeed, both this Court and the Seventh Circuit have already concluded as much. *CCC Intelligent Sols. Inc. v. Tractable Inc.*, 36 F.4th 721, 722 (7th Cir. 2022); *CCC Info. Servs. Inc. v. Tractable Inc.*, No. 18 C 7246, 2019 WL 2011092, at *3 (N.D. Ill. May 7, 2019).

Faced with having to produce its own senior executives as witnesses, Tractable moves to compel CCC to collect, review, and produce all responsive documents from CCC's current CEO, Githesh Ramamurthy, and former Executive VP, Barrett Callaghan, presumably as a pretext to later depose CCC's "apex" witnesses. Tractable argues that their documents are relevant and that CCC lacks a basis to object to the collection and production of their documents. Both arguments are meritless, and the motion to compel should be denied.

*First*, Tractable's primary relevance argument rests on its "unclean hands" defense, which, to be viable, would require an immediate and necessary connection to the asserted claims—here, Tractable's fraud, trade secret misappropriation, and Lanham act violations. Tractable has not shown ***any*** such connection between the alleged ordinary course business activities of Messrs. Ramamurthy and Callaghan, on the one hand, and Tractable's misconduct, on the other hand. Many of the documents cited by Tractable actually post-date CCC's complaint, and thus they could not have led to Tractable's conduct. And all these documents show is that CCC's executives

1

responded to Tractable's success by continuing to improve CCC's own products – the essence of competition. As such, none of the documents identified by Tractable warrant an expansive fishing expedition into the files of CCC's current CEO and former Executive VP. Tractable's other arguments similarly fail because they are either unsupported or show that the documents Tractable seeks have (at most) minimal relevance and that their collection and production would be disproportionate to the needs of the case.

*Second*, adding these senior executives as custodians would require review of ~11,801 documents totaling 91,995 pages plus 3,754 additional Excel files—a process that would be especially time-consuming here because the documents belong to two high-level CCC executives, including CCC's CEO. Adding Messrs. Ramamurthy and Callaghan as custodians to identify potentially relevant documents would provide little (if any) value, making Tractable's request unduly burdensome and disproportionate to the needs of the case.

*Third*, CCC has already offered a reasonable compromise to resolve this dispute. Before filing its motion, Tractable argued that the requested documents might show that Messrs. Ramamurthy and Callaghan knew that Tractable ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. In response, CCC offered to search for documents from both executives relating to *that* relationship. Tractable refused and offered no reasonable compromise, revealing its true goal of fishing for something to detract from Tractable's own misconduct. CCC is still prepared to conduct the proposed compromise search if the Court considers that search to be reasonable. Otherwise, CCC respectfully requests that the Court deny Tractable's motion.

## II. BACKGROUND

### A. This Litigation Arose from Tractable's Illicit Access to and Use of CCC ONE

In 2017, an individual purporting to be "Jason Chen" contacted CCC, claimed to represent an independent appraiser company called "JA Appraisal," and secured a license to CCC's proprietary software, including the CCC ONE Appraisal Platform and CCC ONE Estimating (collectively, "CCC ONE"). (First Am. Compl. ¶¶ 30–32.) An investigation revealed that "Jason Chen" was an alias for Xing Xin (Tractable's former head of product development), Tractable had falsely held itself out as "JA Appraisal" to obtain unauthorized access to CCC ONE, and Tractable created test files to try replicating (at least in part) CCC ONE's proprietary information and algorithms. (*Id.* ¶¶ 37–38, 53–62, 66.) When CCC learned of this conduct, it filed this action.

### B. The "JA Appraisal" License Was Fraudulent

Tractable cannot credibly argue that "JA Appraisal" was a legitimate "doing business as" name. ***First***, Tractable has admitted that (1) it never informed CCC that "JA Appraisal" was a pseudonym for Tractable (Dkt. No. 123 ("Answer"), ¶ 39); (2) "JA Appraisal" was not registered as a d/b/a name for Tractable (*id.* ¶ 37); and it never transmitted a collision-repair estimate to an insurance carrier (*id.* ¶ 65), which is the business of legitimate independent appraisers. ***Second***, Judge Gettleman and the Seventh Circuit have already rejected Tractable's argument. *See CCC Info. Servs.*, 2019 WL 2011092 (characterizing "JA Appraisal" as a "false company"); *CCC*, 36 F.4th at 722-24. According to the Seventh Circuit, "[a]s far as we can see, however, 'JA Appraisal' is not known to the public, or the trade, as a name under which Tractable does business. Asked at oral argument whether CCC could have discovered that Tractable uses the name 'JA Appraisal,' counsel for Tractable acknowledged that this was not possible." *Id.* at 723 (referring to "JA Appraisal" as "Tractable's own little secret.").

3

***Third***, discovery has confirmed that t█████████████████████ ███████ Numerous documents produced by Tractable show that ████████ ███████████████████████████████████████████████████████████ ████████████████████████████████. *See, e.g.,* Ex. 1, TRACTABLE00026740 at 741 (Mr. Dalyac, Tractable's CEO, discusses "███████████████████████████████ Ex. 2, TRACTABLE00114688 (Mr. Xin and another Tractable employee discussing how ██ ███████████████████████████████████████████████████████████ ████████; Ex. 3, TRACTABLE00115221 (in response to how Tractable was ████████ ████████████████████," a Tractable employee noted it "████████████ █████████████████████████████"); Ex. 4, TRACTABLE00115750 (a former Tractable engineer "sent you [another employee] a forwarding request for jaappraisalco@gmail.com so you get all Xing's dodgy emails"); Ex. 5, TRACTABLE00115714 (Nov. 1, 2018 chat █████████████, with one employee noting that he "████████ █████████████████" and another responding "████████████████████████ ████████"). 

Tractable even used the same fraudulent tactic to a█████████████████ █████████████ *See, e.g.,* Ex. 6, TRACTABLE00001360 (Tractable "ha[s] a Mitchell license under JA Appraisal too" and "at some point probably best to cancel it and do it properly."); Ex. 7, TRACTABLE00004678 (Jan. 30, 2018 email █████████████████████ ████████). Tractable cannot cite to a single document indicating that "JA Appraisal" ever operated as a legitimate independent appraiser.



4

▇ ▇

Tractable sought to develop its products by ▇

▇

▇. Tractable even offered a ▇ for ▇ Ex. 8, TRACTABLE00002780 (Confluence page titled "▇

▇"). Tractable engineers then ▇. *See, e.g.,* Ex. 9, TRACTABLE00114418 (Nov. 7, 2017 discussion of "▇

▇"); Ex. 10 TRACTABLE00114882 (a former Tractable engineer sent a "▇" folder with ▇

▇

Tractable also explored other methods of ▇

▇" Ex. 11, TRACTABLE00000470. ▇," Ex. 12, TRACTABLE00000018, which required Tractable to create a "▇

▇

▇" Ex. 13, TRACTABLE00002334. Tractable ▇

▇ Ex. 13, TRACTABLE00002334; Ex. 14, TRACTABLE00002037.

▇ ▇

Near the end of 2017, ▇

▇ which were supposedly designed "▇. *See* Ex. 15, TRACTABLE00000152,

5

at Slide 3.

*See id.* at Slide 6; Ex. 16, Tractable Resp. to Interrog. 12 ("

"). 

. Ex. 17, Tractable Apr. 10, 2023 Ltr., at

1-2 (identifying "

" as one of the "

"). 

Ex. 13, TRACTABLE00002334

This fraudulent scheme by Tractable was far from the

legitimate activity of an "independent appraiser d/b/a JA Appraisal."

> **E.  CCC's Protocol for Searching Electronically Stored Information Already Includes As Custodians the Key Players from CCC's Investigation**

CCC's ESI search protocol already includes the employees who (1) were instrumental to CCC's internal investigation regarding Tractable's conduct, (2) communicated with individuals purporting to be "JA Appraisal," and (3) communicated with other Tractable employees. Contrary to Tractable's speculation about Messrs. Ramamurthy and Callaghan, documents produced by CCC already show that its investigation started on October 26, 2018, 

." Ex. 18, CCCIS_0004593, at 594. Mr. Nelson investigated and "found tractable using our system… under the name JA Appraisal." Ex. 19, CCCIS_0047361. Georgiana Jones assisted by pulling materials such as CCC's customer

6

service logs with "JA Appraisal." Ex. 20, CCCIS_0005178. Messrs. Urban, Bliss, Nelson, and Ms. Jones are all CCC custodians whose documents are being produced.

In addition, because CCC employee Marc Fredman met with Mr. Dalyac (Tractable's CEO) on multiple occasions before the start of this litigation, CCC included Mr. Fredman as a custodian—even though Mr. Dalyac withheld Tractable's fraud from Mr. Fredman. Ex. 21, CCCIS_0005342; Ex. 22, CCCIS_0005359; Ex. 23, CCCIS_0005394, Ex. 24, CCCIS_0005416.

### F. Tractable Rejected CCC's Proposed Compromise in Favor of Seeking Disproportionate Discovery into CCC's Executives

On April 17, 2023, Tractable asked CCC to add three custodians—Messrs. Ramamurthy (CCC's CEO), Bliss (CCC's Vice President of Product Management), and Callaghan (CCC's former Executive VP). *See* Ex. 25, Apr. 17, 2023 Barrett Email to O'Donohue. Tractable argued that Mr. Bliss had received reports from customers expressing confusion about Tractable's relationship with CCC, and that Messrs. Ramamurthy and Callaghan monitored Tractable's progress in the market. *Id.* Tractable argued that Messrs. Ramamurthy's and Callaghan's documents would be relevant to Tractable's unclean hands defense. CCC agreed to add Mr. Bliss, but declined to add Messrs. Ramamurthy and Callaghan. *See* Ex. 26, May 1, 2023 O'Donohue Email to Barrett. CCC explained that none of the documents Tractable had cited to support their unclean hands argument, in fact, suggested anything of the sort, so Tractable could not justify the additional discovery. Counsel met and conferred on May 22, 2023, during which time Tractable's counsel argued that Messrs. Ramamurthy and Callaghan's files might also contain documents that might show CCC's knowledge of Tractable's ███████████████. *See* Ex. 27, June 2, 2023 O'Donohue Email to Barrett. Because some of the documents Tractable relied on did mention ███████, CCC offered to search for additional documents referencing the ███████

7

*See id.* Tractable rejected that proposal, however, and insisted that CCC add Messrs. Ramamurthy and Callaghan as full custodians. *See* Ex. 28, June 2, 2023 Barrett Email to O'Donohue.

### III. LEGAL STANDARD

Fed. R. Civ. P. 26(b)(1) allows discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." *Century Link Commcn's LLC v. Peerless Network, Inc.*, 2020 WL 11647732, at *1 (N.D. Ill. Sept. 18, 2020). Despite this liberal standard, a "proponent of a motion to compel discovery bears the initial burden to prove that the information sought is relevant." *PsyBio Therapeutics, Inc. v. Corbin*, 2021 WL 4459527, at *1 (N.D. Ill. Sept. 29, 2021). Without such a showing, discovery is unwarranted. *See United States v. Farley*, 11 F.3d 1385, 1390 (7th Cir. 1993).

The "unclean hands" defense under federal common law first requires the defendant to prove "unconscionable behavior" by the plaintiff. *Ristvedt-Johnson, Inc. v. Brandt, Inc.*, 805 F. Supp. 549, 556 (N.D. Ill. 1992); *see Young v. Verizon's Bell Atl. Cash Balance Plan*, 615 F.3d 808, 822 (7th Cir. 2010) (defendant "did not attempt to deceive [pensioners] regarding their benefit rights"). Second, the defendant must show an "immediate and necessary relationship" between that unconscionable behavior and the dispute. *Ristvedt-Johnson, Inc.*, 805 F. Supp. at 555.

### IV. ARGUMENT

Tractable's motion is a clear attempt to distract the Court from its own fraudulent scheme. Tractable hopes that by digging through the files of CCC's CEO and former Executive VP, Tractable will find something—anything—to excuse its own misconduct. But the documents Tractable cites do not support its motion; Tractable has not shown that CCC's executives' files are relevant, and certainly not so relevant to justify the burden imposed on CCC associated with adding these "apex" witnesses as custodians.

8

### A. The Requested Documents Are Irrelevant to This Case or Otherwise Duplicative of Other Custodial Documents.

The party moving to compel discovery bears the initial burden of showing the relevance of the requested discovery, *PsyBio Therapeutics*, 2021 WL 4459527, at *1. Tractable has failed to meet that burden here. Tractable argues that Messrs. Ramamurthy's and Callaghan's documents are relevant to Tractable's "unclean hands" defense, trade secret misappropriation, damages, and CCC's internal investigation into Tractable's conduct. None of these arguments has any merit.

***Unclean Hands.*** To begin, Tractable argues that information regarding "CCC's monitoring of Tractable's market activity," its "attempts to compete with Tractable," and its "development of an AI product" are relevant to Tractable's "unclean hands" defense. (Mot. at 2-3.) Not so. A party seeking to compel discovery based on alleged relevance to an "unclean hands" defense "must meet exacting legal thresholds," including by showing "some unconscionable act of one coming for relief [that] has an immediate and necessary relation to the equity that he seeks in respect of the matter in litigation." *Liberty Mut. Ins. Co. v. Gemma*, 2022 WL 1689508 (W.D. Pa. May 26, 2022) (denying motion to compel based on irrelevance to unclean hands). Tractable does not even attempt to connect the discovery sought here to the elements of the defense. Tractable does not explain how CCC's alleged conduct, even if taken as true, constitutes "unconscionable behavior." Furthermore, Tractable does not even attempt to argue that the normal business activities reflected in the cited documents have any connection whatsoever to ***Tractable's*** dishonest and fraudulent behavior, nor could it.

"Unconscionable behavior" typically equates to fraud or other bad-faith misconduct. *See, e.g., Ristvedt-Johnson, Inc.*, 805 F. Supp. at 556 (unconscionable conduct under federal law is when "a party bribed a witness to suppress evidence [or] committed a perjurious act [or] deliberately disclosed a fictitious inoperable mode to practice a patent-in-suit," not when the

9

conduct is "garden-variety inequitable conduct without blatant willful fraud"). Here, the documents Tractable cites show that CCC monitored Tractable's product development and partnerships with third parties, and continued to improve its own products in response. (*See* Mot. at 2-3, Exs. 2-11, 19 (showing CCC monitoring developments relating to Tractable and other competitors in a customary manner).) CCC wanted to "win," "accelerate and deliver," "go to market quickly," "[hire] more talent with deep learning skills," all to ultimately provide a product that "could be a game changer for all customers." (*See* Mot. at 2-3, Exs. 13-18.) That is the essence of procompetitive behavior. *See Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 452 (7th Cir. 2020) ("procompetitive conduct . . . includes innovation resulting in superior products."). None of the documents shows any effort to prevent Tractable from competing. Indeed, the document Tractable relies most heavily on shows that CCC was entirely focused on " ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ . *See id.*; *see also id.*, Ex. 18 (showing Mr. Ramamurthy stating ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" while noting that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮). Efforts to understand and beat the competition do not constitute the types of conduct that rise to the level of unconscionability. *See Viamedia*, 951 F.3d at 456 ("[T]he law is not concerned with conduct with may benefit consumers by making a better product or service available.") (internal quotations omitted).

Moreover, even if Tractable could point to unconscionable behavior by CCC, Tractable does not even attempt to argue that any of CCC's competitive activities had an "immediate and necessary relationship" to Tractable's fraud—the second element of an "unclean hand" defense. *Ristvedt-Johnson, Inc.*, 805 F. Supp. at 556. At best, Tractable claims that "[t]his discovery is relevant to why and how Tractable made the decision to obtain the CCC ONE license under the

10

d/b/a JA appraisal." (Mot. at 2.) But that argument is nonsensical. **CCC's** CEO and former Executive VP would not have any information about why **Tractable** engaged in the conduct at issue. Rather, Tractable has that information and it tells a very different story. *See e,g.,* Ex. 29, TRACTABLE00026774 (Mr. Dalyac stating that " ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"); Ex. 30, TRACTABLE00026834 at 835 (Mr. Dalyac explaining that "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.").

In classic victim-blaming fashion, Tractable's motion attempts to shift the focus to CCC. This attempt fails. There is no evidence that *CCC* somehow made Tractable engage in fraud and theft, as Tractable suggests. Many of the documents post-date this litigation and thus are dated well after Tractable fraudulently accessed CCC's system, and they all show robust competition, as explained above. (*See* Mot., Exs. 11, 15-18.) Additionally, CCC was not Tractable's only victim– Tractable also ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" *See supra* at 4. Thus, Tractable has not shown that documents from the files of CCC's CEO and former Executive VP are relevant. *See Liberty Mut. Ins. Co.*, 2022 WL 1689508 at *4-5 (discovery into the alleged unlawfulness of a contract was irrelevant to unclean hands defense).

**CCC's Litigation.** Tractable also claims that the requested files may contain evidence of CCC's "motivation" for filing this lawsuit. (Mot. at 2.) But even if so, CCC's motives are irrelevant. *See Charvat v. Travel Servs.*, 110 F. Supp. 3d 894, 898 (N.D. Ill. 2015) (denying motion to compel production of documents relating to alleged "motivation for filing this action"). Furthermore, any correspondence between CCC's executives and its counsel discussing the litigation would be privileged. *See City of Chicago v. DoorDash, Inc.*, No. 1:21-cv-05162, 2023 WL 3654259 at *3 (N.D. Ill. May 25, 2023) (finding a request to review more than 9,000 emails

11

unduly burdensome because of the "privileged nature of most communications" falling within the requested scope of discovery). In any event, CCC has already produced documents from numerous custodians showing how CCC discovered Tractable's conduct and began its investigation, which ultimately led to this lawsuit. Ex. 18, CCCIS_0004593 at 594 (Ron Nelson learning "███████████████████████████████████████████████████████████"); Ex. 19, CCCIS_0047361 (Mr. Nelson explaining that he "found tractable using our system… under the name JA Appraisal.").

**_Trade Secret Misappropriation._** Tractable argues that Messrs. Ramamurthy's and Callaghan's documents related to CCC's AI development might show that CCC lacked "useable algorithms and software for its AI products at the time that Tractable obtained the license to CCC ONE," thereby supporting "Tractable's defense that it did not misappropriate CCC's trade secrets." (Mot. at 8.) The Court should reject this misdirection. CCC does not allege that Tractable misappropriated elements of CCC's AI products. CCC's misappropriation claim is that Tractable stole trade secrets from the CCC ONE platform. (First Am. Compl. ¶¶ 95-117.) CCC's progress in developing its AI products accordingly has no bearing on Tractable's trade secret misappropriation. *See id.* However, to the extent the history and timeline of the parties' product development efforts are relevant for context, CCC has produced sufficient documents reflecting its own, independent development of artificial intelligence technology and related products. *See, e.g.*, Ex. 31, CCCIS_0005097; Ex. 32, CCCIS_0005119; and Ex. 33, CCCIS_0006902.

**_Damages._** Tractable also claims that the requested files might contain documents relating to CCC's business opportunities and lost sales during the applicable time period, and thus may be relevant to damages. (*See* Mot. at 9.) But the CEO of a multi-billion dollar corporation is hardly the appropriate source of basic damages discovery, especially when other more appropriate (and proportional) sources have been made available. Here, damages-related documents have already

been collected from other custodians (Messrs. Fredman and Urban) and documents reflecting any other lost business opportunities or sales that CCC intends to rely on either have been or will be produced, making the documents Tractable is seeking duplicative.

***CCC's Internal Investigation.*** Finally, Tractable argues that Messrs. Ramamurthy and Callaghan have "personal knowledge" of the internal investigation into Tractable's conduct that gave rise to this litigation. That argument is factually wrong and similarly unpersuasive. CCC's documents make clear that Messrs. Nelson, Bliss, and Urban, who are all custodians, were responsible for kickstarting and running the investigation with assistance from Ms. Jones (also a custodian). *See supra*, at 6. The fact that Mr. Callaghan's name appears on a single email, dated **before** CCC learned that Tractable had gained access to CCC ONE, reporting on rumors regarding Tractable's products, *see* (Mot. at 3 (citing Ex. 19)), proves nothing. That document is unrelated to CCC's investigation into Tractable's fraud. Moreover, to the extent Messrs. Ramamurthy or Callaghan have custody over documents relating to CCC's internal investigation, those documents would be duplicative of documents that CCC has already produced from other employees' files. Their minimal relevance therefore is outweighed by the disproportionality and undue burden that would result from adding CCC's executives as full custodians. *See infra*, at 15.

Tractable's attempt to compare its motion to the motion this Court granted in *Dyson, Inc. v. Sharkninja Operating LLC* is misplaced. In *Dyson*, the Court granted the movant's request to add an executive as a custodian because the executive was intricately involved in the conduct that gave rise to the lawsuit. 2016 WL 1613489, at *2 (N.D. Ill. Apr. 22, 2016). He was "the named inventor on the patents," and "several notebooks produced in [the] case contain[ed] [his] drawings," suggesting that he had a "hands-on role" in developing the products at issue. *Id.* That is not the case here. Neither Messrs. Ramamurthy nor Callaghan played a "hands-on role" in the

13

underlying conduct at issue in this litigation (namely, Tractable's fraud, trade secret misappropriation, and Lanham Act violations). As such, Tractable's request is the type of "vexatious discovery tactic" that this Court cautioned against in *Dyson*. *Id.* at *7 (distinguishing the facts in Dyson from "a case where one party is engaging in vexatious discovery tactics by seeking the deposition of an executive far removed from the facts of the case.").

In sum, the requested documents are either irrelevant to this litigation or duplicative of documents that have already been collected from other custodians, and Tractable's motion to compel should be denied for failure to establish relevance.

### B. Tractable's Request Is Unduly Burdensome and Disproportionate to the Needs of the Case.

In addition, requiring CCC to search through and produce the files of Messrs. Ramamurthy and Callaghan would impose an undue burden on CCC. *See Baxter Int'l, Inc. v. AXA Versicherung*, 320 F.R.D. 158, 166 (N.D. Ill. 2017). *First*, it would result in an increase of approximately 11,801 documents consisting of approximately 91,995 pages of email communications and attachments plus an additional 3,754 Excel files to CCC's documents–approximately 9,964 from Mr. Ramamurthy and 1,835 from Mr. Callaghan. By contrast, CCC's proposed compromise would result in 3,415 documents for both individuals—underscoring the reasonableness of CCC's offer.[1]

*Second*, the fact that such a high number of documents comes from Messrs. Ramamurthy and Callaghan—two of CCC's highest-level executives—would significantly increase the

---

[1] Tractable attempts to undermine this concern by comparing its current document production count to CCC's. (Mot. at 10.) However, Tractable's comparison is misleading because of the 378,045 documents that Tractable has produced to date, over 246,000 consist of .TIF files with car part diagrams, over 81,000 comprise .csv files containing five lines of generated code each, and over 10,000 consist of images of damaged cars. Moreover, an asymmetry between the parties' document productions is to be expected in a case such as this one, where Tractable is facing claims of fraud, trade secret misappropriation, and Lanham Act violations and CCC is not.

14

logistical and financial burdens associated with conducting such a review. Reviewing a CEO's documents is a highly sensitive process, and requiring such a review would be disproportional to the case where, as here, neither executive was involved in the underlying conduct and they are highly unlikely to possess relevant, non-duplicative documents.

## V.     CONCLUSION

For the reasons set forth above, the Motion to Compel should be denied, and the Court should grant CCC any other relief it deems just and equitable.

Dated: June 21, 2023

Respectfully submitted,

/s/ Matthew W. Walch
Mark S. Mester (Bar No. 6196140)
Matthew W. Walch (Bar No. 6226308)
Terra Reynolds (Bar No. 6278858)
Kathryn A. Running (Bar No. 6330369)
Connor Wheeler (Bar No. 6342792)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
T: +1.312.876.7700; F: +1.312.993.9767
mark.mester@lw.com
matthew.walch@lw.com
terra.reynolds@lw.com
kathryn.running@lw.com
connor.wheeler@lw.com

Adam M. Greenfield (Bar No. 6292915)
Jason Burt (*pro hac vice*)
Wilson P. Boardman (Bar No. 6343030)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
T: +1.202.637-2200; F: +1.202.637.2201
adam.greenfield@lw.com
jason.burt@lw.com
wilson.boardman@lw.com

Stephen D. O'Donohue (*pro hac vice*)
LATHAM & WATKINS LLP

1271 Avenue of the Americas
New York, NY 10220
T: +1.212.906.1200; F: +1.212.751.4864
stephen.odonohue@lw.com

*Counsel for Plaintiff CCC Intelligent Solutions Inc.*

**CERTIFICATE OF SERVICE**

    I, Matthew W. Walch, hereby certify that on June 21, 2023, I caused the foregoing to be filed using the Court's electronic filing system which provides service to all counsel of record, and separately served all sealed filings to counsel of record via email.

/s/ *Matthew W. Walch*
Matthew W. Walch

17