IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CCC INTELLIGENT SOLUTIONS INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:18-cv-07246 |
| v. | ) | |
| | ) | Hon. LaShonda A. Hunt |
| TRACTABLE INC., | ) | Hon. Keri L. Holleb Hotaling |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT TRACTABLE INC.'S
OPPOSED MOTION FOR LEAVE TO FILE AMENDED ANSWER AND
COUNTERCLAIMS**

Pursuant to Federal Rule of Civil Procedure 15(a), Defendant Tractable Inc. ("Tractable") hereby respectfully moves the Court for leave to file an amended answer to assert counterclaims against CCC Intelligent Solutions Inc. ("CCC").

## INTRODUCTION

CCC dominates the Estimatics market in the United States' auto insurance industry—controlling approximately 85% of the market. While Tractable suspected that CCC engaged in unlawful, anticompetitive behavior to achieve this market dominance, at the time Tractable filed its answer on February 8, 2023, CCC had produced almost no documents, and Tractable therefore did not have a sufficient factual basis to bring antitrust counterclaims. Once CCC started producing documents, however, the true scope of CCC's anticompetitive behavior began to come to light. CCC did not produce these documents willingly. Tractable was forced to compel CCC to produce documents from its executives revealing CCC's anticompetitive conduct. CCC made its court-ordered productions of its executives' custodial documents between July 31, 2023 and August 28, 2023. These documents—which show that ██████████████████████████████████ ██████████████████████████████████—provided Tractable with the necessary good-faith basis to bring antitrust claims against CCC.

Shortly after CCC's August 2023 production, the parties began actively pursuing settlement discussions, which resulted in an agreed, and Court-ordered, stay of discovery until March 4, 2024. Now that the stay is lifted, Tractable moves this Court for leave to amend its answer to assert antitrust counterclaims against CCC pursuant to Rule 15(a)'s liberal standard governing the amendment of pleadings. Tractable's proposed antitrust counterclaims are attached as Exhibit A[1]

---

[1] Tractable has also included as Exhibit B a combined document containing its existing Answer followed by the proposed counterclaims. *See* Barret Decl. Ex. B.

to the Declaration of Julia C. Barrett ("Barrett Decl.") filed concurrently with this motion. For the reasons that follow, Tractable's motion should be granted.

## FACTUAL BACKGROUND

### I. Procedural History

CCC initiated this action on October 30, 2018, alleging that Tractable violated state and federal law in connection with its use of a license for CCC's software under a doing-business-as ("d/b/a") name. (Dkt. 1.) CCC amended its complaint on January 10, 2019. (Dkt. 31.) CCC's amended complaint asserted seven claims against Tractable for violation of the federal Computer Fraud and Abuse Act, violation of state and federal trade secret law, trademark infringement, false designation of origin, violation of Illinois unfair competition law, and common law fraud. (*Id.*)

On December 20, 2018, Tractable moved to compel arbitration pursuant to the arbitration clause in the licensing agreement for CCC's software, which was followed by an appeal to the Seventh Circuit. (Dkts. 21 and 47.) Following multiple Covid-19-related delays and an extensive period before the Seventh Circuit mediator, the Seventh Circuit ultimately heard the matter and issued its Mandate regarding the arbitrability of CCC's claims on June 28, 2022. (Dkt. 82.)

Discovery did not begin until September 22, 2022. (Dkt. 117 at 1-2.) That same day, Tractable filed a motion to dismiss CCC's Computer Fraud and Abuse Act (Count One) and Illinois Deceptive Trade Practices Act (Count Six) claims. (Dkt. 100.) The Court granted Tractable's motion to dismiss Counts One and Six on January 25, 2023. (Dkt. 122.) Tractable answered the remainder of CCC's first amended complaint on February 8, 2023. (Dkt. 123.) Tractable's answer included as its first affirmative defense that CCC acted with unclean hands, and alleged, *inter alia*, that CCC engaged in anticompetitive and exclusionary tactics to maintain a dominant position in the market, including through exclusionary practices with its customers. (*Id.* at 22.) At the time Tractable filed its answer, Tractable did not have access to any of CCC's agreements with its data

providers or insurance customers. Nor did Tractable have access to CCC's internal documents detailing how ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. To this day, CCC has refused to produce the contracts themselves, continuing to hide the full scope of its anticompetitive conduct.

## II. Discovery Reveals CCC's Anticompetitive Conduct

After discovery began in September 2022, CCC consistently and aggressively blocked Tractable's attempts to acquire basic information relevant to CCC's claims and Tractable's affirmative defenses. CCC's first and second document productions in November 2022 consisted of only 384 total documents. (Dkt. 117 at 2.) By February 2023, CCC had produced only 1,057 documents in total. In contrast, Tractable had produced 15,391 documents by that time—15 times the number of documents produced by CCC. (Dkt. 124 at 3.) CCC did not make any substantial production of documents until April 2023.[2] Dkt. 130 at 13.

CCC's minimal document production still began to reveal CCC's anticompetitive conduct. Specifically, CCC produced its agreement with Hearst Business Publishing, Inc. ("Hearst") on March 17, 2023. Barrett Decl., ¶ 4. Hearst is the source of CCC's Estimatics database—which CCC claims ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Once produced, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.*, Ex. C at CCCIS_0010983. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ exclusive dealing generally requires "contracts of sufficient duration to

---

[2] Thousands of the documents produced by CCC were missing crucial metadata when produced, making them difficult to search in any document management software. Tractable was still missing metadata for thousands of CCC-produced documents as of July 2023.

prevent meaningful competition by rivals[.]" *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 271 (3d Cir. 2012).

Not only did CCC attempt to stonewall Tractable's discovery through its refusal to produce documents for several months, CCC's initial interrogatory responses offered nothing but vague and shifting descriptions of the "trade secrets" it alleged that Tractable purportedly misappropriated in this case. For instance, on November 17, 2022, in response to Tractable's request for CCC to identify each trade secret it alleges Tractable misappropriated, CCC simply summarized the CCC ONE product in general terms, parroting the vague allegations of the Complaint. Barrett Decl., ¶ 5, Ex. D at 18-20. This answer provided Tractable with no information regarding the specific trade secrets CCC alleged were at issue. Then, after months of discovery and finding no evidence that Tractable misappropriated any of CCC's trade secrets through Tractable's access to CCC ONE via its license, CCC's theory shifted to argue that ███████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████ *See* Barrett Decl. ¶ 6, Ex. E at 36, 39-40.

CCC's shift in theory is meritless, but Tractable nonetheless pursued discovery related to CCC's new position, including to press CCC for its contracts with its insurers. Those contracts are directly at issue in this dispute, but CCC still refused to produce any of its agreements with insurance companies outside of its agreements with ███████████ Once again, CCC's production of its master agreement with ███████████ ██████ on August 14, 2023, showed ███████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████ *Id.*, ¶ 7, Ex. F

4

█████████████████████████████ To date, CCC has refused to produce any agreement between CCC and any other insurer in a continuing effort to thwart Tractable from learning the true scope of CCC's anticompetitive conduct.

Despite CCC's refusal to produce its agreements with its insurance customers, evidence of CCC's anticompetitive conduct nonetheless emerged through discovery from CCC's executives—including CCC's Chief Executive Officer, Githesh Ramamurthy ("Ramamurthy"). These documents demonstrate CCC's ███████████████████████████████████ ███████ (Dkt. 134 at 2-4.) Indeed, documents CCC produced starting in mid-2023 show that CCC's executives "████████████████████████████████████████████ ████████████████████████ with Ramamurthy responding that CCC ████████ ██████████ (*Id.* at 2.) Based on these documents, Tractable sought to add Ramamurthy and another former executive, Barrett Callaghan as custodians. True to form, CCC refused, and Tractable was forced to file a motion to compel, which CCC vigorously opposed. (Dkt. 134, 141.) The Court granted the motion to compel on June 28, 2023. (Dkt. 144.) CCC produced documents from the newly added custodians from July 31, 2023 - August 28, 2023 ("August Production"). Barret Decl. ¶ 8. As discussed in Tractable's proposed counterclaims (Barrett Decl., Ex. A), these newly produced documents reveal the anticompetitive conduct Tractable had suspected but did not yet have sufficient evidence of. In an interview produced by CCC in August 2023, a former CCC executive admitted: "23 of the top 25 carriers in North America…[are] CCC-exclusive at this point." Barret Decl. ¶ 9, Ex. G at CCCIS_0074678. In the same document, the CCC former executive confirmed that CCC's exclusivity extends beyond insurance carriers and also affects

---

[3] These facts are relevant to CCC's intent to exclude competition through exclusive agreements. *Fishman v. Wirtz*, 1981 WL 2153, at *54 (N.D. Ill. Oct. 28, 1981) ("An exclusive dealing arrangement…violates the Sherman Act if it (1) creates an unreasonable effect on competition, or (2) was intended as part of a scheme to monopolize or exclude competitors from the market.").

auto repair facilities. *Id.* at CCCIS_0072682. This newly discovered evidence about the breadth of CCC's exclusivity is important because Tractable's antitrust counterclaim requires evidence that the exclusive agreements foreclose a substantial portion of the market. *See, e.g., In re Surescripts Antitrust Litig.*, 608 F. Supp. 3d 629, 643 (N.D. Ill. 2022).

Documents included in CCC's August Production further show that its executives openly admit it is "broaching monopoly territory," and that CCC knowingly uses its exclusive contracts with Hearst, insurers, and Direct Repair Programs to mandate the use of CCC products—referred to by CCC's former executive as a "Thou shalt use CCC" mandate—and to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Barret Decl. ¶¶ 9-12, Ex. G at CCCIS_0072682, 88; Ex. H at CCCIS_0093430, Ex. J. Indeed, a CCC document shows that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Barret Decl. ¶ 12, Ex. I.

Armed with these newly produced documents in the August Production, Tractable now had sufficient factual support to filing antitrust counterclaims against CCC.

### III. Discovery is Stayed for Five Months

Shortly after receiving the August Production from CCC's executives, on September 19, 2023, the parties jointly notified the Court that they were engaged in settlement discussions. (Dkt. 155 at 2.) On October 2, 2013, the parties filed a joint motion to stay discovery for 30 days. (Dkt. 157.) The parties jointly filed two additional motions to continue the discovery stay until March 4, 2024. (Dkts. 160 and 164.) The parties were unable to resolve this dispute through a mediation conducted on February 20, 2024, and the litigation stay ended on March 4, 2024. Tractable promptly filed this motion for leave to amend its answer and file counterclaims against CCC.

6

## IV. Discovery Status

Fact discovery remains open and is not set to close for another three months, on June 4, 2024. The parties have substantially completed their document productions, but Tractable currently anticipates moving to compel further responses related to CCC's deficient discovery responses, including its refusal to produce its agreements with insurance customers. Only two depositions have taken place to date, which were both CCC depositions of former Tractable employees. (Dkt. 168.) Tractable expects to conduct nine (9) depositions in this action over the coming months, and CCC anticipates taking five (5) additional depositions, in addition to depositions pursuant to Rule 30(b)(6). (*Id.*) The parties have not yet served any expert reports or otherwise started expert discovery. No party has filed a motion for summary judgment. Nor has the Court set a trial date.

## LEGAL STANDARD

Where, as here, the court's scheduling order does not set a deadline for amending the pleadings, Rule 15(a) governs a motion to amend. *See Anderson v. Weinert Enters.*, No. 18-C-901, 2019 WL 3986345, at *4 (E.D. Wis. Aug. 23, 2019) ("[T]he court did not set a deadline for amending pleadings without showing good cause or indicate that the parties would be subject to Rule 16's standard after that deadline passes. Consequently, Rule 15 governs [the] motion to amend."); *Sanchelima Int'l, Inc. v. Walker Stainless Equip. Co., LLC*, No. 16-CV-644-JDP, 2017 WL 3499350, at *1 (W.D. Wis. Apr. 17, 2017) (explaining that "Rule 15(a)(2), not Rule 16(b)(4), governs" a motion for leave to amend when a court does not set a deadline for amending the pleadings without good cause).

Federal Rule of Civil Procedure 15(a) directs courts to "freely give leave" to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a). Rule 15(a) "presumes that, in most cases, motions for leave to amend be liberally granted." *Bressner v. Ambroziak*, 379 F.3d 478, 484 (7th Cir. 2004). Generally, courts should use their discretion under Rule 15(a) to grant permission to

amend the pleadings unless there is "undue delay, bad faith, dilatory motive, undue prejudice to the opposing party, or when the amendment would be futile." *Bethany Pharmacal Co. v. QVC, Inc.*, 241 F.3d 854, 861 (7th Cir. 2001). Delay alone is an insufficient reason to deny leave to amend and "must be coupled with some other reason," typically prejudice to the non-moving party. *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 793 (7th Cir. 2004). "Almost every amendment will result in some prejudice to the non-moving party, therefore the question is whether the prejudice is undue." *Douglas Press. Inc. v. Tabco Inc.*, No. 00 C 7338, 2004 WL 1144054, at *2 (N.D. Ill. May 17, 2004). Because Rule 15 embodies the general policy that controversies should be decided on their merits, the Court must weigh that consideration against the potential prejudice to the non-moving party. *Alberto-Culver Co. v. Gillette Co.*, 408 F. Supp. 1160, 1162 (N.D. Ill. 1976). "Only where the prejudice outweighs the moving party's right to have the case decided on the merits should amendment be prohibited." *Id.*

**ARGUMENT**

Pursuant to Rule 15's liberal standard governing the amendment of pleadings, leave to amend is appropriate here because Tractable: (1) did not unreasonably delay filing its motion; (2) CCC will not suffer undue prejudice by the amendment given fact discovery is ongoing and the counterclaims track factual allegations already at issue in this action; (3) there is no evidence of bad faith or dilatory motive on Tractable's behalf; and (4) the proposed amendment is not futile.

**A.     Tractable Did Not Unreasonably Delay Seeking Leave to Amend.**

As detailed above, Tractable discovered the facts necessary to assert its antitrust counterclaims through the course of discovery, and then promptly filed this motion after the five-month stay agreed-upon by the parties was lifted. Prior to discovery in this case, Tractable did not have access to CCC's contracts with Hearst or its insurance providers. Barrett Decl. ¶ 4. Tractable only received CCC's agreements with Hearst and ███████ in March and August 2023, respectively,

which began to confirm Tractable's suspicions regarding CCC's anticompetitive conduct given ███████████████████████████████████████████████. *Id.* ¶¶ 4, 7. Still, CCC refused to provide the remainder of its agreements with insurance companies—despite the relevance of those agreements to CCC's trade secret claims and Tractable's unclean hands affirmative defense. It was only through a successful motion to compel that Tractable was able to confirm—in late August 2023—the true scope of CCC's anticompetitive agreements: "23 of the top 25 carriers in North America…[are] CCC-exclusive at this point." Barret Decl. ¶ 9, Ex. G at CCCIS_0074678. And were it not for these exclusivity clauses, ███████████████ ███████████████. *Id.* ¶ 11, Ex. I.

Where, as here, a party seeking to amend did not discover the facts prompting the proposed amendment until engaging in discovery and had to fight to obtain information from the opposing party, courts have found there was no undue delay. *Sitrick v. Freehand Sys.*, No. 02 C 1568, 2004 WL 725306, at *3 (N.D. Ill. Mar. 31, 2004) (finding no undue delay where the non-moving party took efforts to prevent discovery of the facts underlying the amendment); *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*, No. 09-C-0916, 2011 WL 679337, at *2 (E.D. Wis. Feb. 16, 2011) (finding no undue delay where some facts underlying the proposed amendment were discovered in depositions); *Spano v. Boeing Co.*, No. 3:06-cv-00743-DRH-DGW, 2007 WL 4390366, at *3 (S.D. Ill. Dec. 14, 2007) (finding no undue delay where the non-moving party did not produce documents in a timely manner).

Similarly, the fact that Tractable waited to obtain discovery to confirm its suspicions about CCC's anticompetitive behavior before filing antitrust counterclaims demonstrates diligence consistent with its Rule 11 obligations, not undue delay. *See, e.g.*, *Douglas Press, Inc. v. Tabco Inc.*, No. 00 C 7338, 2004 WL 1144054, at *1 (N.D. Ill. May 17, 2004) (finding no undue delay

where the moving party waited for confirmatory information before seeking to add an affirmative defense, "especially keeping in mind Rule 11").

Nor was it undue delay for Tractable to wait until the stay on discovery lifted on March 4, 2024 to file a motion to amend its pleading. As discussed above, CCC did not produce documents relevant to Tractable's antitrust counterclaims until August 2023. Barret Decl. ¶ 8. Shortly thereafter, the parties entered into settlement discussions in September 2023, which ultimately led the parties to stay discovery for five months to allow for a mediation. Dkt. 156, 161. The time that passed during the parties' attempt at settlement does not qualify as undue delay. *See, e.g.*, *Ash v. Theros Int'l Gaming, Inc.*, No. 99 C 5140, 2001 WL 869621, at *2 (N.D. Ill. Aug. 1, 2001) (granting leave to amend where "delay in presenting the motion could be attributed to the attempt in reaching settlement before trial"); *Arroyo v. Henderson*, No. 98 C 0443, 1999 WL 446700, at *3 (N.D. Ill. June 23, 1999) (explaining that any delay was "due to the fact that no activity was taking place in the case while the parties attempted to reach a settlement" and was not a reason to deny leave to amend). Indeed, asserting counterclaims while the parties are actively in settlement negotiations would have been antithetical to a successful resolution of this litigation. Once settlement negotiations failed, Tractable promptly sought leave to amend its pleading.

### B. CCC Will Not Suffer Undue Prejudice from Tractable's Counterclaims.

Even if the Court were to find that some undue delay has occurred in this case, delay alone is an insufficient reason to deny leave to amend. *Dubicz*, 377 F.3d at 793. To overcome the liberal application of Rule 15, CCC must show it would be unduly prejudiced by Tractable's purported delay. None of the typical circumstances causing "undue prejudice" are present here.

***First***, Tractable's proposed amendment does not come "on the eve of trial." *Boyd v. Ill. State Police*, No. 98 C 8348, 2001 WL 726988, at *2 (N.D. Ill. June 28, 2001). To the contrary,

the parties are still engaged in fact discovery. Courts in this circuit have repeatedly found that where the deadline for fact discovery has not yet passed,[4] expert discovery has not begun,[5] and almost no depositions have occurred,[6] no undue prejudice occurs and motions for leave to amend the pleading should be freely granted.

Given the current posture of discovery, Tractable's proposed amendment does not require the parties to re-do any discovery. Three months of fact discovery remain under the current scheduling order, no CCC-employee witnesses have been deposed thus far, and no expert discovery has occurred yet. *See B&W Loudspeakers Ltd. v. KEF Audio (UK) Ltd.*, No. 01 C 8541, 2003 WL 22240119, at *2-3 (N.D. Ill. Sep. 26, 2003) (allowing the defendant to add an antitrust counterclaim where discovery had not yet closed and no trial date was set). The fact that Tractable's counterclaims will result in discovery into CCC's anticompetitive conduct broader than CCC would like to produce does not constitute the type "prejudice of a significant degree" that would

---

[4] *See Wood v. Sec. Credit Servs., LLC*, 583 F. Supp. 3d 1137, 1141-42 (N.D. Ill. 2022) (finding no undue prejudice where discovery was still ongoing); *Oleksy v. GE*, No. 06 C 1245, 2013 WL 3944174 , at *4 (N.D. Ill. July 31, 2013) (holding that amendment of an answer would not unduly prejudice the plaintiff where there was "still time before the fact discovery cut-off to take the necessary discovery"); *Foggia v. Universal Steel Am.*, No. 2:04 cv 122, 2005 WL 8170136, at *5 (N.D. Ind. Mar. 18, 2005) (rejecting the plaintiff's argument that prejudice would result from addition of counterclaims where "discovery will not close for two months"); *Thomas & Betts Corp. v. Panduit Corp.*, Case No. 93 C 4017, 1999 WL 92894, at *2 (N.D. Ill. Feb. 17, 1999) (explaining that an amendment made "before the completion of discovery" is "less prejudicial" than one requiring the court to "reopen discovery"); *Advent Elecs. v. Buckman*, 918 F. Supp. 260, 263 (N.D. Ill. 1996) (granting defendants' motion for leave to amend three months before the close of discovery).

[5] *See Morton Grove Pharms., Inc. v. Par Pharm. Cos.*, No. 04 C 7007, 2005 WL 1766369, at *5 (N.D. Ill. July 22, 2005) (citing the fact that expert discovery had yet to begin as a reason why the plaintiff would not suffer undue prejudice if the defendant was allowed to amend its counterclaim); *Cusumano v. Mapco Gas Prods., Inc.*, Case No. 90 C 7161, 1993 U.S. Dist. LEXIS 839, at *6 (N.D. Ill. Jan. 28, 1993) (noting in the discussion of undue prejudice that expert depositions had not been taken).

[6] *Saso Golf, Inc. v. Nike, Inc.*, No. 08 C 1110, 2009 WL 935747, at *8-9 (N.D. Ill. Apr. 6, 2009) (granting leave to amend where discovery was still open "and the parties have not yet taken any depositions"); *Nagy v. Riblet Prods. Corp.*, No. S90-202 (RLM), 1991 WL 332633, at *10-11 (N.D. Ind. Oct. 16, 1991) (finding no undue prejudice where an amendment "would not result in duplication of discovery or re-deposing witnesses").

warrant overriding Rule 15's liberal amendment standard. *Sioux Steel Company v. Prarie Land Millwright Services,* No. 16-CV-02212, 2019 WL 13400105, at *8 (N.D. Ill. March 29, 2019).

***Second,*** the proposed counterclaim does not add any new parties, and the allegations underlying Tractable's proposed counterclaims are closely aligned factually with the allegations already asserted in Tractable's unclean hands affirmative defense and placed at issue by CCC's misappropriation theories. (*See, e.g.,* Dkt. 123 at 22; Dkt.135 at 2-5, 8-10 (explaining the relevance of CCC's anti-competitive conduct to the claims and defenses asserted in this action)); *DICKEY-john Corp. v. RICHWAY SALES*, No. 77-C-1680, 1980 U.S. Dist. LEXIS 11159, at *2-3 (N.D. Ill. Apr. 30, 1980) (granting motion for leave to file antitrust counterclaims and re-opening fact discovery because the information serving as the basis for the counterclaim was recently discovered and there was a close factual relationship between the antitrust claims and the issues in the lawsuit). Indeed, Tractable only discovered the basis for its antitrust counterclaims after pressing CCC to produce discovery related to the claims and defenses already at issue in this case. This overlap between CCC's allegations and Tractable's antitrust counterclaims minimizes any prejudice from the amendment. *Sitrick*, 2004 WL 725306, at *6 (finding no undue prejudice where the "new claim is closely aligned factually" with the existing claim); *Eder Instrument Co. v. Total Med Corp.*, No. 85 C4330, 986 WL 4162, at *4 (N.D. Ill. Mar. 20, 1986) (holding additional discovery would not be unduly prejudicial where the proposed counterclaim was "not totally unrelated" to claims already in the case).

If Tractable is permitted to pursue discovery related to its antitrust claims immediately, Tractable's tailored written discovery requests and depositions can be completed with minimal adjustments to the Court's current fact discovery deadline—depending on CCC's level of cooperation in producing the anticompetitive information it is currently withholding. To the extent

a minimal extension to the fact discovery deadline is ultimately required, CCC cannot credibly argue that the prejudice it would suffer from a 60-90 day extension would outweigh Tractable's interest in having its claims resolved on the merits. *Alberto-Culver Co*, 408 F. Supp. at 1162 ("Only where the prejudice outweighs the moving party's right to have the case decided on the merits should amendment be prohibited.")

### C. There is No Evidence of Bad Faith or Dilatory Motive on Tractable's Behalf.

There is no evidence of bad faith or dilatory motive on Tractable's behalf in connection with its request. Where, as here, discovery has been "slow and contested" and a party "acquired new evidence through discovery and then promptly sought leave to amend," a party's motion for leave to amend a pleading to add a new claim is not in bad faith. *Triteq Lock & Sec. LLC v. Innovative Secured Sols., LLC*, No. 10 C 1304, 2011 WL 3203303, at *2 (N.D. Ill. July 21, 2011); *Kirsch v. Brightstar Corp.*, No. 12 C 6966, 2014 WL 5166527, at *7 (N.D. Ill. Oct. 10, 2014) (finding no evidence of bad faith where the moving party acquired new evidence in discovery and then sought to amend its answer). Tractable brings its motion for leave with approximately three months remaining in fact discovery and a week after the discovery stay was lifted. Accordingly, there is no evidence that Tractable sought to delay the filing of its counterclaims on the "eve of trial" in a bad faith or dilatory attempt to gain an unfair advantage.

### D. The Proposed Amendment is Not Futile.

Tractable's proposed counterclaims are not futile. Under Rule 15's liberal amendment standard, "[a]mendment should be refused only if it appears to a certainty" that the moving party "cannot state a claim." *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004) (internal citation omitted). Because it is not clear on its face that Tractable's counterclaims fail to state a claim, Tractable submits that the question of whether its antitrust

counterclaim can withstand a motion to dismiss is "better raised in a fully briefed motion under Fed. R. Civ. P. 12(b)(6)." *B&W Loudspeakers*, No. 01 C 8541, 2003 WL 22240119, at *3 (N.D. Ill. Sep. 26, 2003). Even a cursory analysis of the proposed amended counterclaims shows that Tractable's allegations are well-pleaded and present a viable antitrust claim. *See id.* (allowing antitrust counterclaims where nothing "conclusively" established that the defendant could not "under any set of facts, sustain its claims"). Tractable's allegations are "detailed" and bolstered by evidence obtained through discovery. *See Data Research & Handling, Inc. v. Vongphachanh*, 278 F. Supp. 3d 1066, 1077 (N.D. Ind. 2017) (granting motion to amend a Sherman Act claim supported by "detailed allegations" and rejecting futility argument). Indeed, Tractable's allegations that CCC entered into a ███████████████████████████, has exclusive-dealing agreements with 23 of 25 major U.S. insurers, and weaponized those agreements to block market entrants and acquire 85% of the Estimatics market provides strong support for Tractable's claims. Barret Decl. ¶¶ 4, 9-12. The Court should therefore grant leave to amend.

### E. Good Cause Exists to Amend Tractable's Answer.

Even if the Court were to apply the heightened standard of Rule 16, which is not applicable here, good cause exists for Tractable to amend its answer and assert its antitrust counterclaims.[7] The primary consideration for "good cause" analysis is the diligence of the party seeking to amend the pleadings. *Trustmark*, 424 F.3d at 553.

As explained herein, Tractable was diligent in seeking to amend its answer to assert its counterclaims. Tractable only learned of the facts underlying its counterclaim after exhaustive

---

[7] Under Rule 16(b), which is applicable only if the deadline for amendment to pleadings set by a scheduling order has passed, a party seeking leave to amend must show good cause. *Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005). If the moving party can establish good cause, the court then applies Rule 15(a) and grants leave to amend unless there is evidence of undue prejudice, undue delay, bad faith, dilatory motive, or futility of the amendment. *Triteq Lock*, 2011 WL 3203303, at *2.

efforts and prevailing on a vigorously opposed motion to compel. *See Triteq Lock*, 424 F.3d 542, at *2 (holding that a party was diligent where it sought to amend after learning new facts through discovery); *Connetics Corp. v. Pentech Pharms., Inc.*, No. 07 C 6297, 2009 WL 1089552, at *3 (N.D. Ill. Apr. 16, 2009) (finding good cause to amend where the defendants discovered the basis for their new claim at depositions). The production of those documents "was at the will" of CCC—not Tractable. *Spano*, 2007 WL 4390366, at *3. Tractable received the production of documents on a rolling basis and the counterclaims it now proposes are "of the kind which are made manifest only after significant discovery." *Id.* Tractable obtained significant discovery from CCC's executives' files following a motion to compel only weeks before the parties agreed to a stay the litigation in pursuit of a potential settlement. *See Lincoln Nat'l Life v. Jackson Nat'l Life Ins. Co.*, No. 1:07-CV-265, 2010 WL 1781013, at *4 (N.D. Ind. May 3, 2010) (finding good cause to amend where a party sought to amend after the parties spent several months engaging in settlement negotiations). Within one week of the stay being lifted, Tractable filed this motion. Given these circumstances, Tractable has been diligent in seeking leave to amend and good cause exists to grant its motion.

## CONCLUSION

For the foregoing reasons, Tractable's motion for leave to amend its pleading and file counterclaims against CCC should be granted.

Dated: March 11, 2024                        Respectfully submitted,

                                            By: /s/*Lazar P. Raynal*
                                                    Lazar P. Raynal (Bar No. 6199215)
                                                    Michael A. Lombardo (Bar No. 6334886)
                                                    KING & SPALDING LLP
                                                    110 N. Wacker Drive, Suite 3800

Chicago, IL 60606
Telephone: (312) 995-6333
Facsimile: (312) 995-6330
lraynal@kslaw.com
mlombardo@kslaw.com

Julia C. Barrett (*pro hac vice*)
KING & SPALDING LLP
500 West 2nd Street, Suite 1800
Austin, Texas 78701
Telephone: (512) 457-2000

Robert M. Cooper (*application pending*)
Christopher C. Yook (*application pending*)
KING & SPALDING LLP
1700 Pennsylvania Avenue NW, Suite 900
Washington, DC 20006
rcooper@kslaw.com
cyook@kslaw.com

*Attorneys for Defendant and Counterclaimant Tractable Inc.*