IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CCC INTELLIGENT SOLUTIONS INC., Plaintiff, v. TRACTABLE INC., Defendant. | Case No. 1:18-cv-07246<br>Hon. LaShonda A. Hunt<br>Hon. Keri L. Holleb Hotaling |

**CCC INTELLIGENT SOLUTIONS INC.'S ANSWER TO TRACTABLE INC.'S COUNTERCLAIMS**

Plaintiff and Counter-Defendant CCC Intelligent Solutions Inc. ("CCC") responds as follows to the allegations set forth in Defendant and Counter-Plaintiff Tractable Inc.'s ("Tractable") March 25, 2024 Counterclaims, ECF No. 191 ("Counterclaims" or "CC").

**CCC'S PRELIMINARY STATEMENT**

As detailed in CCC's First Amended Complaint, ECF No. 31, Defendant Tractable is a fraudster that was caught in the act of illegally accessing CCC's platform to steal CCC's intellectual property. Tractable's head of product development at the time used a fake identity and misrepresentations about his employer, his intentions, and his line of business to fraudulently obtain a license to access CCC's systems. Once inside, Tractable used CCC's proprietary platform and manipulated the data it acquired through that use for months, until multiple CCC customers raised alarms that Tractable was engaged in suspicious conduct towards them. CCC's investigation confirmed the customers' concerns, and uncovered that Tractable was using its fraudulently obtained access to CCC ONE to create test files and enter fictitious information to generate auto-repair estimates bearing CCC's marks and to attempt to replicate (at least in part)

CCC's proprietary information and algorithms. CCC quickly terminated Tractable's access to its proprietary platform and sued to remedy Tractable's fraud, theft of trade secrets, and other violations of law. The U.S. Court of Appeals for the Seventh Circuit, writing about CCC's allegations, likened Tractable to someone who attempts to "sign[] a contract with your fingers crossed behind your back," and who "tried to catch up [to CCC] by fraud." *CCC Intelligent Sols., Inc. v. Tractable Inc.*, 36 F.4th 721, 722-23 (7th Cir. 2022).

As CCC has obtained additional evidence through discovery demonstrating the nature and extent of Tractable's fraud in the five years since CCC filed its Complaint, Tractable has now filed these Counterclaims to deflect blame for its own illegal acts. In effect, Tractable implies that it was entitled to defraud CCC and steal its intellectual property because CCC is a leader in the industry with "the most comprehensive set of benchmarking data available for insurers." CC ¶ 65. Of course, that is not how the law or the business world work. Moreover, discovery has shown that Tractable used the same scheme to access even more software providers, not just CCC. Tractable is not Robin Hood; it's just a robber.

The many deficiencies in Tractable's Counterclaims further evidence its improper motivations. With no real factual detail, Tractable claims it has "been blocked" from selling its products in the United States. CC ¶ 38. Blocked, Tractable claims, because CCC has one exclusive contract with a single auto-data provider and contracts with insurers that selected CCC to be their sole provider of certain services. CC ¶¶ 45-62. CCC supposedly "coerced" these insurers—many of whom are far larger than CCC—to exclusively use CCC, although Tractable fails to explain how the much-smaller CCC could have done that. CC ¶ 76. Tractable fails to even identify the insurers supposedly "coerced," what their contracts say, how long they last, or the services they cover. Tractable concedes it has seen only one CCC-insurer contract, and that one

is from 2009. *See* Mot. for Leave at 4-5, ECF No. 174. The Counterclaims also omit the identity of any insurer that rebuffed Tractable because of a CCC contract, and omit any claim that Tractable's products are inoperable without access to the parts database that CCC uses. Those allegations are missing, because the facts would not support them.

Tractable's own public statements, published on its website, directly refute its allegations of input-foreclosure and lack of access to insurance customers. On the input side, despite alleging that CCC exclusively receives parts data from one provider that is supposedly "critical for competition in the relevant markets," CC ¶ 62, Tractable admits that other companies (Audatex and Mitchell) each maintain "similar databases." CC ¶¶ 58, 60. In fact, Tractable publicly announced in 2021 that it formed a "partnership with Mitchell" to use Mitchell's parts data in North America, with Tractable's CEO publicly proclaiming that the "Tractable-Mitchell band is here and ready to rock."[1] Tractable then entered into an agreement with another parts-data provider named PartsTrader and publicly touted its "integration of PartsTrader's historical parts pricing data into Tractable's Auto Reviewer solution" and announced a "collabor[ation] on additional product integrations that streamline and accelerate the claims process."[2] Tractable conveniently omitted these facts from its Counterclaims. They demonstrate that Tractable is not foreclosed from data inputs.

Tractable's allegations about a second "distinct exclusive dealing arrangement" between CCC and auto insurers fare no better. CC ¶¶ 45-56. Tractable claims, again without factual support, that it has "lost contracts" and "opportunities with customers" because of CCC's

---

[1] *See* Tractable, Press Release, *Tractable & Mitchell To Offer Combined Solution For AI Vehicle Repair Estimating* (Jan. 27, 2021), https://tractable.ai/en/resources/tractable-and-mitchell-to-offer-combined-solution-for-ai-vehicle-repair-estimating.

[2] *See* Tractable, Press Release, *Tractable & PartsTrader Launch Strategic Partnership* (Oct. 17, 2023), https://tractable.ai/en/resources/tractable-and-partstrader-launch-strategic-partnership.

arrangements with insurers. CC ¶¶ 38, 66. But the only lost opportunity Tractable alludes to is based on a mere reference to CCC's belief that Root Insurance was under contract with CCC while testing Tractable's product in 2021. CC ¶ 68; Mot. for Leave at 6, ECF No. 174. Tractable omits that, in January 2022, Tractable announced that Root Insurance did enter a deal to "use artificial intelligence (AI) to streamline and accelerate its claims operations using Tractable's suite of AI solutions."[3] Moreover, Tractable has repeatedly touted in public press releases that it "already work[s] with US insurers to improve auto claims,"[4] including claiming to have partnerships with "a leading US property and casualty insurer,"[5] with "one of the largest players in US property and casualty insurance,"[6] and with "the second-largest auto insurer in the US."[7] CCC's contracts did not "block" Tractable.

Tractable's allegations of foreclosure are irreconcilable with its public statements about its entry. Although fatal to its claims, these are just some of the many legal deficiencies that pervade Tractable's Counterclaims. To date, Tractable has resisted producing discovery into these facts

---

3 *See* Tractable, Press Release, *Root Insurance Selects Tractable As A Strategic AI Partner To Streamline Claims Operations* (Jan. 7, 2022), https://tractable.ai/en/resources/root-insurance-selects-tractable-as-a-strategic-ai-partner-to-streamline-claims-operations.

4 *See* Tractable, Press Release, *New AI Solution Accurately Assesses Vehicle Condition In Minutes* (Sept. 2, 2021), https://tractable.ai/en/resources/new-ai-solution-accurately-assesses-vehicle-condition-in-minutes.

5 *See* Tractable, Press Release, *Tractable Announces Partnership With The Hartford To Accelerate Claims Processing With Artificial Intelligence* (Jan. 28, 2021), https://tractable.ai/en/resources/tractable-announces-partnership-with-the-hartford-to-accelerate-claims-processing-with-artificial-intelligence.

6 *See* Tractable, Press Release, *American Family Insurance Streamlines Claims Operations With Tractable's AI* (July 13, 2022), https://tractable.ai/en/resources/american-family-insurance-streamlines-claims-operations-with-tractables-ai.

7 *See* Tractable, Press Release, *GEICO Partners With Tractable To Accelerate Accident Recovery With AI* (May 26, 2021), https://tractable.ai/en/resources/geico-partners-with-tractable-to-accelerate-accident-recovery-with-ai.

by refusing to produce nearly any documents about its business dealings since October 2019. But having squarely put those arrangements at issue, Tractable can no longer hide the truth. CCC eagerly looks forward to further exposing both the fraud by Tractable that spurred this litigation in the first instance, and the flaws in the Counterclaims that Tractable asserted in an attempt to deflect from its improper conduct.

## CCC'S RESPONSES TO THE SPECIFIC COUNTERCLAIM ALLEGATIONS

CCC denies all factual allegations set forth in the Counterclaims unless expressly admitted. Any admission herein is limited to the express language of the response and shall not be deemed an implied admission of additional facts. CCC need not admit or deny legal conclusions or argument, and the bulk of the Counterclaims are merely that. Although CCC need not admit or deny legal conclusions or arguments, CCC affirmatively denies that it has violated any federal law, including any federal antitrust law, and asserts that Tractable should be denied the relief it requests.

CCC does not respond to the headings set forth in the Counterclaims. To the extent that any headings contain any factual allegations, they are denied.

The first paragraph of the preamble to the Counterclaims characterizes this action and asserts legal conclusions to which no response is required. To the extent that a response is deemed necessary, CCC states that Tractable has petitioned this Court for damages and injunctive relief, and in all other respects denies the allegations in the first paragraph of the preamble to the Counterclaims.

CCC further answers the numbered paragraphs of the Counterclaims as follows:

## INTRODUCTION

**Response to Paragraph 1**: CCC denies the allegations in Paragraph 1.

**Response to Paragraph 2:** CCC admits that there is fierce competition among auto insurers. CCC denies the remaining allegations in Paragraph 2.

**Response to Paragraph 3:** CCC denies that Tractable is a leader in technological advancement or deserving of accolades, as the evidence produced in this litigation shows that Tractable engaged in a coordinated fraud to steal trade secrets and other confidential information from CCC, and that Tractable has used similar fraudulent tactics to gain access to other software companies. CCC admits that Tractable holds itself out as offering artificial intelligence products for certain steps in the multi-step auto-insurance claims process. CCC also admits that Tractable has publicly stated that its customers both in and outside the United States include many of the largest insurers and that its products have processed over $2 billion a year in vehicle repairs and purchases, but CCC lacks sufficient knowledge or information to admit or deny those allegations, and therefore denies them. CCC denies the remaining allegations in Paragraph 3.

**Response to Paragraph 4:** CCC admits that, over 15 years before these Counterclaims were filed, the Federal Trade Commission filed a lawsuit seeking a preliminary injunction or temporary restraining order to maintain the status quo pending an administrative proceeding into the proposed "merger of equals" between CCC and Mitchell International, Inc. ("Mitchell"). After the U.S. District Court for the District of Columbia entered a preliminary injunction to maintain the status quo, CCC and Mitchell abandoned the proposed merger of equals. CCC denies the remaining allegations in Paragraph 4.

**Response to Paragraph 5:** CCC denies the allegations in Paragraph 5. CCC further responds that Paragraph 5's use of the undefined or incoherently defined terms "Estimatics market," among others, renders Paragraph 5's allegations vague and incapable of further response as written. To the extent that Paragraph 5 purports to characterize unidentified documents or statements, those documents or statements speak for themselves, and CCC denies Tractable's characterization of those materials.

**Response to Paragraph 6:** CCC denies that Hearst maintains a database of parts and labor data that is critical to compete, and notes that not only does Tractable itself allege in Counterclaim Paragraph 60 that "similar databases" exist, but Tractable has publicly stated that it accesses auto parts data in other ways, including through a "partnership with Mitchell"[8] and a "partnership" with PartsTrader for the "integration of PartsTrader's historical parts price data."[9] Further, Paragraph 6's use of the undefined or incoherently defined term "Estimatics products" renders Paragraph 6's allegations vague and incapable of further response as written, including because the Counterclaims refer to "Estimatics" as including unidentified "software products," unidentified "product offerings," and "an amalgamation" of unidentified products. CCC admits that it has an agreement with Hearst that is exclusive for the use of some information for certain purposes, but not all information for all purposes. CCC denies the remaining allegations in Paragraph 6.

**Response to Paragraph 7:** CCC denies that CCC's contracts have blocked Tractable from dealing with Root, as the document Tractable purports to quote is from March 2021, but Tractable publicly announced on January 7, 2022, its launch of a "partnership" and "collaboration" with Root, whereby Root "will use artificial intelligence (AI) to streamline and accelerate its claims operations using Tractable's suite of AI solutions."[10] CCC denies the remaining allegations in Paragraph 7, and further states that the incomplete quotations of written material is taken out of context and is misleading, and that the full content of that written material speaks for itself and

---

[8] *See* Tractable, Press Release, *Tractable And Mitchell To Offer Combined Solution For AI Vehicle Repair Estimating* (Jan. 27, 2021), https://tractable.ai/en/resources/tractable-and-mitchell-to-offer-combined-solution-for-ai-vehicle-repair-estimating.

[9] *See* Tractable, Press Release, *Tractable & PartsTrader Launch Strategic Partnership* (Oct. 17, 2023), https://tractable.ai/en/resources/tractable-and-partstrader-launch-strategic-partnership.

[10] *See* Tractable, Press Release, *Root Insurance Selects Tractable As A Strategic AI Partner To Streamline Claims Operations* (Jan. 7, 2022), https://tractable.ai/en/resources/root-insurance-selects-tractable-as-a-strategic-ai-partner-to-streamline-claims-operations.

does not support the allegations in Paragraph 7 or Tractable's Counterclaims.

**Response to Paragraph 8:** CCC denies the allegations in Paragraph 8.

**Response to Paragraph 9:** CCC admits that Tractable purports to seek damages and injunctive relief, but denies that Tractable is entitled to any relief. CCC denies the remaining allegations in Paragraph 9.

## PARTIES

**Response to Paragraph 10:** On information and belief, CCC admits that Tractable is a Delaware corporation with its principal place of business in New York. CCC denies that Tractable is the "Plaintiff" in this litigation, as Tractable is the Defendant in the original lawsuit that CCC filed seeking damages for Tractable's fraud, theft, and other illegal conduct.

**Response to Paragraph 11:** CCC admits that it is incorporated in Delaware and maintains a principal place of business in Chicago, Illinois. CCC denies that it is the "Defendant" in this litigation, as Tractable is the Defendant in the original lawsuit that CCC filed regarding Tractable's fraud, theft, and other illegal conduct.

## JURISDICTION AND VENUE

**Response to Paragraph 12:** CCC admits that Tractable purports to have filed these Counterclaims pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, and Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2. CCC denies that it violated or engaged in any conduct that violates the Clayton Act or Sherman Act. CCC denies that Tractable has a cause of action under either Act and CCC denies that Tractable is entitled to any relief. The rest of Paragraph 12 asserts a legal conclusion that does not require a response.

**Response to Paragraph 13:** CCC admits that venue in the U.S. District Court for the Northern District of Illinois is proper, and that this Court has personal jurisdiction over CCC for these Counterclaims. The remainder of Paragraph 13 asserts a legal conclusion that does not

require a response. To the extent that a response is required, CCC denies the remaining allegations in Paragraph 13.

## FACTUAL BACKGROUND

### I. The Auto Claim and Repair Process

**Response to Paragraph 14:** CCC admits that Paragraph 14 contains one definition of the term "first notice of loss" ("FNOL"), of which there are many. To the extent that Paragraph 14 suggests that this is the only definition of FNOL or the only route to initiate the auto-repair claim process, CCC denies the allegations in Paragraph 14.

**Response to Paragraph 15:** CCC admits that Paragraph 15 provides an example of a possible FNOL process and a possible process an insurance adjuster or appraiser might follow when reviewing a claim for vehicle accident damage. To the extent that Paragraph 15 suggests that this is the only process that auto claims follow, or that this is the exact process used by any particular auto insurer, CCC denies the allegations in Paragraph 15. Footnote 1 contains Tractable's definition of "appraiser" and "adjuster" for purposes of its Counterclaims, to which no response is required. To the extent that a response is required, CCC denies that "appraiser" and "adjuster" necessarily have identical meanings.

**Response to Paragraph 16:** CCC admits that insurers may offer their customers several different methods of inspection to assess damages to vehicles. Paragraph 16's use of the undefined terms "historically," "most insurers," and "often include" render the remainder of Paragraph 16's allegations vague and incapable of further response as written. Accordingly, CCC lacks sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 16, and therefore denies them.

**Response to Paragraph 17:** The first and second sentence of Paragraph 17 purport to describe the internal operations and decision making of unidentified insurers. Accordingly, CCC

lacks sufficient knowledge or information to admit or deny the allegations in the first and second sentence of Paragraph 17, and therefore denies them. Paragraph 17's use of the undefined term "certain contractual arrangements" renders Paragraph 17's allegations vague and incapable of further response as written. CCC denies the remaining allegations in Paragraph 17.

**Response to Paragraph 18:** CCC admits that Paragraph 18 provides an example of certain steps in a possible auto-insurance claim handling process, but denies that Paragraph 18 captures all the steps, nuances and variations that can occur in practice or necessarily describes any insurer's, insured vehicle owner's, or repair facility's actual process. To the extent that Paragraph 18 suggests that this is the only way an auto-insurance claim is handled following an appraisal, or that it necessarily describes the exact process that any insurer, insured vehicle owner, repair facility, or auto-insurance claim follows, CCC denies the allegations in Paragraph 18.

**Response to Paragraph 19:** Paragraph 19 purports to describe an appraisal and claim process without identifying the insurer, insured, or insurance policy that would be necessary to verify these allegations. Accordingly, CCC lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 19 as written, and therefore denies them.

**Response to Paragraph 20:** CCC admits that an insurer can appraise a damaged vehicle before making a settlement payment to its insured. To the extent that Paragraph 20 suggests that this is the only way that insurers handle claims or attempts to describe any insurer's actual process, CCC denies the allegations in Paragraph 20.

**Response to Paragraph 21:** CCC admits that Paragraph 21 describes a possible process for subrogation in the context of auto-insurance claims handling, but denies that Paragraph 21 captures all the nuances and variations that can occur in practice or describes the only way that subrogation is handled. Furthermore, Paragraph 21's use of the undefined term "often" renders

Paragraph 21's allegations vague and incapable of further response as written. Accordingly, CCC lacks sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 21, and therefore denies them.

## II. <u>The Relevant Market at Issue in This Case</u>

**<u>Response to Paragraph 22</u>:** CCC admits that there are software products that allow industry participants to perform certain tasks throughout the auto-claim process. To the extent that Tractable is asserting a legal conclusion in Paragraph 22 that these undefined software products constitute a relevant product market, CCC denies that allegation.

### A. Estimatics Products

**<u>Response to Paragraph 23</u>:** CCC admits that the process of performing an estimate of a damaged vehicle can involve manual processes and/or the use of software products. CCC further admits that various software products can be used to identify auto damage, diagnose repairs, or estimate the costs of such repairs, but denies that all software products that perform such functions are considered or known as "Estimatics" products. CCC admits that many automobile insurers and repair facilities make use of various software products to perform some or all of these functions. CCC further admits that some software products, such as products that CCC offers, perform some of these functions more reliably, consistently, and faster than manual processes. CCC denies that Paragraph 23 has identified a group of "software products" that are collectively "known as 'Estimatics'" and CCC denies that Paragraph 23 has defined the existence of a relevant product market. CCC denies all remaining allegations in Paragraph 23.

**<u>Response to Paragraph 24</u>:** CCC admits that some software products used to identify auto damage, diagnose necessary repairs, or estimate the costs of such repairs can involve the use of artificial intelligence. CCC denies that all such software products are considered or known as

"Estimatics" products. CCC further denies that software products that perform some or all of these functions require access to a specific database. Paragraph 24's use of undefined terms "certain Estimatics products," "other information," "over the years," "fairly rudimentary," and "much more complex programming" render the remainder of Paragraph 24's allegations vague and incapable of further response as written. Accordingly, CCC lacks sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 24, and therefore denies them.

**Response to Paragraph 25:** Paragraph 25 asserts only legal arguments and legal conclusions that do not require a response. To the extent that a response is required, CCC denies the allegations in Paragraph 25.

**Response to Paragraph 26:** CCC admits that over 15 years before Tractable filed these Counterclaims, the Federal Trade Commission filed a complaint in the U.S. District Court for the District of Columbia, seeking a temporary restraining order and preliminary injunction to preserve the status quo, thereby preventing a proposed "merger of equals" between CCC and Mitchell pending an administrative hearing before the Federal Trade Commission. CCC also admits that the district court issued a preliminary injunction to preserve the status quo pending the administrative hearing, and that CCC and Mitchell later abandoned the proposed merger of equals. CCC denies that it conceded in that litigation 15 years ago that "Estimatics," as defined in these Counterclaims, constituted a relevant market for antitrust purposes in that prior litigation or this litigation. CCC denies the remaining allegations in Paragraph 26.

**Response to Paragraph 27:** CCC denies that the district court in *F.T.C. v. CCC Holdings, Inc.*, entered any finding or conclusion with respect to "Estimatics" as defined in these Counterclaims or as applicable to the timeframe or market conditions at issue in these Counterclaims, which Tractable filed over 15 years after the district court opinion in that case.

The second and third sentences of Paragraph 27 assert legal conclusions that do not require a response. To the extent that a response is required, CCC denies the allegations in Paragraph 27.

**B. The Relevant Geographic Market**

**<u>Response to Paragraph 28</u>:** The first sentence of Paragraph 28 asserts only legal conclusions that do not require a response. To the extent that a response is required, CCC denies the allegations in the first sentence of Paragraph 28. Paragraph 28's use of the undefined or incoherently defined term "Estimatics software" renders the second sentence of Paragraph 28 vague and incapable of response as written, including because the Counterclaims repeatedly refer to "Estimatics" as including unidentified "software products," unidentified "product offerings," and "an amalgamation" of unidentified products. Accordingly, CCC denies the allegations in the second sentence of Paragraph 28. CCC admits that its opposition to the Federal Trade Commission's motion for a preliminary injunction or temporary restraining order in *F.T.C. v. CCC Holdings, Inc.* did not include a challenge to the geographic market alleged in that case, but denies that CCC's position in a case addressing a different timeframe and market conditions, and which was decided over 15 years prior to the filing of these Counterclaims, has any relevance to this litigation. CCC denies the remaining allegations in Paragraph 28.

**III. <u>CCC's Monopoly and Market Power</u>**

**<u>Response to Paragraph 29</u>:** CCC admits that it is a leading software-as-a-service platform for the property and casualty insurance economy powering operations for insurers, repairers, automakers, part suppliers, lenders, and others, that it has delivered leading software solutions to both the insurance and repair industries for decades, and that it has processed more than $1 trillion of historical data across its network. To the extent that the allegations in the third, fourth, and fifth sentences of Paragraph 29 purport to describe a document or documents, those materials speak for

themselves, and CCC denies Tractable's mischaracterizations. CCC denies that it has any position in the "Estimatics" products market as alleged in these Counterclaims because no such product market exists. CCC denies the remaining allegations in Paragraph 29, including any allegation that Tractable has properly defined a relevant market within these Counterclaims.

**Response to Paragraph 30:** The first sentence of Paragraph 30 asserts a legal conclusion that does not require a response. To the extent that a response is necessary, CCC denies the allegations in the first sentence of Paragraph 30. CCC denies that the remainder of Paragraph 30 describes barriers to entry within the meaning of antitrust law. CCC denies the remaining allegations in Paragraph 30.

**Response to Paragraph 31:** CCC denies the allegations in Paragraph 31.

**Response to Paragraph 32:** CCC denies the allegations in Paragraph 32. CCC further responds that the selective quotation of unidentified documents is taken out of context and is misleading, and that the full content of any written material speaks for itself and does not support the allegations contained in Paragraph 32 or Tractable's Counterclaims, and CCC denies Tractable's mischaracterization.

**Response to Paragraph 33:** CCC denies the allegations in Paragraph 33.

**Response to Paragraph 34:** CCC denies the allegations in Paragraph 34.

**Response to Paragraph 35:** To the extent that Paragraph 35 purports to describe CCC's financial disclosures, those financial disclosures speak for themselves. CCC denies the remaining allegations in Paragraph 35.

**IV. Tractable's Competitive Threat to CCC**

**Response to Paragraph 36:** On information and belief, CCC admits that Tractable was founded in 2014. CCC denies Tractable's characterizations of its "technology," as the evidence

Tractable has produced in this litigation shows that Tractable has engaged in a coordinated fraud to steal trade secrets and other confidential information from CCC, and that Tractable has used similar fraudulent tactics to gain access to other software companies. CCC is without information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 36, and, on that basis, denies those allegations.

**Response to Paragraph 37:** CCC admits that Tractable has publicly claimed that its products "have been deployed by over 20 of the global top 100 insurers across Europe, North America and Asia."[11] CCC denies that Tractable is deserving of accolades, as the evidence produced in this litigation shows that Tractable engaged in a coordinated fraud to steal trade secrets and other confidential information from CCC, and that Tractable has used similar fraudulent tactics to gain access to other software companies. CCC denies the allegations in the second-to-last sentence and last sentence of Paragraph 37. CCC lacks sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 37, and therefore denies them.

**Response to Paragraph 38:** CCC denies Tractable's characterizations that the offerings described in Paragraph 38 are the result of Tractable's product development, as the evidence produced in this litigation shows that Tractable engaged in a coordinated fraud to steal trade secrets and other confidential information from CCC, and that Tractable has used similar fraudulent tactics to gain access to other software companies. CCC denies the allegations in the last sentence of Paragraph 38. CCC lacks sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 38, and therefore denies them.

---

[11] *See* PR Newswire, Tractable Press Release, *Root Insurance Selects Tractable As A Strategic AI Partner To Streamline Claims Operations* (Jan. 7, 2022), https://www.prnewswire.com/news-releases/root-insurance-selects-tractable-as-a-strategic-ai-partner-to-streamline-claims-operations-301455906.html.

**Response to Paragraph 39:** CCC admits that it is a trusted leader in AI and that its AI solutions increase automation across existing insurance and repair processes, including vehicle damage detection, claim triage, claim handling, casualty claim processing, repair estimating, intelligent claim review, and claim subrogation. CCC currently advertises these offerings. CCC denies the remaining allegations in Paragraph 39.

**Response to Paragraph 40:** CCC denies the allegations in Paragraph 40. CCC further responds that the selective quotation of unidentified documents in Paragraph 40 is taken out of context and is misleading, and that the full content of that written material speaks for itself and does not support the allegations in Paragraph 40 or Tractable's Counterclaims, and CCC denies Tractable's mischaracterization.

**Response to Paragraph 41:** CCC denies the allegations in Paragraph 41.

**Response to Paragraph 42:** CCC denies the allegations in Paragraph 42. CCC further denies Tractable's characterizations that the Tractable tools described in Paragraph 42 are the result of Tractable's product development, as the evidence produced in this litigation shows that Tractable engaged in a coordinated fraud to steal trade secrets and other confidential information from CCC, and that Tractable has used similar fraudulent tactics to gain access to other software companies.

**Response to Paragraph 43:** CCC denies the allegations in Paragraph 43. CCC further responds that, to the extent that Paragraph 43 purports to describe CCC's licensing arrangements with any insurer, those licenses speak for themselves.

**Response to Paragraph 44:** CCC denies the allegations in Paragraph 44. CCC further denies Tractable's characterizations that the offerings described in Paragraph 44 are the result of Tractable's product development, as the evidence produced in this litigation shows that Tractable

engaged in a coordinated fraud to steal trade secrets and other confidential information from CCC, and that Tractable has used similar fraudulent tactics to gain access to other software companies.

## V. CCC's Anticompetitive Behavior

**Response to Paragraph 45:** CCC denies the allegations in Paragraph 45.

**Response to Paragraph 46:** CCC admits that it has agreements with insurance company clients. CCC further responds that the selective quotation of unidentified court filings in Paragraph 46 from over 20 years ago is taken out of context, and that the full content of that written material speaks for itself, and CCC denies Tractable's mischaracterization. CCC denies the remaining allegations in Paragraph 46.

**Response to Paragraph 47:** CCC denies the allegations of Paragraph 47, including any allegation that Tractable has properly defined a relevant market within these Counterclaims. CCC further responds that the selective quotation of unidentified documents in Paragraph 47 is taken out of context and is misleading, that the full content of that written material speaks for itself and does not support the allegations in Paragraph 47 or Tractable's Counterclaims, and CCC denies Tractable's mischaracterization.

**Response to Paragraph 48:** CCC admits that it has sought to extend its position as a leading provider of software-as-a-service solutions for the property and casualty insurance economy, including through expanding the breadth of solutions it offers through research and development, technology leadership, and continuous innovation. CCC also admits that it has expanded its offerings to further digitize interactions and maximize value for customers, including multiple software solutions for vehicle damage detection, claim triage, claim handling, casualty claim processing, repair estimating, intelligent claim review, and claim subrogation, among others. CCC denies the remaining allegations in Paragraph 48.

**Response to Paragraph 49:** CCC denies the allegations in Paragraph 49, except to state that CCC enters into agreements with its insurance customers. CCC further responds that Tractable's Counterclaims do not identify a single competitor that was prevented from offering software in the auto-repair claim processing ecosystem because of CCC's contracts.

**Response to Paragraph 50:** CCC responds that, to the extent that Paragraph 50 purports to describe CCC's contractual arrangements, those contracts speak for themselves. CCC denies the allegations in Paragraph 50.

**Response to Paragraph 51:** CCC responds that the allegations in Paragraph 51 purport to describe an unidentified document, which speaks for itself. To the extent that a response is required, CCC denies the allegations in Paragraph 51.

**Response to Paragraph 52:** Paragraph 52 asserts legal arguments and legal conclusions that do not require a response. To the extent that a response is necessary, CCC denies the allegations in Paragraph 52. CCC further responds that the first, second, and third sentences of Paragraph 52 purport to paraphrase or characterize written documents, which speak for themselves, and CCC denies Tractable's mischaracterizations.

**Response to Paragraph 53:** CCC denies the allegations in Paragraph 53. CCC further responds that the selective quotation of unidentified documents in Paragraph 53 is taken out of context and is misleading, and CCC denies Tractable's mischaracterizations.

**Response to Paragraph 54:** CCC denies the allegations in Paragraph 54.

**Response to Paragraph 55:** CCC denies the allegations in Paragraph 55.

**Response to Paragraph 56:** CCC denies the allegations in Paragraph 56. CCC further responds that the selective quotation of unidentified documents in Paragraph 56 is taken out of context and is misleading, and that the full content of that written material speaks for itself and

does not support the allegations in Paragraph 56 or Tractable's Counterclaims, and CCC denies Tractable's mischaracterizations.

**Response to Paragraph 57:** CCC denies the allegations in Paragraph 57.

**Response to Paragraph 58:** CCC admits that it has an agreement with Hearst that is exclusive for the use of some information for certain purposes, but not all information for all purposes. CCC further admits that Hearst maintains a database that is an industry-accepted source of auto parts and labor data in the United States covering a large percentage of automobiles in the United States, including historical information. CCC denies that Motor's database is the only available source of auto parts and labor data in the United States. CCC denies the remaining allegations in Paragraph 58.

**Response to Paragraph 59:** CCC admits that it has an agreement with Hearst that is exclusive for the use of some information for certain purposes, but not all information for all purposes. CCC lacks sufficient knowledge or information to admit or deny the allegations in the last sentence of Paragraph 59 about Tractable's knowledge of CCC's agreement with Hearst, and therefore denies the allegations in the last sentence of Paragraph 59. CCC denies the remaining allegations in Paragraph 59.

**Response to Paragraph 60:** Paragraph 60's use of the undefined or incoherently defined term "Estimatics provider" renders Paragraph 60's allegations vague and incapable of verification as written, including because the Counterclaims refer to "Estimatics" as including unidentified "software products," unidentified "product offerings" and "an amalgamation of products"—also unidentified. CCC denies that all software products that allow industry participants to perform tasks throughout the auto-repair claim process require access to the data and information that CCC licenses from the Hearst database, or to Hearst's database. CCC admits Paragraph 60's allegations

that Audatex and Mitchell maintain similar databases, but denies that these are the "only other" databases available, as Tractable's own public statements contradict that allegation. On October 17, 2023, Tractable publicly announced that it has entered into a "partnership" with PartsTrader for the "integration of PartsTrader's historical pricing data into Tractable's Auto Reviewer solution" and described PartsTrader as "the leading cloud-based auto parts procurement platform for the collision repair industry."[12] CCC further denies that the Mitchell and Audatex databases are "captive," as Tractable's own public statements contradict that allegation. On January 27, 2021, Tractable publicly announced a "new partnership with Mitchell" that would combine "Mitchell's collision repair data" with Tractable's software, with Tractable's CEO touting that "[t]he Tractable-Mitchell brand is here and ready to rock."[13] CCC denies the remaining allegations in Paragraph 60.

**Response to Paragraph 61:** Paragraph 61 asserts legal arguments and legal conclusions that do not require a response. To the extent that a response is required, CCC denies the allegations in Paragraph 61, including any allegation that Tractable has properly defined a relevant market within these Counterclaims. CCC further responds that the selective quotation from *F.T.C. v. CCC Holdings, Inc.*, 605 F. Supp. 2d 26 (D.D.C. 2009) is taken out of context and is misleading, that the full content of that written material speaks for itself, and CCC denies Tractable's mischaracterization.

**Response to Paragraph 62:** Paragraph 62 asserts legal arguments and legal conclusions that do not require a response. To the extent that a response is required, CCC denies the allegations

---

12 *See* Tractable, Press Release, *Tractable & PartsTrader Launch Strategic Partnership* (Oct. 17, 2023), https://tractable.ai/en/resources/tractable-and-partstrader-launch-strategic-partnership.

13 *See* Tractable, Press Release, *Tractable & Mitchell To Offer Combined Solution For AI Vehicle Repair Estimating* (Jan. 27, 2021), https://tractable.ai/en/resources/tractable-and-mitchell-to-offer-combined-solution-for-ai-vehicle-repair-estimating.

in Paragraph 62, including any allegation that Tractable has properly defined a relevant market within these Counterclaims, and CCC denies Tractable's mischaracterizations. CCC further responds that the selective quotation from *F.T.C. v. CCC Holdings, Inc.*, 605 F. Supp. 2d 26 (D.D.C. 2009) is taken out of context and is misleading, that the full content of that written material speaks for itself, and CCC denies Tractable's mischaracterization. CCC further denies that the district court in that case, in its opinion issued over 15 years before these Counterclaims were filed, was making any statement or finding about "Estimatics" as defined in these Counterclaims, or the industry and competitive conditions relevant to the time period in these Counterclaims.

## VI. The Anticompetitive Effects of CCC's Conduct and Tractable's Resulting Injury

**Response to Paragraph 63:** CCC denies the allegations in Paragraph 63, and further states that this Paragraph contains only legal arguments and legal conclusions.

**Response to Paragraph 64:** CCC denies the allegations in Paragraph 64, including any allegation that Tractable has properly defined a relevant market within these Counterclaims, and further states that this Paragraph contains only legal arguments and legal conclusions.

**Response to Paragraph 65:** CCC denies the allegations in Paragraph 65, and further states that this Paragraph contains only legal arguments and legal conclusions.

**Response to Paragraph 66:** CCC denies the allegations in Paragraph 66, and further states that this Paragraph contains only legal arguments and legal conclusions.

**Response to Paragraph 67:** CCC denies the allegations in Paragraph 67.

**Response to Paragraph 68:** CCC denies the allegations in Paragraph 68 and further states that the selective quotation of unidentified documents in Paragraph 68 is taken out of context and is misleading, and that the full content of that written material speaks for itself and does not support the allegations in Paragraph 68 or Tractable's Counterclaims. CCC further states that the

document Tractable purports to quote is from March 2021, but Tractable publicly announced on January 7, 2022, the launch of a "partnership" and "collaboration" with Root, whereby "Root Insurance, a leading US insurtech, will use artificial intelligence (AI) to streamline and accelerate its claims operations using Tractable's suite of AI solutions."[14]

**Response to Paragraph 69:** CCC denies the allegations in Paragraph 69, and further states that the selective quotation of unidentified documents and in Paragraph 69 is taken out of context and is misleading, and that the full content of that written material speaks for itself and does not support Tractable's Counterclaims.

**FIRST CLAIM FOR RELIEF**

**(Sherman Act, Section 1, 15 U.S.C. § 1)**

**Response to Paragraph 70:** CCC repeats and incorporates by reference all of the preceding and ensuing responses to Counterclaim Paragraphs as if fully set forth herein.

**Response to Paragraph 71:** CCC denies the allegations in Paragraph 71, including any allegation that Tractable has properly defined a relevant market within these Counterclaims, and further states that this Paragraph contains only legal arguments and legal conclusions.

Exclusive dealing arrangements with customers

**Response to Paragraph 72:** CCC denies the allegations in Paragraph 72, except CCC admits that it has entered into contracts, negotiated at arm's length, with some customers that name CCC as their exclusive provider of some services. CCC denies Tractable's characterization of CCC's agreements, the contents of which speak for themselves.

**Response to Paragraph 73:** CCC denies the allegations in Paragraph 73, including any

---

[14] *See* Tractable, Press Release, *Root Insurance Selects Tractable As A Strategic AI Partner To Streamline Claims Operations* (Jan. 7, 2022), https://tractable.ai/en/resources/root-insurance-selects-tractable-as-a-strategic-ai-partner-to-streamline-claims-operations.

allegation that Tractable has properly defined a relevant market within these Counterclaims, and further states that this Paragraph contains only legal arguments and legal conclusions.

**Response to Paragraph 74:** CCC denies the allegations in Paragraph 74, and further states that this Paragraph contains only legal arguments and legal conclusions.

**Response to Paragraph 75:** CCC denies the allegations in Paragraph 75, and further states that this Paragraph contains only legal arguments and legal conclusions.

**Response to Paragraph 76:** CCC denies the allegations in Paragraph 76, and further states that this Paragraph contains only legal arguments and legal conclusions.

**Response to Paragraph 77:** CCC denies the allegations in Paragraph 77, and further states that this Paragraph contains only legal arguments and legal conclusions.

**Response to Paragraph 78:** CCC denies the allegations in Paragraph 78, and further states that this Paragraph contains only legal arguments and legal conclusions. To the extent that Paragraph 78 suggests the existence of a properly defined relevant market within these Counterclaims, CCC also denies those allegations.

Exclusive dealing arrangements with Hearst

**Response to Paragraph 79:** CCC denies the allegations in Paragraph 79, except CCC admits that it has an arrangement with Hearst that is exclusive for the use of some information for certain purposes, but not all information for all purposes. To the extent that Paragraph 79 suggests the existence of a properly defined relevant market within these Counterclaims, CCC also denies those allegations.

**Response to Paragraph 80:** CCC denies the allegations in Paragraph 80, and further states that this Paragraph contains only legal arguments and legal conclusions. To the extent that Paragraph 80 suggests the existence of a properly defined relevant market within these

Counterclaims, CCC also denies those allegations.

**Response to Paragraph 81:** CCC denies the allegations in Paragraph 81, and further states that this Paragraph contains only legal arguments and legal conclusions.

**Response to Paragraph 82:** CCC denies the allegations in Paragraph 82, and further states that this Paragraph contains only legal arguments and legal conclusions.

**Response to Paragraph 83:** CCC denies the allegations in Paragraph 83, and further states that this Paragraph contains only legal arguments and legal conclusions.

**Response to Paragraph 84:** CCC denies the allegations in Paragraph 84, and further states that this Paragraph contains only legal arguments and legal conclusions.

**Response to Paragraph 85:** CCC denies the allegations in Paragraph 85, and further states that this Paragraph contains only legal arguments and legal conclusions. To the extent that Paragraph 85 suggests the existence of a properly defined relevant market within these Counterclaims, CCC also denies those allegations.

**Response to Paragraph 86:** CCC denies the allegations in Paragraph 86, and further states that this Paragraph contains only legal arguments and legal conclusions.

**Response to Paragraph 87:** CCC denies the allegations in Paragraph 87, and further states that this Paragraph contains only legal arguments and legal conclusions. To the extent that Paragraph 87 suggests the existence of a properly defined relevant market within these Counterclaims, CCC also denies those allegations.

**Response to Paragraph 88:** CCC denies the allegations in Paragraph 88, and further states that this Paragraph contains only legal arguments and legal conclusions.

**Response to Paragraph 89:** CCC denies the allegations in Paragraph 89, and further states that this Paragraph contains only legal arguments and legal conclusions.

**Response to Paragraph 90:** CCC denies the allegations in Paragraph 90, and further states that this Paragraph contains only legal arguments and legal conclusions.

**SECOND CLAIM FOR RELIEF**

**(Monopolization, Sherman Act, Section 2, 15 U.S.C. § 2)**

**Response to Paragraph 91:** CCC repeats and incorporates by reference all of the preceding and ensuing responses to Counterclaim Paragraphs as if fully set forth herein.

**Response to Paragraph 92:** CCC denies the allegations in Paragraph 92, including any allegation that Tractable has properly defined a relevant market within these Counterclaims, and further states that this Paragraph contains only legal arguments and legal conclusions.

**Response to Paragraph 93:** CCC denies the allegations in Paragraph 93. To the extent that Paragraph 93 suggests the existence of a properly defined relevant market within these Counterclaims, CCC also denies those allegations.

**Response to Paragraph 94:** CCC denies the allegations in Paragraph 94, and further states that this Paragraph contains only legal arguments and legal conclusions.

Exclusive dealing arrangements with customers

**Response to Paragraph 95:** CCC denies the allegations in Paragraph 95, except CCC admits that it has entered into contracts, negotiated at arm's length, with some customers that name CCC their exclusive provider of some services. CCC denies Tractable's characterization of its agreements, the contents of which speak for themselves.

**Response to Paragraph 96:** CCC denies the allegations in Paragraph 96, and further states that this Paragraph contains only legal arguments and legal conclusions.

**Response to Paragraph 97:** CCC denies the allegations in Paragraph 97, and further states that this Paragraph contains only legal arguments and legal conclusions.

**Response to Paragraph 98:** CCC denies the allegations in Paragraph 98, and further states that this Paragraph contains only legal arguments and legal conclusions. CCC further responds that its agreements with its customers speak for themselves.

**Response to Paragraph 99:** CCC denies the allegations in Paragraph 99, and further states that this Paragraph contains only legal arguments and legal conclusions.

**Response to Paragraph 100:** CCC denies the allegations in Paragraph 100, and further states that this Paragraph contains only legal arguments and legal conclusions.

**Response to Paragraph 101:** CCC denies the allegations in Paragraph 101, and further states that this Paragraph contains only legal arguments and legal conclusions.

Exclusive dealing arrangements with Hearst

**Response to Paragraph 102:** CCC denies the allegations in Paragraph 102, except CCC admits that it has an arrangement with Hearst that is exclusive for the use of some information for certain purposes, but not all information for all purposes. To the extent that Paragraph 102 suggests the existence of a properly defined relevant market within these Counterclaims, CCC also denies those allegations.

**Response to Paragraph 103:** CCC denies the allegations in Paragraph 103, and further states that this Paragraph contains only legal arguments and legal conclusions.

**Response to Paragraph 104:** CCC denies the allegations in Paragraph 104, and further states that this Paragraph contains only legal arguments and legal conclusions.

**Response to Paragraph 105:** CCC denies the allegations in Paragraph 105, and further states that this Paragraph contains only legal arguments and legal conclusions.

**Response to Paragraph 106:** CCC denies the allegations in Paragraph 106, and further states that this Paragraph contains only legal arguments and legal conclusions.

**Response to Paragraph 107:** CCC denies the allegations in Paragraph 107, and further states that this Paragraph contains only legal arguments and legal conclusions.

**Response to Paragraph 108:** CCC denies the allegations in Paragraph 108, and further states that this Paragraph contains only legal arguments and legal conclusions. To the extent that Paragraph 108 suggests the existence of a properly defined relevant market within these Counterclaims, CCC also denies those allegations.

**Response to Paragraph 109:** CCC denies the allegations in Paragraph 109, and further states that this Paragraph contains only legal arguments and legal conclusions.

**Response to Paragraph 110:** CCC denies the allegations in Paragraph 110, and further states that this Paragraph contains only legal arguments and legal conclusions. To the extent that Paragraph 110 suggests the existence of a properly defined relevant market within these Counterclaims, CCC also denies those allegations.

**Response to Paragraph 111:** CCC denies the allegations in Paragraph 111, and further states that this Paragraph contains only legal arguments and legal conclusions.

**Response to Paragraph 112:** CCC denies the allegations in Paragraph 112, and further states that this Paragraph contains only legal arguments and legal conclusions.

**Response to Paragraph 113:** CCC denies the allegations in Paragraph 113, and further states that this Paragraph contains only legal arguments and legal conclusions.

## JURY DEMAND

**Response to Paragraph 114:** Tractable's jury demand contains no factual allegations and does not require a response.

## PRAYER FOR RELIEF

Tractable's Prayer for Relief asserts legal conclusions to which no response is required. To the extent that a response is deemed necessary, CCC states that Tractable has petitioned this

Court for damages, injunctive relief, and other relief, but denies that Tractable is entitled to any relief.

## GENERAL DENIAL

CCC denies the allegations in Tractable's Counterclaims, whether express or implied, that are not specifically addressed herein**.**

## AFFIRMATIVE DEFENSES

CCC expressly reserves the right to plead additional affirmative and other defenses should discovery reveal any such defenses in this case.

CCC asserts the following affirmative defenses without assuming the burden of proof as to any issue that would otherwise rest upon Tractable.

## FIRST AFFIRMATIVE DEFENSE

Tractable's claims are barred, in whole or in part, by the applicable statute of limitations and laches, including because Tractable fails to allege the identity or timing of any supposed "contracts" or "opportunities" it purports to have lost, or the timing of the CCC contracts, that form the bases of Tractable's Counterclaims.

## SECOND AFFIRMATIVE DEFENSE

Tractable's claims are barred, in whole or in part, by the doctrine of unclean hands, equitable estoppel, *in pari delicto*, and because of Tractable's own fraud, as described in CCC's First Amended Complaint, ECF No. 31, and CCC's Preliminary Statement, *supra* pp.1-5.

## THIRD AFFIRMATIVE DEFENSE

Tractable's claims are barred, in whole or in part, because Tractable failed to mitigate its alleged damages. As described in CCC's Preliminary Statement, *supra* pp.1-5, Tractable's public statements show multiple examples of Tractable entering into supposed partnerships with insurers in the United States and with data providers since at least 2021, and Tractable has not identified

any reasonable efforts it took to market its products to any particular insurers in the United States at any time.

## RESERVATION OF AFFIRMATIVE DEFENSE

CCC has not knowingly or intentionally waived any applicable defenses, and reserves the right to assert and rely upon other applicable defenses that may become available or apparent during discovery in this matter. CCC reserves the right to amend or to seek to amend its Answer and/or affirmative defenses.

Dated: April 9, 2024

Respectfully submitted,

*/s/ Matthew W. Walch*
Matthew W. Walch (Bar No. 6226308)
Mark S. Mester (Bar No. 6196140)
Terra Reynolds (Bar No. 6278858)
Kathryn A. Running (Bar No. 6330369)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
T: +1.312.876.7700; F: +1.312.993.9767
matthew.walch@lw.com
mark.mester@lw.com
terra.reynolds@lw.com
kathryn.running@lw.com

Adam M. Greenfield (Bar No. 6292915)
Marguerite M. Sullivan (Bar No. 6273129)
Jason Burt (*pro hac vice*)
Rebekah L. Soule (*pro hac vice*)
David L. Johnson (*pro hac vice*)
Wilson P. Boardman (Bar No. 6343030)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
T: +1.202.637-2200; F: +1.202.637.2201
adam.greenfield@lw.com
marguerite.sullivan@lw.com
jason.burt@lw.com
rebekah.soule@lw.com
david.johnson@lw.com
wilson.boardman@lw.com

Elyse M. Greenwald (*pro hac vice*)
LATHAM & WATKINS LLP
10250 Constellation Blvd. Suite 1100
Los Angeles, CA 90067
T: +1.424.653.5500; F: +1.424.653.5501
elyse.greenwald@lw.com

*Counsel for Plaintiff & Counter-Defendant CCC Intelligent Solutions Inc.*