**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **CCC INTELLIGENT SOLUTIONS INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 1:18-cv-07246** |
| **v.** | ) | |
| | ) | **Hon. LaShonda A. Hunt** |
| **TRACTABLE INC.,** | ) | |
| | ) | **Hon. Keri L. Holleb Hotaling** |
| **Defendant.** | ) | |

**CCC INTELLIGENT SOLUTIONS INC.'S OPPOSED MOTION TO COMPEL
PRODUCTION OF DOCUMENTS, INSPECTION OF SOURCE CODE, AND
<u>SUPPLEMENTATION OF INTERROGATORY RESPONSES</u>**

**TABLE OF CONTENTS**

I.      INTRODUCTION ...............................................................................................1

II.     BACKGROUND .................................................................................................2

        A.     Tractable Documents Pre-Dating October 31, 2019 Support CCC's Fraud
              and Trade Secret Misappropriation Claims ..........................................................2

        B.     Tractable Has Relied on Post-2019 Documents Produced By CCC In Its
              Desperate Attempt To Detract From Its Own Fraud ...............................................5

        C.     Despite Its Reliance on CCC's Post-2019 Documents for Its Antitrust
              Counterclaims, Tractable Has Doubled Down on Arbitrary and
              Asymmetrical Cutoffs For Its Own Productions and Source Code ........................5

III.    LEGAL STANDARD ..........................................................................................8

IV.    ARGUMENT ......................................................................................................8

        A.     The Discovery In Dispute Is Relevant To the Claims And Defenses In The
              Litigation............................................................................................................8

        B.     The Discovery Requests Are Proportional To The Needs Of The Case,
              And Tractable Has Not Met And Cannot Meet Its Burden of Showing
              Otherwise ..........................................................................................................11

V.      CONCLUSION ..................................................................................................14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*All Cell Techs., LLC v. Chevron N. Am. Inc.*,
    2021 WL 12092830 (N.D. Ill. Sept. 23, 2021) ..................................................................8, 13

*Coleman v. Illinois*,
    2020 WL 5752149 (N.D. Ill. Sept. 25, 2020) ...........................................................................8

*In re Turkey Antitrust Litig.*,
    2021 WL 6428398 (N.D. Ill. Dec. 16, 2021) ..........................................................................11

*Lakewood Eng'g & Mfg. Co. v. Lasko Prods., Inc.*,
    2003 WL 1220254 (N.D. Ill. Mar. 14, 2003)..........................................................................13

*Life Spine, Inc. v. Aegis Spine, Inc.*,
    2021 WL 5415155 (N.D. Ill. Nov. 18, 2021) .........................................................................13

*Motorola Sols., Inc. v. Hytera Commc'n's Corp.*,
    2021 WL 3076780 (N.D. Ill. Mar. 10, 2021)..........................................................................12

*Motorola, Inc. v. Lemko Corp.*,
    2012 WL 74319 (N.D. Ill. Jan. 10, 2012) ..............................................................................10

*Shapo v. Engle*,
    2001 WL 629303 (N.D. Ill. May 25, 2001) ...........................................................................14

*Specht v. Google, Inc.*,
    660 F. Supp. 2d 858 (N.D. Ill. 2009) .....................................................................................10

*SPS Techs., LLC v. Boeing Co.*,
    2019 WL 2409601 (N.D. Ill. June 7, 2019) ...........................................................................11

### RULES

Fed. R. Civ. P. 26(b)(1)..............................................................................................................2, 8

## I.     INTRODUCTION

After an investigation revealed that Tractable illicitly accessed CCC Intelligent Solutions Inc.'s ("CCC") proprietary platform in an effort to steal CCC's proprietary information and algorithms, CCC filed this action asserting claims for fraud, trade secret misappropriation, and other related claims.   Evidence produced ███████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████.

From the start of discovery, CCC has requested that Tractable produce documents, provide information, and make available for inspection source code for relevant products dated from January 1, 2017 through the present—the same time period for which Tractable has requested documents and information from CCC and agreed to provide documents and information relevant to its own counterclaims.   Tractable, however, has refused to provide source code dated after November 2018, and refused to produce documents and information dated after October 31, 2019 in response to the majority of CCC's requests.

Tractable has refused to produce this discovery, notwithstanding that CCC has produced responsive information and documents through the present in response to all of Tractable's discovery requests, and Tractable has relied heavily on discovery from CCC dated after October 31, 2019 in prior motions to compel and its antitrust counterclaims.

The Federal Rules require Tractable to provide discovery regarding non-privileged matters that are relevant to any claim or defense and proportional to the needs of the case, "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

Fed. R. Civ. P. 26(b)(1). The discovery CCC is seeking easily meets that standard, including because it bears on whether Tractable used the "JA Appraisal" alias after 2019 and how it has used and benefited from CCC's proprietary data through the present—issues that are critical to CCC's fraud and trade secret misappropriation claims. Tractable's refusal to provide that discovery is inconsistent with its discovery obligations and highly prejudicial to CCC. In essence, Tractable has refused to produce documents from certain time periods that are relevant to CCC's claims against Tractable, while agreeing to produce documents from those same time periods that are relevant to its own claims against CCC. There is no legitimate justification for this one-sided approach to discovery. The Court should grant CCC's Motion to Compel.

## II.    BACKGROUND

### A.    Tractable Documents Pre-Dating October 31, 2019 Support CCC's Fraud and Trade Secret Misappropriation Claims

In 2017, an individual purporting to be "Jason Chen" contacted CCC, claimed to represent an independent appraiser called "JA Appraisal," and secured a license to the CCC ONE Appraisal Platform and CCC ONE Estimating (collectively, "CCC ONE"). (First Am. Compl. (FAC) ¶¶ 30–32, Dkt. 31.) An investigation revealed that "Jason Chen" was an alias for Xing Xin (Tractable's former head of product development), Tractable had falsely held itself out as "JA Appraisal" to obtain unauthorized access to CCC ONE, and Tractable created test files to attempt to replicate CCC ONE's proprietary information and algorithms. (*Id.* ¶¶ 37–38, 53–62, 66.) Tractable's employees also misrepresented themselves to CCC as "JA Appraisal" employees, provided fake aliases, and inquired as to how to import and export estimates into and from CCC ONE—actions that independent appraisers are not permitted to perform. (*Id.* ¶¶ 67–72.) After discovering Tractable's improper conduct, CCC terminated "JA Appraisal's" access to CCC ONE on October 26, 2018 and sued Tractable two days later.

Discovery has confirmed ███████████████████████████████████████████████.

Numerous documents show that Tractable ████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████. *See, e.g.*, Ex. 1, TRACTABLE00026740

at 741 (Tractable's CEO discusses ████████████████████████████████████);

Ex. 2, TRACTABLE00114688 (Tractable employees discussing how █████████████

███████████████████████████████████████████████████); Ex. 3,

TRACTABLE00115221 (in response to how Tractable was "using CCC under the name JA

appraisal for some reason," a Tractable employee noted it "sound[s] like a bit of an indian drama…

don[']t tell anyone its [sic] tractable haha"); Ex. 4, TRACTABLE00115750 (a former Tractable

engineer "sent you [another employee] a forwarding request for jaappraisalco@gmail.com so you

get all Xing's dodgy emails"); Ex. 5, TRACTABLE00115714 (Nov. 1, 2018 chat █████████

██████, with one employee noting that he ████████████████████████████ and

another responding ██████████████████████████████████). Tractable used the

same ████████████████████████████████████████████████ and two

Tractable witnesses that CCC deposed admitted that they understood that Tractable often used

aliases. *See, e.g.*, Ex. 6, TRACTABLE00001360 (Tractable "ha[s] a Mitchell license under JA

Appraisal too" and "at some point probably best to cancel it and do it properly."); Ex. 7,

TRACTABLE00004678 (Jan. 30, 2018 email between "Jason Chen" of "JA Appraisal" and

Audatex); Ex. 8, E. Surekli Dep. at 100:17–101:7 (testifying that he used aliases "all the time");

Ex. 9, P. Mullan Dep. at 60:7–10 (agreeing that "using an alias is common").

As to CCC's trade secret misappropriation claim, in 2017 ████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████. *See* Ex. 10, TRACTABLE00000152, at Slide 3. Tractable ███████████████

█████████████████████████████████. *See id.* at Slide 6; Ex. 11, Tractable Resp. to

Third Set of Interrog. at 12 ████████████████████████████████████

████████████. But rather ████████████████████████████████

████████████. Ex. 12, Apr. 10, 2023 Ltr. fr. J. Barrett, at 1–2 (identifying ████████

████████████████████████████████████████████████████

███████████████████████████████████████████). Doing so allowed Tractable

to ████████████████████████████████████████████. Ex. 13,

TRACTABLE00002334 █████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████. This

conduct was far from the legitimate activity of an "independent appraiser d/b/a JA Appraisal."

Tractable also explored other methods of ████████████████████████████

██████████████████████████████████ Ex. 14, TRACTABLE00000470.

The ██████████████████████████████ Ex. 15, TRACTABLE00000018, which

required Tractable to ████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████ Ex. 13, TRACTABLE00002334.

Tractable ████████████████████████████████████████

████████████████████. *Id.*; Ex. 16, TRACTABLE00002037.

In addition to ██████████████████████████, documents produced by

Tractable prove that Tractable ████████████████████████████████

4



. *See* Ex. 17, TRACTABLE00132602 (January 2019 message thread indicating that Tractable employees ███████████████████████████████████████████████; Ex. 18, TRACTABLE00132385 (November 2018 message thread showing that ███████████████████████████████████████████████████).

## B. Tractable Has Relied on Post-2019 Documents Produced By CCC In Its Desperate Attempt To Detract From Its Own Fraud

In June 2023, seeking to deflect attention from its own fraudulent conduct, Tractable began a fishing expedition into CCC's files, and moved to compel documents from CCC's executives. Despite refusing to produce its own information and documents dated after 2019, *Tractable relied heavily on post-2019 documents produced by CCC.* It then continued its deflection tactic by filing an antitrust counterclaim against CCC in 2024, again relying primarily on documents dated after 2019. *See* (Dkt. 172); (Dkt. 191). The gist of that counterclaim is Tractable's meritless allegation that CCC has prevented Tractable from entering the alleged market for Estimatics Products. (Countercl. ¶ 49, Dkt. 191).

## C. Despite Its Reliance on CCC's Post-2019 Documents for Its Antitrust Counterclaims, Tractable Has Continued To Refuse To Produce Discovery For The Same Time Period

Throughout discovery, CCC has requested documents, source code, and other information from Tractable dated from 2017 through the present—the same time period that CCC has applied to its own discovery responses and document productions. *See* Ex. 19, CCC's First Set of RFPs (Request Nos. 26–27); Ex. 20, CCC's Second Set of RFPs; Ex. 21, CCC's Third Set of RFPs; Ex. 22, CCC's Fourth Set of RFPs; Ex. 23, CCC's First Set of Interrog.; Ex. 24, CCC's Second Set of Interrog.; Ex. 25, CCC's Third Set of Interrog.; *see also* Ex. 26, Dec. 14, 2022 Email fr.

S. O'Donohue, at 1. CCC made clear to Tractable that it needed discovery dated well after CCC terminated the fraudulent "JA Appraisal" license in October 2018 to determine the extent to which Tractable continued to benefit from its fraudulent access to CCC ONE. Ex. 26, Dec. 14, 2022 Email fr. S. O'Donohue, at 1.

Tractable refused and set arbitrary cutoffs of October 31, 2019 for its document productions, December 31, 2018 for its responses to CCC's First Set of Interrogatories, and October 31, 2019 for its responses to CCC's Second and Third Sets of Interrogatories. *Id.*; Ex. 11, Tractable Resp. to Third Set of Interrog., at 3; Ex. 27, Tractable Resp. to First Set of Interrog., at 3; Ex. 28, Tractable Resp. to Second Set of Interrog., at 3. Tractable similarly offered only to make the source code for its products that existed between August 2017 and November 2018 available for inspection. *See* Ex. 29, Dec. 15, 2022 Email fr. J. Barrett, at 1.

CCC preliminarily agreed in the spirit of good faith and compromise that Tractable could begin its productions by focusing on the pre-2019 time period, but CCC expressly reserved the right to revisit the time period for Tractable's document productions and source code as discovery proceeded. Ex. 26, Dec. 14, 2022 Email fr. S. O'Donohue, at 1 (confirming that CCC understood that Tractable would "begin its document collection and review efforts by focusing on documents and communications from January 1, 2017 through October 31, 2019 ," but that CCC "reserv[ed] all rights" to request post-October 2019 discovery). Discovery subsequently made clear that Tractable's arbitrary cut offs are not appropriate or sustainable. Not only have Tractable's own documents revealed ███████████████████████████████████████████████████, but Tractable has repeatedly relied on post-2019 documents in defending against CCC's claims and in pursuing counterclaims against CCC. Given these developments, in late September 2023, CCC requested the production of documents and information dated after October 31, 2019 and source

code dated from November 2018 to the present.  Ex. 30, Sept. 28, 2023 Ltr. fr. A. Greenfield, at 1.  Tractable did not comply with these requests.

The Court then stayed the litigation on October 3, 2023 to accommodate settlement discussions.  *See* (Dkt. 158).  Litigation resumed in late February 2024, at which point CCC followed up with Tractable on CCC's outstanding request.  *See* Ex. 31, Mar. 7, 2024 Ltr. fr. A. Greenfield, at 1.  Tractable continued to refuse, notwithstanding Tractable's ongoing reliance on CCC documents post-dating October 31, 2019.  *See* Ex. 32, Mar. 14, 2024 Ltr. fr. J. Barrett, at 1; (Dkt. 172); (Dkt. 191).

Finally, CCC formalized its request by serving its Fifth Set of Requests for Production on April 12, 2024, which requested production of "[a]ll Documents and Communications responsive to CCC's prior requests for production (*i.e.*, Requests for Production Nos. 1–88) for the time period November 1, 2019 to the present, to the extent not previously produced."  Ex. 33, CCC's Fifth Set of RFPs, at 10.  After a June 2024 meet-and-confer call, Tractable agreed in response to those Requests to produce only documents and communications dated through March 25, 2024 that it deems relevant to *its* antitrust counterclaims, including Request Nos. 28–30, 55–60, 64–65, 68–72, 75–76, 80–81, and 88.[1]  Ex. 34, Aug. 15, 2024 Ltr. fr. M. Lombardo, at 3.  However, Tractable continued to refuse to produce documents responsive to CCC's other Requests for November 1, 2019 to the present that may be relevant to CCC's  claims against Tractable, or to make additional source code available for inspection.  *Id.* at 3–4.  Thus, the parties reached an impasse.

Given the obvious and prejudicial imbalance in discovery that Tractable has created, CCC has no choice but to move to compel the inspection of source code for Tractable Products dated

---

[1] CCC had also identified Request No. 25 as relevant to its antitrust counterclaims, but Tractable continued to refuse to produce documents post-dating November 1, 2019 in response to that Request.

from November 2018 through the present, and the production of documents dated after October 31, 2019 that are responsive to CCC Request Nos. 1–2, 4–23, 25, 27, 31–39, 41–54, 61–63, 67, 73–74, 78–79, 83–85, 87, and 89.[2]   CCC also moves to compel supplemental responses to Interrogatory Nos. 1–15 for the same time period.

## III.   LEGAL STANDARD

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." *All Cell Techs., LLC v. Chevron N. Am. Inc.*, 2021 WL 12092830, at *2 (N.D. Ill. Sept. 23, 2021) (quoting Fed. R. Civ. P. 26(b)(1)). When information that is the subject of a motion to compel "appears relevant, the party resisting production has the burden of showing why the request is improper." *All Cell Techs.*, 2021 WL 12092830, at *2.  Tractable cannot meet that burden.

## IV.   ARGUMENT

### A.   The Discovery In Dispute Is Relevant To the Claims And Defenses In The Litigation

Relevance is a "broad" standard that encompasses information relating to the claims and defenses in a case, *Coleman v. Illinois*, 2020 WL 5752149, at *3–4 (N.D. Ill. Sept. 25, 2020), and the discovery CCC is requesting easily clears that bar.

*CCC's Fraud Claim.*   Documents and information dated after October 31, 2019 are relevant to CCC's fraud claim against Tractable, including specifically documents in response to Request Nos. 1–2, 4–10, 12–19, 36–39, 41–45, 48–50, 53–54, 80–81, and 89, and information responsive to Interrogatory Nos. 1–3, 6, 10, and 13–14.  Tractable has repeatedly asserted as part of its defense that "JA Appraisal" was a d/b/a name, and that Tractable acted as a legitimate

---

[2] Request Nos. 3, 24, 26, 40, and 77 seek documents predating October 31, 2019 and therefore do not apply.

"independent appraiser." *See, e.g.*, (Dkt. 191 ¶ 6); Ex. 9, P. Mullan Dep. at 60:7–10. CCC's requests seek documents post-dating October 31, 2019 that would enable CCC to test those assertions, including documents "concerning 'JA Appraisal'" and its "business activities, financial transactions, records of corporate formation, and tax filings," Ex. 19, CCC's First Set of RFPs, at 9 (Request No. 1), and related to the aliases and email addresses that Tractable employees and executives used in their interactions with CCC, *id* at 10–12 (Request Nos. 8, 13–14, and 16–17). Indeed, Tractable's continuing denials that "JA Appraisal" was an illegitimate alias or that Tractable otherwise committed fraud by claiming to be an "independent appraiser" have placed the requested documents squarely at issue.

***CCC's Trade Secret Misappropriation Claim.*** Documents, information, and source code dated through the present, including specifically documents and source code responsive to Request Nos. 4–7, 9–23, 25, 27, 37–39, 41–47, 50–54, 61–63, 67, 73–74, 78–79, 83–85, 87, and 89, and information responsive to Interrogatory Nos. 3–6, 8, 11–12, and 14, are also relevant to CCC's trade secret misappropriation claim. Discovery has shown that ████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████. Indeed, recent documents that Tractable has produced in response to CCC's counterclaim-related discovery requests show that Tractable ████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████. *See* Ex. 35, TRACTABLE00462665 (2021 discussion about ████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████).  Similarly,

other recently produced documents suggest that Tractable ██████████████████████

████████████████████████████████████████████████████████████████████

█████████████████  *see* Ex. 36, TRACTABLE00463247—underscoring the relevance of other

documents post-dating October 31, 2019 regarding the extent to which Tractable has continued to

████████████████████████████████████████████.

 CCC will not and cannot know the full extent to which Tractable used CCC's proprietary
data and information without discovery into Tractable's continued development efforts—
information that is highly relevant to Tractable's liability for trade secret misappropriation and to
the amount of damages that CCC is entitled to recover.  That is precisely why it is common in
trade secret misappropriation cases for discovery to extend beyond the date of the wrongdoing.
*See, e.g.*, *Motorola, Inc. v. Lemko Corp.*, 2012 WL 74319, at *14 (N.D. Ill. Jan. 10, 2012)
(describing discovery requests for source code "to the present" as being "relevant" and "not unduly
burdensome").

 ***CCC's Lanham Act Claim.***  Documents and information through the present that are
responsive to Request Nos. 31–35 and 37 and Interrogatory Nos. 7 and 9 are also relevant to CCC's
trademark infringement claim.  For example, Request No. 33 asks for documents "concerning any
actual or potential confusion between CCC and Tractable products."  Ex. 19, CCC's First Set of
RFPs, at 14.  Responsive documents post-dating October 31, 2019 would bear on whether
Tractable has continued to use CCC trademarks and caused confusion among customers in the
process—issues that are relevant to the "use in commerce" and "likelihood of confusion" elements
of CCC's trademark infringement claim, *see Specht v. Google, Inc.*, 660 F. Supp. 2d 858, 863–64
(N.D. Ill. 2009).

10

*Tractable's Unclean Hands Defense.* The requested documents, source code, and information are also relevant to Tractable's "unclean hands" defense. For example, Request No. 25 seeks "[a]ll Documents and Communications reflecting any changes to any Tractable Product between November 2018 and present," Ex. 19, CCC's First Set of RFPs, at 13, which are relevant to test Tractable's claim that CCC has prevented it from entering the alleged U.S. Estimatics Products market. Moreover, documents through the present that are responsive to Requests relating to CCC's trade secret misappropriation and fraud claims may also be relevant to the unclean hands defense. For example, documents showing the extent to which Tractable has continued to use CCC data after November 1, 2019 would bear on that data's value and whether Tractable's alleged inability to access it interfered with competition.

**B.      The Discovery Requests Are Proportional To The Needs Of The Case, And Tractable Has Not Met And Cannot Meet Its Burden of Showing Otherwise**

Given the relevance of the requested discovery, to avoid producing it, Tractable would have to show that it is disproportional "to the needs of the case," "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *In re Turkey Antitrust Litig.*, 2021 WL 6428398, at *2 (N.D. Ill. Dec. 16, 2021). Each of these factors weighs in CCC's favor, and Tractable cannot meet its burden.

To begin, the issues at stake in this case are of high importance: Tractable has fraudulently accessed CCC ONE for the purpose of misappropriating trade secrets that CCC developed over "several decades," and that serve as key components of the CCC ONE platform worth in "excess of hundreds of millions of dollars." (FAC ¶ 18); *see SPS Techs., LLC v. Boeing Co.,* 2019 WL 2409601, at *5 (N.D. Ill. June 7, 2019). The amount in controversy is substantial, as reflected in

the large damages awards imposed against other defendants found liable for trade secret misappropriation in similar cases. *See, e.g.*, *Motorola Sols., Inc. v. Hytera Commcn's Corp.*, 2021 WL 3076780, at *1 (N.D. Ill. Mar. 10, 2021) (discussing the court's adoption of a jury award of $135.8 million for the defendants' trade secret misappropriation under the Defend Trade Secrets Act, along with disgorgement of $136.3 million for the defendants' copyright infringement and exemplary damages of $271.6 million).

Tractable has exclusive access to the discovery at issue and has not shown (or even argued) that it lacks the resources to provide it to CCC. Nor could Tractable justify blocking the discovery on burden or disproportionality grounds, as any burden associated with producing the requested discovery is easily outweighed by its relevance to critical components of the claims and defenses in the case, including the legitimacy of the "JA Appraisal" alias, how Tractable has continued to use CCC's proprietary information through the present, and how any such ongoing use has harmed CCC. *See supra*, at 3–5. Moreover, no alleged burden would justify the prejudice caused to CCC by Tractable's refusal to provide the requested discovery, given that CCC has undertaken the effort and expense to produce its own documents through the present, and Tractable is using those documents to its advantage in its own counterclaims and defenses.

Indeed, Tractable has been more than willing to accept *CCC's* discovery from after October 31, 2019 and has repeatedly presented those documents as highly relevant to the case, including in its motion to compel the addition of CCC's CEO, Githesh Ramamurthy, and former executive Barrett Callaghan as custodians, and in its more recent motion for leave to add antitrust counterclaims against CCC. (Dkt. 174 at 12 (noting that "Tractable only discovered the basis for its antitrust counterclaims after pressing CCC to produce discovery related to the claims and defenses already at issue in this case.")). Similarly, Tractable has agreed to produce discovery in

response to requests that *it deemed relevant to its own antitrust counterclaims against CCC*; but it refuses to reciprocate by producing discovery that is clearly relevant *to CCC's claims against Tractable*. And finally, where doing so worked to its advantage, Tractable has acknowledged that "the allegations underlying Tractable's proposed counterclaims are closely aligned factually with the allegations already asserted in Tractable's unclean hands affirmative defense and placed at issue by CCC's misappropriation theories." (Dkt. 174 at 12.)

Tractable's position is transparently self-serving and highly prejudicial to CCC. Having been forced to produce documents pre-dating November 1, 2019 that are damaging to its defense, *see supra*, at 6–7, Tractable appears to be attempting to avoid further damage by withholding more recent documents, information, and source code that is directly relevant to and would likely bolster CCC's claims and increase anticipated damages. That is entirely inconsistent with the discovery rules, which do not permit a defendant to game litigation by unilaterally setting time-period cutoffs for discovery that is likely to harm the defendant's case, while adopting a broader time period for discovery it considers to be advantageous. Tractable has not identified (nor has CCC been able to find) even a single case in which a defendant was allowed to apply a time period for its discovery responses that was years shorter than the time period that applied to the plaintiff's responses. To the contrary, courts routinely permit broad-ranging discovery in cases involving alleged fraud or intellectual property violations without setting the type of temporal cutoffs that Tractable seeks to apply here. *See, e.g.*, *Life Spine, Inc. v. Aegis Spine, Inc.*, 2021 WL 5415155, at *4–5 (N.D. Ill. Nov. 18, 2021) (granting in part a motion to compel production of documents related to the defendant's use of alleged trade secrets to develop "follow-on devices"); *All Cell Techs.*, 2021 WL 12092830, at *3 (ordering defendant to produce information related to "new products released after" the date that the original allegedly infringing product was offered for sale); *Lakewood Eng'g*

13

& *Mfg. Co. v. Lasko Prods., Inc.*, 2003 WL 1220254, at *3 (N.D. Ill. Mar. 14, 2003) (compelling production of "all UL documentation" related to the disputed intellectual property at issue); *Shapo v. Engle*, 2001 WL 629303, at *6 (N.D. Ill. May 25, 2001) (granting motion to compel documents related to the assessment of damages incurred by insurance companies due to the defendants' alleged fraudulent conveyance).

If Tractable's position were to prevail, Tractable would be able to withhold the very documents that are necessary for CCC to investigate issues such as Tractable's denials that the "JA Appraisal" name was a fictitious alias or that Tractable misrepresented itself when it claimed to be an "independent appraiser, and Tractable's continued use of CCC's trade-secret information through the present. Those issues cut to the heart of CCC's fraud and trade secret misappropriation claims.

In sum, the discovery at issue is relevant and proportional to the needs of the case, and Tractable cannot meet its burden to justify the one-sided and highly prejudicial discovery scheme it is attempting to get away with.

## V.    CONCLUSION

For the reasons set forth above, Tractable should be compelled to produce documents and communications responsive to the Requests at issue from October 31, 2019 through the present; to make available for inspection source code for Tractable Products dating from November 2018 through the present; and to serve supplemental responses to Interrogatory Nos. 1–15 covering a time period through the present.

Dated: October 3, 2024                    Respectfully submitted,

/s/ *Matthew W. Walch*
Matthew W. Walch (Bar No. 6226308)
Kathryn A. Running (Bar No. 6330369)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
T: +1.312.876.7700; F: +1.312.993.9767
matthew.walch@lw.com
kathryn.running@lw.com

Marguerite M. Sullivan (Bar No. 6273129)
Rebekah L. Soule (*pro hac vice*)
David L. Johnson (*pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
T: +1.202.637.2200; F: +1.202.637.2201
marguerite.sullivan@lw.com
rebekah.soule@lw.com
david.johnson@lw.com

Elyse M. Greenwald (*pro hac vice*)
LATHAM & WATKINS LLP
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
T: +1.424.653.5500; F: +1.424.653.5501
elyse.greenwald@lw.com

Melanie J. Grindle (*pro hac vice*)
LATHAM & WATKINS LLP
12670 High Bluff Drive
San Diego, CA 92130
T: +1.858.523.5400; F: +1.858.523.5450
melanie.grindle@lw.com

Ryan R. Owen (*pro hac vice*)
LATHAM & WATKINS LLP
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
T: +1.714.540.1235; F: +1.714.755.8290
ryan.owen@lw.com

*Counsel for Plaintiff CCC Intelligent Solutions Inc.*

## **LOCAL RULE 37.2 MEET AND CONFER CERTIFICATION**

The undersigned hereby certifies that CCC has in good faith conferred with Tractable to resolve this discovery dispute during teleconferences on December 12, 2022 and June 28, 2024. The parties disagree about the substance of the motion, thus discussions conclusively ended in an impasse, leaving open issues for the Court to resolve.

/s/ *Matthew W. Walch*
Matthew W. Walch

**CERTIFICATE OF SERVICE**

I, Matthew W. Walch, hereby certify that on October 3, 2024, I caused the foregoing to be filed using the Court's electronic filing system which provides service to all counsel of record, and separately served all sealed filings to counsel of record via email.

/s/ *Matthew W. Walch*
Matthew W. Walch