# EXHIBIT 1
## FILED UNDER SEAL

# EXHIBIT 2

# Personal messages Max and Xing Xin - 2018-01-18 (UTC)

Private 1/18/2018, 7:50 AM
Xing Xin

- ## Xing Xin (U4D2LFHHV)XX

  no, they don't know it's tractable. they think it's JA appraisal, an independent appraisal company
  1/18/2018, 7:50 AM
  I'm thinking this should still work as the workflow we're designing for estimating should be very close to how they work with independent appraisers anyway
  1/18/2018, 7:50 AM
  not sure if we have to be officially set up in an insurer's profile as a valid estimator or if we can just give them our user information
  1/18/2018, 7:51 AM
  either way, thinking the account we currently have should allow that given IAs do the same thing
  1/18/2018, 7:51 AM
  let me know if it either doesn't work or you think we need to add something onto our account to accomplish that
  1/18/2018, 7:51 AM

TRACTABLE00114688

# EXHIBIT 3

# Personal messages Aushim Krishan and Max - 2018-01-18 (UTC)

Private 1/18/2018, 6:21 PM
Aushim Krishan and Max

- ## Max (U5H1QS1C6)M

  no, they don't know it's tractable. they think it's JA appraisal, an independent appraisal company
  [7:50 AM]
  I'm thinking this should still work as the workflow we're designing for estimating should be very close to how they work with independent appraisers anyway

  [7:51 AM]
  not sure if we have to be officially set up in an insurer's profile as a valid estimator or if we can just give them our user information
  [7:51 AM]
  either way, thinking the account we currently have should allow that given IAs do the same thing
  [7:51 AM]
  let me know if it either doesn't work or you think we need to add something onto our account to accomplish that
  1/18/2018, 6:21 PM
  hey this is the reply from xing in ref to workflow access. im in the office 2mrw and will catch up.
  1/18/2018, 6:22 PM

- ## Aushim Krishan (U6END23QQ)AK

  cool, thanks a lot 🖤
  1/18/2018, 6:22 PM

- ## Max (U5H1QS1C6)M

  we are using CCC under the name JA appraisal for some reason. i will clear up why we are using this and not tractable.
  1/18/2018, 6:24 PM

- ## Aushim Krishan (U6END23QQ)AK

  hahaha
  1/18/2018, 6:24 PM
  okay
  1/18/2018, 6:24 PM

- ## Max (U5H1QS1C6)M

  sound a bit like a indian drama... dont tell any one its tractable hahah
  1/18/2018, 6:25 PM

- ## Aushim Krishan (U6END23QQ)AK

  🖤
  1/18/2018, 6:38 PM

# EXHIBIT 4

# Personal messages Carles Reina and Phil Mullan - 2018-07-26 (UTC)

Private 7/26/2018, 9:10 AM
Phil Mullan

- ## Phil Mullan (U80ENF151)PM

   i sent you a forwarding request for jaappraisalco@gmail.com so you get all Xing's dodgy emails ☐
   can you click on the verification link?
   7/26/2018, 9:10 AM
   they'll forward to me too but i want to make sure they don't get missed
   7/26/2018, 9:10 AM

TRACTABLE00115750

# EXHIBIT 5
# FILED UNDER SEAL

# EXHIBIT 6

| | |
|---|---|
| **From:** | Phil Mullan <phil@tractable.ai> |
| **Sent:** | Friday, August 17, 2018 1:50 PM |
| **To:** | Laura Johnston <laura@tractable.ai> |
| **Cc:** | Carles Reina <carles@tractable.ai>; Alex Dalyac <alex@tractable.ai> |
| **Subject:** | Fwd: Reminder: Mitchell Account Information Enclosed |
| **Attach:** | 1016198 J.A Appraisal.pdf |

Apparently we have a Mitchell license under JAAppraisal too.

I'm assuming we should be paying this to avoid issues but at some point probably best to cancel it and do it properly.

Regards

Phil Mullan | VP of Engineering
**tractable**

blog | @tractable_ai | linkedin

---------- Forwarded message ----------
From: <system@netsuite.com>
Date: 15 August 2018 at 08:31
Subject: Reminder: Mitchell Account Information Enclosed
To: jaappraisalco@gmail.com

# Mitchell WorkCenter

**Account: 1016198 J.A Appraisal**

Dear Valued Customer,

We know how busy you are, so this should just take a quick moment. We've noticed that we have not received your payment and unpaid outstanding balances are subject to late fees. Please see the attached statement of your account for specific details.

Now you have 24/7 access to your Mitchell account through the new Mitchell Payment Portal. It makes it easy to check your account balance, view and pay invoices, review your account history, and sign up for time-saving automatic payments.

TRACTABLE00001360

You can also "go green" with paperless invoicing. No mail to open, no checks to write, no stamps to buy. It's free, secure, and convenient. Click here to register today!

If you prefer to mail in your payment, please be sure to include your Mitchell account number and invoice number(s) on your check. Mail your payment to:

Mitchell International, Inc.
PO BOX 846946
Los Angeles, CA 90084-6946

If you've already sent in this payment, please disregard this notice. We thank you for choosing Mitchell for your business.

Best regards,

**Mitchell**

® 2012 Mitchell International, Inc. All rights reserved.
For customer service and support, click here.

TRACTABLE00001361

# EXHIBIT 7

| | |
|---|---|
| **From:** | "Tennyson, Stacy [Audatex]" <Stacy.Tennyson@audatex.com> |
| **Sent:** | Tue, 30 Jan 2018 16:34:17 +0000 (UTC) |
| **To:** | "Jason Chen" <jaappraisalco@gmail.com> |
| **Subject:** | RE: <EXT>Re: Audatex and your business |
| **Attachments:** | JA Appraisal- IA Basic Bundle Agreement _1_30_2018.pdf;1 System Requirements.pdf |

Hi Jason,

Here are the contract terms for 12 months plus the system requirements, if you decide to go with this option I would need the business address to add to the contract I would send over for true signature.

If you were to go with the 3 year option you would pay 185.00 a month.

The program would include Audatex DVD based software, PXN( Alternate parts pricing) 3D Graphics, Imaging, and 1 User ID.

Please review and I will follow up in a few days,

Stacy T

**From:** Jason Chen [mailto:jaappraisalco@gmail.com]
**Sent:** Monday, January 29, 2018 1:09 PM
**To:** Tennyson, Stacy [Audatex] <Stacy.Tennyson@audatex.com>
**Subject:** <EXT>Re: Audatex and your business

Hi Stacy,

We're potentially in the market again as a potential new client may require Audatex. Would you be able to help with two things?

1. What are current offers that are available?
2. Can you send over the standard agreement with terms laid out for review?

Thanks,

On Tue, Sep 5, 2017 at 11:42 AM, Tennyson, Stacy [Audatex] <Stacy.Tennyson@audatex.com> wrote:

Hi Jason,

Thank you for speaking with me today about your new business endeavor. It's very exciting starting a new business, I am here to help by giving you information from Audatex Estimating. Below are some videos of our products and service that are included with your IA Bundle.

- **Audatex Estimating Overview**
- **3D Graphics**
- **PXN (Aftermarket Parts)**

TRACTABLE00004678

Also included as part of the IA bundle: Electronic Trading Partner. Depending on the Insurance company you may need imaging. This is an add on of 20.00 per month and can be at any time to run with the current contract.

The IA Bundle is $150.00 a month, per user License for 12 months. 6 month opt out after 6 months of paid invoices. The program will be DVD based with an AudaUpdate to be installed and ran off web once a week. Once the contract is signed you can expect support from our on boarding team to help install the DVD and the audaupdate on each computer that will be running the system. Please note each user must have their own license.

After the install is complete you will be scheduled for training. The training is about 1 to 1 ½ hours and shows you the basics of how to run audatex.

After the install and training are complete you will get a final follow up from me, but I will be available for support if needed. You will also have access to online training and technical support. Our Tech support is available Monday thru Friday 8:00am to 8:00pm. Saturday 9:00am -1:00pm EST.

Please feel free to contact me if you have any questions @ 734-881-9124, I will be out of town next week so if you need assistance or have questions you can reach our Audatex Sales Specialist Stephfon Smith @ 734-881-9125.

Thank you for your interest in Audatex Estimating for your new IA company.

Stacy T

**Stacy Tennyson**/Mid Atlantic Territory Manager/Audatex, a Solera company /O: 734-881-9124
Stacy.Tennyson@audatex.com

*This message and any attachments are intended only for the use of the addressee and may contain information that is privileged and confidential. If the reader of the message is not the intended recipient or an authorized representative of the intended recipient, you are hereby notified that any dissemination of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail and delete the message and any attachments from your system.*

TRACTABLE00004679

# EXHIBIT 8

1

1

2                    IN THE UNITED STATES DISTRICT COURT
                     FOR THE NORTHERN DISTRICT OF ILLINOIS
3                           EASTERN DIVISION.

4       - - - - - - - - - - - - - - - -
5                                       )
        IN THE MATTER OF:               )
6                                       )
        CCC INTELLIGENT SOLUTIONS INC. )
7                                       )
                   Plaintiff/Applicant, )
8                                       )    NO: 118-CV-07246
                        v.              )
9                                       )
        TRACTABLE INC.                  )
10                       Defendant, )
                        and             )
11                                      )
        PHIL MULLAN                     )
12                       Respondent.)
                                        )
13      - - - - - - - - - - - - - - - -

14

15                   DEPOSITION OF: EFE SUREKLI

16                              ON

17                   Friday, September 1, 2023

18                        AT: 9:05 a.m.

19                        Taken at:

20                      King & Spalding
                       125 Old Broad Street
21                      London,EC2N 1AR
                        United Kingdom
22

23

24      Court Reporter:

25      Georgia Gould
        Accredited Real-time Reporter

**MARTEN WALSH CHERER LTD.**
**LONDON, ENGLAND**
**Tel. 00 44 (0) 20 7067 2900**
**(Out-of-hours tel. 00 44 (0) 7889 198989**
**info@martenwalshcherer.com**

1

2                    **A P P E A R A N C E S**

3

4       Appearing for the Plaintiff:

5
        KATHRYN A. RUNNING
6       LATHAM & WATKINS LLP
        330 North Wabash Avenue.
7       Suite 2800
        Chicago, IL   60611
8       United States
        +1.312.876.7675
9       kathryn.running@lw.com

10

11      ADAM M. GREENFIELD
        LATHAM & WATKINS LLP
12      555 Eleventh Street, N.W.
        Suite 1000
13      Washington, D.C. 20004-1304
        +1 202.637.2200
14      adam.greenfield@lw.com

15
        Appearing for the Defendant:
16
        LAZAR P. RAYNAL
17      KING & SPALDING
        110 N Waker Drive
18      Suite 3800
        Chicago, IL, 60606
19      +1 312 764 6947
        lraynal@kslaw.com
20

21      The Examiner:

22      CLARE REFFIN
        Chambers of Lord Grabiner KC
23      One Essex Court
        Temple
24      London
        EC4Y 9AR
25      creffin@oeclaw.co.uk

**MARTEN WALSH CHERER LTD.**
**LONDON, ENGLAND**
**Tel. 00 44 (0) 20 7067 2900**
**(Out-of-hours tel. 00 44 (0) 7889 198989**
**info@martenwalshcherer.com**

1

2    Also present:  Robin Spedding (Latham & Watkins)

3

    VIDEOGRAPHER:

4

    Joseph Viner.

5    Videographer

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**MARTEN WALSH CHERER LTD.**
**LONDON, ENGLAND**
**Tel. 00 44 (0) 20 7067 2900**
**(Out-of-hours tel. 00 44 (0) 7889 198989**
**info@martenwalshcherer.com**

1

2    of the question.  Move to strike.  Counsel

3    mischaracterized prior testimony.

4           A.    I chat -- through their customer

5    service chat I talked to them.

6    BY MS. RUNNING::

7           Q.    Do you remember which name you

8    provided to the CCC customer service agent that

9    you spoke with?

10          MR. RAYNAL:  Object to the form of

11   the question and mischaracterization.

12          A.    Erm ...

13   BY MS. RUNNING::

14          Q.    You can set -- we can set this

15   exhibit aside for now, I am just asking these

16   questions separate from --

17          A.    Well, I mean, exhibit aside,

18   I don't like remember what I said like, but

19   looking at the exhibit I can see like I put

20   an alias here, which is quite common in software.

21          Q.    It's common in the software

22   industry to use, you said, aliases?

23          A.    Yeah, alias.  I mean like I don't

24   know if this customer support agent is also called

25   Bianca, it could be a Bot as well, so -- I don't

**MARTEN WALSH CHERER LTD.**
**LONDON, ENGLAND**
**Tel. 00 44 (0) 20 7067 2900**
**(Out-of-hours tel. 00 44 (0) 7889 198989**
**info@martenwalshcherer.com**

1

2    put my real name, I mean my name, I put aliases.

3          Q.    How often have you used aliases

4    during your work in the software industry?

5          A.    Well, all the time, yeah.

6          Q.    All the time?

7          A.    Hm-mm.

8          Q.    Can you give a ballpark of how many

9    times that would be?

10         A.    I mean, I use quite a lot of

11   software, and for several reasons, I mean one

12   being privacy, like you don't put your name.

13   I mean, that's what sort of, you know -- I don't

14   know like the number of it, and I think it's kind

15   of a bit unrelated.  Like quite -- like, it's

16   a regular, common, casual thing, yeah.

17         Q.    It's a casual thing?

18         A.    Casual meaning something that you

19   do commonly.  Again, because -- because like this

20   could be a Bot as well, I don't know who I'm

21   talking to, you get generally like Candy, like, or

22   that sort of like names in the agents as well.

23   So, yeah, that's it.

24         Q.    When you were working at Tractable

25   approximately how many times did you use aliases

**MARTEN WALSH CHERER LTD.**
**LONDON, ENGLAND**
**Tel. 00 44 (0) 20 7067 2900**
**(Out-of-hours tel. 00 44 (0) 7889 198989**
**info@martenwalshcherer.com**

1
2                **CERTIFICATE OF COURT REPORTER**
3
4      I, Georgia Gould, an Accredited Real-time
5    Reporter, hereby certify that the testimony of the
6    witness EFE SUREKLI in the foregoing transcript,
7    numbered pages 1 through 299, taken on this 1st
8    day of September, 2023 was recorded by me in
9    machine shorthand and was thereafter transcribed
10   by me; and that the foregoing transcript is a true
11   and accurate verbatim record of the said
12   testimony.
13
14   I further certify that I am not a relative,
15   employee, counsel or financially involved with any
16   of the parties to the within cause, nor am I an
17   employee or relative of any counsel for the
18   parties, nor am I in any way interested in the
19   outcome of the within cause.
20


23
24   Signed:   ........................
25   Name:    Georgia Gould

**MARTEN WALSH CHERER LTD.**
**LONDON, ENGLAND**
**Tel. 00 44 (0) 20 7067 2900**
**(Out-of-hours tel. 00 44 (0) 7889 198989**
info@martenwalshcherer.com

1
2                    **CERTIFICATE OF EXAMINER**
3
4            I, CLARE REFFIN, of The Chambers of Lord
5     Grabiner KC, One Essex Court, Temple, London, EC4Y
6     9AR, United Kingdom, have been appointed as
7     Examiner herein pursuant to an order of the High
8     Court of Justice.
9            It has been agreed by all parties herein
10    that the evidence of the witness, EFE SUREKLI,
11    should be taken down in shorthand and that the
12    transcript of the said notes of evidence should be
13    deemed to be the deposition of the said witness.
14           I certify that, the oath having been duly
15    administered, the witness has been examined
16    pursuant to the said order.  The pages of
17    transcript annexed hereto were furnished to me by
18    Marten Walsh Cherer Ltd, accredited real-time
19    reporters, as containing the transcript of the
20    notes of the evidence of the witness pursuant to
21    the order.
22
23
24    Signed:    ...................
25    Name:    Clare Reffin

**MARTEN WALSH CHERER LTD.**
**LONDON, ENGLAND**
**Tel. 00 44 (0) 20 7067 2900**
**(Out-of-hours tel. 00 44 (0) 7889 198989**
**info@martenwalshcherer.com**

# EXHIBIT 9

```
 1

 2              IN THE UNITED STATES DISTRICT COURT
               FOR THE NORTHERN DISTRICT OF ILLINOIS
 3                     EASTERN DIVISION.

 4    - - - - - - - - - - - - - - - -
 5                                   )
       IN THE MATTER OF:             )
 6                                   )
       CCC INTELLIGENT SOLUTIONS INC. )
 7                                   )
                Plaintiff/Applicant, )
 8                                   )  NO: 118-CV-07246
                  v.                 )
 9                                   )
       TRACTABLE INC.                )
10                     Defendant,    )
                and                  )
11                                   )
       PHIL MULLAN                   )
12                     Respondent.)
                                     )
13    - - - - - - - - - - - - - - - -

14

15              DEPOSITION OF: PHILIP GARY MULLAN

16                          ON

17              Tuesday, August 29, 2023

18                    AT: 9:06 a.m.

19                    Taken at:

20                   King & Spalding
                    125 Old Broad Street
21                   London,EC2N 1AR
                     United Kingdom
22

23

24    Court Reporter:

25    Georgia Gould
      Accredited Real-time Reporter
```

**MARTEN WALSH CHERER LTD.**
**LONDON, ENGLAND**
**Tel. 00 44 (0) 20 7067 2900**
**(Out-of-hours tel. 00 44 (0) 7889 198989**
info@martenwalshcherer.com

1

2

3                              **A P P E A R A N C E S**

4

5       Appearing for the Plaintiff:

6       ADAM M. GREENFIELD
        LATHAM & WATKINS LLP
7       555 Eleventh Street, N.W.
        Suite 1000
8       Washington, D.C. 20004-1304
        +1 202.637.2200
9       adam.greenfield@lw.com

10

11      KATHRYN A. RUNNING
        LATHAM & WATKINS LLP
12       330 North Wabash Avenue.
        Suite 2800
13      Chicago, IL  60611
        United States
14      +1.312.876.7675
        kathryn.running@lw.com

15

16      Appearing for the Defendant:

17      LAZAR P. RAYNAL
        KING & SPALDING
18      110 N Waker Drive
        Suite 3800
19      Chicago, IL, 60606
        +1 312 764 6947
20      lraynal@kslaw.com

21
        The Examiner:
22
        CLARE REFFIN
23      Chambers of Lord Grabiner KC
        One Essex Court
24      Temple
        London,EC4Y 9AR
25      creffin@oeclaw.co.uk.

**MARTEN WALSH CHERER LTD.**
**LONDON, ENGLAND**
**Tel. 00 44 (0) 20 7067 2900**
**(Out-of-hours tel. 00 44 (0) 7889 198989**
**info@martenwalshcherer.com**

1

2
    Also present:  Mair Williams (Latham & Watkins)

3

4
    VIDEOGRAPHER:

5
    Joseph Viner
    Videographer

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**MARTEN WALSH CHERER LTD.**
**LONDON, ENGLAND**
**Tel. 00 44 (0) 20 7067 2900**
**(Out-of-hours tel. 00 44 (0) 7889 198989**
**info@martenwalshcherer.com**

```
 1                    MULLAN - GREENFIELD
 2    I understand that right?
 3             A.      (Nods head.)
 4             Q.      If you could make an audible
 5    response so the Court Reporter has it?
 6             A.      Yes.
 7             Q.      Let me just ask it so it's good.
 8    Your understanding is that using an alias is
 9    common in the software industry; correct?
10             A.      Yes.
11             Q.      Are you aware of instances at any
12    of the other companies that you've worked at that
13    an alias was used similar to how the name
14    JA Appraisal was used by Tractable?
15                    MR. RAYNAL:  Objection, downside of
16    the scope of the topics for this deposition.
17             A.      I don't know.
18    BY MR. GREENFIELD::
19             Q.      What was your answer?
20             A.      I don't know.
21             Q.      You're not aware of an instance in
22    which any of the other companies you have worked
23    at have used an alias in the same way that
24    Tractable used the JA Appraisal alias; right?
25                    MR. RAYNAL:  The same objection.
```

**MARTEN WALSH CHERER LTD.**
**LONDON, ENGLAND**
**Tel. 00 44  (0) 20 7067 2900**
**(Out-of-hours tel. 00 44 (0) 7889 198989**
info@martenwalshcherer.com

1                   MULLAN - GREENFIELD

2          A.     Yes, within their work flow in CCC

3     they would prefer to not have an additional tool,

4     they would like it to be integrated into their

5     existing suite, and treat Tractable just as they

6     would an independent -- a body shop or an

7     independent appraiser, yes.

8          Q.     But you don't interpret this

9     message as saying National General wanted to treat

10    Tractable like an actual independent appraiser?

11         A.     No, I don't interpret it that way.

12         Q.     Why not?

13         A.     In the context of CCC, that's, you

14    know, we offer lots of estimating services.  Yes,

15    in the context of CCC this was about work flow,

16    and the only reason I would be having

17    a conversation with them is about integration work

18    flow and interoperability.

19         Q.     Am I right that Tractable -- strike

20    that, let me start over.

21    Is it your understanding that Tractable was

22    an independent appraiser licensee to CCC ONE but

23    not an actual independent appraiser?

24                MR. RAYNAL:  Objection, foundation,

25    and form of the question.

**MARTEN WALSH CHERER LTD.**
**LONDON, ENGLAND**
**Tel. 00 44  (0) 20 7067 2900**
**(Out-of-hours tel. 00 44 (0) 7889 198989**
**info@martenwalshcherer.com**

```
 1                   MULLAN - GREENFIELD
 2           A.     I -- yes, I don't agree with that
 3    phrasing.  What we were creating using our
 4    AI services effectively performed the duties of
 5    an independent appraiser.  So whether we had
 6    a company name with that or it formed that way
 7    or -- you know, those are almost irrelevant.  The
 8    task that we completed was an appraisal task.
 9    BY MR. GREENFIELD::
10           Q.     Tractable performed an appraiser
11    task in the pilot project with National General?
12           A.     Yes.
13           Q.     I apologize if you answered this
14    already, but why then do you interpret this
15    message from Braden Holstege in exhibit 12 where
16    it says, "National General would strongly prefer
17    to treat Tractable like an IA," why do you not
18    interpret IA as independent appraiser there but
19    instead as independent appraiser licensee?
20           A.     If you look at Braden's message,
21    Braden's message is referring to an independent
22    appraiser in the context of CCC.  So that is
23    within their platform.  In my next message I'm
24    talking about the ideal interchange from them did
25    not involve CCC, that they would send us the data
```

**MARTEN WALSH CHERER LTD.**
**LONDON, ENGLAND**
**Tel. 00 44 (0) 20 7067 2900**
**(Out-of-hours tel. 00 44 (0) 7889 198989**
**info@martenwalshcherer.com**

1
2            **CERTIFICATE OF COURT REPORTER**
3
4   I, Georgia Gould, an Accredited Real-time
5 Reporter, hereby certify that the testimony of the
6 witness PHIL MULLAN in the foregoing transcript,
7 numbered pages 1 through 227, taken on this 29th
8 day of August, 2023 was recorded by me in machine
9 shorthand and was thereafter transcribed by me;
10 and that the foregoing transcript is a true and
11 accurate verbatim record of the said testimony.
12
13   I further certify that I am not a relative,
14 employee, counsel or financially involved with any
15 of the parties to the within cause, nor am I an
16 employee or relative of any counsel for the
17 parties, nor am I in any way interested in the
18 outcome of the within cause.
19


22
23   Signed:   ........................
24   Name:    Georgia Gould
25

**MARTEN WALSH CHERER LTD.**
**LONDON, ENGLAND**
**Tel. 00 44 (0) 20 7067 2900**
**(Out-of-hours tel. 00 44 (0) 7889 198989**
info@martenwalshcherer.com

```
1
2                    CERTIFICATE OF EXAMINER
3
4          I, CLARE REFFIN, of The Chambers of Lord
5     Grabiner KC, One Essex Court, Temple, London, EC4Y
6     9AR, United Kingdom, have been appointed as
7     Examiner herein pursuant to an order of the High
8     Court of Justice.
9          It has been agreed by all parties herein
10    that the evidence of the witness, PHIL MULLAN,
11    should be taken down in shorthand and that the
12    transcript of the said notes of evidence should be
13    deemed to be the deposition of the said witness.
14         I certify that, the oath having been duly
15    administered, the witness has been examined
16    pursuant to the said order.  The pages of
17    transcript annexed hereto were furnished to me by
18    Marten Walsh Cherer Ltd, accredited real-time
19    reporters, as containing the transcript of the
20    notes of the evidence of the witness pursuant to
21    the order.
22
23
24    Signed:    ..................
25    Name:    Clare Reffin
```

**MARTEN WALSH CHERER LTD.**
**LONDON, ENGLAND**
**Tel. 00 44  (0) 20 7067 2900**
**(Out-of-hours tel. 00 44 (0) 7889 198989**
**info@martenwalshcherer.com**

# EXHIBIT 10
# FILED UNDER SEAL

# EXHIBIT 11
## FILED UNDER SEAL

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CCC INTELLIGENT SOLUTIONS INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 1:18-cv-07246** |
| **v.** | ) | |
| | ) | **Hon. Robert W. Gettleman** |
| **TRACTABLE INC.,** | ) | **Hon. Susan E. Cox** |
| | ) | |
| **Defendant.** | ) | |

**TRACTABLE, INC.'S RESPONSES AND OBJECTIONS**
**TO PLAINTIFF'S THIRD SET OF INTERROGATORIES**
**TO TRACTABLE INC. (NOS. 11-15)**

Defendant Tractable Inc. ("Defendant"), by and through its counsel of record, hereby submits the following objections and responses to CCC Intelligent Solutions Inc.'s ("CCC") Third Set of Interrogatories to Tractable Inc. (Nos. 11-15) ("Interrogatories").

## PRELIMINARY STATEMENT

Tractable provides its responses subject to and without waiver of any objections as to the competency, relevancy, materiality, privilege, or admissibility as evidence or for any other purpose, of any of the information referred to or of the responses given herein, or for the subject matter thereof in any proceeding, including the trial of this action or any other subsequent proceeding, and said responses are made specifically subject to the right to object to any proceeding involving or related to the subject matter of the Requests responded to herein. No objection or limitation, or lack thereof, made in these objections and responses shall be deemed an admission by Tractable as to the existence or non-existence of the document or information sought, or waiver of Tractable's rights to assert such objection or limitation at any future time in connection with the Requests or otherwise.

Tractable's responses are based on information presently known to it. Tractable has not completed its investigation of all facts relating to this case. Additional discovery, investigation, and legal research and analysis may supply additional facts, add meaning to known facts, and/or establish entirely new factual conclusions or legal contentions, all of which may lead to substantial additions to, changes in, and/or variations from the present responses. Tractable reserves the right to amend, modify, supplement, revise, correct, add to, or clarify the response if additional information becomes available.

If, in response to a Request, Defendant agrees to produce documents, this shall not constitute a representation that such documents exist, but shall signify that the documents will be produced if they exist, can be located with reasonable inquiry, and are not otherwise protected from disclosure.

## OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

1. Tractable objects to the instructions and definitions to the extent they attempt to impose obligations on Tractable beyond the requirements of the Federal Rules of Civil Procedure.

2. Tractable objects to the definition of "Product" as overbroad and disproportionate to the needs of the case in that it covers any item or activity undertaken by a person or business without any limitation.

3. Tractable objects to the definition of "Tractable," "Defendant," "You," and "Your" to the extent it includes all parents, subsidiaries and affiliates that are not parties in this case. Tractable also objects to the extent it includes consultants and attorneys and thus would seek information protected by the attorney client privilege or other protection. Tractable will construe this term to mean Tractable Inc., including any employees, officers, agents, or other representative known to Tractable to be acting on its behalf.

4.      Tractable objects to the definition of "Tractable Product" as overbroad and disproportionate to the needs of the case. Tractable will interpret this term as referring to Tractable's Estimating and AI Review products.

5.      In responding to CCC's Requests, unless stated otherwise, Tractable will apply a "Relevant Time Period" of January 1, 2017 to October 31, 2019.

## INTERROGATORIES

### INTERROGATORY NO. 11:

Identify all source(s) from which Tractable obtained the data for its database of automobile parts prices, labor times, and labor costs, and for each such source, identify (1) the specific data that the source provided to Tractable, (2) the price(s) that Tractable paid for the data, (3) any agreements the information was provided pursuant to, and (4) the time period in which the source provided the information to Tractable.

### RESPONSE:

**HIGHLY CONFIDENTIAL — SUBJECT TO PROTECTIVE ORDER**

████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████

▌ ██████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████

▌ ███████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████

**INTERROGATORY NO. 12:**

Identify each third-party source that provided information that Tractable used to develop the Tractable Products, and for each such source, identify (1) the types of data and/or images the source provided to Tractable, (2) the identification of all such information by Bates number, (3) whether the information was provided pursuant to a written or verbal agreement, and (4) the time period during which the source provided the information.

**RESPONSE**:

**HIGHLY CONFIDENTIAL — SUBJECT TO PROTECTIVE ORDER**

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

**INTERROGATORY NO. 13**:

    Identify all individuals or entities with which Tractable did business or otherwise communicated under the "JA Appraisal" alias, and for each such entity or individual, identify

(1) whether Tractable disclosed that "JA Appraisal" was allegedly a d/b/a name for Tractable, (2) when Tractable made such a disclosure (if it did so), and (3) the purpose of Tractable's "JA Appraisal" communications with the entity or individual.

**RESPONSE**:

Tractable objects to Interrogatory No. 13 as overbroad and disproportionate to the needs of the case to the extent that it seeks information that is not relevant to any of the claims or defenses in this case.

Subject to and without waiving its objections, Tractable states that based on its investigation to date:

- Tractable did business with Mitchell under the d/b/a JA Appraisal. Tractable did not inform Mitchell at the time that JA Appraisal was a d/b/a for Tractable, but Mitchell became aware of the use of the d/b/a JA Appraisal at some point after this action was filed.

- Tractable also interacted with Audatex under the name JA Appraisal. Tractable contacted Audatex using the d/b/a JA Appraisal to inquire regarding the terms and conditions for a license. On information and belief, Tractable did not inform Audatex that JA Appraisal was a d/b/a for Tractable, and did not obtain a license to Audatex.

**INTERROGATORY NO. 14:**

Identify all of Tractable's current and former investors, and for each such investor, identify (1) the amount of money or other resources that the entity or individual invested in Tractable and (2) the time period during which the entity or individual made each investment.

**RESPONSE**:

Tractable objects to Interrogatory No. 14 as unduly burdensome and disproportionate to the needs of the case because the information sought is not relevant to the claims or defenses in this case. The identify of Tractable's current and former investors and the amount of money invested in Tractable by each investor has no bearing on the issues in this case.

Based on its objections, Tractable will not be responding to Interrogatory No. 14.

**INTERROGATORY NO. 15:**

Describe with particularity all factual and legal bases for Tractable's Affirmative Defenses in this case.

**RESPONSE**:

Tractable objects to Interrogatory No. 15 as compound and exceeding the permissible number of Interrogatories under the Federal Rules because it seeks the factual and legal basis for 14 distinct Affirmative Defenses. Tractable further objects to Interrogatory No. 15 as unduly burdensome to the extent that the factual and legal bases for Tractable's Affirmative Defenses are set out in Tractable's Answer. Tractable also objects to Interrogatory No. 15 as premature because discovery is ongoing and so is Tractable's investigation of the facts relevant to its Affirmative Defenses.

Subject to and without waiving its objections, based on Tractable's investigation to date, Tractable identifies the following bases for Tractable's Affirmative Defenses:

- Documents produced by CCC, including, for example, Bates Numbers CCCIS_0007452; CCCIS_0007453; CCCIS_0009009; CCCIS_0009011; CCCIS_0009266; CCCIS_0008768; CCCIS_0008770; CCCIS_0008804;

- CCC has developed an intentionally closed system designed to preclude integration with new market entrants like Tractable;

- On information and belief, CCC has contracts with insurance company customers precluding those customers from sharing information with third parties like Tractable;

- CCC ratified Tractable's licenses by accepting and keeping payments made by Tractable for the licenses;

- The only information Tractable accessed through its licenses to CCC ONE is the same information available to tens of thousands of appraisers;

7

- The data that is included on estimates generated by CCC is not proprietary to CCC and/or is generally available to the public; and

- Tractable's unique AI technology, including its Estimating and Review products were independently developed by Tractable without any use of CCC's allegedly proprietary or trade secret information.

Dated: April 10, 2023

Respectfully submitted,

/s/ Lazar P. Raynal
Lazar P. Raynal (Bar No. 6199215)
Michael A. Lombardo (Bar No. 6334886)
KING & SPALDING LLP
110 N. Wacker Drive, Suite 3800
Chicago, IL 60606
Telephone: (312) 995-6333
Facsimile: (312) 995-6330
lraynal@kslaw.com
mlombardo@kslaw.com

Julia C. Barrett (*pro hac vice*)
KING & SPALDING LLP
500 West 2nd Street, Suite 1800
Austin, Texas 78701
Telephone: (512) 457-2000

*Counsel for Defendant Tractable, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 10, 2023 a copy of the foregoing was served upon counsel of record via electronic mail.

/s/ Lazar P. Raynal
Lazar P. Raynal (Bar No. 6199215)

# EXHIBIT 12
## FILED UNDER SEAL

# EXHIBIT 13
## FILED UNDER SEAL

# EXHIBIT 14
## FILED UNDER SEAL

# EXHIBIT 15
## FILED UNDER SEAL

# EXHIBIT 16
# FILED UNDER SEAL

# EXHIBIT 17
## FILED UNDER SEAL

# EXHIBIT 18
# FILED UNDER SEAL

# EXHIBIT 19

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **CCC INTELLIGENT SOLUTIONS INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 1:18-cv-07246** |
| **v.** | ) | |
| | ) | **Hon. Robert W. Gettleman** |
| **TRACTABLE INC.,** | ) | **Hon. Susan E. Cox** |
| | ) | |
| **Defendant.** | ) | |

**CCC INTELLIGENT SOLUTIONS INC.'S FIRST SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS TO TRACTABLE INC. (NOS. 1-37)**

Pursuant to Federal Rules of Civil Procedure 26 and 34, Plaintiff CCC Intelligent Solutions

Inc. ("CCC") submits its First Set of Requests for Production of Documents (Nos. 1-37) to

Defendant Tractable Inc. ("Tractable"). CCC requests that Tractable respond to these requests in

writing, in accordance with the Definitions and Instructions contained herein, and produce all

documents and things in Tractable's possession, custody, or control that are requested below,

within thirty (30) days of the date of service in accordance with the Federal Rules of Civil

Procedure. CCC requests that Tractable serve such answers on Plaintiff's counsel at the office of

Latham & Watkins LLP, 555 11th Street NW, Suite 1000, Washington, DC 20002—of at such

other time and place as the parties may agree upon.

## DEFINITIONS

1.      "**CCC**" means CCC Intelligent Solutions Inc., its predecessors and successors,

respective officers, directors, agents, representatives, employees, attorneys, and investigators, and

others acting on CCC Intelligent Solutions Inc.'s behalf.

2.      "**CCC ONE**" means the CCC ONE Appraisal Platform and CCC ONE Estimating,

collectively.

3.     "**CCC Product**" means any Product offered for sale, sold, imported, or under development by CCC and all parents, subsidiaries, and affiliates thereof, all divisions, predecessors, successors, and assigns of each of the foregoing, and all principals, officers, investors, employees, directors, agents, consultants, attorneys, and all other persons acting or purporting to act on behalf of or under the control of any of the foregoing.  This includes, but is not limited to CCC software, such as CCC ONE, as well as information, files, and data associated with CCC ONE.

4.     "**Communication**" shall include any form of transmitting, receiving, or exchanging information or ideas from one Person to another, such as, by way of example and not exclusion, correspondence, letters, e-mail, text or SMS messages, website postings or messages, instant messages, online account information, memoranda, reports, discussions, conversation, negotiations, agreements, notes, or other forms of information or ideas exchanges, whether oral, electronic, or written.

5.     "**CCC Workfile(s)**" means 2302 estimates generated or used by CCC ONE or any other CCC Product.

6.     "**Date**" means the exact day, month, and year if so ascertainable or, if not, the best approximation (including relationship to seasons and other events).

7.     "**Document**" is synonymous in meaning and equal in scope to the usage of this term in Rule 34(a) of the Federal Rules of Civil Procedure and Federal Rule of Evidence 1001. By way of illustration, and without limitation, Documents include at least the following: originals, drafts, and all non-identical copies of memoranda, reports, notes, graphs, correspondence, interoffice Communications, letters, diaries, calendars, photographs, motion pictures, sketches, drawings, promotional materials, technical papers, printed publications, record, reports, and all

other writings, whether such information is electronically stored or otherwise, as well as all non-paper information storage means such as sound reproductions, computer inputs and outputs, tape, film, and computer memory devices, as well as tangible things such as models, modules, prototypes, and commercially saleable products. The foregoing specifically includes the information stores in any form, including electronic form, on a computer database or otherwise, including electronic mail. "Thing" shall mean any tangible item, including without limitation, models, prototypes, and samples of any device or apparatus or product.

8.    "**Identify**," "**Identity**," and "**Identification**" shall mean, as the context shall make appropriate:

a)    With respect to a person, the name, present or last known address, telephone number, occupation, and employer;

b)    With respect to a document, the type of document (e.g., letter, memorandum, book, etc.), date, author, general subject matter, the name of the company in the case of a corporate document, all persons designated on the document to receive a copy or otherwise known to have received a copy, the document's present location, and the identity of the custodian of the original and each copy.  If any document was, but no longer is, in your possession, custody, or control, or if any document was in existence but is no longer in existence due to destruction or otherwise, state how the document was disposed, the date of such disposition, the identity of the person responsible for making the decision as to such disposition, and the person responsible for carrying out the disposition;

3

       c)      With respect to a telephone conversation, the full name, occupation, telephone number and address of each party to the telephone conversation, the date of the conversation and the subject matter discussed;

       d)      With respect to an oral conversation other than a telephone conversation, the full name, occupation, telephone number, and address of each party to such conversation, the date of the conversation, and the subject matter discussed;

       e)      With respect to a corporation, partnership, association, or other entity, its full name, form of organization, present or last known address, and telephone number; and

       f)      With respect to any event or action, the dates or approximate dates thereof, a description of what occurred, and all persons involved.

9.      **"Including"** shall not be used to limit any general category or description that precedes it and shall mean "including without limitation" so as to be inclusive.

10.      **"Independent Appraiser"** means a person who evaluates, processes, and settles automotive physical damage claims in connection with insurance policy issues and/or services by clients for vehicles located in the United States.

11.      **"License(s)"** means any and all Automotive Services Independent Appraiser Master License Agreements between CCC and "JA Appraisal" or any person or persons associated with "JA Appraisal."

12.      **"Product"** means any machine, manufacture, apparatus, device, system, process, service, method, software, source code, or instrumentality which is designed to function together electrically, mechanically, chemically, or otherwise, to achieve a particular function or purpose, including those offered for sale, sold, imported, or under development.

13.     "**Third Party**" means and includes any person or persons other than CCC or Tractable.

14.     "**Tractable**," "**Defendant**," "**You**," or "**Your**" means Tractable Inc. and all parents, subsidiaries, and affiliates thereof, all divisions, predecessors, successors, and assigns of each of the foregoing, and all principals, officers, investors, employees, directors, agents, consultants, attorneys, and all other persons acting or purporting to act on behalf of or under the control of any of the foregoing.

15.     "**Tractable Product**" means any Product offered for sale, sold, imported, or under development by Tractable to "[r]eview auto repair estimates, at scale, in real time" or [p]roduce an instant estimate from photos," as set forth at https://tractable.ai/products/car-accidents/.

16.     "**Trademark(s)**" means all trademarks registered to CCC, including but not limited to CCC® and CCC ONE® marks, such as No. 2,013,714 for the CCC Mark® in Classes 36 and 38, No. 4,588,425 for the CCC® Mark in Class 42, No. 4,478,633 for the CCC ONE® Mark in Class 9, No. 4,527,798 for the CCC ONE® Mark in Class 42, No. 3, 664,638 for the CCC ONE® Mark in Class 36, and No. 3,706,398 for the CCC ONE Mark in Class 36. Compl. ¶¶ 21-22.

17.     The conjunctions "**and**" and "**or**" shall be construed either conjunctively or disjunctively, as required by the context, to bring within the scope of these Requests any information that might otherwise be deemed outside their scope.

18.     "**Concern**," "**Concerning**," "**Reflect**," "**Reflecting**," "**Related**," "**Relating**," "**Relate(s)**," "**Refer**" or "**Referring**," and other variations thereof, as used herein, shall be construed in their broadest possible sense, and shall mean without limitation and whether in whole or in part: referring to, constituting, bearing upon, commenting upon, reflecting, evidencing,

pertaining to, describing, depicting, consisting of, containing, comprising, embodying, identifying, stating, discussing, analyzing, studying, summarizing, dealing with, relating to, or having any logical factual connection whatsoever with the subject addressed, regardless of whether the factual connection is favorable or adverse to you.

19.     References to this "**Lawsuit,**" "**Case,**" or "**Action**" mean the above-captioned action brought by CCC.

20.     "**Person**" and "**Individual**" mean any natural person or any business, legal or government entity, or association—including but not limited to any proprietorship, partnership, firm, company, or corporation.

21.     The singular of each word shall be construed to include its plural, and vice versa, to bring within the scope of these Requests any information that might otherwise be deemed outside their scope.

22.     The present tense shall be construed to include the past tense and vice versa.

## <u>INSTRUCTIONS</u>

1.     All requested Documents and Communications that are in Your possession, custody, or control, whether actual or constructive, shall be organized and produced pursuant to Rule 34(b) of the Federal Rules of Civil Procedure.

2.     In further accordance with Rule 34 of the Federal Rules of Civil Procedure, all Documents and Communications produced for inspection and copying shall be organized and labeled to correspond with the categories in the Request or shall be produced as they are kept in the normal course of business.

3.     In responding to these Requests, You shall furnish all information that is available to You or subject to Your reasonable inquiry, including information in the possession of Your

present and former attorneys, accountants, advisors, representatives, agents, employees, or other persons directly or indirectly employed by or connected with You, and anyone else otherwise subject to Your control. All Documents that respond, in whole or in part, to any portion of the Requests below shall be produced in their entirety, including all attachments and enclosures.

4.    If there are no Documents or Communications responsive to a particular request, You should so state in writing.

5.    If You believe that any of the following Requests calls for an assertion of a claim of privilege or work product immunity, answer so much of the Request as is not objected to, state that part of each Request to which You raise an objection, and set forth the basis for your claim of privilege with respect to such information You refuse to give, to include at least the following:

a)    The basis on which the privilege is claimed;

b)    The name and position of the author of the information;

c)    The name and position of each individual or other person to whom the information, or a copy thereof, was sent to otherwise disclosed and, if not apparent, the relationship of the persons to the author of the information;

d)    The date of the information;

e)    A description of any accompanying material transmitted with or attached to such information;

f)    The number of pages of such document or information or length of communication; and

g)    A description of the subject matter of the information, including whether any business or non-legal matter is contained or discussed in such information.

6.     In the event that You contend that any of these Requests are objectionable, in whole or in part, state with particularity each such objection and the bases therefore, and respond to the remainder of the Request to the extent that You are not objecting to it.

7.     If any Request is ambiguous or unclear to You, You are requested to contact undersigned counsel as soon as possible so that the Request can be clarified to avoid unnecessary delays in discovery.

8.     If You do not agree with any definition of the terms provided herein, You are instructed to provide a reasonable, alternative definition for that term, consistent with industry custom and usage.

9.     Each of the definitions and instructions contained herein shall be fully applicable to each Request notwithstanding that a definition or instruction above may, in whole or in part, be reiterated in a particular Request and notwithstanding that a particular Request may incorporate supplemental instructions or definitions.  If, however, You provide any alternate definitions in accordance with these Instructions, indicate whether and how any answer to any Request would differ if You relied on Your alternate definition in responding to that Request instead of the definitions provided.

10.    Each Request shall be construed independently, and no Request shall be viewed as limiting the scope of any other Request.

11.    Each and every copy of a Document or Communication that is different from the original because of stamps, indications of the recipient(s), handwritten notes, marks, attachments, or any other reason, is a separate document that must be produced.

12.    If You produce any tape, disk, card, wire, or other electronic or mechanical recording or transcript, or any computer program in response to any Request, You shall also

produce such Documents, software, and instructions as are necessary for the decoding, playing back, printing, and/or interpretation thereof, and any other Documents that are necessary to convert said information into a useable format.

13.    In accordance with the Federal Rules of Civil Procedure, Your obligation to respond to these requests is continuing.  If You receive or discover a Document or Communication responsive to these requests after serving a response thereto, You shall promptly produce such Document or Communication.

<div align="center">

**REQUESTS FOR PRODUCTION**

</div>

**REQUEST FOR PRODUCTION NO. 1:**

All Documents and Communications concerning "JA Appraisal," including but not limited to, all business activities, financial transactions, records of corporate formation, and tax filings.

**REQUEST FOR PRODUCTION NO. 2:**

All Documents and Communications concerning Your activities as an Independent Appraiser.

**REQUEST FOR PRODUCTION NO. 3:**

All Documents and Communications regarding any agreements or contracts between You and any insurers obligating You to create or produce vehicle repair estimates prior to November 2018.

**REQUEST FOR PRODUCTION NO. 4:**

All Documents and Communications concerning CCC Licenses, including but not limited to the reason for, method of, and date of obtaining the Licenses.

**REQUEST FOR PRODUCTION NO. 5:**

All Documents and Communications concerning CCC Licenses obtained through "JA Appraisal," including but not limited to the reason for, method of, and date of obtaining the Licenses.

**REQUEST FOR PRODUCTION NO. 6:**

All Documents and Communications concerning any and all users added to a CCC License.

**REQUEST FOR PRODUCTION NO. 7:**

All Documents and Communications sufficient to show the identity of all persons associated with Tractable or "JA Appraisal" who accessed or had access to CCC ONE or any other CCC Product.

**REQUEST FOR PRODUCTION NO. 8:**

All Documents and Communications concerning "Jason Chen."

**REQUEST FOR PRODUCTION NO. 9:**

All Documents and Communications concerning Xing Xin, including, but not limited to Communications to or from Xing Xin regarding CCC or "JA Appraisal," his role, responsibilities, and supervisors at Tractable.

**REQUEST FOR PRODUCTION NO. 10:**

All Documents and Communications related to CCC Workfiles obtained through access to or use of CCC ONE or any other CCC Product by "JA Appraisal" or You.

**REQUEST FOR PRODUCTION NO. 11:**

All Documents and Communications concerning Your interactions with and activities related to CCC including, but not limited to, all efforts to obtain access to CCC software, use CCC

software, save information from or provided by CCC, or analyze any information or data obtained from CCC.

**REQUEST FOR PRODUCTION NO. 12:**

All Documents and Communications related to any employee, agent, representative or individual associated with Tractable or "JA Appraisal" contacting or communicating with any employee, agent, representative or individual associated with CCC, including, but not limited to, correspondence between an individual associated with Tractable or "JA Appraisal" and licensing, technology, customer service, or other support staff at CCC.

**REQUEST FOR PRODUCTION NO. 13:**

All Documents and Communications involving or related to jaappraisalco@gmail.com.

**REQUEST FOR PRODUCTION NO. 14:**

All Documents and Communications involving or related to maxgenie@live.co.uk.

**REQUEST FOR PRODUCTION NO. 15:**

All Documents and Communications related to obtaining access to CCC ONE or any other CCC Product, including, but not limited to the use of cloud-based servers, virtual machines or virtual private networks.

**REQUEST FOR PRODUCTION NO. 16:**

All Documents and Communications related Your use of the alias "Dean Kamen" to communicate with CCC including, but not limited to, documents sufficient to identify the individual(s) who were involved in Your use of this alias and the circumstances surrounding its use.

11

**REQUEST FOR PRODUCTION NO. 17:**

All Documents and Communications related to Your use of the alias "Evan Contin" to communicate with CCC including, but not limited to, documents sufficient to identify the individual(s) who were involved in Your use of this alias and the circumstances surrounding its use.

**REQUEST FOR PRODUCTION NO. 18:**

All Documents related to any payment made to CCC by Tractable, "JA Appraisal," "Jason Chen," Xing Xin, or by any employee, agent, representative, or person otherwise associated with the aforementioned persons, including but not limited to, the form of payment and the person(s) associated with the relevant account.

**REQUEST FOR PRODUCTION NO. 19:**

All emails, instant messages, attachments, and family members responsive to the following search terms and custodians:

| Custodian | Search Term(s) |
|---|---|
| Xing Xin | 1. "JA Appraisal" <br><br> 2. CCC! |

**REQUEST FOR PRODUCTION NO. 20:**

Documents and Communications sufficient to show the identity of all persons involved in the development of Tractable Products since August 2017.

**REQUEST FOR PRODUCTION NO. 21:**

All Documents and Communications related to any data You obtained from CCC ONE or any other CCC Product.

**REQUEST FOR PRODUCTION NO. 22:**

All Documents and Communications reflecting Your use, incorporation, evaluation, comparisons, assessment, manipulation, or access to any data obtained from CCC ONE or any other CCC Product.

**REQUEST FOR PRODUCTION NO. 23:**

All Documents and Communications concerning Your use of CCC ONE including, but not limited to, the purpose and method of that use.

**REQUEST FOR PRODUCTION NO. 24:**

All Documents and Communications reflecting any changes to any Tractable Product between August 2017 and November 2018.

**REQUEST FOR PRODUCTION NO. 25:**

All Documents and Communications reflecting any changes to any Tractable Product between November 2018 and present.

**REQUEST FOR PRODUCTION NO. 26:**

Source code for all Tractable Products and software versions associated with Tractable Products between August 2017 and November 2018.

**REQUEST FOR PRODUCTION NO. 27:**

Source code for all Tractable Products and software versions associated with Tractable Products between November 2018 and present.

**REQUEST FOR PRODUCTION NO. 28:**

All Documents sufficient to show on quarterly basis and by customer, any revenue derived from Tractable Products since August 2017.

**REQUEST FOR PRODUCTION NO. 29:**

All financial analysis, budgets, financial projections, and financial reporting, including any and all financial statements, income statements, balance sheets, and statements of cash flows from August 2017 through the present, prepared for both internal business use and external reporting, organized by month, quarter, and year.

**REQUEST FOR PRODUCTION NO. 30:**

All Documents and Communications related to any requests or offers of investment, valuations, requests or offers for sale including, but not limited, any analysis of the value of Tractable Products.

**REQUEST FOR PRODUCTION NO. 31:**

All Documents and Communications concerning CCC Trademarks.

**REQUEST FOR PRODUCTION NO. 32:**

All Documents concerning Communications with retailers, vendors, customers, and/or potential customers concerning any and all products offered, advertised, sold, or otherwise promoted or used by you in connection with the CCC Trademarks.

**REQUEST FOR PRODUCTION NO. 33:**

All Documents concerning any actual or potential confusion between CCC and Tractable products, including any misdirected phone calls, mail, emails, or inquiries concerning whether you or any of your products are or were associated with, sponsored by, or in any manner connected with CCC or CCC Trademarks.

**REQUEST FOR PRODUCTION NO. 34:**

All Documents concerning any actual or potential connection, affiliation, or association between you and CCC.

14

**REQUEST FOR PRODUCTION NO. 35:**

Documents sufficient to show any revenue you have derived from any product offered, advertised, sold, or otherwise promoted or used by you in connection with a CCC Trademark.

**REQUEST FOR PRODUCTION NO. 36:**

Documents sufficient to describe your corporate structure, both inter- and intra-entity, and including ownership and control, and any corporate parents, subsidiaries, affiliates, predecessors, or successors thereof.

**REQUEST FOR PRODUCTION NO. 37:**

All Documents referred to, referenced, considered, or relied upon by you in preparing your responses to each of the interrogatories served by CCC on you in this action.

Date:  September 22, 2022                          Respectfully submitted,

                                                  */s/ Stephen D. O'Donohue*
                                                  One of the Attorneys for Plaintiff CCC
                                                  Intelligent Solutions Inc.

                                                  Mark S. Mester (Bar No. 6196140)
                                                  mark.mester@lw.com
                                                  Matthew W. Walch (Bar No. 6226308)
                                                  matthew.walch@lw.com
                                                  LATHAM & WATKINS LLP
                                                  330 North Wabash Avenue, Suite 2800
                                                  Chicago, IL 60611
                                                  Telephone: (312) 876-7700
                                                  Facsimile: (312) 993-9767

                                                  Adam M. Greenfield (Bar No. 6292915)
                                                  adam.greenfield@lw.com
                                                  Jason Burt (*pro hac vice*)
                                                  jason.burt@lw.com
                                                  LATHAM & WATKINS LLP
                                                  555 Eleventh Street, NW, Suite 1000
                                                  Washington, DC 20004-1304

Telephone: (202) 637-2200
Facsimile: (202) 637-2201

Stephen D. O'Donohue (*pro hac vice*)
stephen.odonohue@lw.com
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 22, 2022 a copy of the foregoing was served upon counsel of record via electronic mail.

/s/ Stephen D. O'Donohue
Stephen D. O'Donohue

# EXHIBIT 20

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CCC INTELLIGENT SOLUTIONS INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 1:18-cv-07246** |
| **v.** | ) | |
| | ) | **Hon. Robert W. Gettleman** |
| **TRACTABLE INC.,** | ) | **Hon. Susan E. Cox** |
| | ) | |
| **Defendant.** | ) | |

**CCC INTELLIGENT SOLUTIONS INC.'S SECOND SET OF REQUESTS FOR**
**PRODUCTION OF DOCUMENTS TO TRACTABLE INC. (NOS. 38-57)**

Pursuant to Federal Rules of Civil Procedure 26 and 34, Plaintiff CCC Intelligent Solutions Inc. ("CCC") submits its  Second Set of Requests for Production of Documents (Nos. 38-57) to Defendant Tractable Inc. ("Tractable").  CCC requests that Tractable respond to these requests in writing, in accordance with the Definitions and Instructions contained herein, and produce all documents and things in Tractable's possession, custody, or control that are requested below, within thirty (30) days of the date of service in accordance with the Federal Rules of Civil Procedure.  CCC requests that Tractable serve such answers on Plaintiff's counsel via email or physical mail at the office of Latham & Watkins LLP, 555 11th Street NW, Suite 1000, Washington, DC 20002—or at such other time and place as the parties may agree upon.

**DEFINITIONS**

1.      "**CCC**" means CCC Intelligent Solutions Inc., its predecessors and successors, respective officers, directors, agents, representatives, employees, attorneys, and investigators, and others acting on CCC Intelligent Solutions Inc.'s behalf.

2.      "**CCC ONE**" means the CCC ONE Appraisal Platform and CCC ONE Estimating, collectively.

3.      "**CCC Product**" means any Product offered for sale, sold, imported, or under development by CCC and all parents, subsidiaries, and affiliates thereof, all divisions, predecessors, successors, and assigns of each of the foregoing, and all principals, officers, investors, employees, directors, agents, consultants, attorneys, and all other persons acting or purporting to act on behalf of or under the control of any of the foregoing.  This includes, but is not limited to CCC software, such as CCC ONE, as well as information, files, and data associated with CCC ONE.

4.      "**Thing**" shall mean any tangible item, including without limitation, models, prototypes, and samples of any device or apparatus or product.

5.      "**Communication**" shall include any form of transmitting, receiving, or exchanging information or ideas from one Person to another, such as, by way of example and not exclusion, correspondence, letters, e-mail, text or SMS messages, website postings or messages, instant messages, online account information, memoranda, reports, discussions, conversation, negotiations, agreements, notes, or other forms of information or ideas exchanges, whether oral, electronic, or written.

6.      "**Date**" means the exact day, month, and year if so ascertainable or, if not, the best approximation (including relationship to seasons and other events).

7.      "**Document**" is synonymous in meaning and equal in scope to the usage of this term in Rule 34(a) of the Federal Rules of Civil Procedure and Federal Rule of Evidence 1001. By way of illustration, and without limitation, Documents include at least the following: originals, drafts, and all non-identical copies of memoranda, reports, notes, graphs, correspondence, interoffice Communications, letters, diaries, calendars, photographs, motion pictures, sketches, drawings, promotional materials, technical papers, printed publications, record, reports, and all

other writings, whether such information is electronically stored or otherwise, as well as all non-paper information storage means such as sound reproductions, computer inputs and outputs, tape, film, and computer memory devices, as well as tangible things such as models, modules, prototypes, and commercially saleable products. The foregoing specifically includes the information stores in any form, including electronic form, on a computer database or otherwise, including electronic mail. "Thing" shall mean any tangible item, including without limitation, models, prototypes, and samples of any device or apparatus or product.

8.     "**Identify**," "**Identity**," and "**Identification**" shall mean, as the context shall make appropriate:

a)     With respect to a person, the name, present or last known address, telephone number, occupation, and employer;

b)     With respect to a document, the type of document (e.g., letter, memorandum, book, etc.), date, author, general subject matter, the name of the company in the case of a corporate document, all persons designated on the document to receive a copy or otherwise known to have received a copy, the document's present location, and the identity of the custodian of the original and each copy.  If any document was, but no longer is, in Your possession, custody, or control, or if any document was in existence but is no longer in existence due to destruction or otherwise, state how the document was disposed, the date of such disposition, the identity of the person responsible for making the decision as to such disposition, and the person responsible for carrying out the disposition;

c)      With respect to a telephone conversation, the full name, occupation, telephone number and address of each party to the telephone conversation, the date of the conversation and the subject matter discussed;

d)      With respect to an oral conversation other than a telephone conversation, the full name, occupation, telephone number, and address of each party to such conversation, the date of the conversation, and the subject matter discussed;

e)      With respect to a corporation, partnership, association, or other entity, its full name, form of organization, present or last known address, and telephone number; and

f)      With respect to any event or action, the dates or approximate dates thereof, a description of what occurred, and all persons involved.

9.      **Including**" shall not be used to limit any general category or description that precedes it and shall mean "including without limitation" so as to be inclusive.

10.      "**Independent Appraiser**" means a person who evaluates, processes, and settles automotive physical damage claims in connection with insurance policy issues and/or services by clients for vehicles located in the United States.

11.      "**License(s)**" means any and all Automotive Services Independent Appraiser Master License Agreements between CCC and "JA Appraisal" or any person or persons associated with "JA Appraisal."

12.      "**Product**" means any machine, manufacture, apparatus, device, system, process, service, method, software, source code, or instrumentality which is designed to function together electrically, mechanically, chemically, or otherwise, to achieve a particular function or purpose, including those offered for sale, sold, imported, or under development.

13.     "**Tractable**," "**Defendant**," "**You**," or "**Your**" means Tractable Inc. and all parents, subsidiaries, and affiliates thereof, all divisions, predecessors, successors, and assigns of each of the foregoing, and all principals, officers, investors, employees, directors, agents, consultants, attorneys, and all other persons acting or purporting to act on behalf of or under the control of any of the foregoing.

14.     "**Workfiles**" means any electronic file created in CCC ONE by the licensee/user of CCC ONE.

15.     The conjunctions "**and**" and "**or**" shall be construed either conjunctively or disjunctively, as required by the context, to bring within the scope of these Requests any information that might otherwise be deemed outside their scope.

16.     "**Concern**," "**Concerning**," "**Reflect**," "**Reflecting**," "**Related**," "**Relating**," "**Relate(s)**," "**Refer**" or "**Referring**," and other variations thereof, as used herein, shall be construed in their broadest possible sense, and shall mean without limitation and whether in whole or in part: referring to, constituting, bearing upon, commenting upon, reflecting, evidencing, pertaining to, describing, depicting, consisting of, containing, comprising, embodying, identifying, stating, discussing, analyzing, studying, summarizing, dealing with, relating to, or having any logical factual connection whatsoever with the subject addressed, regardless of whether the factual connection is favorable or adverse to You.

17.     "**Person**" and "**Individual**" mean any natural person or any business, legal or government entity, or association—including but not limited to any proprietorship, partnership, firm, company, or corporation.

18.     References to this "**Lawsuit**," "**Case**," or "**Action**" mean the above-captioned action brought by CCC.

19.     The singular of each word shall be construed to include its plural, and vice versa, to bring within the scope of these Requests any information that might otherwise be deemed outside their scope.

20.     The present tense shall be construed to include the past tense and vice versa.

## INSTRUCTIONS

1.      All requested Documents, Communications and Things that are in Your possession, custody, or control, whether actual or constructive, shall be organized and produced pursuant to Rule 34(b) of the Federal Rules of Civil Procedure.

2.      In further accordance with Rule 34 of the Federal Rules of Civil Procedure, all Documents, Communications and Things produced for inspection and copying shall be organized and labeled to correspond with the categories in the Request or shall be produced as they are kept in the normal course of business.

3.      In responding to these Requests, You shall furnish all information that is available to You or subject to Your reasonable inquiry, including information in the possession of Your present and former attorneys, accountants, advisors, representatives, agents, employees, or other persons directly or indirectly employed by or connected with You, and anyone else otherwise subject to Your control.  All Documents that respond, in whole or in part, to any portion of the Requests below shall be produced in their entirety, including all attachments and enclosures.

4.      If there are no Documents, Communications or Things responsive to a particular request, You should so state in writing.

5.      If You believe that any of the following Requests calls for an assertion of a claim of privilege or work product immunity, answer so much of the Request as is not objected to, state

6

that part of each Request to which You raise an objection, and set forth the basis for Your claim of privilege with respect to such information You refuse to give, to include at least the following:

a)      The basis on which the privilege is claimed;

b)      The name and position of the author of the information;

c)      The name and position of each individual or other person to whom the information, or a copy thereof, was sent to otherwise disclosed and, if not apparent, the relationship of the persons to the author of the information;

d)      The date of the information;

e)      A description of any accompanying material transmitted with or attached to such information;

f)      The number of pages of such document or information or length of communication; and

g)      A description of the subject matter of the information, including whether any business or non-legal matter is contained or discussed in such information.

6.      In the event that You contend that any of these Requests are objectionable, in whole or in part, state with particularity each such objection and the bases therefore, and respond to the remainder of the Request to the extent that You are not objecting to it.

7.      If any Request is ambiguous or unclear to You, You are requested to contact undersigned counsel as soon as possible so that the Request can be clarified to avoid unnecessary delays in discovery.

8.      If You do not agree with any definition of the terms provided herein, You are instructed to provide a reasonable, alternative definition for that term, consistent with industry custom and usage.

9.      Each of the definitions and instructions contained herein shall be fully applicable to each Request notwithstanding that a definition or instruction above may, in whole or in part, be reiterated in a particular Request and notwithstanding that a particular Request may incorporate supplemental instructions or definitions.  If, however, You provide any alternate definitions in accordance with these Instructions, indicate whether and how any answer to any Request would differ if You relied on Your alternate definition in responding to that Request instead of the definitions provided.

10.      Each Request shall be construed independently, and no Request shall be viewed as limiting the scope of any other Request.

11.      Each and every copy of a Document, Communication or Thing that is different from the original because of stamps, indications of the recipient(s), handwritten notes, marks, attachments, or any other reason, is a separate document that must be produced.

12.      If You produce any tape, disk, card, wire, or other electronic or mechanical recording or transcript, or any computer program in response to any Request, You shall also produce such Documents, software, and instructions as are necessary for the decoding, playing back, printing, and/or interpretation thereof, and any other Documents that are necessary to convert said information into a useable format.

13.      In accordance with the Federal Rules of Civil Procedure, Your obligation to respond to these requests is continuing.  If You receive or discover a Document, Communication or Thing responsive to these requests after serving a response thereto, You shall promptly produce such Document, Communication or Thing.

## REQUESTS FOR PRODUCTION

## REQUEST FOR PRODUCTION NO. 38:

All emails, instant messages, attachments, and family members sent or received by the custodians listed below responsive to the following search terms:

| Custodian | Search Terms |
|---|---|
| 1. Max Ali<br>2. Lisa Monzon<br>3. Aushim Krishnan<br>4. Alex Dalyac<br>5. Razvan Ranca | 1. CCC!<br>2. "JA Appraisal"<br>3. jaappraisalco@gmail.com<br>4. maxgenie@live.co.uk<br>5. Jason w/10 Chen<br>6. Dean w/10 Kamen<br>7. Evan w/10 Contin |

**REQUEST FOR PRODUCTION NO. 39:**

All emails, instant messages, attachments, and family members sent or received by the custodian listed below responsive to the following search terms:

| Custodian | Search Terms |
|---|---|
| Xing Xin | 1. jaappraisalco@gmail.com<br>2. maxgenie@live.co.uk<br>3. Dean w/10 Kamen<br>4. Evan w/10 Contin |

**REQUEST FOR PRODUCTION NO. 40:**

All emails, instant messages, attachments, and family members sent or received by the custodian listed below responsive to the following search terms from June 1, 2017 to November 1, 2018:

| Custodian | Search Terms |
|---|---|
| 1. Max Ali<br>2. Lisa Monzon<br>3. Marcel Horstmann | 1. estimat! w/20 "National General"<br>2. CCC! w/20 (estimate! OR workfile) |

**REQUEST FOR PRODUCTION NO. 41:**

All Documents, Communications, and Things relating to Max Ali's "knowledge regarding Tractable's access to and use of CCC ONE through the license Tractable obtained doing business as JA Appraisal."

**REQUEST FOR PRODUCTION NO. 42:**

All Documents, Communications, and Things relating to Lisa Monzon's "knowledge regarding Tractable's access to and use of CCC ONE through the license Tractable obtained doing business as JA Appraisal."

**REQUEST FOR PRODUCTION NO. 43:**

All Documents, Communications, and Things relating to Aushim Krishan's "knowledge regarding Tractable's access to and use of CCC ONE through the license Tractable obtained doing business as JA Appraisal."

**REQUEST FOR PRODUCTION NO. 44:**

All Documents, Communications, and Things relating to Alex Dalyac's "knowledge of the license Tractable obtained to CCC ONE doing business as JA Appraisal."

**REQUEST FOR PRODUCTION NO. 45:**

All Documents, Communications, and Things relating to Razvan Ranca's "knowledge of the license Tractable obtained to CCC ONE doing business as JA Appraisal and Tractable's use of the license."

**REQUEST FOR PRODUCTION NO. 46:**

All Documents, Communications, and Things supporting, undermining, or refuting Tractable's contention that Razvan Ranca has knowledge of "the fact that Tractable did not take or misappropriate any confidential or proprietary information from CCC ONE."

**REQUEST FOR PRODUCTION NO. 47:**

All Documents, Communications, and Things referred to, referenced, considered, or relied upon by Tractable in preparing Tractable's Initial Disclosures (served pursuant to Federal Rule of Civil Procedure 26) in this Case.

**REQUEST FOR PRODUCTION NO. 48:**

All Documents, Communications, and Things supporting Tractable's contention that "Mr. Xin obtained the CCC license under the name JA Appraisal based on the belief, at the time, that Tractable would use the d/b/a JA Appraisal going forward to conduct an appraisal-related business."

**REQUEST FOR PRODUCTION NO. 49:**

All Documents, Communications, and Things supporting Tractable's contention that "Mr. Xin informed CCC that "Jason Chen" was not his real name, and CCC did not inquire further into the identity or affiliation of Jason Chen or JA Appraisal."

**REQUEST FOR PRODUCTION NO. 50:**

All Documents, Communications, and Things relating to Lisa Monzon's access to and use of CCC ONE.

**REQUEST FOR PRODUCTION NO. 51:**

All Documents, Communications, and Things relating to Tractable's use of "virtual machines running on Amazon Web Services servers to access CCC ONE."

**REQUEST FOR PRODUCTION NO. 52:**

All Documents, Communications, and Things relating to Max Ali, Lisa Monzon, Francesca Melle, and Aushim Krishan's access to and use of information, data, or files from the CCC Products.

**REQUEST FOR PRODUCTION NO. 53:**

11

All Communications from June 2018 to the present between Xing Xin and any one or more of the following people: Max Ali, Lisa Monzon, Aushim Krishnan, Alex Dalyac, Razvan Ranca, Marcel Horstmann, and Francesca Melle regarding CCC, CCC ONE, JA Appraisal, or this lawsuit.

**REQUEST FOR PRODUCTION NO. 54:**

All Documents, Communications, and Things regarding Tractable's attempt(s) to create a business relationship with CCC including, but not limited to, activities involving Alex Dalyac's and Xing Xin's attempt(s) to meet with Marc Fredman from 2017 through October 30, 2018.

**REQUEST FOR PRODUCTION NO. 55:**

All Documents and Things regarding any partnerships, joint ventures, or other business relationships, past or present, between Tractable and Mitchell.

**REQUEST FOR PRODUCTION NO. 56:**

All Documents and Things relating to Tractable's July 13, 2022 announcement of its partnership with American Family Insurance.

**REQUEST FOR PRODUCTION NO. 57:**

All Documents and Things relating to Tractable's May 26, 2021 announcement of its partnership with GEICO.

Date: December 2, 2022                Respectfully submitted,

                                          */s/ Stephen D. O'Donohue*
                                          One of the Attorneys for Plaintiff CCC
                                          Intelligent Solutions Inc.

                                          Mark S. Mester (Bar No. 6196140)
                                          mark.mester@lw.com
                                          Matthew W. Walch (Bar No. 6226308)

12

matthew.walch@lw.com
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767

Adam M. Greenfield (Bar No. 6292915)
adam.greenfield@lw.com
Jason Burt (*pro hac vice*)
jason.burt@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
Telephone: (202) 637-2200
Facsimile: (202) 637-2201

Stephen D. O'Donohue (*pro hac vice*)
stephen.odonohue@lw.com
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on December 2, 2022 a copy of the foregoing was served upon counsel

of record via electronic mail.

<u>*/s/ Stephen D. O'Donohue*</u>
Stephen D. O'Donohue

# EXHIBIT 21
## FILED UNDER SEAL

# EXHIBIT 22
## FILED UNDER SEAL

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CCC INTELLIGENT SOLUTIONS INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 1:18-cv-07246** |
| **v.** | ) | |
| | ) | **Hon. LaShonda A. Hunt** |
| **TRACTABLE INC.,** | ) | **Hon. Keri L. Holleb Hotaling** |
| | ) | |
| **Defendant.** | ) | |

**CCC INTELLIGENT SOLUTIONS INC.'S FOURTH SET OF REQUESTS FOR**
**PRODUCTION OF DOCUMENTS TO TRACTABLE INC. (NOS. 82–88)**

Pursuant to Federal Rules of Civil Procedure 26 and 34, Plaintiff CCC Intelligent Solutions Inc. ("CCC") submits its Fourth Set of Requests for Production of Documents (Nos. 82–88) to Defendant Tractable Inc. ("Tractable"). CCC requests that Tractable respond to these requests in writing, in accordance with the Definitions and Instructions contained herein, and produce all documents and things in Tractable's possession, custody, or control that are requested below, within thirty (30) days of the date of service in accordance with the Federal Rules of Civil Procedure. CCC requests that Tractable serve such answers on Plaintiff's counsel via email or physical mail at the office of Latham & Watkins LLP, 330 North Wabash Avenue, Suite 2800, Chicago, Illinois 60611—or at such other time and place as the parties may agree upon.

## DEFINITIONS

1. **"CCC"** means CCC Intelligent Solutions Inc., its predecessors and successors, respective officers, directors, agents, representatives, employees, attorneys, and investigators, and others acting on CCC Intelligent Solutions Inc.'s behalf.

2. **"CCC ONE"** means the CCC ONE Appraisal Platform and CCC ONE Estimating, collectively.

3. "**Communication**" shall include any form of transmitting, receiving, or exchanging information or ideas from one Person to another, such as, by way of example and not exclusion, correspondence, letters, e-mail, text or SMS messages, website postings or messages, instant messages, online account information, memoranda, reports, discussions, conversation, negotiations, agreements, notes, or other forms of information or ideas exchanges, whether oral, electronic, or written.

4. "**Date**" means the exact day, month, and year if so ascertainable or, if not, the best approximation (including relationship to seasons and other events).

5. "**Document**" is synonymous in meaning and equal in scope to the usage of this term in Rule 34(a) of the Federal Rules of Civil Procedure and Federal Rule of Evidence 1001. By way of illustration, and without limitation, Documents include at least the following: originals, drafts, and all non-identical copies of memoranda, reports, notes, graphs, correspondence, interoffice Communications, letters, diaries, calendars, photographs, motion pictures, sketches, drawings, promotional materials, technical papers, printed publications, record, reports, and all other writings, whether such information is electronically stored or otherwise, as well as all non-paper information storage means such as sound reproductions, computer inputs and outputs, tape, film, and computer memory devices, as well as tangible things such as models, modules, prototypes, and commercially saleable products. The foregoing specifically includes the information stores in any form, including electronic form, on a computer database or otherwise, including electronic mail. "Thing" shall mean any tangible item, including without limitation, models, prototypes, and samples of any device or apparatus or product.

6. "**Identify**," "**Identity**," and "**Identification**" shall mean, as the context shall make appropriate:

a)  With respect to a person, the name, present or last known address, telephone number, occupation, and employer;

b)  With respect to a document, the type of document (e.g., letter, memorandum, book, etc.), date, author, general subject matter, the name of the company in the case of a corporate document, all persons designated on the document to receive a copy or otherwise known to have received a copy, the document's present location, and the identity of the custodian of the original and each copy. If any document was, but no longer is, in Your possession, custody, or control, or if any document was in existence but is no longer in existence due to destruction or otherwise, state how the document was disposed, the date of such disposition, the identity of the person responsible for making the decision as to such disposition, and the person responsible for carrying out the disposition;

c)  With respect to a telephone conversation, the full name, occupation, telephone number and address of each party to the telephone conversation, the date of the conversation and the subject matter discussed;

d)  With respect to an oral conversation other than a telephone conversation, the full name, occupation, telephone number, and address of each party to such conversation, the date of the conversation, and the subject matter discussed;

e)  With respect to a corporation, partnership, association, or other entity, its full name, form of organization, present or last known address, and telephone number; and

f)  With respect to any event or action, the dates or approximate dates thereof, a description of what occurred, and all persons involved.

7.      "**Including**" shall not be used to limit any general category or description that precedes it and shall mean "including without limitation" so as to be inclusive.

8.      "**Thing**" shall mean any tangible item, including without limitation, models, prototypes, and samples of any device or apparatus or product.

9.      "**Data**," "**Database**," or "**Data Set(s)**" shall mean all documents, communications, and information, regardless of whether such data is numeric, alphabetic, and/or in source code format.

10.      "**Tractable**," "**Defendant**," "**You**," or "**Your**" means Tractable Inc. and all parents, subsidiaries, and affiliates thereof, all divisions, predecessors, successors, and assigns of each of the foregoing, and all principals, officers, investors, employees, directors, agents, consultants, attorneys, and all other persons acting or purporting to act on behalf of or under the control of any of the foregoing.

11.      "**PartsTrader**" means PartsTrader LLC and all parents, subsidiaries, and affiliates thereof, all divisions, predecessors, successors, and assigns of each of the foregoing, and all principals, officers, investors, employees, directors, agents, consultants, attorneys, and all other persons acting or purporting to act on behalf of or under the control of any of the foregoing.

12.      The conjunctions "**and**" and "**or**" shall be construed either conjunctively or disjunctively, as required by the context, to bring within the scope of these Requests any information that might otherwise be deemed outside their scope.

13.      "**Concern**," "**Concerning**," "**Derived From**," "**Reflect**," "**Reflecting**," "**Related**," "**Relating**," "**Relate(s)**," "**Refer**" or "**Referring**," and other variations thereof, as used herein, shall be construed in their broadest possible sense, and shall mean without limitation and whether in whole or in part: referring to, constituting, bearing upon, commenting upon, reflecting,

evidencing, pertaining to, describing, depicting, consisting of, containing, comprising, embodying, identifying, stating, discussing, analyzing, studying, summarizing, dealing with, relating to, or having any logical factual connection whatsoever with the subject addressed, regardless of whether the factual connection is favorable or adverse to You.

14.    "**Person**" and "**Individual**" mean any natural person or any business, legal or government entity, or association—including but not limited to any proprietorship, partnership, firm, company, or corporation.

15.    The singular of each word shall be construed to include its plural, and vice versa, to bring within the scope of these Requests any information that might otherwise be deemed outside their scope.

16.    The present tense shall be construed to include the past tense and vice versa.

## **INSTRUCTIONS**

1.      All requested Documents, Communications and Things that are in Your possession, custody, or control, whether actual or constructive, shall be organized and produced pursuant to Rule 34(b) of the Federal Rules of Civil Procedure.

2.      In further accordance with Rule 34 of the Federal Rules of Civil Procedure, all Documents, Communications and Things produced for inspection and copying shall be organized and labeled to correspond with the categories in the Request or shall be produced as they are kept in the normal course of business.

3.      In responding to these Requests, You shall furnish all information that is available to You or subject to Your reasonable inquiry, including information in the possession of Your present and former attorneys, accountants, advisors, representatives, agents, employees, or other persons directly or indirectly employed by or connected with You, and anyone else otherwise subject to Your control.  All Documents that respond, in whole or in part, to any portion of the Requests below shall be produced in their entirety, including all attachments and enclosures.

4.      If there are no Documents, Communications or Things responsive to a particular request, You should so state in writing.

5.      If You believe that any of the following Requests calls for an assertion of a claim of privilege or work product immunity, answer so much of the Request as is not objected to, state that part of each Request to which You raise an objection, and set forth the basis for Your claim of privilege with respect to such information You refuse to give, to include at least the following:

a)      The basis on which the privilege is claimed;

b)      The name and position of the author of the information;

c)     The name and position of each individual or other person to whom the information, or a copy thereof, was sent to otherwise disclosed and, if not apparent, the relationship of the persons to the author of the information;

d)     The date of the information;

e)     A description of any accompanying material transmitted with or attached to such information;

f)     The number of pages of such document or information or length of communication; and

g)     A description of the subject matter of the information, including whether any business or non-legal matter is contained or discussed in such information.

6.     In the event that You contend that any of these Requests are objectionable, in whole or in part, state with particularity each such objection and the bases therefore, and respond to the remainder of the Request to the extent that You are not objecting to it.

7.     If any Request is ambiguous or unclear to You, You are requested to contact undersigned counsel as soon as possible so that the Request can be clarified to avoid unnecessary delays in discovery.

8.     If You do not agree with any definition of the terms provided herein, You are instructed to provide a reasonable, alternative definition for that term, consistent with industry custom and usage.

9.     Each of the definitions and instructions contained herein shall be fully applicable to each Request notwithstanding that a definition or instruction above may, in whole or in part, be reiterated in a particular Request and notwithstanding that a particular Request may incorporate supplemental instructions or definitions.  If, however, You provide any alternate definitions in

accordance with these Instructions, indicate whether and how any answer to any Request would differ if You relied on Your alternate definition in responding to that Request instead of the definitions provided.

10.     Each Request shall be construed independently, and no Request shall be viewed as limiting the scope of any other Request.

11.     Each and every copy of a Document, Communication or Thing that is different from the original because of stamps, indications of the recipient(s), handwritten notes, marks, attachments, or any other reason, is a separate document that must be produced.

12.     If You produce any tape, disk, card, wire, or other electronic or mechanical recording or transcript, or any computer program in response to any Request, You shall also produce such Documents, software, and instructions as are necessary for the decoding, playing back, printing, and/or interpretation thereof, and any other Documents that are necessary to convert said information into a useable format.

13.     In accordance with the Federal Rules of Civil Procedure, Your obligation to respond to these requests is continuing.  If You receive or discover a Document, Communication or Thing responsive to these requests after serving a response thereto, You shall promptly produce such Document, Communication or Thing.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 82:**

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY –
SUBJECT TO PROTECTIVE ORDER**

███████████████████████████████

**REQUEST FOR PRODUCTION NO. 83:**

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY –
SUBJECT TO PROTECTIVE ORDER**

████████████████████████████████████████

████████████████████████████████████████

█████████████

**REQUEST FOR PRODUCTION NO. 84:**

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY –
SUBJECT TO PROTECTIVE ORDER**

████████████████████████████████████████

████████████████████████████████████████

███████████     ████████████     ████████████

█████████████████████

**REQUEST FOR PRODUCTION NO. 85:**

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY –
SUBJECT TO PROTECTIVE ORDER**

███████████████████████████████

**REQUEST FOR PRODUCTION NO. 86:**

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY –
SUBJECT TO PROTECTIVE ORDER**

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████

**REQUEST FOR PRODUCTION NO. 87:**

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY –
SUBJECT TO PROTECTIVE ORDER**

██████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████

**REQUEST FOR PRODUCTION NO. 88:**

All Documents, Communications, and Things regarding any partnerships, joint ventures, or other business relationships, past or present, between Tractable and PartsTrader.

Date:  March 7, 2024                    Respectfully submitted,

                              */s/ Rebekah L. Soule*
                              One of the Attorneys for Plaintiff CCC
                              Intelligent Solutions Inc.

                              Mark S. Mester (Bar No. 6196140)
                              mark.mester@lw.com
                              Matthew W. Walch (Bar No. 6226308)
                              matthew.walch@lw.com
                              Terra Reynolds (Bar No. 6278858)
                              terra.reynolds@lw.com
                              Kathryn A. Running (Bar No. 6330369)

kathryn.running@lw.com
Connor Wheeler (Bar. No. 6342792)
connor.wheeler@lw.com
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767

Adam M. Greenfield (Bar No. 6292915)
adam.greenfield@lw.com
Jason Burt (*pro hac vice*)
jason.burt@lw.com
Marguerite M. Sullivan (Bar. No. 6273129)
marguerite.sullivan@lw.com
Rebekah L. Soule (*pro hac vice*)
rebekah.soule@lw.com
Wilson Boardman (Bar No. 6343030)
wilson.boardman@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
Telephone: (202) 637-2200
Facsimile: (202) 637-2201

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 7, 2024 a copy of the foregoing was served upon counsel of

record via electronic mail.

<u>*/s/ Rebekah L. Soule*           </u>
Rebekah L. Soule

# EXHIBIT 23

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CCC INTELLIGENT SOLUTIONS INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:18-cv-07246 |
| v. | ) | |
| | ) | Hon. Robert W. Gettleman |
| TRACTABLE INC., | ) | Hon. Susan E. Cox |
| | ) | |
| Defendant. | ) | |

## CCC INTELLIGENT SOLUTIONS INC.'S FIRST SET OF INTERROGATORIES TO TRACTABLE INC. (NOS. 1 – 7)

Pursuant to Federal Rules of Civil Procedure 26 and 33, Plaintiff CCC Intelligent Solutions Inc. ("CCC") submits its First Set of Interrogatories (Nos. 1-7) to Defendant Tractable Inc. ("Tractable"). These Interrogatories are to be answered separately and fully, in writing and under oath, in accordance with the Definitions and Instructions contained herein, within thirty (30) days of the date of service in accordance with the Federal Rules of Civil Procedure. CCC requests that Tractable serve such Answers on Plaintiff's counsel at the office of Latham & Watkins LLP, 555 11th Street NW, Suite 1000, Washington, DC 20002.

## DEFINITIONS

1.      **"CCC"** means CCC Intelligent Solutions Inc., its respective officers, directors, agents, representatives, employees, attorneys, and investigators, and others acting on CCC Intelligent Solutions Inc.'s behalf.

2.      **"CCC ONE"** means the CCC ONE Appraisal Platform and CCC ONE Estimating, collectively.

3.      **"CCC Product"** means any Product offered for sale, sold, imported, or under development by CCC and all parents, subsidiaries, and affiliates thereof, all divisions,

predecessors, successors, and assigns of each of the foregoing, and all principals, officers, investors, employees, directors, agents, consultants, attorneys, and all other persons acting or purporting to act on behalf of or under the control of any of the foregoing. This includes, but is not limited to CCC software, such as CCC ONE, as well as information, files, and data associated with CCC ONE.

4.     "**Communicate**" or "**communication**" means every manner or means of disclosure, transfer, transmission, or exchange of information whether person-to-person, in a group, by telephone, letter, facsimile, electronic or computer mail, voicemail, telex or telecopy, or by any other process, electric, electronic or otherwise.

5.     "**Date**" means the exact day, month, and year if so ascertainable or, if not, the best approximation (including relationship to seasons and other events).

6.     "**Document**" is synonymous in meaning and equal in scope to the usage of this term in Rule 34(a) of the Federal Rules of Civil Procedure and Federal Rule of Evidence 1001. By way of illustration, and without limitation, documents include at least the following: originals, drafts, and all non-identical copies of memoranda, reports, notes, graphs, correspondence, interoffice communications, letters, diaries, calendars, photographs, motion pictures, sketches, drawings, promotional material, technical papers, printed publications, record, reports, and all other writings, whether such information is electronically stored or otherwise, as well as all non-paper information storage means such as sound reproductions, computer inputs and outputs, tape, film, and computer memory devices, as well as tangible things such as models, modules, prototypes, and commercially saleable products. The foregoing specifically includes the information stores in any form, including electronic form, on a computer database or otherwise, including electronic mail.

7.     As used herein, the term "**facts**" shall have its ordinary meaning and, pursuant to Federal Rule of Civil Procedure 33(a)(2), also shall mean related opinions, related contentions, and the application of law to fact.

8.     The terms "**identify**," "**identity**," and "**identification**" shall mean, as the context shall make appropriate:

a)     With respect to a person, the name, present or last known address, telephone number, occupation, and employer;

b)     With respect to a document, the type of document (e.g., letter, memorandum, book, etc.), date, author, general subject matter, the name of the company in the case of a corporate document, all persons designated on the document to receive a copy or otherwise known to have received a copy, the document's present location, the identity of the custodian of the original and each copy, and the Bates numbering corresponding to that document, if any.  If any document was, but no longer is, in your possession, custody, or control, or if any document was in existence but is no longer in existence due to its destruction or otherwise, state how the document was disposed, the date of such disposition, the identity of the person responsible for making the decision as to such disposition, and the person responsible for carrying out the disposition;

c)     With respect to a telephone conversation, the full name, occupation, telephone number and address of each party to the telephone conversation, the date of the conversation and the subject matter discussed;

3

d)      With respect to an oral conversation other than a telephone conversation, the full name, occupation, telephone number, and address of each party to such conversation, the date of the conversation, and the subject matter discussed;

e)      With respect to a corporation, partnership, association, or other entity, its full name, form of organization, present or last known address, and telephone number; and

f)      With respect to any event or action, the dates or approximate dates thereof, a description of what occurred, and all persons involved.

9.      **"Including"** shall not be used to limit any general category or description that precedes it and shall mean "including without limitation" so as to be inclusive.

10.     **"Independent Appraiser"** means a person who evaluates, processes, and settles automotive physical damage claims in connection with insurance policies issues and/or services by clients for vehicles located in the United States.

11.      **"License(s)"** means any and all Automotive Services Independent Appraiser Master License Agreements between CCC and "JA Appraisal" or any person or person associated with "JA Appraisal."

12.     **"Person"** and **"individual"** mean any natural person or any business, legal or government entity, or association—including but not limited to any proprietorship, partnership, firm, company, or corporation.

13.     **"Product"** means any machine, manufacture, apparatus, device, system, process, service, method, software, source code, or instrumentality which is designed to function together electrically, mechanically, chemically, or otherwise, to achieve a particular function or purpose, including those offered for sale, sold, imported, or under development.

14.     "**Thing**" shall mean any tangible item, including without limitation, models, prototypes, and samples of any device or apparatus or product.

15.     "**Third Party**" means and includes any person or persons other than CCC or Tractable.

16.     "**Tractable**," "**Defendant**," "**You**," or "**Your**" means Tractable Inc. and all parents, subsidiaries, and affiliates thereof, all divisions, predecessors, successors, and assigns of each of the foregoing, and all principals, officers, investors, employees, directors, agents, consultants, attorneys, and all other persons acting or purporting to act on behalf of or under the control of any of the foregoing.

17.     "**Tractable Product**" means any Product offered for sale, sold, imported, or under development by Tractable to "[r]eview auto repair estimates, at scale, in real time" or [p]roduce an instant estimate from photos," as set forth at https://tractable.ai/products/car-accidents/.

18.     "**Trademark(s)**" means all trademarks registered to CCC, including but not limited to CCC® and CCC ONE® marks, such as No. 2,013,714 for the CCC Mark® in Classes 36 and 38, No. 4,588,425 for the CCC® Mark in Class 42, No. 4,478,633 for the CCC ONE® Mark in Class 9, No. 4,527,798 for the CCC ONE® Mark in Class 42, No. 3, 664,638 for the CCC ONE® Mark in Class 36, and No. 3,706,398 for the CCC ONE Mark in Class 36. Compl. ¶ 21-22.

19.     The conjunctions "**and**" and "**or**" shall be construed either conjunctively or disjunctively, as required by the context, to bring within the scope of these Interrogatories any information that might otherwise be deemed outside their scope.

20.     "**Concern**," "**concerning**," "**reflect**," "**reflecting**," "**related**," "**relating**," "**relate(s)**," "**refer**" or "**referring**," and other variations thereof, as used herein shall be construed in their broadest possible sense, and shall mean without limitation and whether in whole or in part:

referring to, constituting, bearing upon, commenting upon, reflecting, evidencing, pertaining to, describing, depicting, consisting of, containing, comprising, embodying, identifying, stating, discussing, analyzing, studying, summarizing, dealing with, relating to, or having any logical factual connection whatsoever with the subject addressed, regardless of whether the factual connection is favorable or adverse to you.

21.     References to this "**Lawsuit**," "**Case**," or "**Action**" mean the above-captioned action brought by CCC.

22.     The singular of each word shall be construed to include its plural, and vice versa, to bring within the scope of these Interrogatories any information that might otherwise be deemed outside their scope.

23.     The present tense shall be construed to include the past tense and vice versa.

### <u>INSTRUCTIONS</u>

1.     All interrogatories must be answered completely, in writing, and under oath and signed by the Person providing the answers, and each response must include information regarding each individual Plaintiff.  If any interrogatory cannot be answered completely after the exercise of reasonable diligence, the Person providing the answer shall furnish as complete an answer as possible and then explain in detail the reason a full answer cannot be given, which shall include a statement indicating what is needed in order to be able to give a full answer to the interrogatory.

2.     Each interrogatory shall operate and be responded to independently and, unless otherwise indicated, no interrogatory limits the scope of any other interrogatory.  Each interrogatory is to be construed independently and not by reference to any other interrogatory for purposes of limiting the scope of the interrogatory.  The answer to an interrogatory shall not be

supplied by referring to the answer to another interrogatory unless the answer to the interrogatory being referred to supplies a complete and accurate answer to the interrogatory being answered.

3.      In answering the following interrogatories, you shall furnish all available information, including information in the possession, custody, or control of any of your attorneys, directors, officers, agents, employees, representatives, associates, investigators, or division affiliates, partnerships, parents or subsidiaries, and persons under your control, who have the best knowledge, not merely information known to you based on your own personal knowledge. If you cannot fully respond to the following interrogatories after exercising due diligence to secure the information requested thereby, so state, and specify the portion of each interrogatory that cannot be responded to fully and completely. In the latter event, state what efforts were made to obtain the requested information and the facts relied upon that support any contention that the interrogatories cannot be answered fully and completely, and state what knowledge, information, or belief you have concerning the unanswered portion of any such interrogatories.

4.      Where knowledge or information in your possession is requested, the request extends to knowledge or information in the possession of your predecessors and/or successors, as well as to information in the possession of your officers, directors, agents, employees, servants, representatives, and, unless privileged, attorneys. Whenever an answer to these interrogatories contains information which is not based upon your personal knowledge, state the source and nature of such information.

5.      If in answering any interrogatory, you seek to invoke the procedures of Rule 33(d) of the Federal Rules of Civil Procedure, state fully all facts which support your contention that the burden of ascertaining the answer to the interrogatory is substantially the same for CCC as it is for

you, and specify those business records (including the applicable Bates numbers) from which you contend CCC may ascertain or derive the answer.

6.    If any objection is made to any interrogatory herein, the objection shall state with particularity the basis therefore, and the interrogatory shall be answered to the extent not objected to.

7.    If any identified document and/or information was, but no longer is, in your possession or under your control, state precisely what disposition was made of it and identify the person who ordered or authorized such disposition.

8.    If any information requested claimed to be privileged or otherwise immune from discovery, please provide all information falling within the scope of the interrogatory which is not privileged, and for each item of information contained in a document or communication to which a claim of privilege is made, identify such document or communication with sufficient particularity to include at least the following:

a)    The basis on which the privilege is claimed;

b)    The name and position of the author of the information;

c)    The name and position of each individual or other person to whom the information, or a copy thereof, was sent to otherwise disclosed and, if not apparent, the relationship of the persons to the author of the information;

d)    The date of the information;

e)    A description of any accompanying material transmitted with or attached to such information;

f)    The number of pages of such document or information or length of communication; and

8

g)      A description of the subject matter of the information, including whether any business or non-legal matter is contained or discussed in such information.

9.      If in response to an interrogatory you do not know all of the facts necessary to provide a complete and specific answer, you should provide an answer to such portion of the interrogatory as you can, and provide such facts as are known to you and any estimates, approximations, or beliefs that you consider reliable.  Any such estimates, approximations, or should be clearly denoted as such, and the bases for your belief in their reliability should be explained

10.      If in answering any of these interrogatories you encounter any ambiguity in construing the interrogatory or any definition or instruction relevant to the interrogatory, set forth the matter deemed ambiguous and the construction selected or used in answering the interrogatory.

11.      These interrogatories shall be considered continuing, and you are to supplement your answers in a timely manner in accordance with the requirements of Rule 26(e) of the Federal Rules of Civil Procedure.

**INTERROGATORY NO. 1:**

Describe in detail the complete factual and legal bases you intend to rely on for any contention(s) that Your use of or access to CCC ONE was authorized, including a specific identification of (a) any documents or other evidence supporting any such contention(s) that you intend to rely on, (b) any arguments in support of such contention(s) that you intend to rely on, (c) any legal precedent supporting any such contentions that you intend to rely on, and (d) the five (5) persons most knowledgeable about such contention(s) and/or the factual or legal bases for such contention(s).

**INTERROGATORY NO. 2:**

Describe all facts and circumstances regarding Your use of the name "JA Appraisal" as an alias, "doing business as" name, or pseudonym including, but not limited to, all business activities, financial transactions, records of corporate formation, tax filings, and any activities by You as an Independent Appraiser. Your answer should include an identification of all Documents relevant to this Interrogatory, all persons who were involved in any activities associates with "JA Appraisal," and the person(s) most knowledgeable about your Answer.

**INTERROGATORY NO. 3:**

Describe all facts and circumstances regarding Your efforts to "obtain[] a CCC ONE license to work with insurers" (Dkt. No. 103 at 2) including, but not limited to, Your interactions with and activities related to all efforts to obtain access to CCC software, all attempts to use CCC software, save information from or provided by CCC, analyze any information or data obtained from CCC, and the identities of all individuals involved in these activities. Your answer should include an identification of all Documents relevant to this Interrogatory, all information, files, and data Tractable obtained through use of or access to CCC ONE or any other CCC Product, all individuals associated with Tractable who accessed or had access to CCC ONE or any other CCC Product, and the person(s) most knowledgeable about your Answer.

**INTERROGATORY NO. 4:**

Describe the location of each computer and server through which any employee, agent, or representative of, or individual otherwise associated with Tractable accessed or had access to CCC ONE or any other CCC Product, including, but not limited to, the physical address, internet protocol address, and the person(s) with access to those computers and servers. Your answer should include an identification of all Documents relevant to this Interrogatory, the location of

each computer and server that stored an information, data, or files from CCC ONE or any other CCC Product, including, but not limited to, the physical address, internet protocol address, and the person(s) with access to those computers and servers, and the person(s) most knowledgeable about your Answer.

**INTERROGATORY NO. 5:**

Describe in detail each instance where "Tractable created estimates using the CCC ONE software and transmitted those estimates to its insurance company client" (Dkt. No. 103 at 2) including, but not limited to, the individuals involved in these activities, the identity of the alleged "insurance company client," how and when these activities took place, and identify, by Bates number, all documents and communications reflecting these activities.

**INTERROGATORY NO. 6:**

Identify each instance of an employee, agent, representative or individual otherwise associated with Tractable or "JA Appraisal" used CCC ONE or accessed information, data, or files from CCC ONE or any other CCC Product, including who, what, when, where, and how such use or access occurred. Your answer should include an identification of all Documents relevant to this Interrogatory and the person(s) most knowledgeable about your Answer.

**INTERROGATORY NO. 7:**

Identify each use, reproduction, or dissemination of any CCC Trademark, including but not limited to any printing or electronic representation of a CCC Trademark, including but not limited to how, when, where, and why the Trademark was used and the identification of any third parties who received Your use, reproduction, or dissemination of the Trademark. Your Answer should include an identification of all Documents relevant to this Interrogatory and the person(s) most knowledgeable about Your Answer.

Date:  September 22, 2022

Respectfully submitted,

*/s/ Stephen D. O'Donohue*
One of the Attorneys for Plaintiff CCC
Intelligent Solutions Inc.

Mark S. Mester (Bar No. 6196140)
mark.mester@lw.com
Matthew W. Walch (Bar No. 6226308)
matthew.walch@lw.com
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767

Adam M. Greenfield (Bar No. 6292915)
adam.greenfield@lw.com
Jason Burt (*pro hac vice*)
jason.burt@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
Telephone: (202) 637-2200
Facsimile: (202) 637-2201

Stephen D. O'Donohue (*pro hac vice*)
stephen.odonohue@lw.com
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 22, 2022, a copy of the foregoing was served upon counsel of record via electronic mail.

<div align="right">

*/s/ Stephen D. O'Donohue*
Stephen D. O'Donohue

</div>

# EXHIBIT 24

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **CCC INTELLIGENT SOLUTIONS INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 1:18-cv-07246** |
| **v.** | ) | |
| | ) | **Hon. Robert W. Gettleman** |
| **TRACTABLE INC.,** | ) | **Hon. Susan E. Cox** |
| | ) | |
| **Defendant.** | ) | |

### CCC INTELLIGENT SOLUTIONS INC.'S FIRST SET OF INTERROGATORIES TO TRACTABLE INC. (NOS. 8–10)

Pursuant to Federal Rules of Civil Procedure 26 and 33, Plaintiff CCC Intelligent Solutions Inc. ("CCC") submits its Second Set of Interrogatories (Nos. 8-10) to Defendant Tractable Inc. ("Tractable"). These Interrogatories are to be answered separately and fully, in writing and under oath, in accordance with the Definitions and Instructions contained herein, within thirty (30) days of the date of service in accordance with the Federal Rules of Civil Procedure. CCC requests that Tractable serve such Answers on Plaintiff's counsel at the office of Latham & Watkins LLP, 555 11th Street NW, Suite 1000, Washington, DC 20002.

### DEFINITIONS

1.      "**CCC**" means CCC Intelligent Solutions Inc., its respective officers, directors, agents, representatives, employees, attorneys, and investigators, and others acting on CCC Intelligent Solutions Inc.'s behalf.

2.      "**CCC ONE**" means the CCC ONE Appraisal Platform and CCC ONE Estimating, collectively.

3.      "**CCC Product**" means any Product offered for sale, sold, imported, or under development by CCC and all parents, subsidiaries, and affiliates thereof, all divisions,

predecessors, successors, and assigns of each of the foregoing, and all principals, officers, investors, employees, directors, agents, consultants, attorneys, and all other persons acting or purporting to act on behalf of or under the control of any of the foregoing. This includes, but is not limited to CCC software, such as CCC ONE, as well as information, files, and data associated with CCC ONE.

4. "**Communicate**" or "**communication**" means every manner or means of disclosure, transfer, transmission, or exchange of information whether person-to-person, in a group, by telephone, letter, facsimile, electronic or computer mail, voicemail, telex or telecopy, or by any other process, electric, electronic or otherwise.

5. "**Date**" means the exact day, month, and year if so ascertainable or, if not, the best approximation (including relationship to seasons and other events).

6. "**Document**" is synonymous in meaning and equal in scope to the usage of this term in Rule 34(a) of the Federal Rules of Civil Procedure and Federal Rule of Evidence 1001. By way of illustration, and without limitation, documents include at least the following: originals, drafts, and all non-identical copies of memoranda, reports, notes, graphs, correspondence, interoffice communications, letters, diaries, calendars, photographs, motion pictures, sketches, drawings, promotional material, technical papers, printed publications, record, reports, and all other writings, whether such information is electronically stored or otherwise, as well as all non-paper information storage means such as sound reproductions, computer inputs and outputs, tape, film, and computer memory devices, as well as tangible things such as models, modules, prototypes, and commercially saleable products. The foregoing specifically includes the information stores in any form, including electronic form, on a computer database or otherwise, including electronic mail.

7.    "**Complaint**" and "**FAC**" mean Plaintiff's First Amended Complaint in this suit (Dkt. No. 31) and any amendments and attachments thereto.

8.    As used herein, the term "**facts**" shall have its ordinary meaning and, pursuant to Federal Rule of Civil Procedure 33(a)(2), also shall mean related opinions, related contentions, and the application of law to fact.

9.    The terms "**identify**," "**identity**," and "**identification**" shall mean, as the context shall make appropriate:

a)    With respect to a person, the name, present or last known address, telephone number, occupation, and employer;

b)    With respect to a document, the type of document (e.g., letter, memorandum, book, etc.), date, author, general subject matter, the name of the company in the case of a corporate document, all persons designated on the document to receive a copy or otherwise known to have received a copy, the document's present location, the identity of the custodian of the original and each copy, and the Bates numbering corresponding to that document, if any. If any document was, but no longer is, in your possession, custody, or control, or if any document was in existence but is no longer in existence due to its destruction or otherwise, state how the document was disposed, the date of such disposition, the identity of the person responsible for making the decision as to such disposition, and the person responsible for carrying out the disposition;

c)    With respect to a telephone conversation, the full name, occupation, telephone number and address of each party to the telephone conversation, the date of the conversation and the subject matter discussed;

d)      With respect to an oral conversation other than a telephone conversation, the full name, occupation, telephone number, and address of each party to such conversation, the date of the conversation, and the subject matter discussed;

e)      With respect to a corporation, partnership, association, or other entity, its full name, form of organization, present or last known address, and telephone number; and

f)      With respect to any event or action, the dates or approximate dates thereof, a description of what occurred, and all persons involved.

10.    **"Including"** shall not be used to limit any general category or description that precedes it and shall mean "including without limitation" so as to be inclusive.

11.    **"Independent Appraiser"** means a person who evaluates, processes, and settles automotive physical damage claims in connection with insurance policies issues and/or services by clients for vehicles located in the United States.

12.    "**License(s)**" means any and all Automotive Services Independent Appraiser Master License Agreements between CCC and "JA Appraisal" or any person or person associated with "JA Appraisal."

13.    "**Person**" and "**individual**" mean any natural person or any business, legal or government entity, or association—including but not limited to any proprietorship, partnership, firm, company, or corporation.

14.    "**Product**" means any machine, manufacture, apparatus, device, system, process, service, method, software, source code, or instrumentality which is designed to function together electrically, mechanically, chemically, or otherwise, to achieve a particular function or purpose, including those offered for sale, sold, imported, or under development.

15.     "**Thing**" shall mean any tangible item, including without limitation, models, prototypes, and samples of any device or apparatus or product.

16.     "**Third Party**" means and includes any person or persons other than CCC or Tractable.

17.     "**Tractable**," "**Defendant**," "**You**," or "**Your**" means Tractable Inc. and all parents, subsidiaries, and affiliates thereof, all divisions, predecessors, successors, and assigns of each of the foregoing, and all principals, officers, investors, employees, directors, agents, consultants, attorneys, and all other persons acting or purporting to act on behalf of or under the control of any of the foregoing.

18.     "**Tractable Product**" means any Product offered for sale, sold, imported, or under development by Tractable to "[r]eview auto repair estimates, at scale, in real time" or [p]roduce an instant estimate from photos," as set forth at https://tractable.ai/products/car-accidents/.

19.     "**Trademark(s)**" means all trademarks registered to CCC, including but not limited to CCC® and CCC ONE® marks, such as No. 2,013,714 for the CCC Mark® in Classes 36 and 38, No. 4,588,425 for the CCC® Mark in Class 42, No. 4,478,633 for the CCC ONE® Mark in Class 9, No. 4,527,798 for the CCC ONE® Mark in Class 42, No. 3, 664,638 for the CCC ONE® Mark in Class 36, and No. 3,706,398 for the CCC ONE Mark in Class 36. Compl. ¶ 21-22.

20.     The conjunctions "**and**" and "**or**" shall be construed either conjunctively or disjunctively, as required by the context, to bring within the scope of these Interrogatories any information that might otherwise be deemed outside their scope.

21.     "**Concern**," "**concerning**," "**reflect**," "**reflecting**," "**related**," "**relating**," "**relate(s)**," "**refer**" or "**referring**," and other variations thereof, as used herein shall be construed in their broadest possible sense, and shall mean without limitation and whether in whole or in part:

referring to, constituting, bearing upon, commenting upon, reflecting, evidencing, pertaining to, describing, depicting, consisting of, containing, comprising, embodying, identifying, stating, discussing, analyzing, studying, summarizing, dealing with, relating to, or having any logical factual connection whatsoever with the subject addressed, regardless of whether the factual connection is favorable or adverse to you.

22.     References to this "**Lawsuit**," "**Case**," or "**Action**" mean the above-captioned action brought by CCC.

23.     The singular of each word shall be construed to include its plural, and vice versa, to bring within the scope of these Interrogatories any information that might otherwise be deemed outside their scope.

24.     The present tense shall be construed to include the past tense and vice versa.

## **INSTRUCTIONS**

1.     All interrogatories must be answered completely, in writing, and under oath and signed by the Person providing the answers, and each response must include information regarding each individual Plaintiff. If any interrogatory cannot be answered completely after the exercise of reasonable diligence, the Person providing the answer shall furnish as complete an answer as possible and then explain in detail the reason a full answer cannot be given, which shall include a statement indicating what is needed in order to be able to give a full answer to the interrogatory.

2.     Each interrogatory shall operate and be responded to independently and, unless otherwise indicated, no interrogatory limits the scope of any other interrogatory. Each interrogatory is to be construed independently and not by reference to any other interrogatory for purposes of limiting the scope of the interrogatory. The answer to an interrogatory shall not be

6

supplied by referring to the answer to another interrogatory unless the answer to the interrogatory being referred to supplies a complete and accurate answer to the interrogatory being answered.

3.     In answering the following interrogatories, you shall furnish all available information, including information in the possession, custody, or control of any of your attorneys, directors, officers, agents, employees, representatives, associates, investigators, or division affiliates, partnerships, parents or subsidiaries, and persons under your control, who have the best knowledge, not merely information known to you based on your own personal knowledge. If you cannot fully respond to the following interrogatories after exercising due diligence to secure the information requested thereby, so state, and specify the portion of each interrogatory that cannot be responded to fully and completely. In the latter event, state what efforts were made to obtain the requested information and the facts relied upon that support any contention that the interrogatories cannot be answered fully and completely, and state what knowledge, information, or belief you have concerning the unanswered portion of any such interrogatories.

4.     Where knowledge or information in your possession is requested, the request extends to knowledge or information in the possession of your predecessors and/or successors, as well as to information in the possession of your officers, directors, agents, employees, servants, representatives, and, unless privileged, attorneys. Whenever an answer to these interrogatories contains information which is not based upon your personal knowledge, state the source and nature of such information.

5.     If in answering any interrogatory, you seek to invoke the procedures of Rule 33(d) of the Federal Rules of Civil Procedure, state fully all facts which support your contention that the burden of ascertaining the answer to the interrogatory is substantially the same for CCC as it is for

you, and specify those business records (including the applicable Bates numbers) from which you contend CCC may ascertain or derive the answer.

6. If any objection is made to any interrogatory herein, the objection shall state with particularity the basis therefore, and the interrogatory shall be answered to the extent not objected to.

7. If any identified document and/or information was, but no longer is, in your possession or under your control, state precisely what disposition was made of it and identify the person who ordered or authorized such disposition.

8. If any information requested claimed to be privileged or otherwise immune from discovery, please provide all information falling within the scope of the interrogatory which is not privileged, and for each item of information contained in a document or communication to which a claim of privilege is made, identify such document or communication with sufficient particularity to include at least the following:

 a) The basis on which the privilege is claimed;

 b) The name and position of the author of the information;

 c) The name and position of each individual or other person to whom the information, or a copy thereof, was sent to otherwise disclosed and, if not apparent, the relationship of the persons to the author of the information;

 d) The date of the information;

 e) A description of any accompanying material transmitted with or attached to such information;

 f) The number of pages of such document or information or length of communication; and

g) A description of the subject matter of the information, including whether any business or non-legal matter is contained or discussed in such information.

9. If in response to an interrogatory you do not know all of the facts necessary to provide a complete and specific answer, you should provide an answer to such portion of the interrogatory as you can, and provide such facts as are known to you and any estimates, approximations, or beliefs that you consider reliable. Any such estimates, approximations, or should be clearly denoted as such, and the bases for your belief in their reliability should be explained

10. If in answering any of these interrogatories you encounter any ambiguity in construing the interrogatory or any definition or instruction relevant to the interrogatory, set forth the matter deemed ambiguous and the construction selected or used in answering the interrogatory.

11. These interrogatories shall be considered continuing, and you are to supplement your answers in a timely manner in accordance with the requirements of Rule 26(e) of the Federal Rules of Civil Procedure.

**INTERROGATORY NO. 8:**

Identify the complete factual and legal bases for (including all facts, evidence identified by any corresponding production/Bates numbers, and witnesses relating to) your contention that Tractable has not violated the Defend Trade Secrets Act or the Illinois Trade Secrets Act as alleged by CCC in this Case.

**INTERROGATORY NO. 9:**

Identify the complete factual and legal bases for (including all facts, evidence identified by any corresponding production/Bates numbers, and witnesses relating to) your contention that Tractable has not violated the Lanham Act as alleged by CCC in this Case.

**INTERROGATORY NO. 10:**

Identify the complete factual and legal bases for (including all facts, evidence identified by any corresponding production/Bates numbers, and witnesses relating to) your contention that Tractable is not liable for common law fraud as alleged by CCC in this Case.

Date:  December 2, 2022                    Respectfully submitted,

                                          */s/ Stephen D. O'Donohue*
                                          One of the Attorneys for Plaintiff CCC
                                          Intelligent Solutions Inc.

                                          Mark S. Mester (Bar No. 6196140)
                                          mark.mester@lw.com
                                          Matthew W. Walch (Bar No. 6226308)
                                          matthew.walch@lw.com
                                          LATHAM & WATKINS LLP
                                          330 North Wabash Avenue, Suite 2800
                                          Chicago, IL 60611
                                          Telephone: (312) 876-7700
                                          Facsimile: (312) 993-9767

                                          Adam M. Greenfield (Bar No. 6292915)
                                          adam.greenfield@lw.com
                                          Jason Burt (*pro hac vice*)
                                          jason.burt@lw.com
                                          LATHAM & WATKINS LLP
                                          555 Eleventh Street, NW, Suite 1000
                                          Washington, DC 20004-1304
                                          Telephone: (202) 637-2200
                                          Facsimile: (202) 637-2201

                                          Stephen D. O'Donohue (*pro hac vice*)
                                          stephen.odonohue@lw.com
                                          LATHAM & WATKINS LLP
                                          1271 Avenue of the Americas
                                          New York, NY 10020
                                          Telephone: (212) 906-1200
                                          Facsimile: (212) 751-4864

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 2, 2022, a copy of the foregoing was served upon counsel

of record via electronic mail.

<div align="center" style="margin-left:40%">

*/s/ Stephen D. O'Donohue*
Stephen D. O'Donohue

</div>

# EXHIBIT 25

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **CCC INTELLIGENT SOLUTIONS INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 1:18-cv-07246** |
| **v.** | ) | |
| | ) | **Hon. Robert W. Gettleman** |
| **TRACTABLE INC.,** | ) | **Hon. Susan E. Cox** |
| | ) | |
| **Defendant.** | ) | |

**CCC INTELLIGENT SOLUTIONS INC.'S THIRD SET OF
<u>INTERROGATORIES TO TRACTABLE INC. (NOS. 11–15)</u>**

Pursuant to Federal Rules of Civil Procedure 26 and 33, Plaintiff CCC Intelligent Solutions Inc. ("CCC") submits its Third Set of Interrogatories (Nos. 11–15) to Defendant Tractable Inc. ("Tractable"). These Interrogatories are to be answered separately and fully, in writing and under oath, in accordance with the Definitions and Instructions contained herein, within thirty (30) days of the date of service in accordance with the Federal Rules of Civil Procedure. CCC requests that Tractable serve such Answers on Plaintiff's counsel at the office of Latham & Watkins LLP, 330 North Wabash Avenue, Suite 2800, Chicago, Illinois 60611.

**<u>DEFINITIONS</u>**

1.    "**CCC**" means CCC Intelligent Solutions Inc., its respective officers, directors, agents, representatives, employees, attorneys, and investigators, and others acting on CCC Intelligent Solutions Inc.'s behalf.

2.    "**CCC ONE**" means the CCC ONE Appraisal Platform and CCC ONE Estimating, collectively.

3.    "**Communicate**" or "**communication**" means every manner or means of disclosure, transfer, transmission, or exchange of information whether person-to-person, in a

group, by telephone, letter, facsimile, electronic or computer mail, voicemail, telex or telecopy, or by any other process, electric, electronic or otherwise.

4.      "**Date**" means the exact day, month, and year if so ascertainable or, if not, the best approximation (including relationship to seasons and other events).

5.      "**Document**" is synonymous in meaning and equal in scope to the usage of this term in Rule 34(a) of the Federal Rules of Civil Procedure and Federal Rule of Evidence 1001. By way of illustration, and without limitation, documents include at least the following: originals, drafts, and all non-identical copies of memoranda, reports, notes, graphs, correspondence, interoffice communications, letters, diaries, calendars, photographs, motion pictures, sketches, drawings, promotional material, technical papers, printed publications, record, reports, and all other writings, whether such information is electronically stored or otherwise, as well as all non-paper information storage means such as sound reproductions, computer inputs and outputs, tape, film, and computer memory devices, as well as tangible things such as models, modules, prototypes, and commercially saleable products. The foregoing specifically includes the information stores in any form, including electronic form, on a computer database or otherwise, including electronic mail.

6.      As used herein, the term "**facts**" shall have its ordinary meaning and, pursuant to Federal Rule of Civil Procedure 33(a)(2), also shall mean related opinions, related contentions, and the application of law to fact.

7.      The terms "**identify**," "**identity**," and "**identification**" shall mean, as the context shall make appropriate:

a)      With respect to a person, the name, present or last known address, telephone number, occupation, and employer;

2

b)     With respect to a document, the type of document (e.g., letter, memorandum, book, etc.), date, author, general subject matter, the name of the company in the case of a corporate document, all persons designated on the document to receive a copy or otherwise known to have received a copy, the document's present location, the identity of the custodian of the original and each copy, and the Bates numbering corresponding to that document, if any. If any document was, but no longer is, in your possession, custody, or control, or if any document was in existence but is no longer in existence due to its destruction or otherwise, state how the document was disposed, the date of such disposition, the identity of the person responsible for making the decision as to such disposition, and the person responsible for carrying out the disposition;

c)     With respect to a telephone conversation, the full name, occupation, telephone number and address of each party to the telephone conversation, the date of the conversation and the subject matter discussed;

d)     With respect to an oral conversation other than a telephone conversation, the full name, occupation, telephone number, and address of each party to such conversation, the date of the conversation, and the subject matter discussed;

e)     With respect to a corporation, partnership, association, or other entity, its full name, form of organization, present or last known address, and telephone number; and

f)     With respect to any event or action, the dates or approximate dates thereof, a description of what occurred, and all persons involved.

8.    **"Including"** shall not be used to limit any general category or description that precedes it and shall mean "including without limitation" so as to be inclusive.

9.      "**Independent Appraiser**" means a person who evaluates, processes, and settles automotive physical damage claims in connection with insurance policies issues and/or services by clients for vehicles located in the United States.

10.      "**License(s)**" means any and all Automotive Services Independent Appraiser Master License Agreements between CCC and "JA Appraisal" or any person or person associated with "JA Appraisal."

11.      "**Person**" and "**individual**" mean any natural person or any business, legal or government entity, or association—including but not limited to any proprietorship, partnership, firm, company, or corporation.

12.      "**Product**" means any machine, manufacture, apparatus, device, system, process, service, method, software, source code, or instrumentality which is designed to function together electrically, mechanically, chemically, or otherwise, to achieve a particular function or purpose, including those offered for sale, sold, imported, or under development.

13.      "**Thing**" shall mean any tangible item, including without limitation, models, prototypes, and samples of any device or apparatus or product.

14.      "**Third Party**" means and includes any person or persons other than CCC or Tractable.

15.      "**Tractable**," "**Defendant**," "**You**," or "**Your**" means Tractable Inc. and all parents, subsidiaries, and affiliates thereof, all divisions, predecessors, successors, and assigns of each of the foregoing, and all principals, officers, investors, employees, directors, agents, consultants, attorneys, and all other persons acting or purporting to act on behalf of or under the control of any of the foregoing.

4

16.     "**Tractable Product**" means any Product offered for sale, sold, imported, or under development by Tractable to "[r]eview auto repair estimates, at scale, in real time" or [p]roduce an instant estimate from photos," as set forth at https://tractable.ai/products/car-accidents/.  Those Tractable Products would include (but not be limited to) Tractable's "Auto Estimator" and "Auto Review" products.

17.     The conjunctions "**and**" and "**or**" shall be construed either conjunctively or disjunctively, as required by the context, to bring within the scope of these Interrogatories any information that might otherwise be deemed outside their scope.

18.     "**Concern**," "**concerning**," "**reflect**," "**reflecting**," "**related**," "**relating**," "**relate(s)**," "**refer**" or "**referring**," and other variations thereof, as used herein shall be construed in their broadest possible sense, and shall mean without limitation and whether in whole or in part: referring to, constituting, bearing upon, commenting upon, reflecting, evidencing, pertaining to, describing, depicting, consisting of, containing, comprising, embodying, identifying, stating, discussing, analyzing, studying, summarizing, dealing with, relating to, or having any logical factual connection whatsoever with the subject addressed, regardless of whether the factual connection is favorable or adverse to you.

19.     References to this "**Lawsuit**," "**Case**," or "**Action**" mean the above-captioned action brought by CCC.

20.     The singular of each word shall be construed to include its plural, and vice versa, to bring within the scope of these Interrogatories any information that might otherwise be deemed outside their scope.

21.     The present tense shall be construed to include the past tense and vice versa.

## INSTRUCTIONS

1.    All interrogatories must be answered completely, in writing, and under oath and signed by the Person providing the answers, and each response must include information regarding each individual Plaintiff.  If any interrogatory cannot be answered completely after the exercise of reasonable diligence, the Person providing the answer shall furnish as complete an answer as possible and then explain in detail the reason a full answer cannot be given, which shall include a statement indicating what is needed in order to be able to give a full answer to the interrogatory.

2.    Each interrogatory shall operate and be responded to independently and, unless otherwise indicated, no interrogatory limits the scope of any other interrogatory.  Each interrogatory is to be construed independently and not by reference to any other interrogatory for purposes of limiting the scope of the interrogatory.  The answer to an interrogatory shall not be supplied by referring to the answer to another interrogatory unless the answer to the interrogatory being referred to supplies a complete and accurate answer to the interrogatory being answered.

3.    In answering the following interrogatories, you shall furnish all available information, including information in the possession, custody, or control of any of your attorneys, directors, officers, agents, employees, representatives, associates, investigators, or division affiliates, partnerships, parents or subsidiaries, and persons under your control, who have the best knowledge, not merely information known to you based on your own personal knowledge.  If you cannot fully respond to the following interrogatories after exercising due diligence to secure the information requested thereby, so state, and specify the portion of each interrogatory that cannot be responded to fully and completely.  In the latter event, state what efforts were made to obtain the requested information and the facts relied upon that support any contention that the

interrogatories cannot be answered fully and completely, and state what knowledge, information, or belief you have concerning the unanswered portion of any such interrogatories.

4.     Where knowledge or information in your possession is requested, the request extends to knowledge or information in the possession of your predecessors and/or successors, as well as to information in the possession of your officers, directors, agents, employees, servants, representatives, and, unless privileged, attorneys.  Whenever an answer to these interrogatories contains information which is not based upon your personal knowledge, state the source and nature of such information.

5.     If in answering any interrogatory, you seek to invoke the procedures of Rule 33(d) of the Federal Rules of Civil Procedure, state fully all facts which support your contention that the burden of ascertaining the answer to the interrogatory is substantially the same for CCC as it is for you, and specify those business records (including the applicable Bates numbers) from which you contend CCC may ascertain or derive the answer.

6.     If any objection is made to any interrogatory herein, the objection shall state with particularity the basis therefore, and the interrogatory shall be answered to the extent not objected to.

7.     If any identified document and/or information was, but no longer is, in your possession or under your control, state precisely what disposition was made of it and identify the person who ordered or authorized such disposition.

8.     If any information requested is claimed to be privileged or otherwise immune from discovery, please provide all information falling within the scope of the interrogatory which is not privileged, and for each item of information contained in a document or communication to which

a claim of privilege is made, identify such document or communication with sufficient particularity to include at least the following:

  a)    The basis on which the privilege is claimed;

  b)    The name and position of the author of the information;

  c)    The name and position of each individual or other person to whom the information, or a copy thereof, was sent to otherwise disclosed and, if not apparent, the relationship of the persons to the author of the information;

  d)    The date of the information;

  e)    A description of any accompanying material transmitted with or attached to such information;

  f)    The number of pages of such document or information or length of communication; and

  g)    A description of the subject matter of the information, including whether any business or non-legal matter is contained or discussed in such information.

9.  If in response to an interrogatory you do not know all of the facts necessary to provide a complete and specific answer, you should provide an answer to such portion of the interrogatory as you can, and provide such facts as are known to you and any estimates, approximations, or beliefs that you consider reliable.  Any such estimates, approximations, or should be clearly denoted as such, and the bases for your belief in their reliability should be explained

10.  If in answering any of these interrogatories you encounter any ambiguity in construing the interrogatory or any definition or instruction relevant to the interrogatory, set forth the matter deemed ambiguous and the construction selected or used in answering the interrogatory.

11.     These interrogatories shall be considered continuing, and you are to supplement your answers in a timely manner in accordance with the requirements of Rule 26(e) of the Federal Rules of Civil Procedure.

## INTERROGATORIES

**INTERROGATORY NO. 11:**

Identify all source(s) from which Tractable obtained the data for its database of automobile parts prices, labor times, and labor costs, and for each such source, identify (1) the specific data that the source provided to Tractable, (2) the price(s) that Tractable paid for the data, (3) any agreements the information was provided pursuant to, and (4) the time period in which the source provided the information to Tractable.

**INTERROGATORY NO. 12:**

Identify each third-party source that provided information that Tractable used to develop the Tractable Products, and for each such source, identify (1) the types of data and/or images the source provided to Tractable, (2) the identification of all such information by Bates number, (3) whether the information was provided pursuant to a written or verbal agreement, and (4) the time period during which the source provided the information.

**INTERROGATORY NO. 13:**

Identify all individuals or entities with which Tractable did business or otherwise communicated under the "JA Appraisal" alias, and for each such entity or individual, identify (1) whether Tractable disclosed that "JA Appraisal" was allegedly a d/b/a name for Tractable, (2) when Tractable made such a disclosure (if it did so), and (3) the purpose of Tractable's "JA Appraisal" communications with the entity or individual.

**INTERROGATORY NO. 14:**

Identify all of Tractable's current and former investors, and for each such investor, identify

(1) the amount of money or other resources that the entity or individual invested in Tractable and

(2) the time period during which the entity or individual made each investment.

**INTERROGATORY NO. 15**

Describe with particularity all factual and legal bases for Tractable's Affirmative Defenses

in this case.

Date: March 8, 2023                    Respectfully submitted,


                                       */s/ Stephen D. O'Donohue*
                                       One of the Attorneys for Plaintiff CCC
                                       Intelligent Solutions Inc.

                                       Mark S. Mester (Bar No. 6196140)
                                       mark.mester@lw.com
                                       Matthew W. Walch (Bar No. 6226308)
                                       matthew.walch@lw.com
                                       Kathryn A. Running (Bar No. 6330369)
                                       kathryn.running@lw.com
                                       LATHAM & WATKINS LLP
                                       330 North Wabash Avenue, Suite 2800
                                       Chicago, IL 60611
                                       Telephone: (312) 876-7700
                                       Facsimile: (312) 993-9767

                                       Adam M. Greenfield (Bar No. 6292915)
                                       adam.greenfield@lw.com
                                       Jason Burt (*pro hac vice*)
                                       jason.burt@lw.com
                                       LATHAM & WATKINS LLP
                                       555 Eleventh Street, NW, Suite 1000
                                       Washington, DC 20004-1304
                                       Telephone: (202) 637-2200
                                       Facsimile: (202) 637-2201

Stephen D. O'Donohue (*pro hac vice*)
stephen.odonohue@lw.com
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864

## CERTIFICATE OF SERVICE

I hereby certify that on March 8, 2023, a copy of the foregoing was served upon counsel of record via electronic mail.

/s/ Stephen D. O'Donohue
Stephen D. O'Donohue

# EXHIBIT 26

**From:** O'Donohue, Stephen (NY)
**Sent:** Wednesday, December 14, 2022 8:18 AM
**To:** Julia Barrett; #C-M CCCTRACTABLE - LW TEAM
**Cc:** Lazar Raynal; David Mattern; Michael Lombardo
**Subject:** RE: CCC v. Tractable

Julia,

Thank you for meeting and conferring on December 12, 2022 regarding Tractable's responses and objections to CCC's First Set of Requests for Production. Below is a summary of the parties' positions on the issues discussed:

**General Time Period for the Discovery Responses**

Tractable stated that it opposes CCC's request for a general discovery period of January 1, 2017 through the present and instead argues that the parties should adopt a narrower time frame of January 1, 2017 through October 31, 2019. You stated that it would be unduly burdensome for Tractable to collect documents post-October-2019, given the allegedly high costs that would be associated with such a collection and how many years have elapsed since the litigation commenced.

CCC's position is that the relevant time period, except where CCC has stated otherwise, should continue through the present. Although CCC terminated Tractable's access to CCC ONE in October 2018, that would not prevent Tractable from continuing to use CCC's data and information or selling products that have benefited from CCC's trade secrets. Furthermore, any additional burden to collect documents after from November 1, 2019 to the present is largely of Tractable's own making due to its pursuit of a frivolous appeal.

You appeared to agree that documents post-dating October 2019 could be relevant to the issue of damages if discovery yielded evidence of Tractable incorporating CCC's proprietary information and algorithms into its products. However, Tractable will begin its document collection and review efforts by focusing on documents and communications from January 1, 2017 through October 31, 2019 and understands that CCC reserves the right to expand the applicable time period at a later date. We confirmed that CCC reserves all rights to move to compel the production of documents and communications post-dating October 31, 2019.

**Request for Production No. 3**

You confirmed that Tractable will search for and produce responsive agreements under which Tractable provided, or would provide, including agreements with National General and documents that would support or refute Tractable's representation that it was doing business as an independent appraiser when it represented itself to CCC as "JA Appraisal."

**Request for Production No. 9**

Tractable objected to the portion of this request asking for "all documents" regarding his "role, responsibilities, and supervisors at Tractable" as overbroad, and we agreed to limit the scope of this part of the request to documents sufficient to show Xing Xin's role, responsibilities, and supervisors during his employment at Tractable. You responded that Tractable will search Xin's email and files pursuant to the search terms in the ESI search protocol that you circulated on December 9, 2022, which you expect to elicit the requested information. We confirmed that we will review Tractable's ESI search protocol and follow up if any terms should be added. We also reserved all rights to revisit this

request after we have the opportunity to review the documents and communications that Tractable plans to produce from Xin's files and to analyze whether they are sufficient to show the requested information.

**Request for Production No. 14**

You confirmed that maxgenie@liveco.uk is Max Ali's personal email account and preexisted his employment at Tractable. We noted that the email address was nonetheless used for business related to "JA Appraisal" and has accordingly been put squarely at issue in this litigation. You stated that you will check with Tractable and the rest of your team about searching Mr. Ali's email account so as to avoid the need for CCC to issue a non-party subpoena.

**Request for Production Nos. 28–30**

We explained that "Tractable Product" is defined relatively narrowly to include "any Product offered for sale, sold, imported, or under development by Tractable to '[r]eview auto repair estimates, at scale, in real time' or [p]roduce an instant estimate from photos,' as set forth at https://tractable.ai/products/car-accidents/," thereby resolving Tractable's overbreadth complaints. CCC's position is that Tractable should produce financial revenue derived from the Tractable Products, along with financial projections for the Tractable Products. You agreed to produce documents showing actual financial revenue derived from the Tractable Products and plan to check with your client regarding financial projections.

With respect to Request for Production No. 30, you stood on your objection to producing valuations, claimed that such valuations are not discoverable, and asked CCC to respond with contrary authority to support its position. We will follow up with the requested authority at a later date, and reserve all rights to seek relief at the appropriate time.

**Request for Production No. 20**

You agreed that Tractable will produce lists of employees from Tractable's Research and Engineering Department who were working on the Tractable Products (as defined in the requests) from 2017 through 2019. That resolves CCC's concerns with Tractable's response to this request at this point, but CCC reserves all rights to request additional documents sufficient to show the employees who were working on the development of Tractable Products after 2019 at a later point in discovery.

**Request for Production No. 24**

You stated that Tractable is developing a search protocol to identify documents sufficient to show changes to Tractable Products between August 2017 and November 2018, which you will circulate to CCC later this week. We will review that disclosure and reserve all rights to seek relief at the appropriate time.

**Request for Production Nos. 26–27**

Tractable's initial position was that its own source code is only relevant if CCC first shows that Tractable had access to the source code for CCC ONE.

We explained that CCC's internal investigation yielded a significant amount of evidence about Tractable's attempts to access and reverse engineer CCC's proprietary data and algorithms, which may have been used to write or modify the source code for Tractable Products, irrespective of whether Tractable ever had direct access to the source code for CCC ONE.

You responded that Tractable does not plan to categorically refuse to make the requested source code available for inspection. You agreed to follow up with a revised source code position after consulting further with your client.

**Additional Discovery Matters**

You confirmed that Tractable is planning to make its first production by the end of this week, which will consist of documents and communications from the custodial email and Slack searches. Tractable will continue to produce responsive documents on a rolling basis.

We will follow up by early next week with CCC's ESI search protocol.

With respect to the ESI Search Protocol you served on Friday, please confirm whether Tractable is searching for responsive documents from the jaappraisalco@gmail.com account itself? I see that it is listed as a search term but it is not clear whether the "Email" repository you listed would capture that account.


Regards,


**Stephen D. O'Donohue**

**LATHAM & WATKINS LLP**
1271 Avenue of the Americas | New York, NY 10020
D: +1.212.906.1274 | M: +1.585.935.1845


**From:** O'Donohue, Stephen (NY) <Stephen.ODonohue@lw.com>
**Sent:** Friday, December 9, 2022 5:30 PM
**To:** Julia Barrett <JBarrett@KSLAW.com>; #C-M CCCTRACTABLE - LW TEAM <CCCTRACTABLE.LWTEAM@lw.com>
**Cc:** Lazar Raynal <LRaynal@KSLAW.com>; David Mattern <DMattern@KSLAW.com>; Michael Lombardo <MLombardo@KSLAW.com>
**Subject:** RE: CCC v. Tractable

Julia,

We are available at 1:30 pm ET and can use the dial in below.


-Stephen


-----------------------------------------------------------------------------------------------------------------
Join Stephen O'Donohue's Meeting Room: https://meet.loopup.com/6I81sKT

If you prefer to dial-in on audio yourself, use the following dial-in information:

Guest Access Code: 2246528#

Latham Phone: #321

USA: +1 (877) 214 1533
Belgium: 0800 49980
China: 4001-200683
France: 08 05 22 01 32
Germany : 0800 589 3209
Hong Kong: 800 906 333
Italy: 800 148 207
Japan: 00531 85 0187

Russia: 8-10-800-20584011
Saudi Arabia: 800 850 0590
Singapore: 800 8523 852
South Korea: 00798 8521 7256
Spain: 0800 098 953
UAE: 8000 3570 4215
UK: 0800 279 4235
UK (Local): +44 20 3790 0960
USA: +1 (877) 214 1533
USA (Local): +1 (312) 235 2942
-------------------------------------------------------------------------------------------------------------------

**Stephen D. O'Donohue**

**LATHAM & WATKINS LLP**
1271 Avenue of the Americas | New York, NY 10020
D: +1.212.906.1274 | M: +1.585.935.1845

---

**From:** Julia Barrett <JBarrett@KSLAW.com>
**Sent:** Friday, December 9, 2022 10:51 AM
**To:** O'Donohue, Stephen (NY) <Stephen.ODonohue@lw.com>; #C-M CCCTRACTABLE - LW TEAM <CCCTRACTABLE.LWTEAM@lw.com>
**Cc:** Lazar Raynal <LRaynal@KSLAW.com>; David Mattern <DMattern@KSLAW.com>; Michael Lombardo <MLombardo@KSLAW.com>
**Subject:** RE: CCC v. Tractable

Stephen –

I'm attaching Tractable's response to CCC's November 24 letter here. We are available Monday between 1-5 ET to discuss any remaining issues.

I am also attaching Tractable's ESI search protocol. Please send CCC's proposed search protocol.

Regards,
Julia

**Julia C. Barrett**
*Partner*

T: +1 512 457 2053 | E: jbarrett@kslaw.com | Bio | vCard

King & Spalding LLP
500 West 2nd Street
Suite 1800
Austin, Texas 78701



kslaw.com

**From:** Stephen.ODonohue@lw.com <Stephen.ODonohue@lw.com>
**Sent:** Thursday, December 8, 2022 6:01 PM
**To:** Julia Barrett <JBarrett@KSLAW.com>; CCCTRACTABLE.LWTEAM@lw.com
**Cc:** Lazar Raynal <LRaynal@KSLAW.com>; David Mattern <DMattern@KSLAW.com>; Michael Lombardo <MLombardo@KSLAW.com>
**Subject:** RE: CCC v. Tractable

---

CAUTION: **MAIL FROM OUTSIDE THE FIRM**

---

Julia,

In the correspondence below we asked Tractable to provide its availability to meet and confer on December 7, which you ignored. We respectfully again ask Tractable to meet and confer Friday, December 9 between 11 am and 1 pm ET, or Monday between 1-5 pm ET to discuss the issues raised in our letter. Tractable has had more than enough time to consider CCC's positions and CCC is prejudiced by any further delay. If we do not receive your availability for either date, we will understand that Tractable is unwilling to meet-and-confer and therefore seek appropriate relief from the Court.


Regards,


**Stephen D. O'Donohue**

**LATHAM & WATKINS** LLP
1271 Avenue of the Americas | New York, NY 10020
D: +1.212.906.1274 | M: +1.585.935.1845

---

**From:** O'Donohue, Stephen (NY) <Stephen.ODonohue@lw.com>
**Sent:** Thursday, November 24, 2022 12:41 AM
**To:** Julia Barrett <JBarrett@KSLAW.com>; #C-M CCCTRACTABLE - LW TEAM <CCCTRACTABLE.LWTEAM@lw.com>
**Cc:** Lazar Raynal <LRaynal@KSLAW.com>; David Mattern <DMattern@KSLAW.com>; Michael Lombardo <MLombardo@KSLAW.com>
**Subject:** RE: CCC v. Tractable

Julia – Please see the attached correspondence.


Regards,


**Stephen D. O'Donohue**

**LATHAM & WATKINS** LLP
1271 Avenue of the Americas | New York, NY 10020
D: +1.212.906.1274 | M: +1.585.935.1845

---

**From:** Julia Barrett <JBarrett@KSLAW.com>
**Sent:** Monday, October 24, 2022 9:14 PM
**To:** #C-M CCCTRACTABLE - LW TEAM <CCCTRACTABLE.LWTEAM@lw.com>
**Cc:** Lazar Raynal <LRaynal@KSLAW.com>; David Mattern <DMattern@KSLAW.com>; Michael Lombardo <MLombardo@KSLAW.com>
**Subject:** CCC v. Tractable

Counsel –

Please find attached Tractable's Responses and Objections to CCC's First set of Requests for Production and Interrogatories. I will send Tractable's verification for the Interrogatory responses tomorrow.

Regards,
Julia

**Julia C. Barrett**
*Partner*

T: +1 512 457 2053  |  E: jbarrett@kslaw.com  |  Bio  |  vCard

King & Spalding LLP
500 West 2nd Street
Suite 1800
Austin, Texas 78701



kslaw.com

King & Spalding Confidentiality Notice:

This message is being sent by or on behalf of a lawyer. It is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged or confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately by e-mail and delete all copies of the message. Click here to view our Privacy Notice.

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient.  Any review, disclosure, reliance or distribution by others or forwarding without express permission is strictly prohibited.  If you are not the intended recipient, please contact the sender and delete all copies including any attachments.

Latham & Watkins LLP or any of its affiliates may monitor electronic communications sent or received by our networks in order to protect our business and verify compliance with our policies and relevant legal requirements. Any personal information contained or referred to within this electronic communication will be processed in accordance with the firm's privacy notices and Global Privacy Standards available at www.lw.com.

# EXHIBIT 27

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CCC INTELLIGENT SOLUTIONS INC.,** | ) | |
| | ) | **Case No. 1:18-cv-07246** |
| **Plaintiff,** | ) | |
| v. | ) | **Hon. Robert W. Gettleman** |
| | ) | **Hon. Susan E. Cox** |
| **TRACTABLE INC.,** | ) | |
| | ) | |
| **Defendant.** | | |

**TRACTABLE INC.'S OBJECTIONS AND RESPONSES TO**
**PLAINTIFF'S FIRST SET OF INTERROGATORIES**

Defendant Tractable Inc. ("Tractable"), by and through its counsel of record, hereby submits the following objections and responses to Plaintiff's First Set of Interrogatories ("Interrogatories").

**PRELIMINARY STATEMENT**

Tractable provides its responses subject to and without waiver of any objections as to the competency, relevancy, materiality, privilege, or admissibility as evidence or for any other purpose, of any of the information referred to or of the responses given herein, or for the subject matter thereof in any proceeding, including the trial of this action or any other subsequent proceeding, and said responses are made specifically subject to the right to object to any proceeding involving or related to the subject matter of the Interrogatories responded to herein. No objection or limitation, or lack thereof, made in these objections and responses shall be deemed an admission by Tractable as to the existence or non-existence of the document or information sought, or waiver of Tractable's rights to assert such objection or limitation at any future time in connection with the Interrogatories or otherwise.

Tractable's responses are based on information presently known to it. Tractable has not completed its investigation of all facts relating to this case. Additional discovery, investigation, and legal research and analysis may supply additional facts, add meaning to known facts, and/or establish entirely new factual conclusions or legal contentions, all of which may lead to substantial additions to, changes in, and/or variations from the present responses. Tractable reserves the right to amend, modify, supplement, revise, correct, add to, or clarify the response if additional information becomes available.

Finally—while drafted as only 7 Interrogatories—each Interrogatory below consists of multiple distinct subparts. Tractable construes CCC's First Set of Interrogatories as consisting of 17 separate requests, leaving CCC with 8 remaining Interrogatories pursuant to Federal Rule of Civil Procedure 33.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.      Tractable objects to the instructions and definitions to the extent they impose obligations on Tractable beyond the requirements of the Federal Rules of Civil Procedure.

2.      Tractable objects to the definition of "Product" as overbroad and disproportionate to the needs of the case in that it covers any item or activity undertaken by a person or business without any limitation.

3.      Tractable objects to the definition of "Thing" as vague and ambiguous as it essentially means any item without any limitation.

4.      Tractable objects to the definition of "Tractable," "Defendant," "You," and "Your" to the extent it includes all parents, subsidiaries and affiliates that are not parties in this case. Tractable also objects to the extent it includes consultants and attorneys and thus would seek information protected by the attorney client privilege or other protection. Tractable will construe

2

this term to mean Tractable Inc., including any employees, officers, agents, or other representative acting on its behalf, including the d/b/a JA Appraisal.

5.      Tractable objects to the definition of "Tractable Product" as overbroad and seeking information that is irrelevant to this case.  The definition includes all Tractable's activities regardless of whether they are at issue in this litigation.  Tractable further objects to the definition of "Tractable Product" to the extent it incorporates the definition of "Product," which is itself overbroad as explained herein.

6.      Tractable objects to Instruction No. 5 to the extent it requires Tractable to elaborate on its response beyond that required by Fed. R. Civ. P. 33(d).  Nothing in Rule 33(d) requires Tractable to "state fully all facts which support [Tractable's] contention that the burden of ascertaining the interrogatory is substantially the same for CCC as it is for" Tractable.

7.      In responding to CCC's Interrogatories, Tractable will apply a "Relevant Time Period" of January 1, 2017 to December 31, 2018.

## OBJECTIONS AND RESPONSES TO INTERROGATORIES

### INTERROGATORY NO. 1:

Describe in detail the complete factual and legal bases you intend to rely on for any contention(s) that Your use of or access to CCC ONE was authorized, including a specific identification of (a) any documents or other evidence supporting any such contention(s) that you intend to rely on, (b) any arguments in support of such contention(s) that you intend to rely on, (c) any legal precedent supporting any such contentions that you intend to rely on, and (d) the five (5) persons most knowledgeable about such contention(s) and/or the factual or legal bases for such contention(s).

### RESPONSE:

Tractable objects to Interrogatory No. 1 as vague and ambiguous as to the term "authorized" which is capable of multiple interpretations. To the extent "authorized" is construed as legally authorized under applicable case law, Tractable objects to Interrogatory No. 1 to the extent it calls for information protected by the attorney-client privilege and work product doctrine.

3

Tractable will construe "authorized" to mean permitted to access. Tractable further objects to Interrogatory No. 1 as compound in that it consists of 4 distinct subparts seeking all facts and legal bases Tractable intends to rely on, including identification of documents, legal arguments, and individuals with knowledge of the relevant facts. *See, e.g.*, *Imbody v. C & R Plating Corp.*, No. 1:08-CV-00218, 2010 U.S. Dist. LEXIS 12682, at *10–11 (N.D. Ind. Feb. 12, 2010) ("This Interrogatory constitutes two separate inquiries--the first two subparts concerning knowledge are one interrogatory, while the second is the request for identification of documents."). Tractable objects to subpart (c) of Interrogatory No. 1 because it simply seeks a list of legal authorities, which is not the proper subject of an Interrogatory. *See Schaap v. Exec. Indus., Inc.*, 130 F.R.D. 384, 388 (N.D. Ill. 1990) ("[A] party does not have to answer a question that delves into purely legal issues unrelated to the facts of the case."); *see also Everest Nat'l Ins. Co. v. Santa Cruz Cnty. Bank*, No. 15CV02085BLFHRL, 2016 WL 6311876, at *4 (N.D. Cal. Oct. 28, 2016) (holding that a party did not have to answer interrogatories that were "questions of pure law" and unrelated to "the application of law to fact"). Finally, Tractable objects to Interrogatory No. 1 as premature as Tractable's investigation of the relevant facts is ongoing.

Subject to and without waiving its objections, Tractable states that on August 23, 2017, Xing Xin—a former Tractable employee—sought and obtained an independent appraiser license from CCC to use CCC ONE. Mr. Xin obtained the license under the name JA Appraisal based on the belief, at the time, that Tractable would use the d/b/a JA Appraisal going forward to conduct an appraisal-related business. Mr. Xing informed CCC that "Jason Chen" was not his real name, and CCC did not inquire further into the identity or affiliation of Jason Chen or JA Appraisal. Tractable believed that it was a party to the independent appraiser license between JA Appraisal and CCC and that it was permitted to use and access the CCC ONE platform due to the license

granted by CCC. Tractable further states that, pursuant to Fed. R. Civ. P. 33(d), it will conduct a

reasonable search for and produce any non-privileged documents it intends to use to support any

contention that its use of or access to CCC ONE was authorized. The following persons are

reasonably likely to have knowledge and/or information regarding Tractable's belief that it was

authorized to use CCC ONE:

1.  Xing Xin.  Mr. Xing is the CEO of Paladin Cyber. Mr. Xing can be contacted through counsel for Tractable.

2.  Alex Dalyac.  Mr. Dalyac is the Chief Executive Officer and co-founder of Tractable. Mr. Dalyac can be contacted through counsel for Tractable.

**INTERROGATORY NO. 2:**

Describe all facts and circumstances regarding Your use of the name "JA Appraisal" as an alias, "doing business as" name, or pseudonym including, but not limited to, all business activities, financial transactions, records of corporate formation, tax filings, and any activities by You as an Independent Appraiser. Your answer should include an identification of all Documents relevant to this Interrogatory, all persons who were involved in any activities associates with "JA Appraisal," and the person(s) most knowledgeable about your Answer.

**RESPONSE:**

Tractable objects to Interrogatory No. 2 as overbroad and disproportionate to the needs of

the case in that it seeks "all facts and circumstances" of "all business activities" of JA Appraisal

regardless of the relevance to the issues in this litigation. Tractable also objects to Interrogatory

No. 2 as unduly burdensome and disproportionate to the needs of the case in that it seeks the

identification of "all persons" who were involved in "any activities" associated with JA Appraisal

regardless of whether those persons have information relevant to the claims and defenses in this

action.

Subject to and without waiving its objections, Tractable states that JA Appraisal was an

unregistered d/b/a for Tractable. Xing Xin obtained a license from CCC under the name JA

Appraisal based on the belief, at the time, that Tractable would use the d/b/a JA Appraisal going

forward to conduct an appraisal-related business. Tractable never formally registered JA Appraisal as a d/b/a in any state; nor was JA Appraisal formed as any type of corporate entity. The individuals reasonably likely to have knowledge and/or information about the use of the name JA Appraisal are Alex Dalyac and Xing Xin—who can be contacted through counsel for Tractable. Pursuant to Fed. R. Civ. P. 33(d), Tractable will conduct a reasonable search for and produce non-privileged documents concerning Tractable's use of the name JA Appraisal.

**INTERROGATORY NO. 3:**

Describe all facts and circumstances regarding Your efforts to "obtain[] a CCC ONE license to work with insurers" (Dkt. No. 103 at 2) including, but not limited to, Your interactions with and activities related to all efforts to obtain access to CCC software, all attempts to use CCC software, save information from or provided by CCC, analyze any information or data obtained from CCC, and the identities of all individuals involved in these activities. Your answer should include an identification of all Documents relevant to this Interrogatory, all information, files, and data Tractable obtained through use of or access to CCC ONE or any other CCC Product, all individuals associated with Tractable who accessed or had access to CCC ONE or any other CCC Product, and the person(s) most knowledgeable about your Answer.

**RESPONSE:**

Tractable objects to Interrogatory No. 3 as unduly burdensome and disproportionate to the needs of the case in that it asks Tractable to describe "all facts and circumstances" related to a broad range of topics and activities, including obtaining a CCC ONE license, using the CCC software, all individuals involved in any of those activities, and all documents related to the same. As a practical matter, this would require a detailed description of all communications, interactions, and documents in any way related to Tractable's CCC ONE license and the use of that license. Tractable further objects to Interrogatory No. 3 because it is compound and contains multiple discrete inquiries that count as separate interrogatories.

Subject to and without waiving its objections, pursuant to Fed. R. Civ. P. 33(d), Tractable will conduct a reasonable search for and produce non-privileged documents concerning Tractable's efforts to obtain a CCC ONE license to work with insurers, including Tractable's use

of the CCC software and the individuals involved in the same. Tractable identifies the following persons who are reasonably likely to have knowledge and/or information regarding Tractable's use of the CCC software:

1. <u>Xing Xin</u>. Mr. Xing is the CEO of Paladin Cyber. Mr. Xing can be contacted through counsel for Tractable.

2. <u>Alex Dalyac.</u> Mr. Dalyac is the Chief Executive Officer and co-founder of Tractable. Mr. Dalyac can be contacted through counsel for Tractable.

3. <u>Razvan Ranca.</u> Mr. Ranca is the Chief Technology Officer and co-founder of Tractable. Mr. Ranca can be contacted through counsel for Tractable.

4. <u>Max Ali.</u> Mr. Ali is the Global Head of Motor Engineering at Tractable. Mr. Ali can be contacted through counsel for Tractable.

5. <u>Lisa Monzon.</u> Ms. Monzon is an Auto Appraisal Expert at Tractable. Ms. Monzon can be contacted through counsel for Tractable.

6. <u>Aushim Krishan</u>. Mr. Krishan is a Director of Engineering at Tractable. Mr. Krishan can be contacted through counsel for Tractable.

**INTERROGATORY NO. 4:**

Describe the location of each computer and server through which any employee, agent, or individual representative of, or individual otherwise associated with Tractable accessed or had access to CCC ONE or any other CCC Product, including, but not limited to, the physical address, internet protocol address, and the person(s) with access to those computers and servers. Your answer should include an identification of all Documents relevant to this Interrogatory, the location of each computer and server that stored an information, data, or files from CCC ONE or any other CCC Product, including, but not limited to, the physical address, internet protocol address, and the person(s) with access to those computers and servers, and the person(s) most knowledgeable about your Answer.

**RESPONSE:**

Tractable objects to Interrogatory No. 4 as overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it seeks the location of every computer that may have been used to access CCC ONE over the duration of the license, including all individuals with access to that computer. It would be highly burdensome to determine the physical address and internet protocol address of each computer and server through which any individual associated

with Tractable accessed CCC ONE. Tractable also objects to Interrogatory No. 4 as unduly burdensome and disproportionate to the needs of the case because the location of computers through which Tractable accessed CCC ONE has no bearing on the claims or defenses in this case. In addition, Interrogatory No. 4 is overbroad in that it covers "other CCC Product(s);" the claims in this case relate only to Tractable's use of CCC ONE through the JA Appraisal license. Tractable further objects to Interrogatory No. 4 to the extent it suggests that any computer "stored [] information, data, or files from CCC ONE."

Subject to and without waiving its objections, Tractable employees accessed CCC ONE through virtual machines running on Amazon Web Services servers accessed via Tractable-issued laptops while working at Tractable's London offices, located at 25 Horsell Road, London N5 1XL and at Laser House 132/140 Goswell Road, London EC1V 7DY. Lisa Monzon similarly accessed CCC ONE from her home office located in Austin, Texas. Pursuant to Fed. R. Civ. P. 33(d), Tractable will conduct a reasonable search for and produce non-privileged documents related to the location of Tractable's access to CCC ONE, including the persons with access to those computers and the CCC ONE software. The following individuals are reasonably likely to have knowledge and/or information regarding this matter:

1. <u>Max Ali.</u> Mr. Ali is the Global Head of Motor Engineering at Tractable. Mr. Alis can be contacted through counsel for Tractable.

2. <u>Lisa Monzon.</u> Ms. Monzon is an Auto Appraisal Expert at Tractable. Ms. Monzon can be contacted through counsel for Tractable.

3. <u>Aushim Krishan.</u> Mr. Krishan is a Director of Engineering at Tractable. Mr. Krishan can be contacted through counsel for Tractable.

## INTERROGATORY NO. 5:

Describe in detail each instance where "Tractable created estimates using the CCC ONE software and transmitted those estimates to its insurance company client" (Dkt. No. 103 at 2) including, but not limited to, the individuals involved in these activities, the identity of the alleged

"insurance company client," how and when these activities took place, and identify, by Bates number, all documents and communications reflecting these activities.

**RESPONSE:**

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

Tractable objects to Interrogatory No. 5 as unduly burdensome and disproportionate to the needs of the case in that it asks Tractable to describe "in detail" "each instance" where Tractable created an estimate using the CCC ONE software. Tractable further objects to Interrogatory No. 5 to the extent it seeks information that is equally available to CCC with respect to any estimate created using the CCC ONE software—which Tractable no longer has access to.

Subject to and without waiving its objections, Tractable created and transmitted partial estimates to National General Insurance Company ("National General"). Tractable transmitted estimates to National General via email and Box between June and September 2018. Pursuant to Fed. R. Civ. P. 33(d), Tractable will conduct a reasonable search for and produce non-privileged documents related to the estimates created in CCC ONE and transmitted to Tractable's insurance company clients. Tractable identifies the following individuals reasonably likely to have knowledge regarding these activities:

1. Max Ali. Mr. Ali is the Global Head of Motor Engineering at Tractable. Mr. Alis can be contacted through counsel for Tractable.

2. Lisa Monzon. Ms. Monzon is an Auto Appraisal Expert at Tractable. Ms. Monzon can be contacted through counsel for Tractable.

3. Marcel Horstmann. Mr. Horstmann is Head of Estimating Products at Tractable. Mr. Horstmann can be contacted through counsel for Tractable.

**INTERROGATORY NO. 6:**

Identify each instance of an employee, agent, representative or individual otherwise associated with Tractable or "JA Appraisal" used CCC ONE or accessed information, data, or files from CCC ONE or any other CCC Product, including who, what, when, where, and how such use

or access occurred. Your answer should include an identification of all Documents relevant to this Interrogatory and the person(s) most knowledgeable about your Answer.

**RESPONSE:**

Tractable objects to Interrogatory No. 6 as overbroad and unduly burdensome in that is asks Tractable to identify "each instance" that anyone associated with Tractable "used CCC ONE or accessed information, data, or files from CCC ONE or any other CCC product" over a several moth period that occurred several years ago. Several current and now former employees had access to CCC ONE; it would be nearly impossible to identify each time that anyone logged into the platform or accessed CCC ONE. Tractable also objects to Interrogatory No. 6 as overbroad in that it seeks information regarding "any other CCC Product;" the claims in this case relate only to Tractable's use of CCC ONE through the JA Appraisal license. Tractable also objects to Interrogatory No. 6 as unduly burdensome to the extent that the information sought is equally available to CCC.

Pursuant to Fed. R. Civ. P. 33(d), Tractable will conduct a reasonable search for and produce non-privileged documents concerning Tractable's use of CCC ONE, including access to or use of information, data, or files from CCC ONE. Based on Tractable's investigation to date, the following individuals accessed CCC ONE: Max Ali, Lisa Monzon, Francesca Melle (Lead Specialist at Tractable, can be contacted through counsel for Tractable), and Aushim Krishan.

**INTERROGATORY NO. 7:**

Identify each use, reproduction, or dissemination of any CCC Trademark, including but not limited to any printing or electronic representation of a CCC Trademark, including but not limited to how, when, where, and why the Trademark was used and the identification of any third parties who received Your use, reproduction, or dissemination of the Trademark. Your Answer should include an identification of all Documents relevant to this Interrogatory and the person(s) most knowledgeable about Your Answer.

**RESPONSE**:

Tractable objects to Interrogatory No. 6 as overbroad and unduly burdensome in that it asks for each use or dissemination of any CCC Trademark over an unspecified period without any limitation. Tractable also objects to Interrogatory No. 6 to the extent it suggests that Tractable improperly reproduced or disseminated any CCC Trademark.

Subject to and without waiving its objections, it is Tractable's understanding that it is not able to remove CCC one marks from estimates generated using CCC ONE. The License expressly provides that customer "may not remove or modify any proprietary notice of CCC from any copy of the Program, Services, or Documentation." Tractable accordingly did not remove any CCC Trademark from documents prepared in CCC ONE and transmitted to its insurance company customers, including National General. Pursuant to Fed. R. Civ. P. 33(d), Tractable will conduct a reasonable search for and produce any non-privileged documents concerning the use, reproduction, or dissemination of any CCC Trademark in connection with Tractable's use of CCC ONE, including persons involved in any such use.

DATED: October 24, 2022

Respectfully submitted,

*/s/ Lazar P. Raynal*
Lazar P. Raynal (Bar No. 6199215)
Michael A. Lombardo (Bar No. 6334886)
KING & SPALDING LLP
110 N. Wacker Drive, Suite 3800
Chicago, IL 60606
Telephone: (312) 995-6333
Facsimile: (312) 995-6330
lraynal@kslaw.com
mlombardo@kslaw.com

Julia C. Barrett (*pro hac vice*)
KING & SPALDING LLP
500 West 2nd Street, Suite 1800
Austin, Texas 78701
Telephone: (512) 457-2000
jbarrett@kslaw.com

*Counsel for Defendant Tractable Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 24, 2022, I caused a true and correct copy of the foregoing instrument be served on all counsel of record via electronic mail.


_/s/ Julia C. Barrett_
Julia C. Barrett

# EXHIBIT 28

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CCC INTELLIGENT SOLUTIONS INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 1:18-cv-07246** |
| **v.** | ) | |
| | ) | **Hon. Robert W. Gettleman Hon.** |
| **TRACTABLE INC.,** | ) | **Susan E. Cox** |
| | ) | |
| **Defendant.** | ) | |

**TRACTABLE INC.'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S SECOND**
**SET OF INTERROGATORIES TO TRACTABLE INC. (NOS. 8–10)**

Defendant Tractable Inc. ("Tractable"), by and through its counsel of record, hereby submits the following objections and responses to CCC Intelligent Solutions Inc.'s ("CCC") Second Set of Interrogatories ("Interrogatories").

## PRELIMINARY STATEMENT

Tractable provides its responses subject to and without waiver of any objections as to the competency, relevancy, materiality, privilege, or admissibility as evidence or for any other purpose, of any of the information referred to or of the responses given herein, or for the subject matter thereof in any proceeding, including the trial of this action or any other subsequent proceeding, and said responses are made specifically subject to the right to object to any proceeding involving or related to the subject matter of the Interrogatories responded to herein. No objection or limitation, or lack thereof, made in these objections and responses shall be deemed an admission by Tractable as to the existence or non-existence of the document or information sought, or waiver of Tractable's rights to assert such objection or limitation at any future time in connection with the Interrogatories or otherwise.

1

Tractable's responses are based on information presently known to it. Tractable has not completed its investigation of all facts relating to this case. Additional discovery, investigation, and legal research and analysis may supply additional facts, add meaning to known facts, and/or establish entirely new factual conclusions or legal contentions, all of which may lead to substantial additions to, changes in, and/or variations from the present responses. Tractable reserves the right to amend, modify, supplement, revise, correct, add to, or clarify the response if additional information becomes available.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1. Tractable objects to the instructions and definitions to the extent they impose obligations on Tractable beyond the requirements of the Federal Rules of Civil Procedure.

2. Tractable objects to the definition of "identify," "identity," and "identification" because it attempts to impose obligations on Tractable beyond the requirements of the Federal Rules of Civil Procedure by demanding information on documents that are no longer in Tractable's possession, custody, or control, and documents that no longer exist.

3. Tractable objects to the definition of "Product" as overbroad and seeking information that is irrelevant to this case because it has no limiting terms or principles and encompasses "any" item created by or activity undertaken by a person or business.

4. Tractable objects to the definition of "Tractable, Defendant, You, and "Your" as seeking information that is not within Tractable's possession, custody, or control and/or that is protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege or immunity from discovery. Tractable will construe the terms "Tractable, Defendant, You, and "Your" to mean Tractable Inc., including any employee or representative known to be acting on its behalf.

5.     Tractable objects to the definition of "Tractable Product" as overbroad and seeking information that is irrelevant to this case.  Tractable further objects to the incorporation of a broken link to the definition of "Tractable Product."  The link https://tractable.ai/products/car-accidents/ returns a 404 error message.  Tractable further objects to the definition of "Tractable Product" to the extent it incorporates the definition of "Product," which is itself overbroad as explained herein.  Tractable will construe the term Tractable Product to mean Tractable's estimating products.

6.     Tractable objects to CCC's failure to provide a relevant time period.  In responding to CCC's interrogatories, Tractable will apply a relevant time period of January 1, 2017 to October 31, 2019.

7.     Tractable objects to Instruction No. 5 to the extent it requires Tractable to elaborate on its response beyond that required by Fed. R. Civ. P. 33(d).  Nothing in Rule 33(d) requires Tractable to "state fully all facts which support [Tractable's] contention that the burden of ascertaining the interrogatory is substantially the same for CCC as it is for" Tractable.

### RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 8:**

Identify the complete factual and legal bases for (including all facts, evidence identified by any corresponding production/Bates numbers, and witnesses relating to) your contention that Tractable has not violated the Defend Trade Secrets Act or the Illinois Trade Secrets Act as alleged by CCC in this Case.

**RESPONSE**:

Tractable objects to Interrogatory No. 8 as compound.  Interrogatory No. 8 seeks "the complete factual **and** legal bases" Tractable intends to rely on for any contention that it has not violated the Defend Trade Secrets Act or the Illinois Trade Secrets Act as alleged by CCC in this

3

Case. These are two discrete inquiries and should be counted as two separate interrogatories. Tractable further objects to Interrogatory No. 8 as premature as Tractable's investigation of the relevant facts is ongoing. Tractable also objects to Interrogatory No. 8 to the extent it seeks information protected by the attorney-client privilege or work product doctrine.

Subject to and without waiving the foregoing objections, and without waiving any right to supplement or otherwise revise its response following further investigation and discovery, Tractable states that it is CCC, not Tractable, that has the burden of proof. CCC will not be able to satisfy its burden to demonstrate a violation of either the Defend Trade Secrets Act ("DTSA") or the Illinois Trade Secrets Act ("ITSA"). CCC has yet to identify any trade secret Tractable allegedly misappropriated with any degree of specificity. Tractable further states that it has not violated the DTSA or ITSA because Tractable did not have possession of any trade secret information through a license to access CCC ONE that CCC grants to thousands of independent appraisers. Both the DTSA and the ITSA require proof that the information allegedly misappropriated qualifies as a trade secret. *Prominence Advisors, Inc. v. Dalto*n, No. 17 C 4369, 2017 WL 6988661, at *5 (N.D. Ill. Dec. 18, 2017); *see also* 18 U.S.C. § 1839(3) (defining trade secret as information whose owner "has taken reasonable measures to keep such information secret"); 765 Ill. Comp. Stat. 1065/2(d) (defining trade secret as, inter alia, "the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality"). Tractable also did not misappropriate any alleged trade secret as required by the DTSA and ITSA. *See* 18 USC § 1839(5)(A); 765 ILCS 1065/2(b); 18 USC § 1839(6); 765 Ill. Comp. Stat. 1065/2(a).

Tractable further states that, pursuant to Fed. R. Civ. P. 33(d), it will conduct a reasonable search for and produce any non-privileged documents it intends to use to support any contention

that it has not violated the Defend Trade Secrets Act or the Illinois Trade Secrets Act as alleged by CCC in this case.

**INTERROGATORY NO. 9:**

Identify the complete factual and legal bases for (including all facts, evidence identified by any corresponding production/Bates numbers, and witnesses relating to) your contention that Tractable has not violated the Lanham Act as alleged by CCC in this Case.

**RESPONSE**:

Tractable objects to Interrogatory No. 9 as compound. Interrogatory No. 9 seeks "the complete factual **and** legal bases" Tractable intends to rely on for any contention that it has not violated the Lanham Act as alleged by CCC in this Case. These are two discrete inquiries and should be counted as two separate interrogatories. Tractable further objects to Interrogatory No. 9 as premature as Tractable's investigation of the relevant facts is ongoing. Tractable also objects to Interrogatory No. 9 to the extent it seeks information protected by the attorney-client privilege or work product doctrine.

Subject to and without waiving the foregoing objections, and without waiving any right to supplement or otherwise revise its response following further investigation and discovery, Tractable states that it is CCC, not Tractable, that has the burden of proof. CCC will not be able to satisfy its burden to demonstrate a violation of the Lanham Act. Tractable further states that every estimate prepared using CCC ONE must identify CCC and CCC ONE therein. The License expressly provides that customer "may not remove or modify any proprietary notice of CCC from any copy of the Program, Services, or Documentation." Tractable accordingly did not remove any CCC Trademark from documents prepared in CCC ONE. CCC will be unable to demonstrate that Tractable's use of its trademark "is likely to cause confusion among

consumers." *Phoenix Ent. Partners v. Rumsey*, 829 F.3d 817, 822 (7th Cir. 2016); *see also Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 812 (7th Cir. 2002), as amended (Oct. 18, 2002) (identifying "evidence of actual confusion" as one of the factors considered when evaluating the likelihood of consumer confusion).

Tractable further states that, pursuant to Fed. R. Civ. P. 33(d), it will conduct a reasonable search for and produce any non-privileged documents it intends to use to support any contention that it has not violated the Lanham Act as alleged by CCC in this Case.

**INTERROGATORY NO. 10:**

Identify the complete factual and legal bases for (including all facts, evidence identified by any corresponding production/Bates numbers, and witnesses relating to) your contention that Tractable is not liable for common law fraud as alleged by CCC in this Case.

**RESPONSE**:

Tractable objects to Interrogatory No. 10 as compound. Interrogatory No. 10 seeks "the complete factual **and** legal bases" Tractable intends to rely on for any contention that it is not liable for common law fraud as alleged by CCC in this Case. These are two discrete inquiries and should be counted as two separate interrogatories. Tractable further objects to Interrogatory No. 10 as premature as Tractable's investigation of the relevant facts is ongoing. Tractable also objects to Interrogatory No. 10 to the extent it seeks information protected by the attorney-client privilege or work product doctrine.

Subject to and without waiving the foregoing objections, and without waiving any right to supplement or otherwise revise its response following further investigation and discovery, Tractable states that it is CCC, not Tractable, that has the burden of proof. CCC will not be able to satisfy its burden to demonstrate that Tractable is liable for common law fraud. Tractable

further states that it is not liable for common law fraud because Tractable did not knowingly make false statements of material fact to CCC with intent to induce CCC to act, CCC did not rely on any allegedly false statements made by Tractable, and CCC has not suffered any harm. *See Miner v. Fashion Enterprises, Inc.*, 342 Ill. App. 3d 405, 420 (2003) (listing the elements of common law fraud as (1) false statement of material fact; (2) defendant's knowledge of statement's falsity; (3) plaintiff had right to rely on and did rely on statement; (4) defendant intended the statement induce plaintiff to act; and (5) plaintiff's damages resulting from reliance on the statement). Moreover, Tractable had no duty to disclose to CCC that it was using a d/b/a, nor was the fact that Tractable was using a d/b/a material to CCC. *See id.* (affirming dismissal and holding that allegations that defendant's failure to apprise plaintiff that counterparty was a "sham" corporation which only took lease rather than operating store on premises were insufficient to support claim of fraudulent concealment); *see also Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 500 (1996) (affirming dismissal of claim for common law fraudulent concealment where plaintiff failed to allege defendant had any duty to disclose). CCC did not inquire as to JA Appraisal's identity, and Tractable's employee even informed CCC that "Jason Chen" was not his real name. *Fogel v. Gordon & Glickson, P.C.*, 393 F.3d 727, 729 (7th Cir. 2004) ("A party cannot close its eyes to obvious facts and then charge that it has been deceived.").

Tractable further states that, pursuant to Fed. R. Civ. P. 33(d), it will conduct a reasonable search for and produce any non-privileged documents it intends to use to support any contention that it is not liable for fraud as alleged by CCC in this Case.

Dated:  January 3, 2023

Respectfully submitted,

*/s/ Lazar P. Raynal*
Lazar P. Raynal (Bar No. 6199215)
Michael A. Lombardo (Bar No. 6334886)
KING & SPALDING LLP
110 N. Wacker Drive, Suite 3800
Chicago, IL 60606
Telephone: (312) 995-6333
Facsimile: (312) 995-6330
lraynal@kslaw.com
mlombardo@kslaw.com

Julia C. Barrett (*pro hac vice*)
KING & SPALDING LLP
500 West 2nd Street, Suite 1800
Austin, Texas 78701
Telephone: (512) 457-2000

*Counsel for Defendant Tractable, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 3, 2023, a copy of the foregoing was served upon counsel of record via electronic mail.

*/s/ Lazar P. Raynal*
Lazar P. Raynal (Bar No. 6199215)

# EXHIBIT 29

| | |
|---|---|
| **From:** | Julia Barrett <JBarrett@KSLAW.com> |
| **Sent:** | Thursday, December 15, 2022 11:04 AM |
| **To:** | O'Donohue, Stephen (NY); #C-M CCCTRACTABLE - LW TEAM |
| **Cc:** | Lazar Raynal; David Mattern; Michael Lombardo |
| **Subject:** | RE: CCC v. Tractable |

Stephen –

Thank you for the summary of the parties' meet and confer. One point of clarification: Tractable did not agree to CCC's definition of "Tractable Products." As described below, Tractable will agree to produce information related to its Estimating products, which are the only products relevant to CCC's claims in this case.

With respect to the open items identified in your email:

- **RFP No. 14.** Tractable is working to gain access to relevant emails in Mr. Ali's personal email account, <u>maxgenie@live.co.uk</u> , in compliance with the UK GDPR and associated privacy laws.

- **RFP Nos. 28-30.** Tractable will agree to produce actual revenue and financial projections for its Estimating products from January 1, 2017 through October 31, 2019.

- **RFP No. 24.** Tractable will conduct a reasonable search for and produce documents sufficient to show any changes to its Estimating products between August 2017 and November 2018. Tractable will send a more detailed proposed search protocol identifying any custodians, search terms, and sources that will be used to identify responsive documents.

- **RFP Nos. 26-27.** Subject to the terms of the agreed protective order, Tractable will conduct a search for and make available for inspection available source code sufficient to identify any changes in the source code for Tractable's Estimating products between August 2017 and November 2018.

With respect to the JA Appraisal email account, Tractable is working on access to that account so that it can search for any responsive documents from the account.

Regards,
Julia

---

**Julia C. Barrett**
*Partner*

T: +1 512 457 2053  |  E: jbarrett@kslaw.com  |  Bio  |  vCard

King & Spalding LLP
500 West 2nd Street
Suite 1800
Austin, Texas 78701



kslaw.com

**From:** Stephen.ODonohue@lw.com <Stephen.ODonohue@lw.com>
**Sent:** Wednesday, December 14, 2022 8:18 AM

**To:** Julia Barrett <JBarrett@KSLAW.com>; CCCTRACTABLE.LWTEAM@lw.com
**Cc:** Lazar Raynal <LRaynal@KSLAW.com>; David Mattern <DMattern@KSLAW.com>; Michael Lombardo <MLombardo@KSLAW.com>
**Subject:** RE: CCC v. Tractable

**CAUTION:** **MAIL FROM OUTSIDE THE FIRM**

Julia,

Thank you for meeting and conferring on December 12, 2022 regarding Tractable's responses and objections to CCC's First Set of Requests for Production.  Below is a summary of the parties' positions on the issues discussed:

**General Time Period for the Discovery Responses**

Tractable stated that it opposes CCC's request for a general discovery period of January 1, 2017 through the present and instead argues that the parties should adopt a narrower time frame of January 1, 2017 through October 31, 2019.  You stated that it would be unduly burdensome for Tractable to collect documents post-October-2019, given the allegedly high costs that would be associated with such a collection and how many years have elapsed since the litigation commenced.

CCC's position is that the relevant time period, except where CCC has stated otherwise, should continue through the present.  Although CCC terminated Tractable's access to CCC ONE in October 2018, that would not prevent Tractable from continuing to use CCC's data and information or selling products that have benefited from CCC's trade secrets.  Furthermore, any additional burden to collect documents after from November 1, 2019 to the present is largely of Tractable's own making due to its pursuit of a frivolous appeal.

You appeared to agree that documents post-dating October 2019 could be relevant to the issue of damages if discovery yielded evidence of Tractable incorporating CCC's proprietary information and algorithms into its products.  However, Tractable will begin its document collection and review efforts by focusing on documents and communications from January 1, 2017 through October 31, 2019 and understands that CCC reserves the right to expand the applicable time period at a later date.  We confirmed that CCC reserves all rights to move to compel the production of documents and communications post-dating October 31, 2019.

**Request for Production No. 3**

You confirmed that Tractable will search for and produce responsive agreements under which Tractable provided, or would provide, including agreements with National General and documents that would support or refute Tractable's representation that it was doing business as an independent appraiser when it represented itself to CCC as "JA Appraisal."

**Request for Production No. 9**

Tractable objected to the portion of this request asking for "all documents" regarding his "role, responsibilities, and supervisors at Tractable" as overbroad, and we agreed to limit the scope of this part of the request to documents sufficient to show Xing Xin's role, responsibilities, and supervisors during his employment at Tractable.  You responded that Tractable will search Xin's email and files pursuant to the search terms in the ESI search protocol that you circulated on December 9, 2022, which you expect to elicit the requested information.  We confirmed that we will review Tractable's ESI search protocol and follow up if any terms should be added.  We also reserved all rights to revisit this request after we have the opportunity to review the documents and communications that Tractable plans to produce from Xin's files and to analyze whether they are sufficient to show the requested information.

**Request for Production No. 14**

You confirmed that maxgenie@liveco.uk is Max Ali's personal email account and preexisted his employment at Tractable. We noted that the email address was nonetheless used for business related to "JA Appraisal" and has accordingly been put squarely at issue in this litigation. You stated that you will check with Tractable and the rest of your team about searching Mr. Ali's email account so as to avoid the need for CCC to issue a non-party subpoena.

**Request for Production Nos. 28–30**

We explained that "Tractable Product" is defined relatively narrowly to include "any Product offered for sale, sold, imported, or under development by Tractable to '[r]eview auto repair estimates, at scale, in real time' or [p]roduce an instant estimate from photos,' as set forth at https://tractable.ai/products/car-accidents/," thereby resolving Tractable's overbreadth complaints. CCC's position is that Tractable should produce financial revenue derived from the Tractable Products, along with financial projections for the Tractable Products. You agreed to produce documents showing actual financial revenue derived from the Tractable Products and plan to check with your client regarding financial projections.

With respect to Request for Production No. 30, you stood on your objection to producing valuations, claimed that such valuations are not discoverable, and asked CCC to respond with contrary authority to support its position. We will follow up with the requested authority at a later date, and reserve all rights to seek relief at the appropriate time.

**Request for Production No. 20**

You agreed that Tractable will produce lists of employees from Tractable's Research and Engineering Department who were working on the Tractable Products (as defined in the requests) from 2017 through 2019. That resolves CCC's concerns with Tractable's response to this request at this point, but CCC reserves all rights to request additional documents sufficient to show the employees who were working on the development of Tractable Products after 2019 at a later point in discovery.

**Request for Production No. 24**

You stated that Tractable is developing a search protocol to identify documents sufficient to show changes to Tractable Products between August 2017 and November 2018, which you will circulate to CCC later this week. We will review that disclosure and reserve all rights to seek relief at the appropriate time.

**Request for Production Nos. 26–27**

Tractable's initial position was that its own source code is only relevant if CCC first shows that Tractable had access to the source code for CCC ONE.

We explained that CCC's internal investigation yielded a significant amount of evidence about Tractable's attempts to access and reverse engineer CCC's proprietary data and algorithms, which may have been used to write or modify the source code for Tractable Products, irrespective of whether Tractable ever had direct access to the source code for CCC ONE.

You responded that Tractable does not plan to categorically refuse to make the requested source code available for inspection. You agreed to follow up with a revised source code position after consulting further with your client.

**Additional Discovery Matters**

You confirmed that Tractable is planning to make its first production by the end of this week, which will consist of documents and communications from the custodial email and Slack searches. Tractable will continue to produce responsive documents on a rolling basis.

We will follow up by early next week with CCC's ESI search protocol.

With respect to the ESI Search Protocol you served on Friday, please confirm whether Tractable is searching for responsive documents from the jaappraisalco@gmail.com account itself? I see that it is listed as a search term but it is not clear whether the "Email" repository you listed would capture that account.

Regards,

**Stephen D. O'Donohue**

**LATHAM & WATKINS LLP**
1271 Avenue of the Americas | New York, NY 10020
D: +1.212.906.1274 | M: +1.585.935.1845

---

**From:** O'Donohue, Stephen (NY) <Stephen.ODonohue@lw.com>
**Sent:** Friday, December 9, 2022 5:30 PM
**To:** Julia Barrett <JBarrett@KSLAW.com>; #C-M CCCTRACTABLE - LW TEAM <CCCTRACTABLE.LWTEAM@lw.com>
**Cc:** Lazar Raynal <LRaynal@KSLAW.com>; David Mattern <DMattern@KSLAW.com>; Michael Lombardo <MLombardo@KSLAW.com>
**Subject:** RE: CCC v. Tractable

Julia,

We are available at 1:30 pm ET and can use the dial in below.

-Stephen

---------------------------------------------------------------------------------------------------------------

Join Stephen O'Donohue's Meeting Room: https://meet.loopup.com/6I81sKT

If you prefer to dial-in on audio yourself, use the following dial-in information:

Guest Access Code: 2246528#

Latham Phone: #321

USA: +1 (877) 214 1533
Belgium: 0800 49980
China: 4001-200683
France: 08 05 22 01 32
Germany : 0800 589 3209
Hong Kong: 800 906 333
Italy: 800 148 207
Japan: 00531 85 0187
Russia: 8-10-800-20584011
Saudi Arabia: 800 850 0590
Singapore: 800 8523 852
South Korea: 00798 8521 7256
Spain: 0800 098 953

UAE: 8000 3570 4215
UK: 0800 279 4235
UK (Local): +44 20 3790 0960
USA: +1 (877) 214 1533
USA (Local): +1 (312) 235 2942
-------------------------------------------------------------------------------------------------------------------

**Stephen D. O'Donohue**

**LATHAM & WATKINS LLP**
1271 Avenue of the Americas | New York, NY 10020
D: +1.212.906.1274 | M: +1.585.935.1845

---

**From:** Julia Barrett <JBarrett@KSLAW.com>
**Sent:** Friday, December 9, 2022 10:51 AM
**To:** O'Donohue, Stephen (NY) <Stephen.ODonohue@lw.com>; #C-M CCCTRACTABLE - LW TEAM <CCCTRACTABLE.LWTEAM@lw.com>
**Cc:** Lazar Raynal <LRaynal@KSLAW.com>; David Mattern <DMattern@KSLAW.com>; Michael Lombardo <MLombardo@KSLAW.com>
**Subject:** RE: CCC v. Tractable

Stephen –

I'm attaching Tractable's response to CCC's November 24 letter here. We are available Monday between 1-5 ET to discuss any remaining issues.

I am also attaching Tractable's ESI search protocol. Please send CCC's proposed search protocol.

Regards,
Julia

---

**Julia C. Barrett**
*Partner*

T: +1 512 457 2053  |  E: jbarrett@kslaw.com  |  Bio  |  vCard

King & Spalding LLP
500 West 2nd Street
Suite 1800
Austin, Texas 78701



kslaw.com

**From:** Stephen.ODonohue@lw.com <Stephen.ODonohue@lw.com>
**Sent:** Thursday, December 8, 2022 6:01 PM
**To:** Julia Barrett <JBarrett@KSLAW.com>; CCCTRACTABLE.LWTEAM@lw.com
**Cc:** Lazar Raynal <LRaynal@KSLAW.com>; David Mattern <DMattern@KSLAW.com>; Michael Lombardo

<MLombardo@KSLAW.com>
**Subject:** RE: CCC v. Tractable

CAUTION: **MAIL FROM OUTSIDE THE FIRM**

Julia,

In the correspondence below we asked Tractable to provide its availability to meet and confer on December 7, which you ignored.  We respectfully again ask Tractable to meet and confer Friday, December 9 between 11 am and 1 pm ET, or Monday between 1-5 pm ET to discuss the issues raised in our letter.  Tractable has had more than enough time to consider CCC's positions and CCC is prejudiced by any further delay.  If we do not receive your availability for either date, we will understand that Tractable is unwilling to meet-and-confer and therefore seek appropriate relief from the Court.

Regards,

**Stephen D. O'Donohue**

**LATHAM & WATKINS LLP**
1271 Avenue of the Americas | New York, NY 10020
D: +1.212.906.1274 | M: +1.585.935.1845

**From:** O'Donohue, Stephen (NY) <Stephen.ODonohue@lw.com>
**Sent:** Thursday, November 24, 2022 12:41 AM
**To:** Julia Barrett <JBarrett@KSLAW.com>; #C-M CCCTRACTABLE - LW TEAM <CCCTRACTABLE.LWTEAM@lw.com>
**Cc:** Lazar Raynal <LRaynal@KSLAW.com>; David Mattern <DMattern@KSLAW.com>; Michael Lombardo <MLombardo@KSLAW.com>
**Subject:** RE: CCC v. Tractable

Julia – Please see the attached correspondence.

Regards,

**Stephen D. O'Donohue**

**LATHAM & WATKINS LLP**
1271 Avenue of the Americas | New York, NY 10020
D: +1.212.906.1274 | M: +1.585.935.1845

**From:** Julia Barrett <JBarrett@KSLAW.com>
**Sent:** Monday, October 24, 2022 9:14 PM
**To:** #C-M CCCTRACTABLE - LW TEAM <CCCTRACTABLE.LWTEAM@lw.com>
**Cc:** Lazar Raynal <LRaynal@KSLAW.com>; David Mattern <DMattern@KSLAW.com>; Michael Lombardo <MLombardo@KSLAW.com>
**Subject:** CCC v. Tractable

Counsel –

Please find attached Tractable's Responses and Objections to CCC's First set of Requests for Production and Interrogatories. I will send Tractable's verification for the Interrogatory responses tomorrow.

Regards,
Julia

**Julia C. Barrett**
*Partner*

T: +1 512 457 2053  |  E: jbarrett@kslaw.com  |  Bio  |  vCard

King & Spalding LLP
500 West 2nd Street
Suite 1800
Austin, Texas 78701



kslaw.com

King & Spalding Confidentiality Notice:

This message is being sent by or on behalf of a lawyer. It is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged or confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately by e-mail and delete all copies of the message. Click here to view our Privacy Notice.

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient.  Any review, disclosure, reliance or distribution by others or forwarding without express permission is strictly prohibited.  If you are not the intended recipient, please contact the sender and delete all copies including any attachments.

Latham & Watkins LLP or any of its affiliates may monitor electronic communications sent or received by our networks in order to protect our business and verify compliance with our policies and relevant legal requirements. Any personal information contained or referred to within this electronic communication will be processed in accordance with the firm's privacy notices and Global Privacy Standards available at www.lw.com.

# EXHIBIT 30
# FILED UNDER SEAL

# EXHIBIT 31

**Adam M. Greenfield**
Direct Dial: +1.202.637.2308
adam.greenfield@lw.com

555 Eleventh Street, N.W., Suite 1000
Washington, D.C.  20004-1304
Tel: +1.202.637.2200  Fax: +1.202.637.2201
www.lw.com

# LATHAM & WATKINS LLP

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Austin | Milan |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Century City | Paris |
| Chicago | Riyadh |
| Dubai | San Diego |
| Düsseldorf | San Francisco |
| Frankfurt | Seoul |
| Hamburg | Silicon Valley |
| Hong Kong | Singapore |
| Houston | Tel Aviv |
| London | Tokyo |
| Los Angeles | Washington, D.C. |
| Madrid | |

March 7, 2024

**VIA EMAIL**

Julia C. Barrett
King & Spalding LLP
500 West 2nd Street, Suite 1800
Austin, TX 78701
T: +1.512.457.2053; E: jbarrett@kslaw.com

Re: *CCC Intelligent Sols. Inc. v. Tractable Inc.*, No. 1:18-cv-07246 (N.D. Ill.)

Dear Julia:

The stay has been lifted, so we write to seek Tractable's prompt supplementation of discovery (as outlined in our letter to you dated September 28, 2023) and to resume discussions concerning Tractable deponents (e.g., scheduling, 30(b)(6) responses and objections).

*First*, our September 28, 2023 letter described Tractable's improper withholding of (a) discovery dated after October 31, 2019 and (b) source code dated from November 2018 to the present. By Tuesday, March 12, 2024, please confirm that Tractable will supplement its production to include this discovery and provide a date by which Tractable plans to do so. If not, please provide your availability to meet and confer on or before Friday, March 15, 2024.

*Second*, please provide dates that Francesca Melle, Max Ali, Xing Xin, and Alex Dalyac are available for deposition. For Ms. Melle, please let us know if she is available to be deposed on or before Friday, March 22, 2024; recall that her deposition was scheduled to occur shortly before the stay took effect. For Mr. Ali, Mr. Xin, and Mr. Dalyac, please provide dates in April and May such that the depositions will occur subsequent to Tractable supplementing its discovery responses and productions pursuant to CCC's September 28, 2023 letter. For Mr. Dalyac, please provide two consecutive dates given that he is appearing both in his individual capacity and as Tractable's designee for many 30(b)(6) topics.

*Third*, please provide your availability to meet and confer on or before Friday, March 15, 2024, about Tractable's responses and objections to CCC's 30(b)(6) deposition notice. Tractable has refused to produce a witness to testify about several topics and has improperly narrowed the scope of many other topics. At this meet and confer, please be prepared to discuss all topics for which Tractable has refused to provide full responsive testimony.

March 7, 2024
Page 2

**LATHAM & WATKINS** LLP

Best regards,

/s/ *Adam M. Greenfield*
Adam M. Greenfield
of LATHAM & WATKINS LLP

CC: Service List

# EXHIBIT 32

# KING & SPALDING

King & Spalding LLP
500 W. 2nd Street
Suite 1800
Austin, Texas 78701

Tel: +1 512 457 2000
Fax: +1 512 457 2100
www.kslaw.com

Julia C. Barrett
Direct Dial: +1 512 457 2053
jbarrett@kslaw.com

March 14, 2024

VIA E-MAIL

Adam Greenfield
Latham & Watkins LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C., 20004
adam.greenfield@lw.com

**Re:** *CCC Intelligent Sols. Inc. v. Tractable Inc.*, No. 18-cv-07246 (N.D. Ill.)

I write in response to your letters dated September 28, 2023 and March 7, 2024 regarding CCC's request that Tractable produce documents from October 31, 2019 through the present and provide additional source code and software version information.

## 1. Documents Dated After October 31, 2019

Tractable's limitation of its document production to the time period from January 1, 2017 to October 31, 2019 is appropriate and proportionate to the needs of the case. CCC filed this action on October 31, 2018, and CCC's allegations relate to Tractable's use of a license to CCC ONE that CCC terminated in October 2018 immediately before CCC filed this action. Nevertheless, Tractable reached a compromise with CCC to produce documents through October 31, 2019—a full year after Tractable had access to CCC ONE and CCC initiated this action.[1]

---

[1] The statement in your letter that "CCC has long requested this information" is inaccurate. Following a meet and confer on this issue, CCC agreed in an email dated December 14, 2022 that Tractable would focus on documents and communications from January 1, 2017 through October 31, 2019; CCC simply reserved the right to seek to expand the time period "at a later date." Your September 28, 2023 letter is the first time CCC has sought to expand the time period.

March 14, 2024
Page 2

Tractable conducted its extensive document collection in October 2019. Tractable's collection and document production includes the entire period of Tractable's license to CCC ONE and the year following (while litigation was ongoing). That is more than sufficient for CCC to understand Tractable's use of CCC ONE and whether Tractable accessed any proprietary data or engaged in any activity to replicate CCC ONE's algorithms or access CCC's alleged trade secrets. Indeed, Tractable has reviewed hundreds of thousands of documents in response to CCC's voluminous discovery requests and produced approximately 381,557 documents to date.

CCC's request for documents through the present is nothing more than an overly burdensome fishing expedition. CCC has served a total of 88 Requests for Production on Tractable seeking broad discovery into almost every aspect of Tractable's business. Your letter does not provide any basis for expanding all of those requests to seek documents through the present—a period spanning four and half additional years on top of the almost three year period of Tractable's current document production—other than the unsupported statement that the discovery is "relevant." To the contrary, nothing in the hundreds of thousands of documents Tractable has produced indicate that Tractable accessed or used any of CCC's trade secrets through its license to CCC ONE. There is no reason to expand Tractable's production through the present—several years after Tractable even had any access to CCC ONE. *See Taylor v. Meijer Stores Ltd. P'ship*, No. 1:12-cv-1540-JMS-DKL, 2014 U.S. Dist. LEXIS 21638, at *5-6 (S.D. Ind. Feb. 20, 2014) (limiting request for documents spanning approximately five years before the incident at issue to only two years prior to the incident, concluding "data for two years prior" is "reasonably and sufficiently calculated to lead to any admissible evidence," and that "[i]f two years of data do not show such notice, then the likelihood of such notice does not outweigh a burden of production for three more years of data"); *Ty, Inc. v. Salvino, Inc.*, No. 98 C 6318, 1999 U.S. Dist. LEXIS 3496, at *8-9 (N.D. Ill. Mar. 15, 1999) (holding that "the request for five-plus years of such records would impose an undue burden on plaintiff that outweighs the likely benefit to the Salvino defendants" because "requiring production of financial records for preceding years would impose a burden without providing a commensurate benefit in discoverable information").

CCC also cannot show that such discovery is proportionate to the needs of the case. There is significant burden associated with the collection and review of documents created from November 2019 through the present. Collecting and reviewing documents created in the last four-plus years will exponentially increase the cost of discovery in this case—which has already caused Tractable significant expense due to CCC's scorched earth discovery tactics.

Contrary to the position taken in the September 28 letter, the mere fact that some of Tractable's requests to CCC seek information through the present has no bearing on the relevance of the documents CCC seeks from Tractable. The time period that may be relevant for certain documents in CCC's possession does not make that time period relevant as to all of the categories of documents CCC is seeking from Tractable. For example, Request for Production Number 66 to CCC—which you identify in your letter—seeks the pricing for CCC's licenses from January 1, 2017 through the present, which is a narrowly targeted request relevant to CCC's claim of damages.

Finally, CCC is also incorrect that Tractable must produce information dated after October 31, 2019 to "substantiate" the fact that Tractable has not misappropriated CCC's trade secrets.

March 14, 2024
Page 3

CCC has the burden to prove that Tractable misappropriated CCC's trade secrets in connection with its license to CCC ONE. And Tractable has gone above and beyond to produce a significant volume of documents spanning every aspect of Tractable's business and product development in the year before, during, and after Tractable had access to CCC ONE. CCC's letter does not cite to any documents during that time period indicating that Tractable misappropriated CCC's trade secrets or that would warrant the significant expanded discovery CCC now seeks into a time period that bears no relevance to CCC's claims.

## 2. Source Code and Software Versions

Tractable also rejects CCC's assertion that Tractable must produce "source code for all Tractable Products and software versions associated with Tractable Products dated from November 2018 to the present." As an initial matter, Tractable has already informed CCC that there are no different "versions" of its relevant products. *See* May 25, 2023 Barrett Letter at 4. Moreover, Tractable has already produced documents showing the development of and changes to its relevant products both before and during the time period that Tractable had access to CCC ONE. Your letter does not provide any basis for expanding that discovery through the present— many years after Tractable had any access to CCC ONE. Producing documents related to Tractable's products for the last 4 and a half years would be unduly burdensome and disproportionate to the needs of the case.

Regarding source code, Tractable has already made available an extraordinary volume of 705 gigabytes of source code to CCC. That information includes a significant volume of training data as well as the workspace machines where Tractable had uploaded and accessed CCC ONE. This is more than sufficient for CCC to identify how Tractable used CCC ONE, the data that was used to train Tractable's AI models, and whether any of CCC's alleged trade secrets were incorporated in any way into Tractable's products.

Again, CCC has offered no more than vague assertions to support its demand for further burdensome discovery into Tractable's source code. Neither of the documents relied upon by CCC in its September 28, 2023 letter show that Tractable misappropriated CCC's trade secret information in connection with Tractable's license to CCC ONE. The January 7, 2019 document shows only that Tractable received estimates from Farmers Insurance that were generated by Farmers in adjusting its insured's claims; it does not show that Tractable obtained information from its license to CCC ONE. *See* TRACTABLE00132602. Similarly, the November 2018 document indicates that Tractable received information from third parties (i.e., Farmers and USAA), not that Tractable obtained or used any allegedly proprietary information from the JA Appraisal license to CCC ONE (as specifically acknowledged by CCC's letter, which states the data was "obtained from third-party insurance companies"). *See* TRACTABLE0013238.

Moreover, although any information Tractable received through a third party insurance company is not relevant to this case, Tractable has already agreed to make available information regarding any training of Tractable's AI on information it received from Farmers and USAA. CCC is thus already in possession of information related to the two documents cited in your letter.

\*        \*        \*

March 14, 2024
Page 4


      If CCC believes that a meet and confer is necessary, we are available on Friday, March 15 or Tuesday, March 19, between 12:00 and 3:00 CT.

                                    Regards,

                                      */s/ Julia C. Barrett*

                                    Julia C. Barrett

# EXHIBIT 33
# FILED UNDER SEAL

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CCC INTELLIGENT SOLUTIONS INC., | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 1:18-cv-07246** |
| **v.** | ) | |
| | ) | **Hon. LaShonda A. Hunt** |
| TRACTABLE INC., | ) | **Hon. Keri L. Holleb Hotaling** |
| | ) | |
| **Defendant.** | ) | |

### CCC INTELLIGENT SOLUTIONS INC.'S FIFTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO TRACTABLE INC. (NOS. 89-191)

Pursuant to Federal Rules of Civil Procedure 26 and 34, Plaintiff CCC Intelligent Solutions Inc. ("CCC") submits its Fifth Set of Requests for Production of Documents (Nos. 89-191) to Defendant Tractable Inc. ("Tractable"). CCC requests that Tractable respond to these requests in writing, in accordance with the Definitions and Instructions contained herein, and produce all documents and things in Tractable's possession, custody, or control that are requested below, within thirty (30) days of the date of service in accordance with the Federal Rules of Civil Procedure. CCC requests that Tractable serve such answers on Plaintiff's counsel at the office of Latham & Watkins LLP, 555 11th Street NW, Suite 1000, Washington, DC 20002—or at such other time and place as the parties may agree upon.

### DEFINITIONS

1.    "**Agreement(s)**" means an understanding or arrangement between two or more Persons in its broadest sense. Agreements can be formal or informal, written or unwritten.

2.    "**Auto Claims Software**" means any software that is intended, in whole or in part, to facilitate any component of processing an insurance claim for vehicle damage or repair, including but not limited to any software for vehicle damage detection, vehicle damage

assessment, first notice of loss, repair diagnostics, claim triage, claim handling, claim estimation, part procurement, casualty claim processing, repair estimation, claim review, claim auditing, claim appeal, claim subrogation, or claim settlement, regardless of whether that software uses artificial intelligence or not, regardless of whether it applies to a partial loss, total loss, or otherwise, and regardless of whether it is used by insurers, insureds, lenders, repair facilities, dealerships, or otherwise. For the avoidance of doubt, Auto Claims Software includes, at minimum, all products included in Tractable's alleged "Estimatics" product market. *See* Counterclaims ¶¶ 23-25.

3.      "**CCC**" means CCC Intelligent Solutions Inc., its predecessors and successors, respective officers, directors, agents, representatives, employees, attorneys, and investigators, and others acting on CCC Intelligent Solutions Inc.'s behalf.

4.      "**CCC Product(s)**" means any Product offered for sale, sold, imported, or under development by CCC and all parents, subsidiaries, and affiliates thereof, all divisions, predecessors, successors, and assigns of each of the foregoing, and all principals, officers, investors, employees, directors, agents, consultants, attorneys, and all other persons acting or purporting to act on behalf of or under the control of any of the foregoing. This includes, but is not limited to CCC software, such as CCC ONE, as well as information, files, and data associated with CCC ONE.

5.      "**Communication**" shall include any form of transmitting, receiving, or exchanging information or ideas from one Person to another, such as, by way of example and not exclusion, correspondence, letters, e-mail, text or SMS messages, website postings or messages, instant messages, online account information, memoranda, reports, discussions, conversation, negotiations, agreements, notes, or other forms of information or ideas exchanges, whether oral, electronic, or written.

6. "**Counterclaims**" shall mean Tractable's Counterclaims filed by Tractable against CCC on March 25, 2024 (Dkt. 191).

7. "**Data Provider**" shall mean any company that uses, sells, licenses, or otherwise makes available data relating to auto parts and/or labor that can be used in Auto Claims Software. For the avoidance of doubt, this includes companies with established auto parts and/or labor data (*e.g.*, Hearst's MOTOR Information Systems, Audatex, and Mitchell), as well as potential providers of data relating to auto parts and/or labor. It also includes every company that Tractable considers or considered a possible source of data relating to auto parts and/or labor, regardless of location. For the avoidance of doubt, this definition includes, but is not limited to, each company identified in TRACTABLE00449648 and TRACTABLE00449649.

8. "**Date**" means the exact day, month, and year if so ascertainable or, if not, the best approximation (including relationship to seasons and other events).

9. "**Document**" is synonymous in meaning and equal in scope to the usage of this term in Rule 34(a) of the Federal Rules of Civil Procedure and Federal Rule of Evidence 1001. By way of illustration, and without limitation, Documents include at least the following: originals, drafts, and all non-identical copies of memoranda, reports, notes, graphs, correspondence, interoffice Communications, letters, diaries, calendars, photographs, motion pictures, sketches, drawings, promotional materials, technical papers, printed publications, record, reports, and all other writings, whether such information is electronically stored or otherwise, as well as all non-paper information storage means such as sound reproductions, computer inputs and outputs, tape, film, and computer memory devices, as well as tangible things such as models, modules, prototypes, and commercially saleable products. The foregoing specifically includes information stored in any form, including electronic form, on a computer database or otherwise, including

electronic mail. "Thing" shall mean any tangible item, including without limitation, models, prototypes, and samples of any device or apparatus or product.

10.      "**Identify**," "**Identity**," and "**Identification**" shall mean, as the context shall make appropriate:

a)      With respect to a person, the name, present or last known address, telephone number, occupation, and employer;

b)      With respect to a document, the type of document (e.g., letter, memorandum, book, etc.), date, author, general subject matter, the name of the company in the case of a corporate document, all persons designated on the document to receive a copy or otherwise known to have received a copy, the document's present location, and the identity of the custodian of the original and each copy. If any document was, but no longer is, in your possession, custody, or control, or if any document was in existence but is no longer in existence due to destruction or otherwise, state how the document was disposed, the date of such disposition, the identity of the person responsible for making the decision as to such disposition, and the person responsible for carrying out the disposition;

c)      With respect to a telephone conversation, the full name, occupation, telephone number, and address of each party to the telephone conversation, the date of the conversation, and the subject matter discussed;

d)      With respect to an oral conversation other than a telephone conversation, the full name, occupation, telephone number, and address of each party to such conversation, the date of the conversation, and the subject matter discussed;

e)      With respect to a corporation, partnership, association, or other entity, its full name, form of organization, present or last known address, and telephone number; and

f)      With respect to any event or action, the dates or approximate dates thereof, a description of what occurred, and all persons involved.

11.     "**Including**" shall not be used to limit any general category or description that precedes it and shall mean "including without limitation" so as to be inclusive.

12.     "**Product**" means any machine, manufacture, apparatus, device, system, process, service, method, software, source code, or instrumentality which is designed to function together electrically, mechanically, chemically, or otherwise, to achieve a particular function or purpose, including those offered for sale, sold, imported, or under development.

13.      "**Third Party**" means and includes any person or persons other than CCC or Tractable.

14.      "**Tractable**," "**Defendant**," "**You**," or "**Your**" means Tractable Inc. and all parents, subsidiaries, and affiliates thereof, all divisions, predecessors, successors, and assigns of each of the foregoing, and all principals, officers, investors, employees, directors, agents, consultants, attorneys, and all other persons acting or purporting to act on behalf of or under the control of any of the foregoing.  For the avoidance of doubt, this includes doing-business-as ("d/b/a") names, aliases, and any other entity real or represented, that is or ever has been used by Tractable or anyone acting or purporting to act on behalf of Tractable.

15.     "**Tractable Product**" means any Product offered for sale, sold, imported, or under development by Tractable that relates to Auto Claims Software.[1]  This includes but is not limited

---

[1] *See* Tractable, *Our AI-powered products, for today's real-world problems*, https://tractable.ai /en/products (accessed Apr. 8, 2024).

to Tractable's "Auto Estimator" and "Auto Review" products; any "AI-based damage assessment tools," "AI-based claim/audit review tools," "subrogation" tools, and "AI-based Estimatics tools"; and any other Tractable product referenced in or implicated by the Counterclaims. *See* Counterclaims ¶¶ 38, 41.

16.     The conjunctions "**and**" and "**or**" shall be construed either conjunctively or disjunctively, as required by the context, to bring within the scope of these Requests any information that might otherwise be deemed outside their scope.

17.     "**Concern**," "**Concerning**," "**Reflect**," "**Reflecting**," "**Related**," "**Relating**," "**Relate(s)**," "**Refer**" or "**Referring**," and other variations thereof, as used herein, shall be construed in their broadest possible sense, and shall mean without limitation and whether in whole or in part: referring to, constituting, bearing upon, commenting upon, reflecting, evidencing, pertaining to, describing, depicting, consisting of, containing, comprising, embodying, identifying, stating, discussing, analyzing, studying, summarizing, dealing with, relating to, or having any logical factual connection whatsoever with the subject addressed, regardless of whether the factual connection is favorable or adverse to you.

18.     References to this "**Lawsuit**," "**Litigation**," "**Case**," or "**Action**" mean the above-captioned action brought by CCC against Tractable, including the Counterclaims brought by Tractable against CCC.

19.     "**Person**" and "**Individual**" mean any natural person or any business, legal or government entity, or association—including but not limited to any proprietorship, partnership, firm, company, or corporation.

20.     The singular of each word shall be construed to include its plural, and vice versa, to bring within the scope of these Requests any information that might otherwise be deemed outside their scope.

21.     The present tense shall be construed to include the past tense and vice versa.

## **INSTRUCTIONS**

1.     All requested Documents and Communications that are in Your possession, custody, or control, whether actual or constructive, shall be organized and produced pursuant to Rule 34(b) of the Federal Rules of Civil Procedure.

2.     In further accordance with Rule 34 of the Federal Rules of Civil Procedure, all Documents and Communications produced for inspection and copying shall be organized and labeled to correspond with the categories in the Request or shall be produced as they are kept in the normal course of business.

3.     In responding to these Requests, You shall furnish all information that is available to You or subject to Your reasonable inquiry, including information in the possession of Your present and former attorneys, accountants, advisors, representatives, agents, employees, or other persons directly or indirectly employed by or connected with You, and anyone else otherwise subject to Your control.  All Documents that respond, in whole or in part, to any portion of the Requests below shall be produced in their entirety, including all attachments and enclosures.

4.     If there are no Documents or Communications responsive to a particular request, You should so state in writing.

5.     If You believe that any of the following Requests calls for an assertion of a claim of privilege or work product immunity, answer so much of the Request as is not objected to, state

7

that part of each Request to which You raise an objection, and set forth the basis for your claim of privilege with respect to such information You refuse to give, to include at least the following:

a)  The basis on which the privilege is claimed;

b)  The name and position of the author of the information;

c)  The name and position of each individual or other person to whom the information, or a copy thereof, was sent to otherwise disclosed and, if not apparent, the relationship of the persons to the author of the information;

d)  The date of the information;

e)  A description of any accompanying material transmitted with or attached to such information;

f)  The number of pages of such document or information or length of communication; and

g)  A description of the subject matter of the information, including whether any business or non-legal matter is contained or discussed in such information.

6.  In the event that You contend that any of these Requests are objectionable, in whole or in part, state with particularity each such objection and the bases therefore, and respond to the remainder of the Request to the extent that You are not objecting to it.

7.  If any Request is ambiguous or unclear to You, You are requested to contact undersigned counsel as soon as possible so that the Request can be clarified to avoid unnecessary delays in discovery.

8.  If You do not agree with any definition of the terms provided herein, You are instructed to provide a reasonable, alternative definition for that term, consistent with industry custom and usage.

9.      Each of the definitions and instructions contained herein shall be fully applicable to each Request notwithstanding that a definition or instruction above may, in whole or in part, be reiterated in a particular Request and notwithstanding that a particular Request may incorporate supplemental instructions or definitions.  If, however, You provide any alternate definitions in accordance with these Instructions, indicate whether and how any answer to any Request would differ if You relied on Your alternate definition in responding to that Request instead of the definitions provided.

10.      Each Request shall be construed independently, and no Request shall be viewed as limiting the scope of any other Request.

11.      Each and every copy of a Document or Communication that is different from the original because of stamps, indications of the recipient(s), handwritten notes, marks, attachments, or any other reason, is a separate document that must be produced.

12.      If You produce any tape, disk, card, wire, or other electronic or mechanical recording or transcript, or any computer program in response to any Request, You shall also produce such Documents, software, and instructions as are necessary for the decoding, playing back, printing, and/or interpretation thereof, and any other Documents that are necessary to convert said information into a useable format.

13.      In accordance with the Federal Rules of Civil Procedure, Your obligation to respond to these requests is continuing.  If You receive or discover a Document or Communication responsive to these requests after serving a response thereto, You shall promptly produce such Document or Communication.

14.      Unless otherwise indicated, these Requests seek documents and information for the time period January 1, 2017 through the present.

15.      Unless otherwise indicated, these Requests seek information regarding Tractable's business, products, commercial activity, operations, policies, viability, entry, and competitiveness in the United States, Canada, and Mexico ("North America").  To the extent Tractable does not distinguish between its North American and non-North American activities—or possesses otherwise responsive materials that do not distinguish between North American and non-North American geographies—those materials fall within the scope of these Requests.   Without limitation, this includes general Tractable policies and commercial analyses, product information, and any other information without a geographic nexus.  To the extent otherwise responsive information falling outside North America has any bearing on Tractable's activity within North America, entry into North American markets, competition within North America, or is otherwise relevant to Tractable's Counterclaims, it falls within the scope of these Requests.

<div align="center">

**REQUESTS FOR PRODUCTION**

</div>

**REQUEST FOR PRODUCTION NO. 89:**

All Documents and Communications responsive to CCC's prior requests for production (*i.e.*, Requests for Production Nos. 1-88) for the time period November 1, 2019 to the present, to the extent not previously produced.

**REQUEST FOR PRODUCTION NO. 90:**

Documents and Communications sufficient to show all aliases or purported d/b/a names that Tractable uses or used when Communicating with any Third Party, within or outside of North America.

**REQUEST FOR PRODUCTION NO. 91:**

Documents and Communications sufficient to show all aliases that Your executives or employees use or used when Communicating with any Third Party, within or outside of North America.

<div align="center">

10

</div>

**REQUEST FOR PRODUCTION NO. 92:**

Documents sufficient to identify all Tractable Products that You offer or have offered for sale or license in North America, including the names of any such products and the dates those products were available for sale or license.

**REQUEST FOR PRODUCTION NO. 93:**

Documents sufficient to identify all Tractable Products that You offer or have offered for sale or license outside of North America, including the names of any such products and the dates those products were available for sale or license.

**REQUEST FOR PRODUCTION NO. 94:**

All of Your Agreements with any auto insurance company, auto repair facility, or other company for any Tractable Products.

**REQUEST FOR PRODUCTION NO. 95:**

All Documents and Communications related to any actual or potential Agreement related to the sale, license, or testing of Tractable Products, including Documents and Communications related to the negotiation of any actual or potential Agreements, all memoranda of understanding, proposed terms, letters of intent, or other Agreement or contract drafts in any form.

**REQUEST FOR PRODUCTION NO. 96:**

All Documents and Communications related to any effort by You to enter into an Agreement with any auto insurance company, auto repair facility, or any other company for the sale, license, or testing of any Tractable Product.

**REQUEST FOR PRODUCTION NO. 97:**

All Communications between You and any auto insurance company, auto repair facility, or any other potential or actual customer related to the provision of Tractable Products.

**REQUEST FOR PRODUCTION NO. 98:**

Documents sufficient to identify all Tractable Products that You contend You are unable to sell because of CCC's allegedly anticompetitive conduct. *See* Counterclaims ¶ 48.

**REQUEST FOR PRODUCTION NO. 99:**

> **HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SUBJECT TO PROTECTIVE ORDER (DESIGNATED BY TRACTABLE)**

███████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████

**REQUEST FOR PRODUCTION NO. 100:**

> **HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SUBJECT TO PROTECTIVE ORDER (DESIGNATED BY TRACTABLE)**

███████████████████████████████████████████

██████████████████

**REQUEST FOR PRODUCTION NO. 101:**

All Communications between You and any auto insurance company, auto repair facility, or other Third Party related to CCC or this Litigation.

**REQUEST FOR PRODUCTION NO. 102:**

All Communications between You and Root Insurance regarding CCC, this Litigation, or Root Insurance's purchase, license, or testing of Tractable Products, including but not limited to all Documents and Communications related to the negotiation of any such purchase, license, or testing of Tractable Products.

**REQUEST FOR PRODUCTION NO. 103:**

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SUBJECT TO PROTECTIVE ORDER (DESIGNATED BY CCC)**

████████████████████████████████████████

████████████████████████████████████████

████████████████████████

**REQUEST FOR PRODUCTION NO. 104:**

All Documents and Communications related to any Agreements between Root Insurance and Tractable for Auto Claims Software to the extent not otherwise produced, including the Agreement between Tractable and Root Insurance announced on January 7, 2022.[2]

**REQUEST FOR PRODUCTION NO. 105:**

All Documents and Communications related to Tractable's assertions that CCC's Agreements for the provision of any Auto Claims Software are exclusive.

**REQUEST FOR PRODUCTION NO. 106:**

Documents sufficient to identify any customer (by name and business address), including but not limited to any auto insurance company or auto repair facility, that Tractable contends it could not do business with or enter into a contract with for any Tractable Product because of CCC's allegedly anticompetitive conduct.

---

[2] *See* Tractable, *Root Insurance selects Tractable as a strategic AI partner to streamline claims operations*, https://tractable.ai/en/resources/root-insurance-selects-tractable-as-a-strategic-ai-partner-to-streamline-claims-operations (accessed Apr. 7, 2024).

**REQUEST FOR PRODUCTION NO. 107:**

Documents sufficient to identify any customer (by name and business address), including but not limited to any auto insurance company or auto repair facility, that Tractable contends has entered into an "exclusive" Agreement with CCC or was otherwise prevented from working with Tractable.

**REQUEST FOR PRODUCTION NO. 108:**

All Documents and Communications relating to the percentage or share of auto insurance companies, auto repair facilities, or other potential customers that is allegedly tied up, or the number of auto insurance companies, auto repair facilities, or other potential customers that are unavailable to Tractable because of CCC's allegedly exclusive Agreements.

**REQUEST FOR PRODUCTION NO. 109:**

All Documents and Communications related to complaints from actual or potential customers of Tractable that they cannot do business with or enter into any Agreement with Tractable because of any Agreement with CCC.

**REQUEST FOR PRODUCTION NO. 110:**

All Communications with actual or potential customers of Tractable, including but not limited to auto insurance companies and auto repair facilities, regarding CCC, CCC's Products, or CCC's contractual terms. The scope of this request includes all actual or potential customers, regardless of their geographic location, without limitation.

14

**REQUEST FOR PRODUCTION NO. 111:**

All Documents and Communications related to Tractable's use or attempted use of exclusivity provisions in any Agreements for Tractable Products, including without limitation any Documents and Communications that refer or relate to potential benefits, advantages, or harms from the use of exclusivity provisions, and any policies or guidelines You have ever had for the use of exclusive Agreements.

**REQUEST FOR PRODUCTION NO. 112:**

All Agreements or drafts of Agreements for Tractable Products that include an exclusivity provision. This request seeks information regarding Tractable's use of, or consideration of the use of, exclusivity provisions in its Agreements for Tractable Products sold in North America and outside North America.

**REQUEST FOR PRODUCTION NO. 113:**

All Documents and Communications that relate to Tractable's assertions in Paragraph 67 of the Counterclaims that Tractable has had "substantial success overseas." Counterclaims ¶ 67.

**REQUEST FOR PRODUCTION NO. 114:**

All Documents and Communications related to Your assertion in Paragraph 37 of the Counterclaims that "U.S. customers have recently expressed interest in purchasing Tractable's products," including but not limited to Documents sufficient to identify any such U.S. customers who have "expressed interest in purchasing Tractable's products." Counterclaims ¶ 37.

**REQUEST FOR PRODUCTION NO. 115:**

All Documents and Communications related to Tractable's efforts to sell, market, license, or test Tractable Products to auto insurance companies, auto repair facilities, or any other Person or company.

**REQUEST FOR PRODUCTION NO. 116:**

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SUBJECT TO PROTECTIVE ORDER (DESIGNATED BY CCC)**

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████████████

**REQUEST FOR PRODUCTION NO. 117:**

All Documents and Communications related to Your assertion in Paragraph 31 of the Counterclaims that CCC has created "closed products" that are not interoperable with competitors' products. Counterclaims ¶ 31.

**REQUEST FOR PRODUCTION NO. 118:**

All Documents and Communications related to Tractable's creation, development, or attempted development of "closed products" that are not operable with other products, including but not limited to the products of Tractable's competitors. For the avoidance of doubt, this request seeks Documents and Communications relating to any and all limitations on interoperability regardless of whether the product is rendered completely or partially "closed," or is otherwise restricted.

**REQUEST FOR PRODUCTION NO. 119:**

All Documents and Communications related to Your assertion in Paragraph 32 of the Counterclaims that CCC has "increased the limitations on importation of information from non-CCC sources, including by blocking imports of files meeting industry standard specifications." Counterclaims ¶ 32.

**REQUEST FOR PRODUCTION NO. 120:**

All Documents and Communications related to Your assertion in Paragraph 33 of the Counterclaims that CCC "impose[s] barriers to importing data from competing software products," and that "CCC makes it difficult for customers to switch away from its products by claiming ownership of data that its customers enter into its platform, including information and photos that are used to generate claims estimates." Counterclaims ¶ 33.

**REQUEST FOR PRODUCTION NO. 121:**

All Documents and Communications related to any instances in which a customer or potential customer of Tractable was unable to provide their independently derived data or photographs to Tractable because of the customer or potential customer's use of CCC's products or any claim by CCC of ownership over the customer or potential customer's data or photographs.

**REQUEST FOR PRODUCTION NO. 122:**

All of Your Agreements with any Data Provider for the provision of data relating to auto parts and/or labor for use in Tractable Products.

**REQUEST FOR PRODUCTION NO. 123:**

All Documents and Communications related to any actual or potential Agreement with any Data Provider for the provision of data relating to auto parts and/or labor for use in Tractable Products, including Documents and Communications related to the negotiation of any actual or potential Agreements, all memoranda of understanding, proposed terms, letters of intent, or other Agreement or contract drafts in any form.

**REQUEST FOR PRODUCTION NO. 124:**

All Documents and Communications related to any effort by You to enter into an actual or potential Agreement with any Data Provider for the provision of data relating to auto parts and/or labor for use in Tractable Products. The scope of this request is not limited to North America and seeks Documents and Communications regardless of where the Data Provider is located.

**REQUEST FOR PRODUCTION NO. 125:**

All Documents and Communications related to Your "partnership with Mitchell" to use Mitchell's parts data in North America, as publicly announced on January 27, 2021.[3]

**REQUEST FOR PRODUCTION NO. 126:**

All Documents and Communications related to Your "strategic partnership" with PartsTrader to use PartsTrader's parts price data, as publicly announced on October 17, 2023.[4]

---

[3] *See* PR Newswire, *Tractable and Mitchell to offer combined solution for AI vehicle repair estimating* (Jan. 27, 2021), https://www.prnewswire.com/news-releases/tractable-and-mitchell-to-offer-combined-solution-for-ai-vehicle-repair-estimating-301215868.html.

[4] *See* Tractable, *Tractable & PartsTrader Launch Strategic Partnership* (Oct. 17, 2023), https://tractable.ai/en/resources/tractable-and-partstrader-launch-strategic-partnership.

**REQUEST FOR PRODUCTION NO. 127:**

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SUBJECT TO PROTECTIVE ORDER (DESIGNATED BY TRACTABLE)**

████████████████████████████████████████████

████████████████████

**REQUEST FOR PRODUCTION NO. 128:**

All Documents and Communications related to Tractable's use of any Mitchell, PartsTrader, Audatex, or Glasses product (including any databases related to auto parts and/or labor data) under the "JA Appraisal" or any other alias or purported "d/b/a" name.

**REQUEST FOR PRODUCTION NO. 129:**

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SUBJECT TO PROTECTIVE ORDER (DESIGNATED BY TRACTABLE)**

████████████████████████████████████████████

██████████  ████████████████████████████████

██████████████████████

**REQUEST FOR PRODUCTION NO. 130:**

Documents sufficient to identify any company with whom You have entered into an Agreement with, or attempted to enter into an Agreement with, for the provision of data relating to auto parts and/or labor for use in Tractable Products.

**REQUEST FOR PRODUCTION NO. 131:**

Any request for proposal, request for quotation, or similar solicitation that You have submitted for the purchase or license of data relating to auto parts and/or labor, any response You received, and any Communications concerning those requests or responses. Without limitation, this includes any Communications with Hearst, Audatex, or Mitchell relating to the provision of data for auto parts and/or labor. *See, e.g.*, Counterclaims ¶¶ 58, 60.

19

**REQUEST FOR PRODUCTION NO. 132:**

All Documents and Communications related to Tractable's efforts to develop a database of auto parts and/or labor data for use in Tractable Products, including but not limited to any analysis, studies, reports regarding the cost, feasibility, or process for developing or sourcing a database of auto parts and/or labor data.

**REQUEST FOR PRODUCTION NO. 133:**

All Documents and Communications that relate to Your assertion that CCC is "precluding access to" auto parts and labor data, including but not limited to, the "Motor database." Counterclaims ¶ 60.

**REQUEST FOR PRODUCTION NO. 134:**

All Documents and Communications that relate to Your efforts (whether or not successful), or the efforts of any other company (whether or not successful), to create, source, or develop a database relating to data for auto parts and/or labor data.

**REQUEST FOR PRODUCTION NO. 135:**

All Documents and Communications related to competition between any company for the provision of Auto Claims Software, including but not limited to all Documents and Communications related to competition between CCC and Tractable.

**REQUEST FOR PRODUCTION NO. 136:**

All Documents and Communications related to competition or competitors for Auto Claims Software, including but not limited to, competition with or competitors of CCC.

**REQUEST FOR PRODUCTION NO. 137:**

All Documents and Communications relating to strategic plans, corporate intelligence reports, market or sales forecasts, sales estimates, or sales data for Tractable Products.

**REQUEST FOR PRODUCTION NO. 138:**

All Documents and Communications relating to competitive intelligence regarding Auto Claims Software, including but not limited to any battle cards, SWOT analyses, customer surveys, market surveys, market research, competitive market shares, competitors' relative strengths and weaknesses, competitive market dynamics, trends in costs or pricing, or forecasts for any Auto Claims Software products.

**REQUEST FOR PRODUCTION NO. 139:**

All Documents concerning Your efforts to sell, market, license, or test Tractable Products, including all business strategy plans, marketing plans, and Communications with auto insurance companies, auto repair facilities, or other customers or potential customers.

**REQUEST FOR PRODUCTION NO. 140:**

All Documents relating to business, marketing or sales plans or projections for Tractable Products that refer to CCC or any CCC Products.

**REQUEST FOR PRODUCTION NO. 141:**

Any analysis or reports relating to the development, production, or sale of Tractable Products, whether conducted by You or any other Person.

**REQUEST FOR PRODUCTION NO. 142:**

Documents sufficient to identify all Tractable Products that You have offered or offer, and the quantity of such sales, on a monthly basis.

**REQUEST FOR PRODUCTION NO. 143:**

Documents sufficient to identify every price You have charged for each Tractable Product.

**REQUEST FOR PRODUCTION NO. 144:**

Documents sufficient to identify Your practices and procedures for pricing each Tractable Product including, without limitation, any formula, methodology, or policy for pricing Tractable Products.

**REQUEST FOR PRODUCTION NO. 145:**

All Documents and Communications related to any contemplated, planned, or implemented price increase for any Tractable Product.

**REQUEST FOR PRODUCTION NO. 146:**

Documents sufficient to show Your revenues, expenses, profits, and margins from the sale of Tractable Products, in the smallest time interval that You maintain, from 2014 to the present. For the avoidance of doubt, this Request is not limited to Tractable's North American business and includes Tractable's revenues, expenses, profits, and margins from the sale of Tractable Products outside North America.

**REQUEST FOR PRODUCTION NO. 147:**

Your quarterly financial statements (or annual if not maintained quarterly), including without limitation balance sheets, income statements, or other similar documents. This Request is not limited to Tractable's North American business and includes Tractable's financial statements for non-North American lines of business.

**REQUEST FOR PRODUCTION NO. 148:**

Documents sufficient to show Your projections of future revenue, expenses, profits, and margins from the sale of Tractable Products for the next twenty years, or for the maximum length of time that You have projected, whichever is longer. This Request is not limited to Tractable's North American business and includes Tractable's financial projections for non-North American lines of business.

**REQUEST FOR PRODUCTION NO. 149:**

Documents sufficient to show the identities of all of Tractable's current and former investors from Tractable's inception to the present, the amount of money or other resources that the entity or individual invested in Tractable, and the time period during which the entity or individual made each investment—regardless of the size of each current or former investor's stake in Tractable.

**REQUEST FOR PRODUCTION NO. 150:**

All Documents and Communications related to any comparison or analysis of CCC's Products, including any comparison or analysis of CCC's Products relative to any other company's products, including Tractable Products.

**REQUEST FOR PRODUCTION NO. 151:**

All Documents and Communications related to Your efforts to market Tractable Products, including through any press releases, interviews, industry presentations, panels, or conferences in which You or any of Your employees have participated.

**REQUEST FOR PRODUCTION NO. 152:**

All Documents and Communications related to any barriers to Tractable's expansion in the sales of Auto Claims Software products other than CCC's allegedly anticompetitive conduct.

**REQUEST FOR PRODUCTION NO. 153:**

All Documents and Communications, including any reports, studies, or analyses, related to any company's actual or potential entry into the market for Auto Claims Software.

**REQUEST FOR PRODUCTION NO. 154:**

Any analysis of the quantity, dollar value, or market share of Your sales in the United States, including changes thereof, whether conducted by You or any other Person.

**REQUEST FOR PRODUCTION NO. 155:**

All Documents and Communications relating to the market share of CCC, Tractable, or any other company that offers Auto Claims Software, including, but not limited to, all Documents relating to Your assertions in the Counterclaims that: (a) CCC has "approximately 85% of the Estimatics market" (Counterclaims ¶ 5); (b) "CCC possesses over 70–80% share of the relevant market" (Counterclaims ¶ 29); (c) CCC "controls 85% of all insurance claims" (Counterclaims ¶ 29); and (d) CCC "foreclose[s] access to at least 70–80% of the relevant market" (Counterclaims ¶ 47).

**REQUEST FOR PRODUCTION NO. 156:**

All Documents and Communications that relate to Your assertions that "Estimatics constitute a distinct product market"; that "Estimatics are a specific category of software product that have peculiar uses and characteristics and distinct categories of users"; and that "Estimatics are priced independently of other types of software products." Counterclaims ¶ 25.

**REQUEST FOR PRODUCTION NO. 157:**

All Documents and Communications that relate to Your assertion in Paragraph 25 that "[a] hypothetical monopolist imposing a small but significant non-transitory increase in price of Estimatics software would not cause customers to turn to other non-Estimatics software." Counterclaims ¶ 25.

**REQUEST FOR PRODUCTION NO. 158:**

All Documents and Communications that relate to Your assertion that "[t]he geographic market for Estimatics products is the United States." Counterclaims ¶ 28.

**REQUEST FOR PRODUCTION NO. 159:**

Documents sufficient to show the geographic markets in which you offer Tractable Products, including geographic markets outside of North America.

**REQUEST FOR PRODUCTION NO. 160:**

All Documents and Communications that relate to Your assertion that there "are large barriers to entry in the U.S. Estimatics market, both natural and artificial." Counterclaims ¶ 30.

**REQUEST FOR PRODUCTION NO. 161:**

All Documents and Communications that relate to Your assertion that "CCC is able to control prices" for Estimatics Products. Counterclaims ¶ 34.

**REQUEST FOR PRODUCTION NO. 162:**

All Documents and Communications that relate to Your assertion that "other Estimatics companies" "have been steadily losing market share to CCC." Counterclaims ¶ 34.

**REQUEST FOR PRODUCTION NO. 163:**

All Documents and Communications that relate to Your assertion that "other Estimatics companies" provide "products of similar quality and scope" compared to CCC. Counterclaims ¶ 34.

**REQUEST FOR PRODUCTION NO. 164:**

All Documents and Communications that relate to Your assertion that auto insurance companies are the "most competitively important purchasers of Estimatics products." Counterclaims ¶ 50.

**REQUEST FOR PRODUCTION NO. 165:**

All Documents and Communications that relate to Your assertions regarding the role of auto repair facilities, including but not limited to the use of "Direct Repair Programs." Counterclaims ¶¶ 50-51.

**REQUEST FOR PRODUCTION NO. 166:**

All Documents and Communications that relate to Your assertion that auto "repair facilities must have access to the software that the insurance companies exclusively use." Counterclaims ¶ 53.

**REQUEST FOR PRODUCTION NO. 167:**

All Documents and Communications that relate to Your assertion that CCC customers "would prefer to purchase competing Estimatics products." Counterclaims ¶ 55.

**REQUEST FOR PRODUCTION NO. 168:**

All Documents and Communications that relate to customers preferring Auto Claims Software products offered by Tractable's competitors, including CCC.

26

**REQUEST FOR PRODUCTION NO. 169:**

All Documents and Communications relating to complaints regarding Tractable's Products, including complaints regarding the quality or pricing of Tractable Products.

**REQUEST FOR PRODUCTION NO. 170:**

All Documents and Communications relating to customers' preference for CCC's Products relative to Tractable Products or any other competitors' competing Auto Claims Software products.

**REQUEST FOR PRODUCTION NO. 171:**

All Documents and Communications that relate to Your allegation that CCC has "exclusive deals" with "downstream customers." Counterclaims ¶¶ 46-56.

**REQUEST FOR PRODUCTION NO. 172:**

All Documents and Communications that relate to Your assertion that CCC has exclusive deals for "upstream data inputs." Counterclaims ¶¶ 57-62.

**REQUEST FOR PRODUCTION NO. 173:**

All Documents and Communications that relate to Your allegation that CCC "arrangements have had the effect of foreclosing competition." Counterclaims ¶ 73.

**REQUEST FOR PRODUCTION NO. 174:**

All Documents and Communications related to reports, questions, complaints, or criticisms, whether formal or otherwise, related to Tractable Products.

**REQUEST FOR PRODUCTION NO. 175:**

All Documents and Communications that relate to Your assertions that Tractable offers "products that are of higher quality than CCC and desired by customers" and is "making the [claims] process quicker and more cost effective" for consumers. Counterclaims ¶¶ 3, 36, 67.

27

**REQUEST FOR PRODUCTION NO. 176:**

All Documents and Communications that compare or analyze the sales or performance of Tractable Products in the U.S. to the sales or performance of Tractable Products outside the U.S., including any analysis or explanation for any difference in sales or performance.

**REQUEST FOR PRODUCTION NO. 177:**

All Documents or Communications relating to any loss of business for Tractable Products, including but not limited to CCC, including the reasons why any such business was lost.

**REQUEST FOR PRODUCTION NO. 178:**

All Documents or Communications relating to Your assertion that You have suffered any harm as a result of CCC's allegedly anticompetitive conduct.

**REQUEST FOR PRODUCTION NO. 179:**

For any auto insurance companies, auto repair facilities, or any other Person or customer that You contend stopped, could not, or refused to work with Tractable as a result of the conduct You allege in the Counterclaims, provide all Documents and Communications relating to the decision to refuse to do business with Tractable, including any discussed or stated reasons for such decision.

**REQUEST FOR PRODUCTION NO. 180:**

Any prospectus, confidential information memorandum, brochure, or other Document concerning the potential sale of Tractable, irrespective of whether the potential transaction is in North America or elsewhere.

**REQUEST FOR PRODUCTION NO. 181:**

All Documents and Communications concerning any valuation of Your business, including the components contributing to that valuation.

28

**REQUEST FOR PRODUCTION NO. 182:**

All Documents and Communications, including road show presentations, pitch books, promotional investment materials, and business and marketing plans You provided to Your actual or potential lenders.

**REQUEST FOR PRODUCTION NO. 183:**

All Documents and Communications relating to business, marketing, or sales plans, or projections that refer to CCC or CCC Products.

**REQUEST FOR PRODUCTION NO. 184:**

All Documents and Communications, including board minutes, board presentations, board meeting agendas, and other board materials, prepared for or shared during any of Your board meetings or distributed collectively to board members, relating to CCC, this Action, or the market for Auto Claims Software, including competition in that market.

**REQUEST FOR PRODUCTION NO. 185:**

All transcripts, recordings, videotapes, audiotapes, presentations, slides, notes, or other Communications or Documents concerning Your board meetings or other internal meetings that reference or relate to CCC or this Action.

**REQUEST FOR PRODUCTION NO. 186:**

All Documents and Communications related to any plan, guideline, or policy that You have developed or adopted to avoid violating, or ensuring compliance with, federal or state antitrust laws.

**REQUEST FOR PRODUCTION NO. 187:**

All Communications between You or Your counsel and the U.S. Federal Trade Commission, the U.S. Department of Justice, or any other federal or state regulatory agency, concerning CCC or this Litigation, including any Documents provided to any federal or state regulatory agency relating to CCC or this Litigation.

**REQUEST FOR PRODUCTION NO. 188:**

All Documents that You may use to support Your Counterclaims in this Action.

**REQUEST FOR PRODUCTION NO. 189:**

All Documents relating to the investigation that You undertook prior to the filing of the Counterclaims, including all Communications with any Person or Third Party, including any customer, current or former CCC employee, auto insurance company, auto repair facility, or Data Provider.

**REQUEST FOR PRODUCTION NO. 190:**

All Communications between You or Your counsel and any Third Party relating to CCC or this Litigation, including any Documents that any Third Party has provided to you related to this Litigation, regardless of whether those documents were provided voluntarily or pursuant to a subpoena.

**REQUEST FOR PRODUCTION NO. 191:**

All Documents You identified, reviewed, or relied upon in preparing the Counterclaims including any statements, declarations, interviews, or other information provided by Third Parties.

Date:  April 12, 2024                    Respectfully submitted,

                                         */s/ Elyse M. Greenwald*
                                         One of the Attorneys for Plaintiff CCC
                                         Intelligent Solutions Inc.

                                         Mark S. Mester (Bar No. 6196140)
                                         mark.mester@lw.com
                                         Matthew W. Walch (Bar No. 6226308)
                                         matthew.walch@lw.com
                                         Terra Reynolds (Bar No. 6278858)
                                         terra.reynolds@lw.com
                                         Kathryn A. Running (Bar No. 6330369)
                                         kathryn.running@lw.com
                                         LATHAM & WATKINS LLP
                                         330 North Wabash Avenue, Suite 2800
                                         Chicago, IL 60611
                                         Telephone: (312) 876-7700
                                         Facsimile: (312) 993-9767

                                         Adam M. Greenfield (Bar No. 6292915)
                                         adam.greenfield@lw.com
                                         Jason Burt (*pro hac vice*)
                                         jason.burt@lw.com
                                         Marguerite M. Sullivan (Bar. No. 6273129)
                                         marguerite.sullivan@lw.com
                                         David L. Johnson (*pro hac vice*)
                                         david.johnson@lw.com
                                         Rebekah L. Soule (*pro hac vice*)
                                         rebekah.soule@lw.com
                                         Wilson Boardman (Bar No. 6343030)
                                         wilson.boardman@lw.com
                                         LATHAM & WATKINS LLP
                                         555 Eleventh Street, NW, Suite 1000
                                         Washington, DC 20004-1304
                                         Telephone: (202) 637-2200
                                         Facsimile: (202) 637-2201

                                         Elyse M. Greenwald (*pro hac vice*)
                                         elyse.greenwald@lw.com
                                         LATHAM & WATKINS LLP
                                         10250 Constellation Blvd., Suite 1100
                                         Los Angeles, CA 90067
                                         Telephone: (424) 653-5500
                                         Facsimile: (424) 653-5501

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 12, 2024 a copy of the foregoing was served upon counsel of

record via electronic mail.

<div align="right">

*/s/ Elyse M. Greenwald*
One of the Attorneys for Plaintiff CCC
Intelligent Solutions Inc.

</div>

# EXHIBIT 34
# FILED UNDER SEAL

# KING & SPALDING

King & Spalding LLP
110 N Wacker Drive
Suite 3800
Chicago, Illinois 60606

Tel: +1 312 995 6333
Fax: +1 312 995 6330
www.kslaw.com

Michael Anthony Lombardo
Senior Associate
Direct Dial: +1 312 764 6909
mlombardo@kslaw.com

August 15, 2024

<u>VIA EMAIL</u>

Elyse M. Greenwald
Latham & Watkins LLP
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
elyse.greenwald@lw.com

Dear Elyse:

We write on behalf of Tractable Inc. ("Tractable") in response to your letter dated July 18, 2024 regarding Tractable's Responses and Objections ("Reponses") to CCC Intelligent Solutions Inc.'s ("CCC") Fourth Set of Interrogatories ("Interrogatories") and Fifth Set of Requests for Production ("Requests").

## I.    Interrogatory Nos. 16-18

CCC's Interrogatory Nos. 16-18 are contention interrogatories that ask Tractable to identify and describe, "in Detail," facts related to Tractable's antitrust counterclaims. As explained in both Tractable's Responses and during our meet and confer, such contention interrogatories are premature because they seek comprehensive information with respect to Tractable's counterclaims while discovery regarding such claims has just begun. Tractable's objection to CCC's premature contention interrogatories is appropriate under Rule 26(a)(2) and there is no basis for CCC to seek relief from the Court. *See Whitchurch v. Canton Marine Towing Co.*, 2017 WL 1165988, at *2 (C.D. Ill. Mar. 23, 2017) ("Contention interrogatories are often better answered after parties are near the end of discovery because they are better able to give complete responses."); *Auto Meter Products, Inc. v. Maxima Technologies & Systems, LLC*, 2006 WL 3253636, at *2 (N.D. Ill. Nov. 6, 2006) ("When one party poses contention interrogatories <u>after considerable discovery</u>, and the opposing party refuses to answer the interrogatories, courts routinely compel the resisting party to

August 15, 2024
Page 2

answer the interrogatories") (emphasis added) (citations omitted); *Rusty Jones, Inc. v. Beatrice Co.*, 1990 WL 139145, at *2 (N.D. Ill. Sept. 14, 1990) (same).

Setting that aside, Tractable is willing to supplement its responses to identify facts currently in Tractable's possession that are the basis of Tractable's counterclaims. This is consistent with the clarification in your letter that CCC is seeking information learned in the course of Tractable's investigation into its counterclaims. We understand this resolves the dispute with respect to Interrogatory Nos. 16-18.

## II.     CCC's Requests

### 1.     RFP Nos. 95, 96, 113, 115, 118, 123-127, 129, 132, 137, 138, 154, and 177

In response to Requests Nos. 95, 96, 113, 115, 118, 123-127, 129, 132, 137, 138, 154, and 177, Tractable stated it would produce documents "sufficient to show" the information requested to account for the overbroad and unduly burdensome nature of the Requests.  As discussed during our meet-and-confer and below, the parties' dispute over the phrase "sufficient to show" in Tractable's Responses appears to be largely semantical. Tractable agrees, subject to its other objections and specifically stated limitations, to conduct reasonable searches to produce documents responsive to Requests Nos. 95, 96, 115, 123, 124, 132, 137, 138, 154, and 177. Moreover, the parties have agreed to exchange custodian information and search terms, which should address CCC's concerns regarding the scope of Tractable's search for information responsive to these Requests.

Request No. 113 seeks all documents and communications related to Tractable's assertion in its counterclaims that Tractable has had "substantial success overseas." Tractable agrees to conduct a reasonable search to locate and produce documents demonstrating Tractable's success overseas, which will also be reflected in the financial and product information Tractable agreed to produce in response to other Requests. *See e.g.,* Request Nos. 93, 146-148, 176. Tractable's clarification that it will search for documents "demonstrating" its success overseas is a reasonable limitation intended to clarify that Tractable will not produce every document in its possession related to its overseas business.

Request Nos. 125-127, and 129 seek all documents and communications related to Tractable's relationships with certain third-party data providers.  As discussed during our meet-and-confer, these Requests are facially overbroad in that they would require Tractable to search for and produce every single communication between Tractable and each of the entities identified in Requests Nos. 125-127 and 129 despite the lack of any relevance to the claims or defenses in this case. Notwithstanding the facial overbreadth of these Requests, to resolve this dispute, Tractable agrees, subject to its specific objections and other specifically stated limitations, to conduct reasonable searches for responsive documents that relate to Tractable's efforts to obtain Estimatics data from the third parties identified in these Requests, Tractable's efforts to enter into agreements with these third parties, and documents related to the scope of Tractable's relationship with these third parties (including Tractable's ability or inability to receive Estimatics data from

August 15, 2024
Page 3

such parties). Tractable's search protocol will adequately account for such requests and should resolve CCC's concerns with respect to the scope of Tractable's search for responsive documents.

As to Request No. 118, Tractable searched for documents responsive to this Request and has not located any responsive documents.

## 2.    RFP No. 89 and Source Code for Tractable Products

Request No. 89 seeks documents and communications responsive to CCC's eighty-eight (88) prior Requests for the time period of November 1, 2019 to the present. As discussed at length in our prior correspondence and conferences, CCC's claims against Tractable relate to conduct that occurred prior to November 1, 2018. CCC has not provided any basis for its blanket request for information from November 1, 2019 to the present for all eighty-eight of CCC's prior Requests related to CCC's claims against Tractable. *See, e.g.*, May 25, 2023 Barrett Letter to O'Donohue at 1, Mar. 14, 2024 Barrett Letter to Greenfield at 1-3; June 28, 2024 Barrett Letter to Greenfield at 1-2.

Tractable explained during the recent meet and confer that it is willing to consider production of information from November 1, 2019 through March 25, 2024 in Response to Request Nos. 1 - 88 to the extent any of those Requests seeks information CCC contends is relevant to Tractable's antitrust counterclaims, or for which CCC can identify a basis for expanding the relevant date range. Your letter identifies Request Nos. 25, 28-30, 55-60, 64-65, 68-72, 75-76, 80-81, and 88 as Requests that relate to Tractable's antitrust counterclaims that should be updated through the date of Tractable's Counterclaims. Most of these Requests are duplicative and cumulative of the antitrust-related Requests CCC served in its Fifth Set of Requests for Production, which Tractable has already agreed to conduct reasonable searches for and produce responsive documents through March 25, 2024.

Accordingly, subject to its specific objections and specifically stated limitations, Tractable agrees to conduct reasonable searches to identify and produce documents through March 25, 2024 that are responsive to Request Nos. 28-30, 55-60, 64-65, 68-72, 75-76, 80-81, and 88, which will be addressed in Tractable's search protocol for documents responsive to CCC's Fifth Set of Requests for Production. With respect to Request No. 25, Tractable stands on its objections, including that the Request for all documents related to changes to any Tractable Product from November 1, 2019 to the present is overly broad, unduly burdensome, and seeks irrelevant information. As indicated in its Responses and in this letter, however, Tractable agrees to produce documents responsive to Request Nos. 93-97, 99, 102, 104, 114, 115, 125-127, 129. 134, 139-142, 151, 167-170, 174-175 through March 25, 2024, which provide information regarding the technical capabilities of Tractable's product offerings. Tractable's responses to these Requests should resolve the issues CCC raised with respect to Request Nos. 1 – 88.

With respect to CCC's Request for "source code for all Tractable Products and software versions associated with Tractable Products dated from November 2018 to the present," this Request is highly burdensome and seeks irrelevant information as Tractable has explained to CCC

August 15, 2024
Page 4

repeatedly over the past two years. *See* Dec. 9, 2022 Barrett Letter to O'Donohue at 4; Feb. 15, 2023 Barrett Letter to O'Donohue at 3; Apr. 10, 2023 Barrett Letter to O'Donohue at 1-2; June 7, 2023 Barrett Letter to O'Donohue at 3; Mar. 14, 2024 Barrett Letter to Greenfield at 3. Despite making 705 gigabytes of source code available to CCC and substantial amounts of data used to train Tractable's AI models, discovery has not revealed any evidence that Tractable misappropriated any information it obtained through its license to CCC ONE in developing any Tractable product or AI model. *See* June 7, 2023 Barrett Letter to O'Donohue at 3; Mar. 14, 2024 Barrett Letter to Greenfield at 3. There is simply no basis for CCC's demand that Tractable produce hundreds of gigabytes of additional source code created years after Tractable's access to CCC was terminated and therefore has no bearing on any of CCC's claims.

### 3. RFP Nos. 90 and 91

Tractable reiterates that Requests Nos. 90 and 91 are overbroad because they seek the identification of any "doing business as" name or alias used by Tractable, by any Tractable executive, or by any Tractable employee when communicating with any third party at any time anywhere in the world. The Requests also seek irrelevant information because the use of an alias or "doing business as" name by Tractable or any of its executives or employees is not relevant to the claims and defenses in this litigation. To resolve this issue, however, Tractable agrees to conduct a reasonable search across its custodians for documents responsive to these Requests.

### 4. RFP Nos. 92 and 93

Tractable confirms that it will conduct reasonable searches and produce information responsive to Requests Nos. 92 and 93.

### 5. RFP Nos. 95-97

As stated above, Tractable agrees to, subject to its other objections and specifically stated limitations, conduct reasonable searches to produce documents responsive to Requests Nos. 95 and 96. Tractable confirms that its searches will include custodial searches for communications responsive to such Requests. Request No. 97 is fully captured by Request Nos. 95 and 96 and therefore will be addressed in Tractable's search protocol.

### 6. RFP No. 99

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SUBJECT TO PROTECTIVE ORDER (DESIGNATED BY TRACTABLE)**

August 15, 2024
Page 5

7. **RFP Nos. 101 and 102**

Tractable confirms that it will conduct reasonable searches and produce communications with third parties regarding CCC and this litigation. Tractable further confirms that it will conduct reasonable searches and produce communications between Tractable and Root Insurance relating to CCC's claims against Tractable.

8. **RFP No. 115**

Tractable's response to Request No. 115 explains that the Request is duplicative of Requests Nos. 95, 96, 97, 98, 101, 105, 106, 107, 109, and 110. Tractable's agreement to produce information in response to those Requests necessarily means that Tractable has agreed to produce information in response to Request No. 115. For the sake of clarity, Tractable states that, subject to its other objections and specifically stated limitations, Tractable agrees to conduct a reasonable search for documents and communications related to Tractable's efforts to sell, market, license, or test Tractable's Estimatics products to auto insurance companies, auto repair facilities, or any other Person or company within the United States.

9. **RFP Nos. 119 and 120**

In the interests of resolving disputes without Court intervention, Tractable agrees, subject to its other specific objections, to conduct a reasonable search for documents and communications responsive to Request Nos. 119 and 120 and produce such documents to the extent not already produced in this litigation in response to CCC's prior Requests.

10. **RFP No. 121**

Tractable confirms (as we did during the meet and confer) that it has agreed to produce information responsive to Request No. 121. Tractable has already agreed to produce documents and communications relating to any instance where a customer or potential customer stated to Tractable that the customer was unable to provide data or photographs to Tractable because of the customer's use of any CCC products or any claim by CCC of ownership over the customer or potential customer's data or photographs. This necessarily includes "independently derived" data.

11. **RFP No. 122**

Tractable confirms that it will produce agreements with data providers relating to the provision of data for auto parts and/or labor for use in Tractable's Estimatics products within the United States.

August 15, 2024
Page 6

**12.    RFP Nos. 123 and 124**

As stated above, subject to its other objections and specifically stated limitations, Tractable confirms that it will conduct a reasonable search and produce documents and communications responsive to Requests Nos. 123 and 124 and confirms that its search will include agreements with data providers regarding the provision of data relating to auto parts and/or labor for use in Tractable's Estimics products within the United States.

**13.    RFP Nos. 125-127, 129**

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SUBJECT TO
PROTECTIVE ORDER (DESIGNATED BY TRACTABLE)**



**14.    RFP Nos. 130 and 131**

Request Nos. 130 and 131 are duplicative of Requests Nos. 122, 123, 124, 125, 126, 127, 128, and 129. Tractable's agreement to produce information in response to those Requests should resolve CCC's concerns with respect to Request Nos. 130 and 131. For the sake of clarity, Tractable confirms that its search protocol will include a reasonable search for the information sought in Request Nos. 130 and 131.

**15.    RFP No. 132**

As stated in its Response, Request No. 132 is fully covered by Request Nos. 122, 123, 124, 125, 126, 127, 128, 129, 130, and 131, which seek information regarding Tractable's efforts to obtain parts and labor data for use in Estimics products within the U.S. Tractable once again confirms that, subject to its other specific objections and specifically stated limitations, it will conduct a reasonable search and produce documents and communications relating to Tractable's efforts to develop its own database of auto parts and/or labor data for Estimics products within the United States.

August 15, 2024
Page 7

16.     **RFP No. 134**

Tractable confirms that it will conduct a reasonable search for documents and communications relating to any other company's efforts to create, source, or develop a database relating to data for auto parts and/or labor for use in Estimatics products within the United States (whether or not successful).

17.     **RFP No. 135**

Subject to its other objections, Tractable agrees to conduct a reasonable search and produce documents regarding competition in the Estimatics market in the United States.

18.     **RFP Nos. 137 and 138**

Tractable confirms that, subject to its other objections and limitations, it will conduct a reasonable search and produce documents regarding competitive intelligence regarding Estimatics products within the United States, including but not limited to, any battle cards, SWOT analyses, customer surveys, analysis of competitors' strengths and/or weaknesses, competitive market dynamics, trends in costs or pricing, or forecasts for any Estimatics products.

However, Tractable does not agree to search for and produce communications broadly related to its U.S. "sales data" that is not tied to a broader competitive analysis given that such a Request is overbroad and would encompass irrelevant day-to-day operational discussions and all communications from Tractable's finance team. Tractable has agreed to produce extensive financial information in Response to other Requests.

19.     **RFP No. 139**

Tractable agrees to conduct a reasonable search and produce documents relating to business strategy and marketing plans for Tractable's Estimatics products within the United States.

20.     **RFP No. 141**

Request No. 141 is duplicative of at least Requests Nos. 92, 93, 96, 110, 113, and 115. Tractable's agreement to produce information in response to those Requests should resolve CCC's concerns with respect to Request No. 141.

Moreover, as further background, Tractable does not sell or license "off-the-shelf" Estimatics products. Rather, Tractable develops Estimatics products to meet the needs of its specific clients. Analyses or reports relating to the development, production, or sale of Tractable's Estimatics products will accordingly be encompassed by Tractable's agreement to search for and produce documents related to its efforts to enter into agreements with customers for the provision of Estimatics products in the United States. Tractable further agreed to produce documents responsive to Request Nos. 94-97, 99, 102, 104, 114, 125-127, 129. 134, 139-142, 151, 167-170,

August 15, 2024
Page 8

174-175, which provide information regarding the technical capabilities of Tractable's product offerings. To be clear, Tractable is not excluding "analyses or reports" regarding Tractable's product development; Tractable's search protocol and collection efforts related to CCC's Requests will include that information. We understand this addresses the issues raised in CCC's letter with respect to Request No. 141.

21.    RFP No. 144

Request No. 144 seeks documents sufficient to identify Tractable's practices and procedures for pricing Tractable's "Estimatics" products, including without limitation, any formula, methodology, or policy for pricing. Your letter claims that this information is relevant to Tractable's claims against CCC, but it is CCC, not Tractable, that is accused of anticompetitive behavior in connection with Tractable's antitrust counterclaims.

Regardless, Tractable confirms that its practices and procedures for pricing will be included in Tractable's search for Tractable's agreement and correspondence with its customers regarding the sale and licensing of Tractable's Estimatics products within the United States.

22.    RFP No. 147

Subject to its specific objections, Tractable agrees to conduct reasonable searches for and produce its quarterly financial statements (or annual if not maintained quarterly), which will include the financial statements Tractable generates and maintains in the regular course of its business.

23.    RFP No. 151

As acknowledged in your letter, Request No. 151 is duplicative of other Requests seeking information regarding marketing of Tractable's Estimatics products. Tractable confirms its searches for information responsive to Request No. 115 would not exclude communications to the industry such as press releases, interviews, or industry presentations.

24.    RFP No. 153

Tractable agrees, subject to its other objections, to conduct a reasonable search for documents and communications, including any reports, studies, or analyses, related to any company's actual or potential entry into the United States Estimatics market.

25.    RFP No. 165

As explained in Tractable's response to Request No. 165, information regarding auto repair facilities and Direct Repair Programs is either publicly available, already in CCC's possession, or obtainable from sources equally attainable to CCC. Setting that aside, Tractable agrees, subject to its other objections, to conduct a reasonable search and produce documents relating to Tractable's

August 15, 2024
Page 9

allegations that CCC's "exclusivity impacts auto repair facilities," and that auto repair facilities are "required" to use CCC's products if they want to participate in direct repair programs.

### 26.    RFP No. 170

In response to Request No. 170, Tractable properly limited its search for and production of information to documents and communications related to United States' insurance companies' or auto repair facilities' preferences for CCC's Estimatics products relative to Tractable or any other competitors' Estimatics products because CCC does not operate outside of the United States nor are CCC's practices outside of the United States at issue here. CCC's speculation that customers outside of the United States may be "expressing a preference for CCC's products, or requesting integration with CCC" when CCC products are not available in such markets is nonsensical. If CCC has Estimatics products outside of the U.S. it is referring to, please clarify the products and countries it is referring to.

Notwithstanding the above, to the extent Tractable locates a communication in which a non-U.S. customer expressed a preference for CCC over Tractable's products within Tractable's search protocol, Tractable will not exclude such communication from its production.

### 27.    RFP Nos. 171 and 172

Request Nos. 171 and 172 are cumulative and duplicative of Request Nos. 95, 96, 97, 98, 101, 105-108, 110, 114-116, 135, 135, 138, 139, 150, and 168. CCC's letter does not dispute the duplicative and cumulative nature of these Requests. Tractable also agreed to exchange search terms and custodians. It is unclear what else CCC is asking Tractable to do here beyond referring CCC to the specific information it agreed to produce and the search protocol regarding same.

### 28.    RFP No. 174

Tractable confirms that it will, subject to its other specific objections and specifically stated limitations, search for and produce documents reflecting any criticisms or complaints regarding Tractable's "Estimatics" products within the United States, including any reports summarizing or detailing such criticisms or complaints. Tractable will not agree to produce all "reports" (other than those it agreed to produce in response to other Requests) and "questions" regarding Tractable's Estimatics products. Such a search and production is overbroad and disproportionate to the needs of this case because it is not limited to information relevant to the claims and defenses in this litigation.

### 29.    RFP No. 179

Tractable has already agreed to produce information regarding any customer that Tractable contends stopped, could not, or refused to work with Tractable as a result of the conduct alleged in the Counterclaims in response to Request Nos. 96, 97, 98, 101, 102, 103, 104, 105, 106, 107,

August 15, 2024
Page 10

108, 109, 110, 167, 171, 172, 173, 177, and 178. Tractable confirms, subject to its other specific objections, that it will conduct a reasonable search for and produce documents and communications relating to Tractable's loss of business in the United States Estimatics market and the reasons why any U.S. Estimatics customer stopped or refused to do business with Tractable.

**30.    RFP Nos. 180-182**

Tractable reiterates that Request Nos. 180-182, as stated, are overbroad in that they seek any document whatsoever concerning the potential sale of Tractable, regardless of whether the document has any relevance to this case. In your letter, you explain that documents relating to the sale of Tractable could be relevant to the extent they include information regarding the value of Tractable's business or its ability to compete, grow, or succeed. Tractable has already agreed to produce significant financial data related to the value of its business. The additional information sought through these Requests in that regard is thus duplicative, and unduly burdensome. Tractable will agree to search for documents related to the sale of its business that contain any information regarding Tractable's ability to compete, grow, or succeed in the U.S. market for Estimatics products.

**31.    RFP No. 184**

Tractable agrees, subject to its other specific objects, to conduct a reasonable search and produce any non-privileged documents and communications responsive to Request No. 184.

**32.    RFP No. 187**

Tractable's Request for Production No. 67 to CCC seeks documents and communications related to or reflecting any suggestion, notice, allegation, or inquiry from any third party, including any government. In response, CCC refused to produce communications, and agreed only to produce "documents produced to, provided to, or shared with the FTC or any state attorney general in connection with any investigation alleging that, or investigating whether, CCC's 'Estimatics' products or services violate any state or federal unfair competition or antitrust law" and "allegations or complaints from third parties that CCC, through its 'Estimatics' products or services, has acted anticompetitively or violated any antitrust law." *See* June 27, 2024 Greenwald Letter to Barrett at 6.

Accordingly, in-line with CCC's response to Tractable's Request No. 67, Tractable agrees, subject to its specific objections, to produce any documents Tractable or its counsel acting on behalf of Tractable provided to any federal or state regulatory agency relating to CCC or this litigation.

**33.    RFP No. 190**

As stated in Tractable's Response, Request No. 190 is duplicative of Request Nos. 101 and 189. Tractable addressed CCC's purported concerns related to Request No. 101 above. Tractable

August 15, 2024
Page 11


also confirms it will produce any documents it received from third parties related to this litigation it locates after a reasonable search (if any).


Regards,

/s *Michael Lombardo*

Michael Lombardo

# EXHIBIT 35
# FILED UNDER SEAL

# EXHIBIT 36
## FILED UNDER SEAL